Israel Dahan
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York 10036
Phone: (212) 556-2100
Fax: (212) 556-2200
idahan@kslaw.com
*Counsel for Yeshiva Chofetz Chaim, Inc.
and 82 Highview LLC*

Hearing Date: To Be Determined

Response Deadline: To Be Determined

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

In re:

SHEM OLAM LLC,

    Debtor.

Chapter 11

Case No. 22-22493 (SHL)

# MOTION BY YESHIVA CHOFETZ CHAIM, INC. AND 82 HIGHVIEW LLC TO DISMISS DEBTOR'S CHAPTER 11 PETITION

Non-parties Yeshiva Chofetz Chaim, Inc. and 82 Highview LLC (the "Movants") move for an order dismissing the Chapter 11 Petition filed by Debtor Shem Olam, LLC ("Shem Olam") as a bad faith filing.

## INTRODUCTION

The Debtor, Shem Olam, is a shell entity whose sole purported asset is a parcel of property that Rabbi Aryeh Zaks, the purported founder and manager of the Debtor, stole from the Movants. The property at issue is the 15-acre campus for a religious school and synagogue that was owned by 82 Highview LLC, and operated by 82 Highview LLC's sole member, Yeshiva Chofetz Chaim, Inc. ("YCC"). Rabbi Aryeh Zaks perpetrated his theft by secretly and fraudulently executing a deed on behalf of 82 Highview LLC and "selling" the property worth tens of millions of dollars to Shem Olam for virtually nothing. On discovering Rabbi Aryeh Zaks' surreptitious mischief, YCC and 82 Highview LLC sued him and Shem Olam in New York state court, to quiet title to the

1

property and unwind the fraudulent transaction. Rabbi Aryeh Zaks and Shem Olam attempted to defeat the state court action by submitting a forged "operating agreement" for 82 Highview LLC that purportedly gave Rabbi Aryeh Zaks the power to execute such "sale." The state court did not buy the fake document and denied the motion to dismiss, and it scheduled a hearing for July 28, 2022 to discuss a pre-trial schedule. Shortly thereafter, YCC discovered more proof of Rabbi Aryeh Zaks' fraudulent schemes, including a *second* forged "operating agreement" for 82 Highview LLC (entirely inconsistent with the first) that Rabbi Aryeh Zaks used to obtain a $3.5 million loan on behalf of 82 Highview LLC and other fake tax documents created by Rabbi Aryeh Zaks. Realizing the ramification of those documents and its negative impact on their defense of the state court action, Rabbi Aryeh Zaks caused Shem Olam to file its Chapter 11 Petition here, just hours before the scheduled state court conference.

Shem Olam's Chapter 11 Petition is a sham—an effort to halt the state court action that, to say the least, was not going Rabbi Aryeh Zaks' way and would inevitably reveal his fraudulent and illegal conduct. Indeed, in his own first-day declaration submitted with the Petition, Rabbi Aryeh Zaks concedes that an "adverse ruling in the state court" is the basis for the filing, with no mention of any restructuring or other legitimate bankruptcy goal. And just yesterday evening, seemingly discouraged by the rulings of the state court, Shem Olam and Rabbi Aryeh Zaks filed a notice of removal in the state court action to move the two-party dispute to this Court on the purported basis that if the state court action is "successful, the claims would divest Shem Olam of its only asset"—an asset for which it does not lawfully own. Put simply, this Petition has been filed as a litigation delay tactic and a blatant attempt at forum shopping.

Unfortunately, Rabbi Aryeh Zaks has a history of such delay tactics and manipulating the bankruptcy process—and being sanctioned for it. For example, just a couple of years ago, Judge

2

Drain found that Rabbi Aryeh Zaks and other individuals with alleged interest in a certain property coincidentally located near the property at issue had filed a bankruptcy petition as "part of a long-running scheme to delay and hinder creditors," and, therefore, he granted *in rem* relief from the automatic stay and barred Rabbi Aryeh Zaks and the other individuals from making any future filings under the Bankruptcy Code for two years.

This bad faith Chapter 11 filing by the Debtor is just more of the same shenanigans by Rabbi Aryeh Zaks and part of his continuous effort to avoid judgment and delay his return of the property he stole from Movants and that the Debtor does not lawfully own. The Court should not allow that abuse here and should dismiss this case so that the Movants can proceed with their ongoing litigation and efforts to recover their stolen property.

## FACTUAL BACKGROUND

A.   **YCC And The Formation Of 82 Highview LLC**

YCC is a New York religious not-for-profit organization that was established by Rabbi Gershon Zaks in or around 1954. M. Zaks Decl. ¶ 4. Rabbi Gershon Zaks was the father of Rabbi Mayer Zaks and Rabbi Aryeh Zaks. M. Zaks Decl. ¶ 4. In or around 1969, Rabbi Gershon Zaks purchased a property located at 82 Highview Road in Suffern, New York (the "Property"), and built on the Property a building that housed a Yeshiva (i.e., place for learning religious studies) and a Shul (i.e., synagogue). M. Zaks Decl. ¶ 5. From that date until his passing in 1989, Rabbi Gershon Zaks was the Chief Rabbi and President of YCC. M. Zaks Decl. ¶ 5. After the passing of Rabbi Gershon Zaks, Rabbi Mayer Zaks took over as President and Chief Rabbi of YCC. Rabbi Mayer Zaks has held those titles to the present. M. Zaks Decl. ¶ 6. Rabbi Mayer Zaks is also a member YCC's Board of Trustees, which has ultimate responsibility for and control of the institution and its property. M. Zaks Decl. ¶ 7.

3

In or around 2007, the mortgagee on the Property, TD Bank, N.A. ("TD Bank"), commenced an action against YCC seeking to foreclose TD Bank's mortgage on the Property, which was then in default. M. Zaks Decl. ¶ 8. In that foreclosure action, TD Bank was eventually awarded a judgment of foreclosure, and the foreclosure sale took place on August 20, 2013, in which TD Bank acquired title to the Property. M. Zaks Decl. ¶ 8 & Ex. C. YCC nevertheless retained possession and use of the Property. M. Zaks Decl. ¶ 8.

In 2017, a YCC donor agreed to purchase the property from TD Bank and return it to YCC. M. Zaks Decl. ¶ 9. Rabbi Mayer Zaks, with the assistance of his younger brother Rabbi Aryeh Zaks, who was then (but no longer is) an officer of YCC and a Trustee, worked to facilitate the donation. M. Zaks Decl. ¶ 9. To that end, they worked with the founders and owners of a Delaware limited liability company called Del Realty LLC to acquire the Property from TD Bank with the understanding and agreement that it would donate the Property back to YCC one year and one day after the purchase in exchange for a tax deduction in the amount of approximately $12 million. M. Zaks Decl. ¶ 10. At that time, the Property and building thereon had an "as is" condition appraised value of approximately $12,300,000, and if later approved for Adult Student Housing, had an appraised value of approximately $26,000,000. M. Zaks Decl. ¶ 10 & Ex. F.

In or around September 2017, TD Bank sold the Property to Del Realty LLC for $1,400,000. M. Zaks Decl. ¶ 11. Notably, the Deed reflecting the payment from Del Realty LLC is signed by Mr. Karmel (as Buyer), not Rabbi Aryeh Zaks or his son Henoch Zaks. M. Zaks Decl. ¶ 11 & Ex. D. Just over a year later, on October 23, 2018, Del Realty LLC transferred title to the Property to 82 Highview LLC, an entity established days before, on October 16, 2018, by both Rabbi Mayer Zaks and Rabbi Aryeh Zaks to receive and hold the Property. M. Zaks Decl. ¶ 12 & Ex. G.

4

To facilitate this agreed donation of the Property from Del Realty LLC back to YCC, and based on discussions with legal and tax advisors, Rabbi Mayer Zaks and his brother, Rabbi Aryeh Zaks, agreed to form 82 Highview LLC.  M. Zaks Decl. ¶ 13.  At all times since formation, YCC has been the sole member of 82 Highview LLC.  M. Zaks Decl. ¶ 14.  This is confirmed by many documents, including documents provided by Rabbi Aryeh Zaks himself to the Town of Ramapo and other state agencies in connection with 82 Highview LLC's request for tax exemption status on the Property.  M. Zaks Decl. ¶ 14 & Exs. K, L, M, N.  Thus, Rabbi Aryeh Zaks' contention in his Declaration that he was the "sole founding member/manager" of 82 Highview LLC and that YCC was sole member of 82 Highview LLC for only the first 30 months of its existence and then all rights, title and membership interest in 82 Highview LLC reverted to him as sole forming member (*see* Dkt. 1-1 ¶ 6), is pure fiction.  And the operating agreement for 82 Highview LLC that he refers to in his Declaration is a sham.  *See* I. Dahan Decl. Ex. 4.  It was fraudulently and deceptively created by him and without approval of Rabbi Mayer Zaks and the other true members of the Board of Trustees of YCC and 82 Highview LLC.  M. Zaks Decl. ¶ 18.

Notably, this fake operating agreement referenced by Rabbi Aryeh Zaks is not notarized and is only signed by him, the same person to whom the membership interest is allegedly being transferred.  *See* I. Dahan Decl. Ex. 4.  But more significantly, the contents of the operating agreement (specifically the statement as to its Founding Members and YCC's sole member role for only 30 months) are contradicted by government filings Rabbi Aryeh Zaks filed concerning the ownership and management of 82 Highview LLC.  M. Zaks Decl. ¶ 18 & Exs. K, L, M, N.  In fact, if the purported operating agreement was a true and authentic document it would mean that Rabbi Aryeh Zaks defrauded the government for many years.  *Compare* I. Dahan Decl. Ex. 4 *with* M. Zaks Decl. ¶ Exs. K, L, M, N.

5

For example, in February 2019, several months after the formation of 82 Highview, YCC and 82 Highview LLC filed with the Town of Ramapo and the New York State Department of Taxation and Finance an application for approval of tax-exempt status on the Property. M. Zaks Decl. ¶ 19. That application was submitted and signed by Rabbi Aryeh Zaks. M. Zaks Decl. ¶ 19. In this application, Rabbi Aryeh Zaks affirms and verifies to the Town of Ramapo and the New York State Department of Taxation and Finance that YCC is the sole member of 82 Highview LLC and does not state that such sole member role is limited in time. M. Zaks Decl. ¶ 19. Specifically, in response to a question in the application as to whether "any person or organization [has] a reversionary interest in the property," Rabbi Aryeh Zaks responds "No." M. Zaks Decl. ¶ 19. In other words, Rabbi Aryeh Zaks is affirming to these state government agencies that YCC is the sole member of 82 Highview LLC and that there exists no reversionary interest in the property back to any person or organization. M. Zaks Decl. ¶ 19 & Ex. K.

Moreover, along with this February 2019 filing, Rabbi Aryeh Zaks provided to the Town of Ramapo an Employment Identification Number ("EIN") issued by the Internal Revenue Service for 82 Highview LLC that explicitly provides that YCC is the Sole Member. M. Zaks Decl. ¶ 14 & Ex. 2. And as recently as February 12, 2021, in seeking tax-exemption status on the Property, Rabbi Aryeh Zaks again represented to the Town of Ramapo that the Property "belongs to [YCC] and is listed in the name of 82 Highview LLC a single member LLC that belongs to [YCC]." M. Zaks Decl. ¶ 19. There is no mention of any upcoming reversionary interest in the property to Rabbi Aryeh Zaks in just a few months. M. Zaks Decl. ¶ 19 & Ex. 9.

  B.  **Rabbi Aryeh Zaks' Fraudulent "Sale" Of The Property To Shem Olam**

On June 29, 2021, the members of YCC met at the Property to set up a new board structure. M. Zaks Decl. ¶ 15 & Ex. R. The meeting was attended by nearly all twenty members at the time. M. Zaks Decl. ¶ 15 & Ex. R. During the meeting, the members of YCC overwhelmingly voted on

the following Board of Trustees for YCC: Rabbi Mayer Zaks would continue serving as President until September 1, 2023; Rabbi Eliezer Pilchik would serve as Vice President until September 1, 2023; Rabbi Shimon Zaks would serve as Secretary until September 1, 2023; Mr. Ron Smith would serve as Treasurer until September 1, 2023; Mrs. Sima Weintraub would serve as Trustee until September 1, 2023; and Mr. Kalman Green would serve as Trustee until September 1, 2023.  M. Zaks Decl. ¶ 15 & Ex. R.  Importantly, neither Rabbi Aryeh Zaks or his son, Henoch Zaks, were voted by the members to be part of the Board of Trustees of YCC or 82 Highview LLC.  M. Zaks Decl. ¶ 15 & Ex. R.  The members also voted that all former officers, directors, trustees, and signatories be removed and revoked from their position with YCC.  M. Zaks Decl. ¶ 15 & Ex. R.  It was also resolved that 82 Highview LLC, which its sole member being YCC, be authorized to act only at the direction of the Trustees of YCC.  M. Zaks Decl. ¶ 15 & Ex. R.  Lastly, it was resolved that the previous bylaws of YCC are voided and revoked, and that the newly elected Board of Trustees will adopt by-laws in sixty (60) days.  M. Zaks Decl. ¶ 15 & Ex. R.

      Clearly unhappy with the decision of the members of YCC, Rabbi Aryeh Zaks and his son, Henoch Zaks, decided to take matters into their own hands and clandestinely steal the Property from YCC and its members.  To that end, the very next day, June 30, 2021, without the knowledge and consent of Rabbi Mayer Zaks and the other Trustees of YCC or the members of YCC, Rabbi Aryeh Zaks purported to "sell" the Property to Shem Olam, a New York limited liability company he had formed.  M. Zaks Decl. ¶ 16.  The sale price for the Property, worth tens of millions of dollars, was $10.  M. Zaks Decl. ¶ 16.  This is confirmed by the deed recorded with the Office of the Rockland County clerk on June 30, 2021.  M. Zaks Decl. ¶ 16 & Ex. Q.  The deed was signed Rabbi Aryeh Zaks as purported manager of 82 Highview LLC.  M. Zaks Decl. Ex. Q.  The RP-

7

5217 state tax form also shows that the Buyer's contact information is Rabbi Aryeh Zaks, on behalf of Shem Olam.  M. Zaks Decl. Ex. Q.

### C.    YCC Files A State Court Action Against Rabbi Aryeh Zaks And Shem Olam

On December 23, 2021, YCC and 82 Highview LLC sued Rabbi Aryeh Zaks and Shem Olam in the New York Supreme Court for Rockland County, seeking to quiet title to the Property in favor of 82 Highview LLC, to invalidate the purported sale to Shem Olam, and to preliminarily enjoin Rabbi Aryeh and Shem Olam from taking any further action with regard to the property (the "State Court Action").  I. Dahan Decl. ¶ 4 & Exs. 1, 2.

In response to the State Court Action, Rabbi Aryeh Zaks and Shem Olam filed a motion to dismiss based entirely on an affirmation from non-party Henoch Zaks, Rabbi Aryeh Zaks' son.  I. Dahan Decl. ¶ 8 & Ex. 3.  In it, Henoch Zaks asserted that the "sale" of the Property was proper because, under the purported operating agreement for 82 Highview LLC, Rabbi Aryeh Zaks was the sole member and manager of the LLC "has all the rights to act in all matters on behalf of the LLC as he sees fit."  I. Dahan Decl. Ex. 3.  In response to the motion to dismiss, plaintiffs argued and demonstrated that the purported operating agreement was an obvious forgery.  *See* I. Dahan Decl. Ex. 4 and 5.  No one at YCC had ever seen the document before Shem Olam and Rabbi Aryeh submitted it to the Rockland County court, let alone authorized it.  M. Zaks Decl. ¶ 18.  And its terms were non-sensical and contrary to all parties' consistent understanding of the ownership of the Property from the time of its re-donation from Del Realty LLC to YCC to the present and wholly inconsistent with Rabbi Aryeh Zaks' tax exemption filings with the Town of Ramapo.  M. Zaks Decl. ¶ 18 & Exs. K, L M N.

In light of these facts, on July 13, 2022, the State Court denied Shem Olam's and Rabbi Aryeh Zaks' motion to dismiss:

8

> The Court declines to dismiss Plaintiffs' complaint based upon the documents offered by Defendants [Shem Olam and Rabbi Aryeh], as they collectively fail to establish a defense as a matter of law. This determination is bolstered by Mayer Zaks challenge to 82 Highview's Operating Agreement naming Aryeh its sole member after 30 months, which happens to coincide with his conveyance of the property to Shem Olam LLC on June 29, 2021.

Decision & Order at 2. The State Court thereafter set a case management conference for 9:30 am on July 28, 2022, to discuss YCC's pending motion for preliminary injunction and discuss a pre-trial discovery schedule. I. Dahan Decl. ¶ 11; M. Zaks Decl. ¶ 21.

### D. Movants Obtain New Documents Further Establishing Rabbi Aryeh Zaks' Fraudulent Actions

On July 27, 2022, the day before the case management conference, plaintiffs' counsel in the State Court Action received, in response to a subpoena issued to a lender of Rabbi Aryeh Zaks, documents confirming that the purported Operating Agreement submitted by Henoch Zaks to the State Court was a forgery and showing that Rabbi Aryeh Zaks' fraudulent scheme runs even deeper than was known. I. Dahan Decl. ¶ 12 & Exs. 7 and 8. Those documents include *another* purported and fake "operating agreement" for 82 Highview LLC created by Rabbi Aryeh Zaks, this time to secure a $3.5 million loan under 82 Highview LLC. I. Dahan Decl. ¶ 12 & Ex. 7; M. Zaks Decl. ¶ 21. Unlike the first fake operating agreement submitted by Henoch Zaks to the State Court, which claims Rabbi Aryeh Zaks is the founding member and manager and that YCC is sole member for only first 30 months and then reverts to Rabbi Aryeh Zaks, this second one claims that Rabbi Aryeh Zaks, his wife Beatrice Waldman, and a third individual (Joshua Nussbaum, Rabbi Aryeh Zaks' son-in-law) are equal owners and members—with no ownership interest of YCC at all. M. Zaks Decl. ¶ 21; I. Dahan Decl. Ex. 7. Indeed, there is no mention whatsoever of YCC in that second operating agreement for 82 Highview LLC. M. Zaks Decl. ¶ 21.; I. Dahan Decl. Ex. 7. Notably, this second operating agreement was purportedly signed on February 18, 2019, *months*

9

*after* the first operating agreement submitted by Henoch Zaks was supposedly signed and nearly two years before Rabbi Aryeh Zaks unilaterally transferred the Property to Shem Olam. *See* I. Dahan Decl. Ex. 7. But like the first operating agreement version submitted by Henoch Zaks, this newly discovered second operating agreement is also a forgery—never known to or approved by YCC. M. Zaks Decl. ¶ 21. The new documents received by plaintiffs on the eve of the case management schedule in the State Court Action also include an IRS letter showing that Rabbi Aryeh Zaks had obtained a fraudulent second EIN for 82 Highview LLC, which Rabbi Aryeh Zaks sent to the lender to obtain the $3.5 million loan. *See* I. Dahan Decl. ¶ 12 & Ex. 8; M. Zaks Decl. ¶ 22. (82 Highview's correct EIN, sent to it in care of YCC, was consistently submitted to the Town of Ramapo. *See* M. Zaks Decl. Ex. 2.) Such second EIN was never made known to YCC, its Board of Trustees, or the Town of Ramapo. M. Zaks Decl. ¶ 22 & Ex. 8.

On receiving these documents, counsel for plaintiffs told counsel for Rabbi Aryeh and Shem Olam in the State Court Action that he would present them to the State Court the next morning, at the case management conference. I. Dahan Decl. ¶ 13. Rabbi Aryeh Zaks wasted no time to stop that from happening. At 4:50 pm the same day, he had Shem Olam file its Chapter 11 Petition in this case. *See* Dkt. 1. And at 6:56 pm, he filed a suggestion of bankruptcy with the State Court invoking the automatic stay. I. Dahan Decl. ¶ 14 & Ex. 9. Accordingly, no defendant appeared at the next day's case management conference in the State Court Action, despite the fact that only Shem Olam and not Rabbi Aryeh Zaks is a debtor. I. Dahan Decl. ¶ 15. Although sympathetic, the State Court stated that, out of an abundance of caution to avoid violating the automatic stay, it would stay the action entirely while the bankruptcy case remains pending or until the Bankruptcy Court otherwise makes clear that the court may proceed. I. Dahan Decl. ¶ 15.

There is no question that Rabbi Aryeh Zaks filed this bankruptcy case solely to halt the State Court Action and the inevitable unraveling of his fraud. As shown in the Petition, other than the lawyers defending the State Court Action from whom there are some alleged outstanding bills, Shem Olam has no creditors except for YCC and 82 Highview LLC. *See* Dkt. 1, at 6. In Rabbi Aryeh Zaks' first-day declaration for Shem Olam, submitted under Local Rule 1007-2 to explain "the circumstances leading to the debtor's filing under chapter 11," he makes no mention of any circumstances resembling a proper bankruptcy filing: there is no mention of insolvency or an inability to pay bills or other debts, and there is no discussion whatsoever of how, or even whether, Shem Olam intends to restructure or otherwise use the bankruptcy process for any legitimate purpose because, among other things, the Property does not even produce income that could be used to pay the Debtor's creditors. *See* Dkt. 1-1. Instead, in a rare moment of honesty (perhaps as a result of the haste with which the Petition and related documents necessarily were drafted), Rabbi Aryeh Zaks admits that Shem Olam filed the petition *solely* to escape the State Court Action:

> 8. There is currently a pending litigation in the Supreme Court of the State of New York, County of Rockland styled *Yeshiva Chofetz Chaim Inc. and 82 Highview LLC v. 82 Highview LLC, Shem Olam LLC, and Aryeh Zaks*, Index Number 036879/2021 (the "State Court Litigation"). In the State Court Litigation, plaintiffs sought declaratory relief regarding the Property and to set aside the deed conveying the Property to Shem Olam. On July 12, 2022, the State Court denied the defendants' motion to dismiss the State Court Litigation. On July 25, 2022, the defendants appealed the State Court's decision.
>
> 9. An adverse ruling in the state court has the potential to impact the ability to refinance or sell the Property. Therefore, in order to preserve the value of the Property and to either refinance the Property or sell it to pay its debts, the Debtor sought the protection afforded under the Bankruptcy Code.

*Id.*

11

And yesterday evening (August 2, 2022), the Debtor and Rabbi Aryeh Zaks filed a notice in the State Court Action that they had filed a notice of removal in the U.S. District Court for the Southern District of New York.  I. Dahan Decl. ¶ 16; *see also* Notice of Removal, *YCC v. 82 Highview LLC*, No. 7:22-cv-06579 (S.D.N.Y. Aug. 2, 2022), ECF No. 1 ("Notice of Removal"). In their removal papers, the Debtor and Rabbi Aryeh Zaks have removed the State Court Action to the United States District Court for the Southern District of New York for ultimate referral to this Court.  Notice of Removal.  The basis for the purported removal is that Movants' success in the State Court Action "would divest Shem Olam of its only asset."  *Id.* at 3.

  **E. Rabbi Aryeh Zaks Has A History Of Filing Bad Faith Bankruptcy Petitions And Has Been Repeatedly Sanctioned For It**

This is not the first time that Rabbi Aryeh Zaks has abused the bankruptcy process and filed bad faith bankruptcy petitions.  For example, as recently as October 2018, Judge Drain granted a creditor's request for *in rem* relief of the automatic stay finding that Rabbi Aryeh Zaks, in collusion with a debtor and others with alleged interest in certain real property, had participated in the filing of a bankruptcy petition as "part of a long-running scheme to delay and hinder creditors," and he barred Rabbi Aryeh Zaks from making any future filings under the Bankruptcy Code for two years.  *See* Order, *In re Itzkowitz*, No. 18-23342-RDD (Bankr. S.D.N.Y. Oct. 1. 2018), ECF No. 18.  Similarly, in 2001, in a published sanctions order, Judge Hardin determined that Rabbi Aryeh Zaks (acting then through YCC) improperly filed an involuntary petition against a debtor solely in an effort "calculated to frustrate the mortgagee bank, with the hope of extracting a deal or concession." *In re Stern*, 268 B.R. 390, 394 (Bankr. S.D.N.Y. 2001).

The petition in this case, by Shem Olam at the behest of its owner Rabbi Aryeh Zaks, is just more of the same mischief.  It is Rabbi Aryeh Zaks' poorly disguised effort to shop for a new

forum to avoid judgment in the State Court Action and delay his return of the Property he stole from Movants.

## ARGUMENT

"A bankruptcy court may dismiss a bad faith filing on an interested party's motion or *sua sponte*." *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997); *see also* 11 U.S.C. § 1112(b)(1) (requiring dismissal "for cause"). "[T]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state." *C-TC*, 113 F.3d at 1310 (alteration in original) (quoting *In re Winshall Settlor's Tr.*, 758 F.2d 1136, 1137 (6th Cir. 1985)). To constitute a proper, good faith filing, therefore, "the debtor must have some intention of reorganizing." *Id.* (quoting *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 228 (2d Cir. 1991)).

To evaluate whether a petition satisfies this requirement, courts consider various factors, including the following identified by the Second Circuit:

> (1) the debtor has only one asset;
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
> (6) the debtor has little or no cash flow;
> (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
> (8) the debtor has no employees.

*C-TC*, 113 F.3d at 1311 (quoting *Pleasant Pointe Apts., Ltd. v. Ky. Hous. Corp.*, 139 B.R. 828, 832 (W.D. Ky. 1992)). Thus, petitions that are "solely designed to attack a judgment collaterally" or are filed "to avoid the consequences of adverse state court decisions while it continues

13

litigating" are almost always necessarily bad faith filings. *Id.* (quoting *In re Wally Findlay Galleries (N.Y.), Inc.*, 36 B.R. 849, 850-51 (Bankr. S.D.N.Y. 1984)); *In re HBA E., Inc.*, 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988) ("Chapter 11 was never intended to be used as a fist in a two party bout. The Chapter is entitled reorganization and not litigation.").

There is no question that Shem Olam's sudden Chapter 11 Petition is the epitome of bad faith. The bad faith factors nearly all suggest so. Shem Olam has, at most, a single asset that is itself the subject of a two-party dispute that until, yesterday evening, was pending in state court. Shem Olam has no substantial creditors other than YCC, no cash flow (because the Property does not produce income), and no employees, as it exists solely to be the recipient of stolen property. And, most egregiously, the timing of Shem Olam's Petition—filed days after the State Court denied its motion to dismiss and just hours before that court was going to be given additional evidence of Rabbi Aryeh Zaks' fraud—shows an obvious attempt to frustrate YCC's enforcement of its rights. Indeed, Rabbi Aryeh Zaks admits as much in his first-day declaration in which he points to the possibility of an "adverse ruling in the state court" as the sole genesis of the petition—with no mention of any restructuring purpose at all.[1] *See, e.g.*, *In re 652 W. 160th LLC*, 330 B.R. 455, 467 (Bankr. S.D.N.Y. 2005) ("A debtor cannot use a bankruptcy filing solely as a tactic designed to gain a litigation advantage over a creditor."); *In re 698 Flushing Realty Corp.*, 335 B.R. 17, 22 (Bankr. E.D.N.Y. 2005) ("In this case, not only was this case filed in an effort to obtain a 'perceived advantage in litigation' with movants and to obtain an 'alternative judicial forum' for that litigation, it was filed in circumstances where the facts revealed by the petition conclusively

---

[1] The Debtor's removal papers also assert that Movants' success in the state court litigation "would divest Shem Olam of its only asset"—a purported asset that was surreptitiously stolen and one that does not generate income that would be used to pay the Debtor's creditors. Notice of Removal at 3.

14

Pg 15 of 17

demonstrate that there is no possibility of reorganization. It is difficult to imagine a clearer case of a bad-faith filing."); *HBA*, 87 B.R. at 262 ("These Debtors filed their Chapter 11 petitions as a litigation tactic. The ensuing Chapter 11 cases involve little more than a two party conflagration, i.e., an effort to 'reorganize' the disagreements with Movants. There are hardly any other creditors apart from Movants and there is no evidence that even such other creditors are clamoring for payment.").

Thus, consistent with the foregoing law, the Court should promptly dispense with the Debtor's and Rabbi Aryeh Zaks' overt forum shopping and litigation delay tactics, and dismiss this bankruptcy case.[2] Indeed, expedited relief is necessary here. YCC has been on the cusp of proceeding into important fact discovery in the State Court Action and obtaining other relief that will entitle it to a swift return of the Property that was improperly stolen from it and purportedly (albeit unlawfully) given to Shem Olam. The Property is the lifeline of YCC and its members. YCC cannot afford any further delay of its two-party dispute against Shem Olam and Rabbi Aryeh Zaks, especially with the upcoming Jewish New Year and yearly election of the Board of Trustees.[3]

## CONCLUSION

For the reasons stated above, the Court should dismiss this Chapter 11 proceeding as a bad faith filing.

---

[2] If the Court does not dismiss the Debtor's bankruptcy case as a bad faith filing in the coming days, Movants anticipate filing a separate motion to remand the removed lawsuit back to the Supreme Court of the State of New York, Rockland County, because, among other reasons, the Court must abstain from deciding the dispute under 28 U.S.C. § 1334.

[3] If the Court does not dismiss the Debtor's bankruptcy case as a bad faith filing in the coming days, Movants anticipate filing a separate motion to remand the removed lawsuit back to the Supreme Court of the State of New York, Rockland County, because, among other reasons, the Court must abstain from deciding the dispute under 28 U.S.C. § 1334.

Dated: August 3, 2022

Respectfully submitted,

*/s/ Israel Dahan*
Israel Dahan
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York 10036
Phone: (212) 556-2100
Fax: (212) 556-2200
idahan@kslaw.com

Thaddeus D. Wilson (*pro hac vice* forthcoming)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309
Phone: (404) 572-4600
Fax: (404) 572-5100
thadwilson@kslaw.com

*Counsel for Yeshiva Chofetz Chaim, Inc. and 82 Highview LLC*

## **CERTIFICATE OF SERVICE**

I certify that on August 3, 2022, I caused a true and correct copy of the foregoing to be served via first-class mail on the parties listed below, in addition to those parties receiving electronic notification through the ECF filing system:

A. Mitchell Greene
LEECH TISHMAN ROBINSON BROG, PLLC
874 Third Avenue
New York, New York 10022
*Counsel to Debtor*

Paul K. Schwartzberg
OFFICE OF THE UNITED STATES TRUSTEE
201 Varick Street, Suite 1006
New York, NY 10014
*United States Trustee for the*
*Southern District of New York*

                                            */s/ Israel Dahan*
                                            Israel Dahan