**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

SHEM OLAM LLC,

      Debtor.

Chapter 11

Case No. 22-22493 (SHL)

## DECLARATION OF RABBI MAYER ZAKS

Rabbi Mayer Zaks, pursuant to 28 U.S.C. § 1746, declares as follows:

1.      I am of legal age and competent to make this declaration.

2.      I have personal knowledge of the matters set forth herein, and I am competent in all respects to testify on the matters set forth herein. If I were called to testify on these matters, I could and would competently do so.

3.      Attached as Exhibit 1 to this Declaration is my Affirmation submitted in the state court action styled *Yeshiva Chofetz Chaim, Inc. et al. v. 82 Highview LLC et al.*, Index No. 036879/2021 (N.Y. Sup. Ct. Rockland County) (the "State Court Action"), in opposition to the defendants' motion to dismiss, along with Exhibits A through R to that Affirmation. Everything stated in that Affirmation remains true, and each Exhibit is a true and correct copy of what it is described as in the Affirmation. All references to lettered exhibits (e.g., "Ex. A") in this Declaration refer to the Affirmation exhibits.

4.      Yeshiva Chofetz Chaim, Inc. ("YCC") is a New York religious not-for-profit organization that was established by my father, Rabbi Gershon Zaks in or around 1954.

5.      In or around 1969, Rabbi Gershon Zaks purchased a property located at 82 Highview Road in Suffern, New York (the "Property"), and built on the Property a building that

1

housed a Yeshiva (i.e., place for learning religious studies) and a Shul (i.e., synagogue). From that date until his passing in 1989, Rabbi Gershon Zaks was the Chief Rabbi and President of YCC.

6.    After the passing of Rabbi Gershon Zaks, I became President and Chief Rabbi of YCC. I have held those titles to the present.

7.    I am also a member YCC's Board of Trustees, which has ultimate responsibility for and control of YCC and its property.

8.    In or around 2007, the mortgagee on the Property, TD Bank, N.A. ("TD Bank"), commenced an action against YCC seeking to foreclose TD Bank's mortgage on the Property, which was then in default. In that foreclosure action, TD Bank was eventually awarded a judgment of foreclosure, and the foreclosure sale took place on August 20, 2013, in which TD Bank acquired title to the Property. *See* Affirmation ¶ 8 & Ex. C. YCC nevertheless retained possession and use of the Property.

9.    In 2017, a YCC donor agreed to purchase the property from TD Bank and return it to YCC. I, along with the assistance of my younger brother Rabbi Aryeh Zaks, worked to facilitate the donation. Rabbi Aryeh Zaks was then, but no longer is, an officer of YCC and a Trustee.

10.    We worked with the founders and owners of a Delaware limited liability company called Del Realty LLC to acquire the Property from TD Bank with the understanding and agreement that it would donate the Property back to YCC one year and one day after the purchase in exchange for a tax deduction in the amount of approximately $12 million. At that time, the Property and building thereon had an "as is" condition appraised value of approximately $12,300,000, and if later approved for Adult Student Housing, had an appraised value of approximately $26,000,000. *See* Affirmation ¶ 10 & Ex. F.

11.      In or around September 2017, TD Bank sold the Property to Del Realty LLC for $1,400,000. Notably, the Deed reflecting the payment from Del Realty LLC is signed by Mr. Karmel (as Buyer), not Rabbi Aryeh Zaks or his son Henoch Zaks. *See* Affirmation ¶ 9 & Ex. D.

12.      On October 23, 2018, Del Realty LLC transferred title to the Property to 82 Highview LLC. *See* Affirmation ¶ 12 & Ex. G.

13.      Based on discussions with legal and tax advisors, Rabbi Aryeh Zaks and I together established 82 Highview LLC on October 16, 2018 to facilitate the agreed donation of the Property from Del Realty LLC back to YCC.

14.      At all times since formation, YCC has been the sole member of 82 Highview LLC. This fact is confirmed by many documents, including documents provided by Rabbi Aryeh Zaks himself to the Town of Ramapo in connection with 82 Highview LLC's request for tax exemption status on the Property. *See* Affirmation ¶¶ 19-20 & Exs. K, L, M, N. Moreover, Rabbi Aryeh Zaks provided to the Town of Ramapo an Employment Identification Number ("EIN") issued by the Internal Revenue Service for 82 Highview LLC that explicitly provides that YCC is the Sole Member. *See* Ex. 2 hereto. Thus, Rabbi Aryeh Zaks' contention that he was the "sole founding member/manager" of 82 Highview LLC and that YCC was sole member of 82 Highview LLC for only the first 30 months of its existence and then all rights, title and membership interest in 82 Highview LLC reverted to him as sole forming member is false.

15.      On June 29, 2021, the members of YCC met at the Property to set up a new board structure. The meeting was attended by nearly all twenty members at the time. During the meeting, the members of YCC overwhelmingly voted on the following Board of Trustees for YCC: I would continue serving as President until September 1, 2023; Rabbi Eliezer Pilchik would serve as Vice President until September 1, 2023; Rabbi Shimon Zaks would serve as Secretary until

September 1, 2023; Mr. Ron Smith would serve as Treasurer until September 1, 2023; Mrs. Sima

Weintraub would serve as Trustee until September 1, 2023; and Mr. Kalman Green would serve

as Trustee until September 1, 2023. Importantly, neither Rabbi Aryeh Zaks or his son, Henoch

Zaks, were voted by the members to be part of the Board of Trustees of YCC or 82 Highview LLC.

The members also voted that all former officers, directors, trustees, and signatories be removed

and revoked from their position with YCC. It was also resolved that 82 Highview LLC, which its

sole member being YCC, be authorized to act only at the direction of the Trustees of YCC. Lastly,

it was resolved that the previous bylaws of YCC are voided and revoked, and that the newly elected

Board of Trustees will adopt by-laws in sixty (60) days. These actions are reflected in the Minutes

of Meeting and Resolution of YCC/82 Highview LLC for June 29, 2021 and September 1, 2021.

*See* Affirmation ¶¶ 24-26 & Ex. R.

16.    The following day, on June 30, 2021, without the knowledge or consent of any of

the Trustees of YCC or the members of YCC, Rabbi Aryeh Zaks purported to "sell" the Property

to an entity called Shem Olam LLC, a New York limited liability company that Rabbi Aryeh Zaks

had formed. The sale price for the Property was only $10. This is confirmed by the deed recorded

with the Office of the Rockland County clerk on June 30, 2021 and the accompanying RP-5217

state tax form. *See* Affirmation ¶ 23 & Ex. Q.

17.    After learning of my brother's actions and unauthorized "sale" of the Property to

Shem Olam, YCC and 82 Highview LLC filed the State Court action to quiet title to the Property

in favor of 82 Highview, to invalidate the purported sale of the Property to Shem Olam, and to

preliminarily enjoin Rabbi Aryeh and Shem Olam from taking any further action with regard to

the property.

18.    In the State Court Action, non-party Henoch Zaks (not my brother) submitted a document that he represented to be the "operating agreement" for 82 Highview LLC.  That document has been submitted to this Court as Ex. 4 to the Declaration of my counsel, Israel Dahan. That document is a fake.  No one at YCC had ever before seen the document and never authorized it.  It is also inconsistent with the documents and representation provided by my brother, Rabbi Aryeh Zaks, to the Town of Ramapo and other state government agencies in connection with 82 Highview LLC's request for tax-exemption status on the Property.  *See* Affirmation ¶¶ 19-20 & Exs. K, L, M, N.

19.    For example, in February 2019, several months after the formation of 82 Highview LLC, YCC and 82 Highview LLC filed with the Town of Ramapo and the New York State Department of Taxation and Finance an application for approval of tax-exempt status on the Property.  That application was submitted and signed by Rabbi Aryeh Zaks.  In this application, Rabbi Aryeh Zaks affirms and verifies to the Town of Ramapo and the New York State Department of Taxation and Finance that I am the President of YCC and 82 Highview LLC.  He further affirms that YCC is the sole member of 82 Highview LLC and does not state that such sole member role is limited in time.  In fact, in response to a question in the application as to whether "any person or organization [has] a reversionary interest in the property," Rabbi Aryeh Zaks responds "No." In other words, Rabbi Aryeh Zaks is affirming to these state government agencies that YCC is the sole member of 82 Highview LLC and that there exists no reversionary interest in the property back to any person or organization.  *See* Affirmation ¶ 19 & Ex. K.  And as recently as February 12, 2021, in seeking tax-exemption status on the Property, Rabbi Aryeh Zaks again represented to the Town of Ramapo that the Property "belongs to [YCC] and is listed in the name of 82 Highview LLC a single member LLC that belongs to [YCC]."   There is no mention of any upcoming

reversionary interest in the property to Rabbi Aryeh Zaks in just a few months. *See* Affirmation

¶ 20 & Ex. N.

20.     It is my understanding that on, July 13, 2022, the State Court denied Shem Olam's

and Rabbi Aryeh Zaks' motion to dismiss. In doing so, the Court stated:

> The Court declines to dismiss Plaintiffs' complaint based upon the documents
> offered by Defendants [Shem Olam and Rabbi Aryeh], as they collectively fail to
> establish a defense as a matter of law. This determination is bolstered by Mayer
> Zaks challenge to 82 Highview's Operating Agreement naming Aryeh its sole
> member after 30 months, which happens to coincide with his conveyance of the
> property to Shem Olam LLC on June 29, 2021.

The State Court's order has been submitted to this Court as Ex. 6 to the Declaration of Israel

Dahan.

21.     As a result, the State Court set a case management conference for 9:30 am on July

28, 2022. I have recently learned from YCC's attorney in the State Court Action, Joseph Churgin,

Esq., that, in response to a subpoena issued in the State Court Action, a lender of Rabbi Aryeh

Zaks produced, among other documents, another purported "operating agreement" for 82

Highview LLC created by Rabbi Aryeh Zaks. This document has been submitted to the Court as

Ex. 7 to the Declaration of Israel Dahan. This second "operating agreement" dated after the

purported "first" operating agreement is also a fake. No one at YCC had ever before seen the

document and never authorized it. And this "second" operating agreement is materially different

in its terms and substance than the fake "first" operating agreement Rabbi Aryeh Zaks and his son

presented in the State Court Action. For example, unlike the "first" fake operating agreement

submitted by Henoch Zaks to the State Court which claims Rabbi Aryeh Zaks is the founding

member and manager and that YCC is sole member for only first 30 months and then reverts to

Rabbi Aryeh Zaks, this purported "second" operating agreement claims that Rabbi Aryeh Zaks,

his wife Beatrice Waldman, and a third individual (Joshua Nussbaum, Rabbi Aryeh Zaks' son-in-

law) are equal owners and members—with no ownership interest of YCC at all. Indeed, there is

no mention whatsoever of YCC in that second operating agreement for 82 Highview LLC.

22.     Relatedly, I have also recently learned that the documents received from the

subpoena show that Rabbi Aryeh Zaks created a second EIN number for 82 Highview LLC and

one that he never presented to the Town of Ramapo or the state court. The IRS letter showing that

second EIN number has been submitted to the Court as Ex. 8 to the Declaration of Israel Dahan.

Who knows what other fake and fraudulent documents Rabbi Aryeh Zaks has secretly created over

the years under 82 Highview LLC.

23.     It is my understanding that YCC's attorney in the State Court Action sent copies of

these newly discovered documents to counsel for Shem Olam and Rabbi Aryeh Zaks on July 27,

2022, the day before the scheduled case management conference in the State Court Action. A few

hours later, I was informed that Shem Olam filed a petition for bankruptcy in this Court and

requested that the State Court Action be stayed.

24.     A stay of the State Court Action would be extremely harmful to YCC and 82

Highview LLC. YCC is on the cusp of proceeding into important fact discovery in the State Court

Action and obtaining other relief that will enable it to a swift return of the Property that was

improperly stolen from it and given to Shem Olam. The Property is the lifeline of YCC and its

members. YCC cannot afford a further delay of its two-party dispute against Shem Olam and

Rabbi Aryeh Zaks.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: August 2, 2022

_____
Rabbi Mayer Zaks

# <u>EXHIBIT 1</u>

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND

-------------------------------------------------------------------------X

YESHIVA CHOFETZ CHAIM INC. and                         Index No.   036879/2021
82 HIGHVIEW LLC

                         Plaintiffs,                    **AFFIRMATION OF RABBI
                                                       MAYER ZAKS IN
   -against-                                           OPPOSITION TO MOTION
                                                       TO DISMISS**

82 HIGHVIEW LLC, SHEM OLAM LLC,
and ARYEH ZAKS

                         Defendants.

-------------------------------------------------------------------------X

STATE OF NEW YORK    )
                      )
COUNTY OF ROCKLAND )

RABBI MAYER ZAKS affirms the following pursuant to his religious beliefs and under

penalty of perjury:

       1.     I am the President, a Trustee and Head Rabbi for plaintiff Yeshiva Chofetz

Chaim Inc., and know the facts stated below of my own personal knowledge. I submit

this Affirmation in opposition to the defendants' motion to dismiss the Complaint in this

action.

       2.     The instant motion to dismiss is nothing short of a transparent attempt by

my brother Aryeh Zaks ("Aryeh") to steal title to the real properties known as 24

Highview Road and 82 Highview Road (the "Properties") from Yeshiva Chofetz Chaim

Inc. ("YCC"), and 82 Highview LLC ("82 Highview").  These are two entities of which

Aryeh is a fiduciary.  Aryeh has made this ridiculous motion without even bothering to

1

support it with this own affidavit. He hides behind his son Henoch Zaks who had no role in the underlying transactions.

3.    Aryeh has asked the Court to consent to his theft of title to the Properties and to grant his motion to dismiss plaintiffs' case without the submission of any valid evidence and without affording plaintiffs the opportunity to engage in discovery establishing their claims of wrongdoing by defendants.

## RELEVANT BACKGROUND OF YCC AND 82 HIGHVIEW LLC, AND ITS TITLE TO THE PROPERTIES

4.    YCC or an affiliate of YCC has held title to and occupied the involved Properties going back into the 1960s when it was purchased and started as a Shul and Yeshiva located on the premises. My father Grand Rabbi Gershon Zaks of blessed memory built the Yeshiva building that currently stands on the property.

5.    Contrary to the contention of Aryeh and his son Henoch, I have been the active Chief Rabbi and President of YCC since my father's passing in1989. Indeed, this is confirmed by corporate resolution signed by Aryeh (see **Exhibit A** annexed hereto), and a deposition testimony of Aryeh in another court proceeding (see excerpts **Exhibit B** annexed hereto).

6.    In the 2000s, YCC ran into financial trouble and fell behind on its mortgage and the Properties were foreclosed on by the bank, TD Bank.

7.    Thereafter, both Aryeh and I worked to find someone to purchase the Properties from the bank and donate it back to YCC. I was eventually successful in doing so. I found a donor willing to purchase the Properties and donate title back to YCC. This was done by a deed to 82 Highview LLC, an entity both my brother and I

2

formed together, and of which YCC was the sole member. Now, Aryeh is trying to pull a fast one by having his son Henoch say, well yes YCC was the sole member, but only for thirty months and then Aryeh became the sole member. Aryeh tries to convince the Court of this despite multiple documents in and out of public view, that were authored by him saying the contrary. Aryeh 's story is so outrageous that it should be rejected by the Court on its face.

8.    On August 20, 2013, Margaret Smith, as Referee signed a Referee's Deed for the property to TD Bank, NA. A copy of the Referee's Deed is annexed as **Exhibit C**. That deed came as the result of a foreclosure action brought by TD Bank against YCC. Prior to and subsequent to the deed, YCC occupied the property and used it as a religious school for decades up to and including the present.

9.    On or about September 18, 2017, TD Bank issued a deed of title to the property to Del Realty LLC ("Del"). A copy of the deed is annexed as **Exhibit D**.

10.    The deed to Del reflects that Del paid $1,400,000 to acquire the property. Jacob Karmel signed the RP5217 form as the "Buyer". It is very important to note that although Del paid $1,400,000 to TD bank to acquire the property, it was worth far more than that amount. Annexed as **Exhibit E** is an appraisal report valuation for Del that states the value of the property as of 11/7/18 was $12,300,00 "as is". A second appraisal put the value of the property at $22,500,000. A copy of that second appraisal is annexed as **Exhibit F**.

3

11.    It is also important to note that between August of 2013 and September of

2018, the property was occupied by YCC. This is despite the fact that it was then owed

by TD Bank and later by Del.

12.    On October 23, 2018, Del executed a deed transferring title to the property

to 82 Highview LLC.  The deed reflects that fact that $0.00 consideration was paid by 82

Highview LLC to acquire the property. That deed was executed by Jacob Karmel on

behalf of Del.  A copy of the deed to 82 Highview LLC is annexed as **Exhibit G**.  This

was in every sense of the word a donation of the property back to YCC.  In fact, I sent

Mr. Karmel a letter thanking him for his generous donation to Yeshiva Chofetz Chaim

and provided him with a donation receipt in the amount of $22,500,000.  A copy of this

letter of appreciation and donation receipt is annexed as **Exhibit H**.

13.    This planned donation of the Properties back from Del to YCC, through 82

Highview LLC, is also confirmed in emails sent by Aryeh to others involved in this

transaction.

14.    Annexed as **Exhibit I** is an email written by Aryeh and sent to a respected

Rabbi.  My brother copied the email address that my wife, one of the Trustees of YCC,

has access to intended for me.  Aryeh's email address was Yeshivacc@yahoo.com.

Our email address was feag123@yahoo.com.  This email essentially explains what was

to happen.  It is dated August 27, 2017, less than one month before Del took title to the

property.  My brother writes in his email "we have a person Mr. Jacob Karmel who was

brought to us through Mr. Shimon Ganz who wants to buy the 14-acre yeshiva property

from TD Bank for 2 million dollars under an LLC called Del Realty LLC. He is agreeing

4

to donate the property to the Mosad[1] of our choice (me and my Brother) for a deduction of $12 million after a year and a day ...".

15.    Annexed as **Exhibit J** is a second email that Aryeh sent to Mr. Shimon Ganz, the facilitator of the deal on behalf of Mr. Karmel, with a copy to me.  He states in his email that "82 Highview Rd LLC is a "single member" LLC belonging solely to Yeshiva Chofetz Chaim Inc."  He goes on to state that: "The recognized tax exempt entity giving the receipt for donations is Yeshiva Chofetz Chaim Inc. EIN# 113179075".

16.    That is exactly what happened as confirmed by the letter of appreciation and donation receipt I sent to Del on behalf of Yeshiva Chofetz Chaim Inc.  Mr. Karmel donated the property to YCC and in return he received a huge tax write off.

## ARYEH AND HENOCH ARE EITHER DEFRAUDING THE COURT OR ADMITTING TO ENGAGING IN TAX FRAUD AND CORPORATE FRAUD

17.    Contrary to the contention of Aryeh through his son Henoch, YCC has always been the sole member of 82 Highview LLC.  Aryeh, through his son Henoch, has submitted a fabricated Operating Agreement dated October 22, 2018, bearing a computer generated signature, apparently signed only by him.  It states that YCC was to be the sole member of 82 Highview LLC for 30 months and then he, Aryeh, would become the sole member.  This document is a sham. He did not show it to me or any other Trustee of YCC.  I highly doubt that it was even in existence on October 22, 2018. YCC's Board of Trustees certainly did not approve of this Operating Agreement.

---

[1] "Mosad" is a Hebrew word for institution.

18.     If as Aryeh and his son Henoch is now proposing, that Mr. Karmel was donating the property to Aryeh through YCC, then he is claiming Mr. Karmel committed tax fraud. I am sure Mr. Karmel would strongly dispute this claim by Aryeh and Henoch and would find it shocking to believe that his donation was not to YCC.

19.     Additionally, Aryeh himself would have committed tax fraud if what his son Henoch is now claiming is true. For tax years 2019, 2020 and 2021, Aryeh has submitted applications for tax exemptions to the Town of Ramapo on behalf of YCC and 82 Highview LLC. Annexed as **Exhibits K, L** and **M** are the Tax Exemption Applications Aryeh submitted to the Town for the years 2019, 2020 and 2021 respectively. Question #9 on the RP-420 from that each year asks: "*Does any person or organization have reversionary interest in this property?*". My brother answered **"no"** on each application in 2019, 2020 and 2021. I would also note that in the 2019 application, which was filed in February 2019—months after the date of the purported Operating Agreement—Aryeh affirms and verifies to the Town that I am President of YCC and 82 Highview LLC.  See **Exhibit K**.

20.     Given Aryeh's claim that in June of 2021, "Automatically upon the completion of said thirty-month term, all rights, title and membership interest in the LLC shall belong to the Forming Member Manager" (*See* Henoch Zak Aff. Exhibit 6), his letter to Mr. Shedler dated February 12, 2021 is especially troubling. That letter dated February 12, 2021, states: "The property in question belongs to Yeshiva Chofetz Chaim Inc. and is listed in the name of 82 Highview LLC a single member LLC that belongs to the Yeshiva".  See **Exhibit N**.

6

21.    According to Aryeh, he has also committed fraud on YCC, as neither I or

the other Trustees of YCC were made aware of Aryeh's contention that he was to be

the sole member of 82 Highview LLC until now.  Neither I nor any of the other trustees

of the LLC would have voted to permit Aryeh to become the sole member of the LLC.  I

would not have agreed to it in 2018 when YCC gave its donation receipt to Mr. Karmel

and I would not have agreed to it in 2021. Aryeh's now produced operating agreement

is a fabrication and self-serving document.

22.    There was no vote of the Trustees of YCC where this was in any way

sanctioned.  My brother has simply created an "operating agreement" and is saying the

property is his.   Judge Eisenpress ordered my brother's attorney to produce all minutes

of meeting of YCC.  *See* **Exhibit O** at page 10 and **Exhibit P** at page 25.  He did not

produce any because none existed.

23.    To make matters worse, on June 29, 2021, Aryeh signed a deed

transferring title to the property from 82 Highview LLC to Shem Olam LLC, an entity

controlled by Aryeh and Henoch Zaks, for $10 consideration.  Aryeh signed the deed on

behalf of the seller and Henoch signed the state tax form on behalf of the buyer.  The

form also names Aryeh as the buyer's contact person.  (*See* **Exhibit Q** annexed).

24.    Aryeh and Henoch executed these documents and transfer just hours

after the Members of YCC met to vote on a new Board of Trustees for YCC.  The

meeting was attended by nearly all of the members at the time.  During the meeting, the

members of YCC overwhelmingly voted on the following Board of Trustees for YCC:  I

would serve as President until September 1, 2023; Rabbi Eliezer Pilchik would serve as

7

Vice President until September 1, 2023; Rabbi Shimon Zaks would serve as Secretary until September 1, 2023; Mr. Ron Smith would serve as Treasurer until September 1, 2023; Mrs. Sima Weintraub would serve as Trustee until September 1, 2023; and Mr. Kalman Green would serve as Trustee until September 1, 2023.  Neither Aryeh or Henoch were voted by the Members to be part of the board of Trustees of YCC/82 Highview LLC.

25.     The Members also voted that all former officers, directors, trustees and signatories be removed and revoked from their position with YCC.  It was also resolved that 82 Highview LLC, which its sole member being YCC, be authorized to act <u>only</u> at the direction of the Trustees of YCC.  Lastly, it was resolved that the previous bylaws of YCC are voided and revoked, and that the newly elected Board of Trustees will adopt by-laws in sixty (60) days.  A copy of the Minutes of Meeting and Resolution of YCC/82 Highview LLC for June 29, 2021 is annexed hereto as **Exhibit R**.

26.     On September 1, 2021 the annual meeting of YCC/82 Highview LLC was held and the election on June 29, 2021 was reconfirmed. A copy of the Minutes of Meeting and Resolution of YCC/82 Highview LLC for September 1, 2021 is annexed hereto as **Exhibit R**.

27.     In short, my brother has gone rogue and with the help of his son, Aryeh is trying to steal the Congregation's property.  Someone needs to stand up and say <u>NO</u>!

**[INTENTIONALLY LEFT BLANK]**

8

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 17 of 416

WHEREFORE, I request that the Court deny the motion to dismiss the Complaint

in its entirety, together with such further relief as the Court deems just and proper.

RABBI MAYER ZAKS

Affirmed before me this
18th day of March 2022

NOTARY PUBLIC

HIRSCH ROSENZWEIG
Notary Public, State of New York
Reg. No. 01RO6398357
Qualified in Rockland County
Commission Expires 09-30-20 23

9

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 27
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 18 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND
----------------------------------------------------------------------x
YESHIVA CHOFETZ CHAIM INC. and
82 HIGHVIEW LLC,                                        Index No. 036879/2021

                             Plaintiffs

            -against-                                   Certificate of Word Count

82 HIGHVIEW LLC, SHEM OLAM LLC, and
ARYEH ZAKS,

                             Defendants.
----------------------------------------------------------------------x

        Pursuant to Rule 202.8-b(c) of the Rules of this Court, I certify that the
accompanying Affirmation in Opposition to Defendants' Motion to Dismiss the
Complaint, which was prepared using Ariel 12-point typeface, contains 2,202 words,
excluding the parts of the document that are exempted by Rule 202.8-b(c).  This
certificate was prepared in reliance on the word-count function of the word-processing
system (Microsoft Word) used to prepare the document.

        I declare under penalty of perjury that the foregoing is true and correct.


Dated: March 18, 2022

                                    _____
                                    JOSEPH A. CHURGIN, ESQ.
                                    Savad Churgin
                                    Attorneys for the Plaintiffs
                                    55 Old Turnpike Road, Suite 209
                                    Nanuet, New York 10954
                                    (845) 624-3820

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 28

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 19 of 416

# EXHIBIT A

# EXHIBIT A

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 28
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 20 of 416

<u>Minutes of the Yeshiva Chofetz Chaim Inc. Board Meeting Sept 1 1991</u>.

On the 1st Day of September 1991, at a meeting of the board held at the Yeshiva Chofetz Chaim Inc. offices 82 Highview Rd Suffern NY 10901, the following were present.

| | |
|---|---|
| Rabbi Mayer Zaks, | President |
| Rabbi Aryeh Zaks, | Secretary |
| Rabbi Munish Weintraub | Vice President |
| Eliot Berney | Treasurer |
| Fred Garfinkle | Trustee |

To facilitate easier operation of the Yeshiva and a desire to give the officers most involved with day to day operations the necessary tools to advance the goals of the corporation it was unanimously resolved as follows:

IT WAS RESOLVED to authorize the President and Secretary to be fully and individually authorized to act in all matters pertaining to the Yeshiva and its interests without requiring any further board approvals. This authorization includes but is not limited to, executing any and all documents, applying for, receiving, or extending credit, legally binding the corporation, and pledging any corporate assets when required for the operation of the corporation and in furtherance of its goals and mission.

There being no further business to discuss the meeting was adjourned.

Rabbi Aryeh Zaks
Secretary

# EXHIBIT B

# EXHIBIT B

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 29

INDEX NO. 036879/2021

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 22 of 416

RECEIVED NYSCEF: 03/18/2022

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

MOSDOS CHOFETZ CHAIM, INC.,      )
                                 )
            Plaintiff,           )
                                 )
      vs.                        ) Case No.
                                 ) 12 CV 7067
RBS CITIZENS, NA a/k/a           ) (KMK)
CITIZENS BANK, NA, AVON          )
GROUP LIMITED LIABILITY          )
COMPANY, ABRAHAM GRUNDWALD,      )
VILLAGE OF WESLEY HILLS,         )
VILLAGE OF POMONA and            )
VILLAGE OF CHESTNUT              )
RIDGE,                           )
                                 )
            Defendants.          )
------------------------------)


        30(b)(6) VIDEOTAPED DEPOSITION OF

              RABBI ARYEH ZAKS

             New York, New York

          Wednesday, July 23, 2014


Reported by:
TAMI H. TAKAHASHI, RPR, CSR
JOB NO. 12047

Page 2

1

2                       July 23, 2014

3                       10:28 a.m.

4

5           30(b)(6) Videotaped Deposition of

6    RABBI ARYEH ZAKS, held at the offices of Loeb

7    & Loeb LLP, 345 Park Avenue, New York, New

8    York, pursuant to Notice, before TAMI H.

9    TAKAHASHI, a Registered Professional Reporter

10   and Notary Public of the State of New York.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Page 3

```
 1   A P P E A R A N C E S :

 2        By: JOSEPH J. HASPEL, ESQ.
            Attorney for Plaintiff
 3              1 West Main Street
                Goshen, New York  10924
 4              jhaspel@haspellaw.com

 5        ECKERT SEMANS CHERIN & MELLOTT, LLC
          Attorneys for Defendant RBS Citizens, NA
 6              10 Bank Street, Suite 700
                White Plains, New York  10606
 7              (914) 949.2909
          BY:   RIYAZ G. BHIMANI, ESQ.
 8              rbhimani@eckertseamans.com

 9        LOEB & LOEB LLP
          Attorneys for Defendants Avon Group
10        Limited Liability Company
                345 Park Avenue
11              New York, New York  10154
                (212) 407.4000
12        BY:   DAVID M. SATNICK, ESQ.
                SARA J. CRISAFULLI, ESQ.
13              P. GREGORY SCHWED, ESQ.
                dsatnick@loeb.com
14              scrisafulli@loeb.com
                gschwed@loeb.com
15

16

17

18

19

20

21   ALSO PRESENT:

22        RODOLFO DURAN, Videographer

23

24

25
```

```
 1                    A. Zaks

 2    that?

 3         A.    One second.  Let's see which one

 4    you're talking about.  Yes, Exhibit A.

 5         Q.    Okay.  And have you read that

 6    document?

 7         A.    I believe so, yes.

 8         Q.    Okay.  Now, in your capacity as a

 9    30(b)(6) witness, do you understand that

10    you're testifying not only with respect to

11    your personal knowledge, but also as a

12    representative of Mosdos?

13         A.    Correct.

14         Q.    And in that capacity, what did you

15    do to educate yourself with respect to the

16    matters that pertain to the items listed on

17    the Exhibit A to the 30(b)(6) notice?

18         A.    I looked for whatever records I

19    believe we had.  A lot of them were hard to

20    find.  It's been 2005, 2006 till now.  It's a

21    while ago.  Tried to put together whatever

22    we -- we had that seemed to fit your list.

23    And I believe we've submitted it, whatever I

24    found.

25         Q.    Okay.
```

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 29
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 26 of 416

Page 9

```
 1                        A. Zaks

 2          A.    It's an ongoing process; it's slow.

 3     But whatever I had, we've given you so far.

 4          Q.    And other than documents that you

 5     looked for, did you speak to anybody with

 6     respect to the topics that are listed in

 7     Exhibit A to the 30(b)(6) deposition notice?

 8          A.    If I spoke to somebody, it was my

 9     attorney.  And if it wasn't my attorney, it

10     may have been some people just around the

11     school.  I asked people looking if they saw

12     any boxes or any documents laying around the

13     Kiryas Radin, which is the site of this

14     project.  But nothing specific.  And maybe to

15     my brother, I mentioned one or two things.

16          Q.    By your brother, who are you

17     referring to?

18          A.    Rabbi Mayer Zaks.

19          Q.    For purposes of this deposition,

20     I'm going to refer to the plaintiff, Mosdos

21     Chofetz Chaim, Inc., as "Mosdos."  Do you

22     understand that?

23          A.    Yes.

24          Q.    And that's acceptable to you?

25          A.    Yes.
```

Page 10

```
 1                      A. Zaks

 2         Q.    What is your relationship to

 3    Mosdos?

 4         A.    I'm the secretary of the

 5    corporation today.  And I am one of the two

 6    rabbis who lead this organization.

 7         Q.    And who is the second of those two

 8    rabbis?

 9         A.    My brother.

10         Q.    And what title or positions does he

11    have with Mosdos?

12         A.    Currently, he's the president and

13    he's also the rabbi and leader.  Together,

14    we're co -- co-leaders, I guess you would

15    call it.

16         Q.    So, you and your brother as

17    secretary and president and co-rabbis are the

18    leaders of the company?

19              MR. HASPEL:  Objection as to form.

20         This is a religious corporation, not a

21         business corporation.

22         A.    Okay.  But to answer the question,

23    we are the rabbis in a sense we're -- for

24    rabbinical issues, we are the people --

25    people come to us and discuss things like
```

```
 1                    A. Zaks

 2      that.  As rabbis, we guide their religious

 3      issues.  And for the past several years,

 4      we've also been the president and secretary

 5      to facilitate what the corporation needs to

 6      get done.

 7      BY MR. SATNICK:

 8          Q.   And to the extent decisions have to

 9      be made on behalf of the corporations, those

10      decisions are made by you and your brother?

11          A.   And the other board members.

12          Q.   And who are they?

13          A.   There's Ezra Beyman, B-E-Y-M-A-N.

14              THE COURT REPORTER:  I'm sorry?

15              THE WITNESS:  Ezra, E-Z-R-A, last

16      name B-E-Y-M-A-N.

17          A.   Mark Blisko.  And there's one

18      member who is just not active at all.  And

19      it's Dr. Lehv.  He's ill.

20      BY MR. SATNICK:

21          Q.   And you referred to a board.  What

22      do you mean by "a board"?

23          A.   A corporation has a corporate

24      board.  So, I was acting as secretary, my

25      brother was acting as president, I believe
```

Page 12

```
 1                    A. Zaks

 2     Mr. Blisko is treasurer.  And the other two

 3     are just trustees.

 4          Q.   So, by "board members," you mean

 5     trustees as well?

 6          A.   There are trustees and board

 7     members, as well.

 8          Q.   Okay.  Now, are you familiar with

 9     another entity by the name of Yeshiva Chofetz

10     Chaim, Inc.?

11          A.   Yes.

12          Q.   And that entity is a sister

13     corporation to Mosdos, is it not?

14          A.   No, I don't know what the word

15     "sister corporation" is.  It's a separate

16     religious entity.  So, I don't know what the

17     word sister -- what term --

18               MR. SATNICK:  Let me have marked,

19          as Exhibit 2, a multi-paginated

20          document, the first page of which is the

21          cover page to a proceeding brought In

22          the Matter of the Petition of Yeshiva

23          Chofetz Chaim Kiryas Radin for Leave to

24          Mortgage its Real Property.

25               MR. HASPEL:  Do you have a copy for
```

```
 1                      A. Zaks

 2        me?

 3              MR. SATNICK:  Yes.

 4              (Defendants' Exhibit 2, Proceeding

 5        brought In the Matter of the Petition of

 6        Yeshiva Chofetz Chaim Kiryas Radin for

 7        Leave to Mortgage its Real Property,

 8        marked for identification as of this

 9        date.)

10   BY MR. SATNICK:

11        Q.    Before I have you turn to that

12   document, what is your relationship to what I

13   will call YCC, Yeshiva Chofetz Chaim, Inc.?

14        A.    Nothing to do with this document.

15   This is a different corporation.

16        Q.    Correct.

17        A.    I just wanted to clarify that.

18        Q.    I'm not asking about the document.

19        A.    Okay.

20        Q.    I'm asking a separate question,

21   which is:  What is your relationship to that

22   entity?

23        A.    I am the dean and rabbinical leader

24   of that corporation, as well.  It's a

25   yeshiva.  It's an educational religious
```

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM   INDEX NO. 036879/2021
NYSCEF DOC. NO. 29                                        RECEIVED NYSCEF: 03/18/2022

Page 14

```
 1                    A. Zaks
 2    institution.  And I'm also the secretary of
 3    that corporation today, currently.
 4         Q.   And who is the president?
 5         A.   My brother is.
 6         Q.   And who are the trustees or board
 7    members of that corporation?
 8         A.   There's Rabbi Hershey Iskowitz,
 9    Ronald Smith, and Dr. Leo Rubin, who just
10    passed away.  We didn't replace him yet.
11         Q.   So, as in the case of Mosdos, you
12    and your brother are the chief rabbis of that
13    corporation?
14         A.   We are the rabbinical leadership of
15    that corporation, yes.
16         Q.   And with respect to decisions that
17    are made, those decisions are made by you and
18    your brother?
19         A.   Religious decisions.
20         Q.   Okay.  And non-religious decisions
21    are made by whom?
22         A.   It depends what they are.  If they
23    require more activity and the whole board
24    gets together, we speak on the phone, there's
25    no problem.  And if not, for day-to-day
```

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 29
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 32 of 416

Page 15

```
 1                      A. Zaks

 2   operation, most things don't require board's

 3   input, so --

 4          Q.   Okay.  What is the business of YCC?

 5          A.   Again, you call it a business.

 6   It's a yeshiva.  A yeshiva is a term for a

 7   religious educational institution.

 8          Q.   And where does it function?

 9          A.   Where does it function?

10          Q.   Yes.

11          A.   82 Highview Road in Suffern,

12   New York.  And currently for the past five

13   years, it's been operating at Kiryas Radin

14   Drive in the -- Spring Valley, New York.

15   It's a second site.

16          Q.   Did it cease to operate at

17   Highview?

18          A.   No.

19          Q.   Concurrently operates there?

20          A.   It operates in Highview.

21          Q.   So, it operates at both locations?

22          A.   We have two locations, different

23   programs.

24          Q.   Okay.  So, it is a tenant of

25   Mosdos?
```

Page 16

```
 1                    A. Zaks

 2        A.    I don't want to use the relation --

 3   I don't call that -- I don't know if you call

 4   it a tenant relationship, but it's

 5   definitely -- currently as it was understood,

 6   it was using Mosdos's property while it was

 7   also finishing off the project on behalf of

 8   Mosdos until Mosdos can somehow get itself

 9   back together and perhaps run its own

10   operation.

11        Q.    Does it pay any rent?

12        A.    No.  It's been raising huge sums of

13   money to complete the project.  I mean, in

14   the last week or two probably about $100,000

15   was put into the main building to finish the

16   basement.  So, money has been coming in.

17        Q.    So, no --

18        A.    So, it's capital improvements

19   that's being put in.  And it's just been

20   holding the fort until eventually -- one of

21   the issues that came up was Mosdos was going

22   to get its own approval as a -- I'm trying to

23   remember the name.  It's called ARCs, which

24   is an approval process for a religious

25   college --
```

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 29

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 34 of 416

Page 17

1                          A. Zaks

2               MR. HASPEL:  Accreditation.

3          A.    Accreditation for religious

4     college.  And it could not get it.  We're in

5     a little bit of a catch-22.  It was relevant

6     to the villages that attacked Mosdos at the

7     time.  And one of the things that the

8     accreditation requires is that the

9     corporation should be in good financial

10    footing.  And as long as it's in bankruptcy,

11    it can't get its own stance.

12               So, it's been -- but it's been

13    dragging out.  But eventually, God willing,

14    things will straighten out.

15    BY MR. SATNICK:

16          Q.    YCC is an affiliate of Mosdos,

17    isn't it?

18               MR. HASPEL:  Objection as the form.

19          A.    What does the word "affiliate"

20    mean?  It has the same religious leadership.

21    We have -- some of the goals are the same.

22    We definitely have been supporting Mosdos

23    because we believe in their mission.

24               MR. HASPEL:  I just want to caution

25          when you say "we" --

Page 18

```
 1              A. Zaks

 2         THE WITNESS:  We meaning --

 3         MR. HASPEL:  We're here to talk

 4    about Mosdos.

 5         A.    As I say, Yeshiva has been

 6    supporting Mosdos during its time, no

 7    question about it.  But I don't know what you

 8    call affiliate.

 9         MR. SATNICK:  Let's mark, as

10         Exhibit 3, a multipage document, the

11         cover page of which is a Voluntary

12         Petition filed by Mosdos in the United

13         States Bankruptcy Court for the Southern

14         District of New York.

15              (Defendants' Exhibit 3, Voluntary

16         Petition filed by Mosdos in the United

17         States Bankruptcy Court for the Southern

18         District of New York, marked for

19         identification as of this date.)

20         MR. HASPEL:  Do you have a copy for

21         me?  Thank you.

22    BY MR. SATNICK:

23         Q.    On page 3 of Exhibit 3, you signed

24    on behalf of secretary --

25         A.    Yes.
```

Page 56

1                        A. Zaks

2    the project.  I was talking about the

3    project, not the fact that the plan was based

4    on it going to Mosdos.  That would be

5    definitely not my thrust of my answer.

6        Q.    It wasn't contemplated that YCC was

7    going to hold title to the property, was it,

8    for any length of time?

9        A.    I think the reason why YCC itself

10   didn't keep the property was multifaceted.

11   It was something to do with Citizens Bank at

12   the time wanted us also to structure it a

13   certain way.

14           It's also that YCC's goals and

15   mission is not as broad in any way as Mosdos.

16   And Mosdos has part of its mission to build

17   housing and things of that nature.  Yeshiva

18   Chofetz Chaim does not.

19           So, there were many reasons why --

20   you know, we could have maybe made an

21   extension of corporate purpose and done

22   something with Yeshiva, but Yeshiva was not

23   really a corporation formed for the purposes

24   that Mosdos was contemplated to do and for

25   that type of project that we wanted

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 29

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 37 of 416

Page 71

1                    A. Zaks

2        A.   There were some other bank, I don't

3    remember who it was, that we were very active

4    with.  I think one of them was maybe

5    Valley -- I don't recall which one.  We had

6    people who had a very close relationship with

7    them.  They were also interested in doing the

8    loan.  But Mosdos came -- Citizens came down

9    with the right number, quick.  They said

10   they're ready to go.  And they made the

11   determination to go with them.  Like I

12   said --

13       Q.   When you say "they," who is they?

14       A.   The board.  I was not on the board

15   at the time.  The bank -- I believe in our

16   discussions with Citizens, they said they

17   wanted separate board members to comprise the

18   people who are businessmen more than rabbis.

19   And we agreed at the time.  And as long as --

20   beginning that's how it went.  Then when it

21   went into trouble, we came back on.  We

22   didn't accept not to be ever on the board.

23   It was just a question at the time the bank

24   mentioned we should not be there.  They'd

25   rather deal just with business people.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 29

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 38 of 416

Page 80

```
 1                    A. Zaks

 2    totally separate reason.  That's why it's a

 3    little bit -- YCC has a property at 82

 4    Highview Road, which we mentioned before.

 5    That property is also zoned the same way.

 6              So, whether -- it had nothing to

 7    do -- YCC had nothing to do -- the injunction

 8    that YCC was talking about the property at 82

 9    Highview Road.  I don't think there was any

10    injunction as far as Kiryas Radin was

11    concerned.

12              MR. SATNICK:  Let's take a short

13         break.

14              THE VIDEOGRAPHER:  Time is 11:48

15         a.m. and we're going off the record.

16              (Recess taken.)

17              THE VIDEOGRAPHER:  Time is 11:54

18         a.m. and we're back on the record.

19         A.   Okay.  I was explaining that the

20    Yeshiva had its own piece of property, as

21    well, which is why it was named as a party to

22    that lawsuit from the villages.  But that --

23    definitely it was not the reason for doing it

24    and contemplating doing it from Kiryas Radin

25    to Mosdos to Yeshiva.  It had nothing to do
```

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 29

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 39 of 416

Page 92

1                        A. Zaks

2        Q.    How much did Mosdos pay to YCC for

3    the Radin campus property?

4        A.    Zero.  It was supposed to pay

5    $4 million.

6        Q.    And how was what number derived?

7        A.    I don't recall the exact method,

8    but there was the calculation that was made

9    at the time, and that was what was agreed.

10       Q.    And when was it supposed to pay it?

11       A.    After completion of the project and

12   it's up and running properly and it has the

13   ability to repay.

14             Part of that money, as I mentioned

15   before, would have been $500,000 paid to

16   Yeshiva that Yeshiva would have repaid me.

17   But I took out of my own home at the time.

18       Q.    You mortgaged your own home to fund

19   that 500,000?

20       A.    Yes.

21       Q.    With whom?

22       A.    I believe it was Chase Bank.

23       Q.    Okay.

24       A.    It was right after I came out of

25   the hospital or shortly before when this was

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 29
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 40 of 416

Page 93

```
 1                    A. Zaks

 2   all happening.

 3        Q.   Is there any document which

 4   evidences that obligation?

 5        A.   I believe I mentioned it in the

 6   bankruptcy.  I think the check was written

 7   directly.  I have to find out who we even

 8   paid it to at the time from my closing.  I

 9   didn't even take the money.

10            MR. HASPEL:  Do you recall?

11            THE WITNESS:  I don't recall a

12        document specifically that says it,

13        offhand.

14   BY MR. SATNICK:

15        Q.   Is there any document which

16   evidences the obligation by Mosdos to pay

17   $4 million for the property to YCC?

18        A.   Yes.

19        Q.   What?

20        A.   The deed.

21        Q.   What's that?

22        A.   The deed.

23        Q.   The deed states what?

24        A.   Said $4 million.  And it wasn't

25   paid yet.
```

Page 94

```
 1                        A. Zaks
 2          Q.   Well, is there is a promissory
 3     note?
 4          A.   No.
 5          Q.   Is there a mortgage security
 6     agreement?
 7          A.   No.
 8          Q.   A deed recites that the
 9     consideration was $4 million, but where is
10     the promise to pay it?
11          A.   It has a commitment to pay it.
12     Then it made up it's going to pay it.  And it
13     knows it owes the money, then I'm sure Mosdos
14     will pay when it can.
15          Q.   And how was that number arrived at?
16          A.   You asked that question before.  I
17     told you I don't recall the particulars.  But
18     there was -- I'm sure a big part of it was
19     amount of debt and obligations that the
20     Yeshiva took upon itself at the time.  I
21     don't remember the exact calculation.
22          Q.   In order to eliminate the debt that
23     YCCKR had acquired?
24          A.   Most of it, yes.
25          Q.   Was it based in any sense on the
```

# EXHIBIT C

# EXHIBIT C

22-2493-shl Doc 7-1 Filed 08/03/22 Entered 08/03/22 10:30:01 Declaration of
Rabbi Mayer Zaks Pg 43 of 416

New City, NY 10956
(845) 638-5070

## Rockland County Clerk Recording Cover Sheet

| Received From : | Return To : |
|---|---|
| YESHIVA CHOFETZ CHAIM | MICHAEL G GARTLAND ESQ     SW |
| 82 HIGHVIEW RD | 35 MARKET ST |
| SUFFERN, NY 10901 | POUGHKEEPSIE, NY 12601 |

Method Returned : MAIL

**First GRANTOR**

SMITH, MARGARET R -REFEREE

**First GRANTEE**

TD BANK NA

**Index Type :** Land Records
**Instr Number :** 2014-00003867
**Book :**                          **Page :**

**Type of Instrument :**
**Type of Transaction :** Deed Other
**Recording Fee:**              $316.00

**Recording Pages :**              5

The Property affected by this instrument is situated in Ramapo, in the County of Rockland, New York

### Real Estate Transfer Tax

| | |
|---|---|
| RETT # : | 2853 |
| Deed Amount : | $2,670,000.00 |
| RETT Amount : | $10,680.00 |
| Total Fees : | $10,996.00 |

State of New York

County of Rockland

I hereby certify that the within and foregoing was recorded in the Clerk's office for Rockland County, New York

On (Recorded Date) : 02/10/2014

At (Recorded Time) : 12:40:00 PM

Doc ID - 032198580005

Paul Piperato, County Clerk

This sheet constitutes the Clerks endorsement required by Section 319 of Real Property Law of the State of New York

Entered By: COUNTER1  Printed On : 02/11/2014     At : 10:34:54AM

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 30
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

7:22-cv-2493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 44 of 416

## REFEREE'S DEED

This deed, made the 20th day of August, 2013, between **MARGARET REGAN SMITH**, referee, 107 North Main Street, New City, New York duly appointed in the action hereinafter mentioned, grantor, and **TD BANK, N.A.**, a national banking association, with offices at One Portland Square, Portland, Maine 04101, grantee.

Witness, that the grantor, the referee appointed in an action between TD Bank, N.A., plaintiff, and Yeshiva Chofetz Chaim; Yeshiva Chofetz Chaim Inc.; Yeshiva Chofetz Chaim Radin; People of the State of New York; Panco Petroleum Products; Chaitan, Stewart Ascape Landscape & Construction Corp.; Renee Gross; B & Z Development Inc. and "John" Brook, defendant, foreclosing a mortgage recorded on June 14, 2005, in the office of the Clerk of the County of Rockland, in Instrument # 2005-32128, in pursuance of a judgment entered at an IAS Part of the Supreme Court, on April 29, 2011, and in consideration of One Million Six Hundred Four Thousand Five Hundred Ten and no/100 Dollars ($1,604,510.00) paid by the grantee, being the highest sum bid at the sale under the above-referenced judgment, does hereby grant and convey unto the grantee, all of that certain real property located in the Village of Suffern, Town of Ramapo, County of Rockland, State of New York, and more particularly described on **SCHEDULE A** annexed hereto.

The premises are not in an agricultural district and the parcel is entirely owned by the transferor by virtue of a power of sale contained in the Judgment referred to above.

To have and to hold the premises herein granted unto the grantee, its successors and assigns forever.

In witness whereof, the grantor has hereunto set her hand and seal the day and year first above written.

_____
MARGARET REGAN SMITH, Referee

State of New York          )
                           ) ss.:
County of Rockland         )

On the 20th day of August, 2013 before me, the undersigned, personally appeared MARGARET REGAN SMITH, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

_____
Notary Public

RECORD & RETURN TO:

MICHAEL G. GARTLAND, ESQ.
35 MARKET STREET
POUGHKEEPSIE, NEW YORK 12601

BARBARA L. GIONTA
Notary Public, State of New York
No. 02GI6044763
Qualified in Rockland County
Commission Expires Nov. 16, 20_13

3-R

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 40
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 45 of 416

Schedule A

Tax Lot 49.17-2-47

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Village of Suffern, Town of Ramapo, County of Rockland, State of New York, known and designated as Lot 47 and 47.1 Block No. 2, which said lot is more particularly bounded and described as follows:

BEGINNING at a point locate on the northerly boundary of Highview Road, said point being located 30 feet from the centerline of the original right of way of Highview Road and further described as being located 102.01 feet from the westerly terminus of the westerly return curve formed by the intersection of the northerly right of way of Highview Road and the westerly boundary of Wendover Lane;

thence the following courses and distances:

Parallel to Highview Road North 74 degrees 40 minutes 00 seconds West 199.33 feet;

On a curve to the left on a reverse tangent to the previous course a radius of 25 feet, an arc length of 37.51 feet, subtended by a central angle of 85 degrees 58 minutes 00 seconds;

North 19 degrees 22 minutes 00 seconds East 336.53 feet;

North 74 degrees 27 minutes 03 seconds west 300.81 feet to a point located along a stone wall;

Along a stone wall North 2 degrees 40 minutes 06 seconds East 831.09 feet to a point located 25 feet southerly from the centerline of the original right of way of Carlton Road;

On a curve to the left, concentric with Carlton Road a radius of 94.42 feet, an arc length of 27.61 feet, subtended by a central angle of 16 degrees 45 minutes 11 seconds and having a chord bearing North 34 degrees 12 minutes 12 seconds East;

Along a stone wall South 72 degrees 15 minutes 00 seconds East 707.77 feet to an existing marble monument;

South 19 degrees 22 minutes 00 seconds West 1170.03 feet to the point of BEGINNING.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 30

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 46 of 416

### Schedule A

Tax Lot 49.17-2-42

BEGINNING at a point locate on the northerly boundary of Highview Road, said point being located 30 feet from the centerline of the original right of way of Highview Road and further described as being located 301.34 feet from the westerly terminus of the westerly return curve formed by the intersection of the northerly right of way of Highview Road and the westerly boundary of Wendover Lane;

thence the following courses and distances:

Parallel to Highview Road North 74 degrees 40 minutes 00 seconds West 171.28 feet;

Along a stone wall North 2 degrees 40 minutes 06 seconds East 369.05 feet;

South 74 degrees 27 minutes 03 seconds West 300.81 feet;

South 19 degrees 22 minutes 00 seconds East 336.53 feet;

On a curve to the right on a tangent to the previous course a radius of 25 feet, an arc length of 37.51 feet, subtended by a central angle of 85 degrees 58 minutes 00 seconds to the point of BEGINNING.

**FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM** INDEX NO. 036879/2021

NYSCEF DOC. NO. 30    Case 22-493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 47 of 416   RECEIVED NYSCEF: 03/18/2022

INSTRUCTIONS(RP-5217-PDF-INS): www.orps.state.ny.us

| FOR COUNTY USE ONLY | | New York State Department of |
|---|---|---|
| C1. SWIS Code | 3,9,2,6,8,9 | **Taxation and Finance** |
| C2. Date Deed Recorded | 2 / 10 / 2014 | Office of Real Property Tax Services |
| | Month Day Year | **RP-5217-PDF** |
| C3. Book 2,0,1,4, | C4. Page 3,8,6,7, | Real Property Transfer Report (8/10) |

**PROPERTY INFORMATION**

**1. Property Location**

| 82 and 24 | | Highview Road | | |
|---|---|---|---|---|
| *STREET NUMBER | | *STREET NAME | | |
| Ramapo | | Suffern | | 10901 |
| *CITY OR TOWN | | VILLAGE | | *ZIP CODE |

**2. Buyer Name**

| TD Bank, N.A. | |
|---|---|
| *LAST NAME/COMPANY | FIRST NAME |
| | |
| LAST NAME/COMPANY | FIRST NAME |

**3. Tax Billing Address** Indicate where future Tax Bills are to be sent if other than buyer address(at bottom of form)

| | |
|---|---|
| LAST NAME/COMPANY | FIRST NAME |
| STREET NUMBER AND NAME | CITY OR TOWN | STATE | ZIP CODE |

**4.** Indicate the number of Assessment Roll parcels transferred on the deed   2   # of Parcels   OR   ☐ Part of a Parcel

(Only if Part of a Parcel) Check as they apply:
4A. Planning Board with Subdivision Authority Exists ☐
4B. Subdivision Approval was Required for Transfer ☐
4C. Parcel Approved for Subdivision with Map Provided ☐

**5. Deed Property Size**   X   OR   13.54
*FRONT FEET   *DEPTH   *ACRES

**6. Seller Name**

| Smith (REFEREE) | | Margaret Regan |
|---|---|---|
| *LAST NAME/COMPANY | | FIRST NAME |
| | | |
| LAST NAME/COMPANY | | FIRST NAME |

**7.** Select the description which most accurately describes the use of the property at the time of sale:

I. Community Service

Check the boxes below as they apply:
8. Ownership Type is Condominium ☐
9. New Construction on a Vacant Land ☐
10A. Property Located within an Agricultural District ☐
10B. Buyer received a disclosure notice indicating that the property is in an Agricultural District ☐

**SALE INFORMATION**

11. Sale Contract Date

**12. Date of Sale/Transfer**   12/31/2013

**13. Full Sale Price**   2,670,000.00

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) Please round to the nearest whole dollar amount.

14. Indicate the value of personal property included in the sale   .00

**15.** Check one or more of these conditions as applicable to transfer:
A. Sale Between Relatives or Former Relatives ☐
B. Sale between Related Companies or Partners in Business. ☐
C. One of the Buyers is also a Seller ☐
D. Buyer or Seller is Government Agency or Lending Institution ☒
E. Deed Type not Warranty or Bargain and Sale (Specify Below) ☐
F. Sale of Fractional or Less than Fee Interest (Specify Below) ☐
G. Significant Change in Property Between Taxable Status and Sale Dates ☐
H. Sale of Business is Included in Sale Price ☐
I. Other Unusual Factors Affecting Sale Price (Specify Below) ☒
J. None ☐

Comment(s) on Condition:

referee deed - foraclosure

**ASSESSMENT INFORMATION** - Data should reflect the latest Final Assessment Roll and Tax Bill

16. Year of Assessment Roll from which information taken(YY) 11    **17. Total Assessed Value**   476,600

**18. Property Class**   612   _ _ _    **19. School District Name**   Ramapo

**20. Tax Map Identifier(s)/Roll Identifier(s)** (If more than four, attach sheet with additional identifier(s))

49.17-2-47    49.17-2-42

**CERTIFICATION**

I Certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein subject me to the provisions of the penal law relative to the making and filing of false instruments.

SELLER SIGNATURE _[signature]_ DATE

**BUYER SIGNATURE**

_[signature]_ 1/29/14

_[barcode]_

**BUYER CONTACT INFORMATION**

(Enter information for the buyer. Note: if buyer is LLC,society, association, corporation, joint stock company, estate or entity that is not an individual agent or fiduciary, then a name and contact information of an individual/responsible party who can answer questions regarding the transfer must be entered. Type or print clearly.)

| Casale | | Fred |
|---|---|---|
| *LAST NAME | | FIRST NAME |
| (207) | 761-8554 | |
| *AREA CODE | TELEPHONE NUMBER (Ex: 9999999) | |
| P. O. Box 9540 | | |
| *STREET NUMBER | *STREET NAME | |
| Portland | | ME   04112 |
| *CITY OR TOWN | | STATE   *ZIP CODE |

**BUYER'S ATTORNEY**

| Gartland | | Michael G. |
|---|---|---|
| LAST NAME | | FIRST NAME |
| (845) | 454-1110 | |
| AREA CODE | TELEPHONE NUMBER (Ex: 9999999) | |

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 48 of 416

# EXHIBIT D

# EXHIBIT D

1 South Main St., Ste. 100
New City, NY 10956
(845) 638-5070

## Rockland County Clerk Recording Cover Sheet

**Received From :**
RIVERSIDE ABSTRACT,LLC
3839 FLATLANDS AVE
SUITE 208
BROOKLYN, NY 11234

**Return To :**
RIVERSIDE ABSTRACT,LLC
3839 FLATLANDS AVE
SUITE 208
BROOKLYN, NY 11234

**Method Returned :** ERECORDING

**First GRANTOR**

TD BANK NA

**First GRANTEE**

DEL REALTY LLC

**Index Type :** Land Records
**Instr Number :** 2017-00031743
**Book :**            **Page :**

**Type of Instrument :** Deed
**Type of Transaction :** Deed Other
**Recording Fee :**                    $321.00

**Recording Pages :**                        6

The Property affected by this instrument is situated in Ramapo, in the County of Rockland, New York

| Real Estate Transfer Tax | |
|---|---|
| **RETT # :** | 1353 |
| **Deed Amount :** | $1,400,000.00 |
| **RETT Amount :** | $5,600.00 |
| **Total Fees :** | $5,921.00 |

State of New York

County of Rockland

I hereby certify that the within and foregoing was recorded in the Clerk's office for Rockland County, New York

On (Recorded Date) : 10/04/2017

At (Recorded Time) : 11:55:00 AM

Paul Piperato, County Clerk

This sheet constitutes the Clerks endorsement required by Section 319 of Real Property Law of the State of New York

Entered By: NYROCKLANDUSER15  Printed On : 10/04/2017        At : 11:56:07AM

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM INDEX NO. 036879/2021

NYSCEF DOC. NO. 31    22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of    RECEIVED NYSCEF: 03/18/2022

Page 2 of 8    Rabbi Mayer Zaks    Pg 50 of 416

*(handwritten notes in left margin)*
(Rockland)
S:4417
B: 2
C:42 and 47

# DEED

*as of 18 September*

**THIS INDENTURE**, made the ~~10th~~ day of ~~August~~ 2017, between **TD BANK, N.A.**, a national banking association, with offices at One Portland Square, Portland, Maine 04101, party of the first part, and **DEL REALTY, LLC**, a Delaware Limited Liability Company, with offices at 20 F Robert Pitt Drive, Suite 204, Monsey, New York 10952, party of the second part,

**WITNESSETH**, that the party of the first part, in consideration of Ten Dollars and other good and valuable consideration, paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever

**ALL** that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Village of Suffern, Town of Rampo, County of Rockland and State of New York, and more particularly described as on **SCHEDULE A** annexed hereto:

This conveyance is made in the regular course of business of the party of the first part herein and does not represent all or substantially all of the assets of the party of the first part.

The premises are not in an agricultural district and the parcel is entirely owned by the party of the first part.

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever except as aforesaid.
AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payments of the cost of the improvement before using any part of the total of the same for any other purpose.

The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF**, the party of the first part has duly executed this deed the day and year first above written.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 31
Page 3 of 8

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 51 of 416

In presence of:

TD BANK, N.A.

Florinda Franklin, *U.S.*

State of Maine          )
                        ) ss.:
County of Cumberland    )

On the 10th day of August, 2017 before me, the undersigned, personally appeared Florinda Franklin, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her capacity, and that by her signature on the instrument, the individual or the person upon behalf of which the individual acted, executed the instrument.

Notary Public

KIMBERLY N. BAKER
Notary Public
Maine
My Commission Expires Jul 13, 2021

**RECORD & RETURN:**

KEVIN J. NASH, ESQ.
GOLDBERG WEPRIN FINKEL GOLDSTEIN LLP
1501 BROADWAY, 22ND FLOOR
NEW YORK, NEW YORK 10036

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 31
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

Page 4 of 6    22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 52 of 416

# RIVERSIDE ABSTRACT, LLC

### as Agent for
### Fidelity National Title Insurance Company

### SCHEDULE A – DESCRIPTION

Title No.: **RANY-15937**

Parcel I:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Suffern, Town of Ramapo, County of Rockland, State of New York, more particularly bounded and described as follows:

BEGINNING at a point locate on the northerly boundary of Highview Road, said point being located 30 feet from the centerline of the original right of way of Highview Road and further described as being located 301.34 feet from the westerly terminus of the westerly return curve formed by the intersection of the northerly right of way of Highview Road and the westerly boundary of Wendover Lane:

thence the following courses and distances:

Parallel to Highview Road North 74 degrees 40 minutes 00 seconds West 171.28 feet;

Along a stone wall North 2 degrees 40 minutes 06 seconds East 369.05 feet;

THENCE South 74 degrees 27 minutes 03 seconds West 300.81 feet;

THENCE South 19 degrees 22 minutes 00 seconds East 336.53 feet;

On a curve to the right on a tangent to the previous course a radius of 25 feet, an arc length of 37.51 feet, subtended by a central angle of 85 degrees 58 minutes 00 seconds to the point of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as Section 49.17 Block 2, Lot 42 Rockland County and also known as 24 Highview Road.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM    INDEX NO. 036879/2021
NYSCEF DOC. NO. 31    22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Page 5 of 8                         Rabbi Mayer Zaks    Pg 53 of 416    RECEIVED NYSCEF: 03/18/2022

**SCHEDULE A cont.**

Parcel II:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Suffern, Town of Ramapo, County of Rockland, State of New York, known and designated as Lot 47 and 47.1 Block No. 2, which said lot is more particularly bounded and described as follows:

BEGINNING at a point locate on the northerly boundary of Highview Road, said point being located, 30 feet from the centerline of the original right of way of Highview Road and further described as being located 102.01 feet from the westerly terminus of the westerly return curve formed by the intersection of the northerly right of way of Highview Road and the westerly boundary of Wendover Lane;

thence the following courses and distances:

Parallel to Highview Road North 74 degrees 40 minutes 00 seconds West 199.33 feet;

On a curve to the left on a reverse tangent to the previous course a radius of 25 feet, an arc length of 37.51 feet, subtended by a central angle of 85 degrees 58 minutes 00 seconds;

North 19 degrees 22 minutes 00 seconds East 336.53 feet;

North 74 degrees 27 minutes 03 seconds west 300.81 feet to a point located along a stone wall;

Along a stone wall North 2 degrees 40 minutes 06 seconds East 831.09 feet to a point located 25 feet southerly from the centerline of the original right of way of Carlton Road;

On a curve to the left, concentric with Carlton Road a radius of 94.42 feet, an arc length of 27.61 feet, subtended by a central angle of 16 degrees 45 minutes 11 seconds and having a chord bearing North 34 degrees 12 minutes 12 seconds East;

Along a stone wall South 72 degrees 15 minutes 00 seconds East 707.77 feet to an existing marble monument;

South 19 degrees 22 minutes 00 seconds West 1170.03 feet to the point of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as Section 49.17 Block 2, Lot 47 Rockland County and also known as 82 Highview Road.

---

**FOR COUNTY USE ONLY** 392607

INSTRUCTIONS(RP-5217-PDF-INS): www.orps.state.ny.us

**C1. SWIS Code**

**C2. Date Deed Recorded** 10/4/2017
2017 Month Day

**C3. Book** 31743 **C4. Page**

**New York State Department of**
**Taxation and Finance**
Office of Real Property Tax Services

**RP-5217-PDF**
Real Property Transfer Report (8/10)

**PROPERTY INFORMATION**

1. **Property Location** 82 and 105 HIGHVIEW RD & CARLTON RD
   * STREET NUMBER * STREET NAME
   RAMPO RAMAPO SUFFERN 10901
   * CITY OR TOWN VILLAGE * ZIP CODE

2. **Buyer Name** DEL REALTY LLC
   * LAST NAME/COMPANY FIRST NAME
   LAST NAME/COMPANY FIRST NAME

3. **Tax Billing Address** Indicate where future Tax Bills are to be sent if other than buyer address(at bottom of form)
   LAST NAME/COMPANY FIRST NAME
   STREET NUMBER AND NAME CITY OR TOWN STATE ZIP CODE

4. Indicate the number of Assessment Roll parcels transferred on the deed 2 # of Parcels OR □ Part of a Parcel

   (Only if Part of a Parcel) Check as they apply:
   4A. Planning Board with Subdivision Authority Exists □
   4B. Subdivision Approval was Required for Transfer □
   4C. Parcel Approved for Subdivision with Map Provided □

5. **Deed Property Size** * FRONT FEET X * DEPTH OR 13.54 * ACRES

6. **Seller Name** DEL REALTY LLC
   * LAST NAME/COMPANY FIRST NAME
   LAST NAME/COMPANY FIRST NAME

*7. Select the description which most accurately describes the use of the property at the time of sale:
I. Community Service

Check the boxes below as they apply:
8. Ownership Type is Condominium □
9. New Construction on a Vacant Land □
10A. Property Located within an Agricultural District □
10B. Buyer received a disclosure notice indicating that the property is in an Agricultural District □

**SALE INFORMATION**

11. **Sale Contract Date** 07/25/2017

*12. **Date of Sale/Transfer** 09/18/2017

*13. **Full Sale Price** 1,400,000.00

( Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) Please round to the nearest whole dollar amount.

14. Indicate the value of personal property included in the sale 0.00

15. Check one or more of these conditions as applicable to transfer:
A. Sale Between Relatives or Former Relatives
B. Sale between Related Companies or Partners in Business.
C. One of the Buyers is also a Seller
X D. Buyer or Seller is Government Agency or Lending Institution
E. Deed Type not Warranty or Bargain and Sale (Specify Below)
F. Sale of Fractional or Less than Fee Interest (Specify Below)
G. Significant Change in Property Between Taxable Status and Sale Dates
H. Sale of Business is Included in Sale Price
I. Other Unusual Factors Affecting Sale Price (Specify Below)
J. None
Comment(s) on Condition:

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

16. Year of Assessment Roll from which information taken(YY) 17

*17. Total Assessed Value $226,600.00 and $$250,000.00

*18. Property Class 612 and 312

*19. School District Name RAMPO

*20. Tax Map Identifier(s)/Roll Identifier(s) (If more than four, attach sheet with additional identifier(s))
49.17-2-42 49.17-2-47

**CERTIFICATION**

I Certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein subject me to the provisions of the penal law relative to the making and filing of false instruments.

**SELLER SIGNATURE**
SELLER SIGNATURE DATE 9/13/17
DBANK AA

**BUYER SIGNATURE**
BUYER SIGNATURE DATE 9/13/17

**BUYER CONTACT INFORMATION**
(Enter information for the buyer. Note: if buyer is LLC, society, association, corporation, joint stock company, estate or entity that is not an individual agent or fiduciary, then a name and contact information of an individual/responsible party who can answer questions regarding the transfer must be entered. Type or print clearly.)
DEL REALTY LLC Karmel Jacob
LAST NAME FIRST NAME
95 400 CATHERINE STREET Rella Blvd suite 200
* STREET NUMBER * STREET NAME
POUGHKEEPSIE Montibello NY 12601 10901
* CITY OR TOWN * STATE * ZIP CODE

**BUYER'S ATTORNEY**
STURTA BARRY A.
LAST NAME FIRST NAME
(845) 369-3000
AREA CODE TELEPHONE NUMBER (If # 9999999)

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 55 of 416

# EXHIBIT E

# EXHIBIT E

# A REAL ESTATE
# APPRAISAL REPORT OF:



## A Proposed Residential Complex And Existing School Building
## Located At:
## 82 Highview Road and 105 Carlton Road
## Ramapo NY, 10901

### VALUATION AND REPORT DATE

November 7, 2018

### PREPARED FOR

Dell Realty, LLC

### PREPARED BY

Republic Valuations
*Real Estate Appraisers and Consultants*
184 Park Avenue
Brooklyn, New York 11205



# REPUBLIC VALUATIONS

184 Park Avenue · Brooklyn, NY 11205
Tel: 718-625-6900 Fax: 718-625-6898 Email@RepublicValuations.com

November 7, 2018

Dell Realty, LLC

Re:   82 Highview Road and 105 Carlton
      Road
      Ramapo NY, 10901
      Rockland County
      Section 49.17, Block 2, Lots 42, 47
      and 47.1
      Our File # R181670

Dear Sirs,

As you requested, we have examined, inspected, and appraised the above referenced property to formulate an opinion of the as is market value. It is our informed conclusion that the **AS IS** *Market Value* of the ***Fee Simple Estate*** *in* the subject property, as of November 7, 2018, is:

## MARKET VALUE CONCLUSION

| Appraisal Premise | Interest Appraised | Value Conclusion |
|---|---|---|
| As is – Site Value | Fee Simple | $12,300,000 |
| Adult-Student-Housing facility Zoning - Development | Fee Simple | $26,000,000 |
| AS Complete – Residential Complex | Fee Simple | $60,150,000 |

The subject property is known as Yeshiva Chofetz Chaim School, located at 82 Highview Road, in the town of Ramapo, Rockland County NY 10901. The subject is comprised of three-lot parcels with an existing school building identified in the Rockland County tax maps as Section 49.17, Block 2, Lots 42, 47 and 47.1. The total land area of the site is 14.74 acres, or 642,074+/- SF. located in a R-25 zoning district which allows for a residential house to be built on 25,000 Sf of surface land . The subject was granted

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks   Pg 58 of 416

the RSH-Specialized Housing Residential which permits a superior FAR development for adult-student-housing facility District zoning to 16 units per acre for a total of 235+/- residential units.

The subject current improvements consist of a two story brick school building with a total of 13,468 +/- square feet.

The subject of this report is to value the subject as a regular R-25 zoning and also the development option for adult-student-housing.

As per the client, the subject proposed adult-student-housing improvements will consist of 36, two story walk-up apartment buildings with a total of 180 residential units plus the existing two story school building. The total complex gross building area will consist of 277,468+/- square feet above grade. The units will be rented and income producing.

The subject property is located in a well populated residential neighborhood.

This appraisal will utilize the sales comparison and the income approaches to value respectively, the cost approach was utilized for the land value utilizing the extraction method.

**This appraisal is an update of the original appraisal report done on July 20, 2017. The appraiser has researched the subject market, potential income of the building and comparable sales in the area, and determined that the subject property's values have not declined since its original appraisal on July 20, 2017. The appraisal was therefore updated with the new date.**

This appraisal does not take into consideration the possibility that the property may be contaminated with asbestos, PCB's, or any other toxic, hazardous or radioactive substance. The value reported is exclusive of the cost to discover, encapsulate, remove, or render harmless such improvements through treatment. If you have any concern that such substances may be on the property, a qualified independent engineer or contractor should be hired to investigate those concerns. We cannot assume any

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 59 of 416

responsibility for the discovery, analysis, or treatment of such substances either in the subject or surrounding properties.

This report is subject to the Limiting Conditions, Certification and Special Assumptions contained herein. It has been written in conformity with, and is subject to, the Requirements of the Code of Professional Ethics and the Standards of Professional Conduct of the Appraisal Institute. It is also understood that this report is prepared in compliance with FIRREA, USPAP, FDIC, OCC, and 12CFR.34 regulations.

The following report is a detailed summary of the pertinent data and analyses used in arriving at our conclusions.

Respectfully submitted,

Victor Schlesinger,
Certified General RE Appraiser
Cert.# 46000047078

## CONTENTS

**Letter of Transmittal**

**Table of Contents**

Subject Photographs

Underlying Assumptions

Limiting Conditions

Appraiser's Certification

Summary of Salient Facts ...................................................................26

Important Definitions ....................................................................28

Purpose of the Appraisal....................................................................30

Function Of the Appraisal....................................................................30

Identification of the Property ...................................................................30

Property Rights Appraised ...................................................................30

Estimate of Exposure Time.....................................................................31

Estimate of Marketing Time.....................................................................31

Scope of the Appraisal ...................................................................32

**City and Neighborhood Analysis** ...................................................................33

**Economic Market** ...................................................................42

**Site Description**...................................................................47

**Improvement Description** ...................................................................48

**Taxes & Assessments**...................................................................49

**Flood Map** ...................................................................58

**Zoning**...................................................................59

**Highest and Best Use** ...................................................................69

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 61 of 416

**The Valuation Process** ................................................................................72

**The Sales Comparison Approach-School** .................................................73

**The Sales Comparison Approach- Land** ...................................................84

**Net Residual Value - Proposed Development** .........................................93

**The Sales Comparison Approach- Residential** ........................................95

**The Income Capitalization Approach** .....................................................105

      Income & Expense Assumptions...................................................107

      Rate Selection .................................................................................110

      Direct Capitalization of Income....................................................112

      Valuation..........................................................................................113

**Reconciliation** ...........................................................................................114

**Addenda**

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 62 of 416

**Subject Photos**

**Subject Photo**

**Aerial View**



Lot 47 - is 11.74 acres vacant land. Lot 47.1 - one acre vacant land, Lot 42 -two acres land with the existing school building upper left.

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 63 of 416

## Subject Photos

### Exterior Photos



Front of the Building



FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

# Subject Photos

## Exterior Photos
### Yeshiva Chofetz Chaim School Building





22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 65 of 416

## Subject Photos

### Interior Photos

1st floor



Dining Room



Dining Room

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 66 of 416

**Subject Photos**

### Interior Photos
### 1st floor





22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 67 of 416

**Subject Photos**

### Interior Photos
### First Floor



Synagogue



FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 68 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

**Subject Photos**

### Interior Photos
### First Floor





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 03/18/2022

## Subject Photos

Interior Photos





22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 70 of 416

## Subject Photos

**Interior Photos**
Second Floor





Class Room

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 03/18/2022

## Subject Photos

### Interior Photos





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 72 of 416

## Subject Photos

### Interior Photos





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 73 of 416

## Subject Photos

### Exterior Photos





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 74 of 416

## Subject Photos

### Exterior Photos





### Exterior Photos

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 75 of 416

## Subject Photos

Street View





## Underlying Assumptions

This appraisal report was prepared in accordance with the following underlying assumptions. It is to be understood that a client's request for, and acceptance of, this appraisal report constitutes the acceptance of these underlying assumptions.

♦   **Legal Matters:** The legal description used in this report is assumed to be correct, but it may not necessarily have been confirmed by a survey. No responsibility is assumed for legal descriptions, surveys or for easements, encroachments, rights of way, overlapping or other discrepancies that might be revealed thereby. Any sketches included in the report are only for the purpose of aiding the reader in visualizing the property and are not necessarily a result of a survey. Whenever surveys are provided the appraiser or appraisers do not guarantee their accuracy.

No responsibility is assumed for an opinion of legal nature, such as to ownership of the property or the subsequent condition/possession of title.

The appraiser assumes that the title to the property is marketable; unless stated to the contrary, the property is appraised as an unencumbered estate which is not used in violation of applicable and acceptable ordinances, statutes or other governmental regulations.

The appraiser assumes that the reader or user of this report has been provided with copies of available building plans and all leases and amendments, if any, encumbering the property as well as any other existing documentation that may reveal important information about the subject property. At no point is the appraiser responsible for discovering and providing any such documentation to the client. It is neither possible nor practical for the appraiser to validate with a high degree of accuracy all information and documentation that may be provided to him during the course of an assignment. However, in cases where discrepancies, inconsistencies, and/or inaccuraciesare evident, the appraiser will draw conclusions in a logical manner as would reasonably be expected based on all available information.

♦   **Unapparent Conditions:** The appraiser assumes that there are no hidden or unapparent conditions of the property, subsoil or structures which would render it more or less valuable than otherwise comparable property. The appraiser is not an expert in determining the presence or absence of hazardous substances, which is defined for the purpose of this report as; all hazardous or toxic materials, waste, pollutants or contaminants (including, but not limited to, asbestos, PCB's, UFFI, or other raw materials or chemicals) used in construction or otherwise present in the property or on the site. The appraiser assumes no responsibility for the studies or analysis which would be required to conclude the presence or absence of such substances or for any loss arising as a result of the presence of

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 77 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## Underlying Assumptions

such substances. The client is urged to retain an expert in this field, wherever circumstances deem it necessary. The value conclusions contained in this report are based on the assumption that the subject property is not affected by any such substances.

\* Conditions are considered to be unapparent when: pertinent information is undisclosed or withheld, not readily or publicly available, or which otherwise does not become known in the normal course of the appraisal assignment.

◆  **Information and Data:** Information, estimates, and opinions furnished to the appraiser or appraisers and contained in the report, were obtained from sources considered to be reliable and believed to be true and correct. Whenever possible, information is verified by means of several sources. The sources of such information are cited wherever possible. However, no responsibility for the accuracy of such items is assumed by the appraiser or appraisers.

All mortgages, liens, encumbrances, and servitudes have been disregarded unless so specified within the body of the appraisal report. The subject property is appraised as though under responsible ownership and competent management.

◆  **Zoning And Licenses:** It is assumed that all applicable zoning and use regulations and restrictions have been complied with, unless a nonconforming use has been stated, defined and considered in the valuation and subsequently discussed within the body of this report. It is assumed that the subject property complies with all applicable federal, state and local environmental regulations and laws unless noncompliance is stated, defined and considered in the valuation process. It is assumed that the information relating to the location of or existence of public utilities that has been obtained through inquires from the appropriate utility authorities, or has been ascertained from visual evidence is correct. No warranty is made regarding the exact location or capacities of public utility systems. It is also assumed that all licenses, certificates, consents or other legislative or administrative authorities from local, state or national governmental or private entities or organizations have been, or can be, obtained or renewed for any use on which the value estimate contained in the appraisal report is based.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 78 of 416

## Limiting Conditions

This appraisal report was prepared in accordance with the following limiting conditions. It is to be understood that a client's request for, and acceptance of, this appraisal report constitutes the acceptance of these limiting conditions.

- The appraiser will not be required to give testimony or appear in court as a result of preparing the appraisal with reference to the subject property in question, unless prior arrangements have been made and agreed upon to that effect.

- Possession of this report does not carry with it the right of publication. Out-of-context quotations or partial reprinting of this appraisal report is not authorized. Further, neither all nor any part of this appraisal report shall be disseminated to the general public by the use of media for public communication without the prior written consent of the appraiser signing this appraisal report.

- Disclosure of the contents of this report is governed by the By-Laws and Regulations of The Appraisal Institute. Neither all nor any part of the contents of this report (especially any conclusions as to value, the identity of the appraiser or appraisers or the firm with which the appraiser (s) is associated, or any reference to The Appraisal Institute or to the appraiser's designations) shall be disseminated to the public through advertising media, public relations media, news media, sales media or any other public means of communication without the prior written consent and approval of the respective appraiser or appraisers.

- The distribution of the total valuation in this report, between land and improvements, is applicable only as it is utilized in this appraisal. The land value, or the separate value of the improvements, must not be used in conjunction with any other appraisal or estimate and is invalid if so used.

  An appraisal related to an estate in land that is less than the whole Fee Simple Estate applies only to the fractional interest or interests involved. The value of this fractional interest plus the value of all other fractional interests may or may not equal the value of the entire Fee Simple Estate considered as a whole.

  The appraisal report related to a geographical portion of a larger parcel is applied only to such geographical portion and should not be considered as applying with equal validity to other portions of the larger parcel or tract as a whole. The value for such geographical portions plus the value of all other geographical portions may or may not equal the value of the entire parcel or tract considered as a whole.

- The forecasts, projections, or operating estimates contained herein are based upon current market conditions, anticipated short-term supply and demand

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

### Limiting Conditions

factors, and a continued stable economy. These forecasts are, therefore, subject to change as conditions change.

♦    The plans, specifications, and representations referred to herein are an integral part of the appraisal report when new construction, additions, renovations, or remodeling is either evident or proposed. As such the appraisal is subject to any proposed improvements or additions being completed as set forth in the plans, specifications, and representations referred to in the report, and all work being performed in a good and workmanlike manner. The appraisal is further subject to the proposed improvements or additions being constructed in accordance with the regulations of the local, county, and state authorities.

♦    No environmental or concurrency impact studies were either requested or made in conjunction with this appraisal report. The appraiser, thereby, reserves the right to alter, amend, revise, or rescind any of the value opinions based upon any subsequent environmental or concurrency impact studies, research or investigation subsequent to the completion of this appraisal report.

♦    The Americans with Disabilities Act ("ADA") became effective January 26, 1992. The appraiser has not made a specific compliance survey and analysis of this property to determine whether or not it is in conformity with the various detailed requirements of the ADA. It is possible that a compliance survey of the property, together with a detailed analysis of the requirements of the ADA, could reveal that the property is not in compliance with one or more of the requirements of the Act. If so, this fact could have a negative effect upon the value of the subject property. Since the appraiser is not considered an expert on these issues, possible noncompliance with the requirements of ADA and its impact on the value of the subject property has not been considered.

This appraisal report complies with the requirements set forth in title XI CFR part 225.61 et seq; of the Federal Financial Institutions Reform, Recovery and Enforcement Act of 1989, commonly known as "FIRREA". The appraisal also conforms to the Uniform Standards of Professional Appraisal Practice ("USPAP") and discloses any steps taken that were necessary or appropriate to comply with the competency provision of USPAP, and that this appraisal is not based on a requested minimum valuation, a specific valuation or the approval of a loan.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 80 of 416

# Appraiser's Certification

The Appraiser has personally conducted this appraisal in an objective manner.  Furthermore, this appraisal conforms to "USPAP" Standards Rule 2-3 which states:

**I certify that, to the best of my knowledge and belief:**

- The statements of fact contained in this appraisal report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions, and is my personal, unbiased professional analyses, opinions, and conclusions.

- I have no present or prospective interest in the property that is the subject of this report, and I have no personal interest or bias with respect to the parties involved.

- I have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

- My engagement in this assignment was not contingent upon developing or reporting predetermined results.

- My compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result or the occurrence of a subsequent event directly related to the intended use of this appraisal

- My analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the Uniform Standards of Professional Appraisal Practice (USPAP).

- Victor Schlesinger has made a inspection of the property that is the subject of this report.

- I certify that, to the best of my knowledge and belief, the reported analyses, opinions and conclusions were developed, and this report has been prepared, in conformity with the requirements of the Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute.

- No one other than the persons mentioned on this report has provided significant professional assistance.

- Use of the report is subject to the professional requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, Victor Schlesinger has completed the requirements of the continuing education program of the Appraisal Institute and has the appropriate knowledge and experience to complete the appraisal.

- We have not performed any appraisal services for the subject property within the past three years.

Victor Schlesinger
Certified General RE Appraiser
Cert.# 46000047078

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## Summary of Salient Facts

| | |
|---|---|
| Location: | 82 Highview Road and 105 Carlton Road<br>Rockland County<br>Ramapo NY, 10901 |
| Owner: | TD Bank, N.A. |
| | Section 49.17, Block 2, Lots 42, 47 and 47.1 |
| Property Type: | School building, Vacant land. |

**Site Description**

| | |
|---|---|
| Size: | 14.74 acres, or 642,074+/- SF |
| Zoning: | R-25 Residential Zone District. |

The subject was granted the RSH-Specialized Housing Residential which permits a superior FAR development for adult-student-housing facility District zoning. to 16 units per acre to a total of 235 residential units.

| | |
|---|---|
| Assessment: | Tax Burden (2016/17) $142,972 |
| Topography: | Level and at grade with surrounding roadways. |
| Utilities: | Water, sewer, gas, electric and phone service are available to the property. |
| Utility: | Good |

**Prior Sales:**   Last transfer for the subject was a mortgage foreclosure auction on December 31, 2013   from Yeshiva Chofetz Chaim to TD Bank, N.A. for a consideration of $2,670,000. The appraiser is not aware of any other sales or transfers within the past five years.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 82 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## Summary of Salient Facts

## Conclusions

| | |
|---|---|
| Highest and Best Use "As Vacant": | Residential Complex Development |
| Highest and Best Use "As Improved": | Residential Complex |
| Cost Approach: | N/A |

| **AS IS MARKET VALUE** | **$26,000,000** |
|---|---|
| Sales Comparison Approach: Land | **$12,300,000** |
| Sales Comparison Approach: Development | **$26,000,000** |
| Income Capitalization Approach: | N/A |

| **VALUE UPON COMPLETION** | **$60,150,000** |
|---|---|
| Sales Comparison Approach: | **$60,150,000** |
| Income Capitalization Approach: | **$60,150,000** |

| | |
|---|---|
| **As Is Market Value Conclusion:** | **$26,000,000** |
| **Date of Value:** | **November 7, 2018** |

Extraordinary Assumption:

I.   The appraisal report is based on the assumption that the subject was granted the adult student-housing facility zoning and obtained all necessary permits and approvals by the local municipalities in order to legally complete the development.

II.

III.  This appraisal relies on the cost estimates provided by the client for the proposed development. The appraiser is not an expert in this area. If the construction costs materially deviate from the estimates provided, our value estimates are no longer valid.

## Important Definitions

*Market Value* .......................................................................................................

The current economic definition of market value, as defined by the Appraisal Foundation and presented in the 2003 edition of the Uniform Standards of Professional Appraisal Practice is stated as follows:

"The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition are the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby:

1.   Buyer and seller are typically motivated;

2.   Both parties are well informed or well advised, and acting in what they consider their own best interests;

3.   A reasonable time is allowed for exposure in the open market;

4.   Payment is made in terms of cash in United States dollars or in terms of financial arrangements comparable thereto; and

5.   The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale."[1]

*Fee Simple Estate* ...................................................................................................

"Absolute ownership unencumbered by any other interest or estate, subject only to the limitations imposed by the governmental powers of taxation, eminent domain, police power, and escheat"[2]

*Leased Fee Title* ....................................................................................................

"A title that signifies ownership of all the rights in a parcel of real property, subject only to the limitations of the four powers of government."[3]

*Leased Fee Interest* ................................................................................................

An ownership interest held by a landlord with the rights of use and occupancy conveyed by lease to others. The rights of the lessor (the leased fee owner) and the lessee are specified by contract terms contained within the lease.[4]

---

[1]    Uniform Standards Of Professional Appraisal Practice, ed. (Washington DC: Appraisal Standards Board of The Appraisal Foundation, 2003)

[2]The Dictionary of Real Estate Appraisal, 4th ed. (Chicago: The Appraisal Institute, 2002), p. 113.
[3]The Dictionary of Real Estate Appraisal, 4th ed. (Chicago: The Appraisal Institute, 2002), p. 113.
[4]The Dictionary of Real Estate Appraisal, 4th ed. (Chicago: The Appraisal Institute, 2002), p. 161.

---

# Important Definitions

*Leasehold Interest*..............................................................................................

The interest held by the lessee (the tenant or renter) through a lease transferring the rights of use and occupancy for a stated term under certain conditions. See also negative leasehold; positive leasehold.[5]

*Cooperative Ownership*..............................................................................................

A form of ownership in which each owner of shares in a cooperative corporation receives a *proprietary lease* for a specific unit within a building, and is obligated to pay a monthly maintenance charge that represents the proportionate share of operating expenses and debt service on the underlying mortgage on the entire building. This proportionate share is based on the proportion of the total shares owned in the corporation.

*Insurable Value*..............................................................................................

The value of an asset or asset group that is covered by an insurance policy can be estimated by deducting costs of non-insurable items (e.g., land value) from market value.[6]

---

[5] The Dictionary of Real Estate Appraisal, 4th ed. (Chicago: The Appraisal Institute, 2002), p. 162.
[6] The Dictionary of Real Estate Appraisal, 4th ed. (Chicago: The Appraisal Institute, 2002), p. 147.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 85 of 416

## PURPOSE OF THE APPRAISAL

This appraisal has been performed for the purpose of estimating the *As Is* and *As proposed Development* Market Value for the subject property, as of November 7, 2018. This report reflects the probable Market Value under typical selling conditions prevalent as of the date of inspection.

## FUNCTION OF THE APPRAISAL

The function of this appraisal is to assist *the client* in estimating the As Is Market Value of the subject property. It is of our understanding that the appraisal will be used for financing purposes.

## IDENTIFICATION OF THE PROPERTY

The subject property is located at 82 Highview Road and 105 Carlton Road in the Village of New Hempstead, in the town of Ramapo, Rockland County NY 10901. The subject property is identified in the Rockland County tax maps as Section 49.17, Block 2, Lots 42, 47 and 47.1. The total land area of the site is 14.74 acres, or 642,074+/- SF. The subject property is further identified within the body of this appraisal report.

## PROPERTY RIGHTS APPRAISED

This valuation estimates the as is **Fee Simple Estate.** No estimate of business value if any is included within the scope of this appraisal.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 86 of 416
RECEIVED NYSCEF: 03/18/2022

## *ESTIMATE OF EXPOSURE TIME*

### Exposure time is defined as:

*"The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal."[7]*

Based on discussions with brokers active in the local market, exposure time for properties similar to the subject have historically approximated six to twelve months, depending on the size, location, and condition of the property. Exposure time for the subject is estimated to be eight months.

## *ESTIMATE OF MARKETING TIME*

### Marketing time is defined as:

*"The time it takes an interest in real property to sell on the market, subsequent to the date of an appraisal."[8]*

Based on discussions with brokers active in the local market, marketing time for properties similar to the subject have historically been six to twelve months. I estimate the marketing time for the subject to be eight months.

---

[7] <u>The Dictionary of Real Estate Appraisal</u>, 4th ed. (Chicago: The Appraisal Institute, 2002), p. 105
[8] <u>The Dictionary of Real Estate Appraisal</u>, 4th ed. (Chicago: The Appraisal Institute, 2002), p. 175

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 87 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## Scope Of The Appraisal

The scope of the appraisal encompasses the necessary research and analysis to prepare the report in accordance with the intended use, the Standards of Professional Practice of **The Appraisal Institute**, and the Uniform Standards of Professional Appraisal Practice of **The Appraisal Foundation**. The steps typically involved in the valuation process are as follows:

1.  The subject property is physically inspected as of the date indicated in the **Transmittal Letter** and the subsequent **Summary and Conclusion** section of this report. Interior photographs included in this report are taken on the date of inspection. Exterior and area photographs are taken on or after the date of inspection.

2.  Regional, county, municipal and neighborhood data is based on information gathered from various sources including state agencies, newspaper publications, trade publications supplied by commercial sources, multiple listing systems, market participants (i.e. buyers - sellers - brokers) as well as the appraiser's physical inspection and analysis of the area.

3.  Data relating to the subject property is based on the appraiser's physical inspection of the improvements, as well as building plans and or site information supplied by municipal agencies or the owner, measurements made at the inspection, and information extracted from the deed as well as other similar documentation. In cases where the improvements are proposed information is based on available blueprints or other similar documentation.

4.  In estimating **The Highest and Best Use** for the subject property, an analysis is made of the data compiled in the previously noted steps. And; a study of the subject market area is conducted to determine which aspects of **The Highest and Best Use** are applicable to the subject.

5.  In developing applicable approaches to value the appraiser analyzes market data relevant to the subject. Sales of land, improved properties and leases similar to the subject are researched from a variety of sources which may include SR1A records, deed transactions reported by commercial information services, multiple listing services, interviews with municipal officials, realtors, other appraisers, and buyers and sellers. Whenever possible, information is verified by more than one source in order to guarantee its accuracy. The search for data begins in the subject community and is expanded into surrounding communities until sufficient data is collected.

6.  Only after assembling and analyzing the data defined in the **Scope of the Appraisal**, can the appraiser establish a final estimate of Market Value.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks    Pg 88 of 416

## City and Neighborhood Analysis



FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 89 of 416

# City and Neighborhood Analysis



FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 90 of 416

# City and Neighborhood Analysis



FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM INDEX NO. 036879/2021
NYSCEF DOC. NO. 32 RECEIVED NYSCEF: 03/18/2022

## City and Neighborhood Analysis





Aerial View

## City and Neighborhood Analysis

The subject property is located in the Town of Ramapo in Rockland County NY.

**Rockland County** is the southernmost county on the west side of the Hudson River in the U.S. state of New York, part of the New York–Newark–Jersey City, NY–NJ–PA Metropolitan Statistical Area. The county's population, as of the 2010 census, was 311,687, increasing by 4.6% to a 2015 Census estimate of 326,037, making it the third most densely populated county outside of New York City within New York State (after Nassau and neighboring Westchester counties, respectively). The county seat is New City. Although Rockland County does not directly border any New York City boroughs, it lies only 9 miles northwest of the city at their closest points, and is accessible through 10 exits on the New York State Thruway.

Rockland County is the smallest county by area in New York Upstate outside of New York City. It comprises five towns and nineteen incorporated villages, with numerous unincorporated villages (sixteen) and hamlets. Rockland County is designated as a Preserve America Community, and roughly one-third of the county is parkland. Rockland also ranks 9th on the list of highest-income counties by median household income in the United States with $75,306 according to the 2000 census. In 2015, Suffern was named as the best place to start a business in New York by Nerd Wallet. Nerd Wallet also included the villages of Haverstraw, West Haverstraw and Spring Valley in their report.

**Town of Ramapo**

**Ramapo**, formerly known as New Hempstead and then Hampstead, is a town in Rockland County, New York, United States, located north of Bergen and Passaic Counties in New Jersey, southeast of Orange County, New York, south of the town of Haverstraw, and west of the towns of Clarkstown and Orangetown. As of the 2010 census, Ramapo had a total population of 126,595.

## City and Neighborhood Analysis

Ramapo is in the southwest corner of Rockland County, consisting of about one-third of the county's land area. In 2006 *Money* magazine ranked Ramapo as the 49th best place in the United States and the best place in New York State to live. Arts and leisure, business, housing, low crime rates and open spaces/parkland determined the towns ranking. In the category of park space, percentage of land set aside for gardens and parks, the town finished first. The town received the highest rating and one of the best in the country for its open spaces and parkland.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 94 of 416

# Census Demographic Data

FFIEC

2017 FFIEC Geocode Census Report

Address: 82 HIGHVIEW RD, SUFFERN, NY, 10901
MSA: 35614 - NEW YORK-JERSEY CITY-WHITE PLAINS, NY-NJ
State: 36 - NEW YORK
County: 087 - ROCKLAND COUNTY
Tract Code: 0116.02

Summary Census Demographic Information

| Tract Income Level | Upper |
|---|---|
| Underserved or Distressed Tract | No |
| 2017 FFIEC Estimated MSA/MD/non-MSA/MD Median Family Income | $73,700 |
| 2017 Estimated Tract Median Family Income | $141,327 |
| 2010 Tract Median Family Income | $136,162 |
| Tract Median Family Income % | 191.78 |
| Tract Population | 5546 |
| Tract Minority % | 17.18 |
| Tract Minority Population | 953 |
| Owner-Occupied Units | 1372 |
| 1- to 4- Family Units | 1710 |

Census Income Information

| Tract Income Level | Upper |
|---|---|
| 2010 MSA/MD/statewide non-MSA/MD Median Family Income | $72,047 |
| 2017 FFIEC Estimated MSA/MD/non-MSA/MD Median Family Income | $73,700 |
| % below Poverty Line | 8.37 |
| Tract Median Family Income % | 191.78 |
| 2010 Tract Median Family Income | $136,162 |
| 2017 Estimated Tract Median Family Income | $141,327 |
| 2010 Tract Median Household Income | $64,387 |

Census Population Information

| Tract Population | 5546 |
|---|---|
| Tract Minority % | 17.18 |
| Number of Families | 1209 |
| Number of Households | 1299 |
| Non-Hispanic White Population | 4593 |
| Tract Minority Population | 953 |
| American Indian Population | 0 |
| Asian/Hawaiian/Pacific Islander Population | 333 |
| Black Population | 201 |
| Hispanic Population | 205 |
| Other/Two or More Races Population | 214 |

Census Housing Information

| Total Housing Units | 2213 |
|---|---|
| 1- to 4- Family Units | 1710 |
| Median House Age (Years) | 33 |
| Owner-Occupied Units | 1372 |
| Renter-Occupied Units | 617 |
| Owner Occupied 1- to 4- Family Units | 1270 |
| Inside Principal City? | NO |
| Vacant Units | 221 |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32                                                    RECEIVED NYSCEF: 03/18/2022

INDEX NO. 036879/2021

## Census Demographic Data



## Census Demographic Data



**Economic Market**

# Federal Reserve Bank of New York

# Beige Book - July 12, 2017

Summary of Economic Activity

Economic activity in the Second District has expanded at a modest pace since the last report, while labor markets have tightened further. Input price pressures have eased slightly, while selling prices have continued to rise modestly. Manufacturers noted a pickup in business activity, while the various service industries indicated mixed results. Consumer spending has picked up a bit since the last report, and consumer confidence has remained close to a cyclical high. Housing markets have strengthened, while commercial real estate markets were mixed but slightly softer. New residential construction activity has been steady at a subdued level, while commercial construction has picked up modestly. Banks reported that loan demand was steady to softer, while delinquency rates continued to decline.

**Employment and Wages**

The labor market has continued to tighten since the last report. Contacts at employment agencies noted that hiring has picked up and that jobs have become harder to fill. A major New York City employment agency noted a pickup in hiring, especially from financial firms. In upstate New York, there has been a pickup in demand for both full-time and temporary workers--particularly for administrative and customer-care workers. Contacts also noted an ongoing shortage of software developers and skilled workers more generally.

Manufacturers have continued to add jobs but at a somewhat slower pace than in the last report. Businesses in the finance, wholesale trade, real estate and construction sectors report that they are hiring, on net, while those in the restaurant & hotel industry

## Economic Market

indicated some cutbacks in staffing levels. Businesses in manufacturing and most service industries expected to add jobs, on net, in the months ahead.

Overall, wages are reported to have risen moderately, though contacts in the transportation, warehousing, wholesale trade, and leisure & hospitality industries report more widespread increases in wages.

### Prices

Businesses generally reported upward pressure on input prices but to a lesser degree than in the last report, while selling prices continued to rise modestly. Those in the wholesale and transportation industries reported modest increases in selling prices, on balance, while businesses in other sectors indicated little change.

General merchandise retailers reported that prices have been steady, while New York City hotels indicated that room rates have slipped modestly. In contrast, Broadway theaters noted rising ticket prices, with the average price up 10-15 percent from a year earlier.

### Consumer Spending

Retailers reported that sales have weakened, on balance, while they expect business to be generally steady for the second half of the year. Retailers in upstate New York reported that both shopper traffic and sales have been flat at weak levels. A major retail chain noted that sales were roughly on plan, though they weakened a bit from May to June. Retail business in New York City, which had been particularly soft, improved slightly. Inventories were generally at or below normal levels, while prices were steady to up modestly.

Auto dealers in upstate New York reported that sales of new vehicles picked up in May and early June and were up from a year ago. Vehicle inventory levels have crept up, but dealers are generally optimistic about the outlook. One contact noted that used vehicle sales have picked up, while another reports that they are steady. Retail and wholesale

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 99 of 416

## Economic Market

credit conditions were characterized as favorable, but credit remains tight on sub-prime auto loans.

Consumer confidence in the Middle Atlantic states (NY, NJ, PA) edged down in June but remained near its cyclical high set in March.

### Manufacturing and Distribution

Manufacturers reported that business activity has picked up substantially since the last report. Businesses in the wholesale trade and transportation industries, however, continued to report subdued growth. Similarly, while manufacturers remain broadly optimistic about the outlook for the second half of this year, those in transportation and wholesale trade remain only mildly upbeat.

### Services

Businesses in most service industries reported steady to moderately growing business activity. Contacts in professional and business services noted a pickup in activity and expressed widespread optimism about the near-term outlook. Contacts in education & health services noted a slowdown in growth, while information industry contacts reported little change in activity.

The leisure & hospitality sector has been mixed. A number of contacts have reported a pullback in activity, coupled with increased pessimism about the outlook. While tourism activity in New York City has remained fairly buoyant, advanced travel bookings are reported to be down, especially from abroad. In general, visitors are reported to be spending less--partly reflecting a shift toward more domestic and fewer international visitors. On a more positive note, Broadway theater attendance and revenues were reported to be fairly strong in May and June. Tourism was described as strong in the Finger Lakes region of upstate New York.

## Economic Market

### Real Estate and Construction

Housing markets across the District have strengthened somewhat. Sales volume has picked up throughout the New York City area--particularly for moderately-priced, single-family homes in outlying areas. In contrast, sales activity has slowed a bit in parts of upstate New York, restrained by a lack of homes on the market.

A real estate contact in upstate New York State reported continued escalation in home prices, with homes in more sought-after areas often selling for above the list price. Selling prices of both single-family homes and apartments have also picked up in and around New York City, though prices of Manhattan condos and co-ops have risen only marginally. New York City's rental market has remained mostly steady. Rents remain flat overall--rising on smaller, less expensive units but declining on larger and pricier apartments. Landlord concessions have stopped rising but are more prevalent than usual.

Commercial real estate markets have been mixed but slightly softer on balance. The market for office space has been steady to slightly weaker: availability rates edged up, while asking rents slipped in New York City but were little changed elsewhere. However, the industrial market has strengthened further, with availability rates declining and asking rents up roughly 10 percent over the past year. In contrast, the market for retail space has continued to slacken, with vacancy rates rising to multi-year highs and asking rents little changed.

Both single-family and multi-family new home construction has been steady at a fairly subdued level, though there is still a good deal of multi-family development under construction. Commercial construction, on the other hand, has picked up. New office construction has expanded noticeably in northern New Jersey and New York City's outer boroughs but has been fairly restrained in other parts of the District. Industrial

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM                INDEX NO. 036879/2021
NYSCEF DOC. NO. 32                                               RECEIVED NYSCEF: 03/18/2022

## Economic Market

construction has picked up in northern New Jersey but has remained flat and fairly subdued elsewhere.

### Banking and Finance

Small to medium sized banks reported weaker demand for consumer loans, but no change in demand for residential mortgages, commercial mortgages, or commercial & industrial loans. Refinancing activity decreased for all types of loans. Bankers reported slightly easier credit standards for residential mortgages, and unchanged standards in other loan categories. Bankers indicated narrowing spreads of loan rates over cost of funds for all types of loans. Respondents also noted an increase in the average deposit rate. Banks reported lower delinquency rates across all loan categories--particularly on consumer and residential mortgage loans.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 102 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## Site Description

In the site description section, the off-site, as well as on-site, improvements that make the site ready for its intended use or development are described. Any on-site improvements that add to or detract from a property's probable optimum use are noted. The quality, condition, and adequacy of sewers, curbs, utility hookups, and other improvements influence a site's use and value. This section describes land improvements such as grading, landscaping, fences, curbs, gutters, paving, walks, roads, and other man-made land improvements. The value of site improvements is typically considered part of site value.

| | |
|---|---|
| **Location:** | 82 Highview Road and 105 Carlton Road  Ramapo, New York |
| **Block/Lot:** | Section 49.17, Block 2, Lots 42, 47 and 47.1 |
| **Lot Size:** | 14.74 acres, or 642,074+/- SF |
| **Census Tract:** | 116.02 |
| **Frontage:** | The property possesses 369± front feet on Highview Road. and 27± front feet on Carlton Road. |
| **Shape:** | Irregular |
| **Ingress / Egress:** | Pedestrian and vehicle access is via Highview Road. |
| **Topography & Terrain:** | The site is level and at grade with the surrounding roadways. The property is improved with the building and site developments. No adverse soil conditions were apparent at the time of inspection, and based on the existence of the subject improvements and other neighboring structures, the load bearing qualities of the soil appear to be adequate. |
| **Site Improvements:** | Based on an inspection of the subject property the site improvements are in good condition. |
| **Flood Plain:** | The site is not located within 500 feet of a flood zone (Zone X) according to FEMA map panel number 36087C0152G, dated 03/03/2014. |

## Improvements Description

General construction features of the structure are summarized below:

| | |
|---|---|
| *GBA:* | Total: 13,468+/-SF GBA |
| *Year Built:* | 1980 |
| *Framing:* | Brick, masonry load bearing walls |
| *Exterior Walls:* | Street facing exterior walls are brick. |
| *Windows:* | Basic double hung/casement. |
| *HVAC:* | Adequate. |
| *Elevators:* | None |
| *Roof:* | Shingle. |
| *Plumbing & Sewage:* | Water and sewer lines are provided by the municipality. |
| *Electrical & Lighting Systems:* | Adequate. |
| *Sprinklers:* | Yes |
| *Parking:* | Adequate Parking |

As per the client, the subject proposed adult-student-housing improvements will consist of 36, two story walk-up apartment buildings with a total of 180 residential units plus an existing two story school building. The total complex gross building area will consist of 277,468+/- square feet above grade.

## Taxes And Assessments

Existing assessment trends or prospective changes in tax rates were analyzed. Current assessed values and ad valorem tax rates are reported as of the date of inspection and a calculation of the current annual tax load of the subject property is included. [9]

**"Assessed value applies in *ad valorem taxation* and refers to the value of the property according to the tax rolls. Assessed value <u>may not conform</u> to market value, but it is usually calculated in relation to a Market Value base."**[10]

The 2016/17 real estate taxes and assessments for the subject property are described as follows. :

| Block 49.17-2 | Lot 42 | Lot 47 |
|---|---|---|
| Market Value | $1,669,860 | $1,842,299 |
| Assessment Ratio | 13.57% | 13.57% |
| Assessed Value (actual) | $226,600 | $250,000 |
| Town Tax | $26,750 | $26,716 |
| School Tax | $42,556 | $46,951 |
| Tax Bill -2016/2017 | $69,306 | $73,666 |

---

[9] The Appraisal Of Real Estate, 12th ed. (Chicago: Appraisal Institute, 2001), p. 624.
[10]      The Appraisal Of Real Estate, 12th ed. (Chicago: Appraisal Institute, 2001), p. 29.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 105 of 416

# Taxes And Assessments

**Town of Ramapo Real Property Assessment Information**

Town Identification: Active Town Assessor

## Assessment Report

| Tax Year | Uniform % of Value | Roll Section | Municipality |
|---|---|---|---|
| 2017 Tentative | 13.57 | 1 | RAMAPO |

**Assessment Details**

| | |
|---|---|
| Assessed Total Value | $226,800 |
| Assessed Land Value | $40,000 |
| Market Value | $1,680,560 as of 7/1/2016 |
| Parcel ID | 49.17-2-42 |
| SWIS | 392889 |

**Property Details**

| | |
|---|---|
| Legal Address | 20 HIGHVIEW RD |
| Type | Commercial |
| Property Class | 612 - Schools |
| Acreage | 2.01 |
| Frontage | |
| Depth | |
| Neighborhood | 68822 |
| School District | RAMAPO CENTRAL |

**Site Details**

| | | | |
|---|---|---|---|
| Use Description | School | Unit Type | 223 |

**Parcel Owner**

| | |
|---|---|
| Name | TD BANK NA |
| | COBA INC |
| Address | 70 GRAY ROAD |
| City | WEST FALMOUTH |
| State & Zip | ME 04105 |

**Sale Details**

| | |
|---|---|
| Sale Price | $2,670,000 |
| Sale Date | 8/28/2013 |
| Deed Book | 2014 |
| Deed Page | 3907 |

Start a New Search

*Republic Valuations*

# Taxes And Assessments

Town of Ramapo Real Property Assessment Information

Tom Maccafeld, Acting Town Assessor

## Assessment Report

| Tax Year | Uniform % of Value | Roll Section | Municipality |
|---|---|---|---|
| 2017 Tentative | 13.57 | 1 | RAMAPO |

**Assessment Details**

| | |
|---|---|
| Assessed Total Value | $250,000 |
| Assessed Land Value | $250,000 |
| Market Value | $1,842,299 as of 7/1/2016 |
| Parcel ID | 49.17-1-47 |
| SWIS | 392689 |

**Property Details**

| | |
|---|---|
| Legal Address | 106 CARLTON RD |
| Type | Commercial |
| Property Class | 312 - Res Ind Incl sm. improvio lot |
| Acreage | 11.74 |
| Frontage | |
| Depth | |
| Neighborhood | |
| School District | RAMAPO CENTRAL |

**Site Details**

| | |
|---|---|
| Use Description | |
| Unit Type | |

**Parcel Owner**

| | |
|---|---|
| Name | TD BANK N A |
| | OREO DEPT |
| Address | 70 GRAY ROAD |
| City | WEST FALMOUTH |
| State & Zip | ME 04105 |

**Sale Details**

| | |
|---|---|
| Sale Price | $2,870,000 |
| Sale Date | 8/20/2013 |
| Deed Book | 2014 |
| Deed Page | 3807 |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO.: 32

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 107 of 416

# Taxes And Assessments

Town of Ramapo Real Property Information

**Nathan M. Oberman**, *Receiver of Taxes*
**Tom MacRobbie**, *Acting Town Assessor*

## 2016  School Report

| SWIS S/BIL | 392689 49.17 2 42 |
|---|---|
| ADDRESS | 82 HIGHVIEW RD |
| OWNER | TD BANK NA |
| MUNICIPALITY | RAMAPO |
| SCHOOL | RAMAPO CENTRAL |
| PARCEL TYPE | 141School |
| ROLL SECTION | 1 |
| PARCEL DIMENSIONS | Acreage = 2.01 |
| BANK CODE | |
| ACCOUNT NUMBER | 0044953C0000 |
| LAND VALUE | $40,000.00 |
| TOTAL VALUE | $226,600.00 |

SCHOOL 2016

**TAX INFORMATION**
**PROPERTY TAXES - **NON-HOMESTEAD PARCEL**

| Taxing Purpose | Total Tax Levy | Prior Year % Change | Taxable Assessed Value/Units | Rates per $1000 or Unit | Tax Amount |
|---|---|---|---|---|---|
| RAMAPO CENTRAL | $103,346,427.00 | 0.1% | $226,600.00 | 180.507055 | $40,857.53 |
| SUFFERN FREE LIBRARY | $3,230,503.00 | 0.6% | $226,600.00 | 5.638223 | $1,277.17 |
| | | | | Subtotal | $42,134.75 |
| | | | | Star Exemptions | $0.00 |
| | | | | Subtotal | $42,134.75 |
| | | | | Town Fee | $421.35 |
| ** Note: Amount displayed is the amount from your ORIGINAL TAX BILL and does not include penalties and additional charges paid. | | | | Total: | $42,556.10 |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 108 of 416

# Taxes And Assessments

## 2016  School Report

| SWIS S/B/L | 392889  49.17-2-47 |
|---|---|
| ADDRESS | 105 CARLTON RD |
| OWNER | TD BANK N A |
| MUNICIPALITY | RAMAPO |
| SCHOOL | RAMAPO CENTRAL |
| PARCEL TYPE | 14(Res Ind incl sm impr, rb-y) |
| ROLL SECTION | 1 |
| PARCEL DIMENSIONS | Acreage = 11.74 |
| BANK CODE | |
| ACCOUNT NUMBER | 00449620000 |
| LAND VALUE | $240,000.00 |
| TOTAL VALUE | $250,000.00 |

SCHOOL 2016

**TAX INFORMATION**
**PROPERTY TAXES - ""HOMESTEAD PARCEL'"**

| Taxing Purpose | Total Tax Levy | Prior Year % Change | Taxable Assessed Value/Units | Rates per $1000 or Unit | Tax Amount |
|---|---|---|---|---|---|
| RAMAPO CENTRAL | $103,346,427.00 | 0.1% | $250,000.00 | 180.307058 | $45,076.76 |
| SUFFERN FREE LIBRARY | $3,290,506.00 | 0.8% | $250,000.00 | 5.636223 | $1,409.06 |
| | | | | Subtotal: | $46,485.82 |
| | | | | Star Exemptions | $0.00 |
| | | | | Subtotal: | $46,485.82 |
| | | | | Town Fee: | $464.86 |
| "" Note: Amount displayed is the amount from your ORIGINAL TAX BILL and does not include penalties and additional charges paid. | | | | Total: | $46,950.68 |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 32

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 109 of 416

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

# Taxes And Assessments

Town of Ramapo Real Property Information

**Nathan M. Oberman,** *Receiver of Taxes*
**Tom MacRobbie,** *Acting Town Assessor*

## 2017  Town Report

| SWIS S/B/L | 392689 49 17-2-42 |
|---|---|
| ADDRESS | 82 HIGHVIEW RD |
| OWNER | TD BANK NA |
| MUNICIPALITY | RAMAPO |
| SCHOOL | RAMAPO CENTRAL |
| PARCEL TYPE | School(s) |
| ROLL SECTION | |
| PARCEL DIMENSIONS | Acreage 2.01 |
| BANK CODE | |
| ACCOUNT NUMBER | 00448530000 |
| LAND VALUE | $40,000.00 |
| TOTAL VALUE | $226,600.00 |

TOWN 2017

**TAX INFORMATION**
**PROPERTY TAXES - **NON-HOMESTEAD PARCEL****

| Taxing Purpose | Total Tax Levy | Prior Year % Change | Taxable Assessed Value/Units | Rates per $1000 or Unit | Tax Amount |
|---|---|---|---|---|---|
| TOWN POLICE | $44,884,604.00 | 12.2% | $226,600.00 | 33.596001 | $7,613.31 |
| UNINCORP TOWN | $4,677,227.00 | 13% | $226,600.00 | 8.549601 | $1,937.34 |
| *COUNTY | $120,915,000.00 | 1.1% | $226,600.00 | 24.914859 | $5,645.71 |
| TOWN OUT/HIGHWAY | $2,201,046.00 | 13% | $226,600.00 | 4.0234 | $911.70 |
| GENERAL TOWN | $20,418,008.00 | 11.6% | $226,600.00 | 12.5313 | $2,839.62 |
| AMBULANCE DIST #1 | $4,986,756.00 | 0% | 226600 | 2.878903 | $651.31 |
| CO COMP | $21,461,577.00 | 0% | 6 | 17.570003 | $105.42 |
| GREEN WASTE | $21,462,577.00 | 0% | 1 | 16.890002 | $16.89 |
| MATERIALS RECOVERY | $21,461,577.00 | 0% | 1 | 16.52 | $16.52 |
| RAMAPO GARBAGE DIST | $3,284,989.00 | 0% | 226600 | 5.564002 | $1,260.80 |
| RAMAPO LIGHTING DIST | $1,213,789.00 | -18.2% | 226600 | 2.077 | $470.65 |
| SEWER DISTRICT RR | $38,787,125.00 | 0% | 226600 | 3.659879 | $829.33 |
| SEWER DISTRICT RR | $38,787,125.00 | 0% | 6 | 398.676402 | $2,392.05 |
| SOL WASTE DISP C | $21,462,577.00 | 0% | 226600 | 2.37485 | $537.42 |
| TALLMAN FD | $1,669,390.00 | 1.2% | 226600 | 4.4129 | $963.56 |
| TRANSFER STATION CHG | $2,027,281.00 | 0% | 1 | 19.270002 | $19.27 |
| WATER FIRE HYDRANTS | $2,884,492.00 | -17% | 226600 | 2.2136 | $502.00 |

** Note: Amount displayed is the amount from your ORIGINAL TAX BILL and does not include penalties and additional charges paid.

Total: $26,749.93

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 110 of 416

# Taxes And Assessments

## 2017  Town Report

| SWIS S/B/L | 392689 49 17-2-47 |
|---|---|
| ADDRESS | 105 CARLTON RD |
| OWNER | TD BANK N A |
| MUNICIPALITY | RAMAPO |
| SCHOOL | RAMAPO CENTRAL |
| PARCEL TYPE | Res ind incl. sm. imprv. no liv |
| ROLL SECTION | 1 |
| PARCEL DIMENSIONS | Acreage = 11.74 |
| BANK CODE | |
| ACCOUNT NUMBER | 0348520000 |
| LAND VALUE | $250,000.00 |
| TOTAL VALUE | $250,000.00 |

TOWN  2017

**TAX INFORMATION**
**PROPERTY TAXES - **HOMESTEAD PARCEL**

| Taxing Purpose | Total Tax Levy | Prior Year % Change | Taxable Assessed Value/Units | Rates per $1000 or Unit | Tax Amount |
|---|---|---|---|---|---|
| **COUNTY | $120,015,000.00 | 1.1% | $250,000.00 | 24.914856 | $6,228.71 |
| UNINCORP TOWN | $4,677,227.00 | 13% | $250,000.00 | 8.549601 | $2,137.40 |
| TOWN OUT/HIGHWAY | $2,201,048.00 | 13% | $250,000.00 | 4.0284 | $1,005.85 |
| GENERAL TOWN | $20,418,008.00 | 11.6% | $250,000.00 | 12.5314 | $3,132.85 |
| TOWN POLICE | $44,854,804.00 | 12.2% | $250,000.00 | 33.598001 | $9,399.50 |
| AMBULANCE DIST #1 | $4,896,756.00 | 0 % | 250000 | 2.876902 | $719.23 |
| GREEN WASTE | $21,462,877.00 | 0 % | 1 | 16.880002 | $16.89 |
| RAMAPO GARBAGE DIST | $3,254,059.00 | 0 % | 250000 | 5.564002 | $1,391.00 |
| RAMAPO LIGHTING DIST | $1,213,759.00 | -18.3% | 250000 | 2.077 | $519.25 |
| SEWER DISTRICT RR | $38,787,128.00 | 0 % | 250000 | 3.658879 | $914.37 |
| SOL WASTE DISP C | $21,462,277.00 | 0 % | 250000 | 2.37169 | $592.92 |
| TALLMAN FD | $7,889,360.00 | 1.2 % | 250000 | 4.4129 | $1,103.23 |
| WATER FIRE HYDRANTS | $2,884,492.00 | -17 % | 250000 | 2.2155 | $553.88 |

** Note: Amount displayed is the amount from your ORIGINAL TAX BILL and does not include penalties and additional charges paid.     Total: $26,715.68

*Republic Valuations*     55

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## Taxes And Assessments



**PLAT MAP**

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## Taxes And Assessments



**PLAT MAP**

**Flood Map**



**FLOOD INFORMATION**

Community: Town of Ramapo
Property is NOT in a FEMA Special Flood Hazard Area
Map Number: 36087C0152G
Panel: 0152G
Zone: X
Map Date: 03-03-2014
FIPS: 36087
Source: FEMA DFIRM

**LEGEND**

Road View

Sky Flood™

## FLOOD MAP

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 03/18/2022
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 114 of 416

## Zoning

Land use and development may be regulated by city or county government, but it is often also subject to regional, state, and federal controls as well. In analyzing zoning and building codes, an appraiser considers all current regulations and the likelihood of a change in the code. Usually a zone calls for a general use, such as residential, commercial or industrial, and then specifies a type or density of use. Zoning regulations may control the height and size of buildings, lot coverage, the number of units allowed, parking requirements, sign requirements, building setbacks, and other factors of importance to the highest and best use of the site.

Because land use restrictions and government programs in an area can affect land uses, they can also affect values. The construction of a specific type of property may enhance or detract from the value of the site and or any existing improvements, not to mention neighboring or adjoining uses. One of the criteria for the highest and best use conclusion is that the use must be legally permissible.

For the purpose of this appraisal "zoning" is defined as follows:

> "The public regulation of the character and extent of real estate use through police power accomplished by establishing districts or areas with uniform restrictions relating to improvements, structure heights, areas, bulk, density of population, and other limitations on the use and development of private property.[11]

The appraiser has studied all the available zoning data and has determined that the subject property is located in the **R-25 Residential Zone.**

The subject was granted the RSH-Specialized Housing Residential which permits a superior FAR development for adult-student-housing facility District zoning. to 16 units per acre to a total of 235 residential units.

---

[11]    **The Dictionary of Real Estate Appraisal,** 4th ed. (Chicago: American Institute of Real Estate Appraisers, 2002), p. 316.

## Zoning

### Zoning Conclusion



**Subject R-25 Residential Zone**

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks    Pg 116 of 416

## Zoning

*Note: The appraiser is not expert in analysis of the municipal zoning regulations.  If there is any question regarding zoning, it is recommended that a zoning expert be consulted.



22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 117 of 416

Town of Ramapo, New York
Table of General Use Requirements
Part I: Residential Districts
§§ 190-14d, RR-50 Districts, § 376-31
[Amended 8-14-2006 by L.L. No. 4-2006; 11-28-2016 by L.L. No. 7-2013]

Republic Valuations
82

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 118 of 416

ZONING

*376 Attachment 5*

**Town of Ramapo, New York**
**Table of Bulk Requirements**
**Part 1**
**§ 376-41**
**[Amended 6-14-2006 by L.L. No. 4-2006]**

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Use Group | Minimum Lot Area | Lot Width (feet) | Front Setback (feet) | Front Yard (feet) | Side Setback (feet) | Total Side Setback (feet) | Side Yard (feet) | Rear Setback (feet) | Rear Yard (feet) | Street Frontage (feet) | Maximum Height (feet) | Development Coverage | Floor Area Ratio (FAR) |
| a | None | n/a | 50 | 0 | 50 | 60 | 0 | 50 | 0 | 15 | 15 | 5% | n/a |
| b | 10 acres | 400 | 100 | 100 | 100 | 200 | 0 | 100 | 0 | 15 | 35 | 25% | 0.20 |
| c | 5 acres | 400 | 100 | 50 | 100 | 200 | 75 | 100 | 75 | 300 | 35 | 25% | 0.20 |
| d | 2 acres | 200 | 100 | 100 | 100 | 200 | 25 | 100 | 25 | 50 | 35 | 10% | 0.20 |
| e | 100,000 square feet | 200 | 50 | 50 | 50 | 100 | 10 | 50 | 10 | 150 | 35 | 20% | 0.40 |
| e.1 | 30,000 square feet | 200 | 50 | 50 | 50 | 100 | 10 | 50 | 10 | 150 | 35 | 20% | 0.40 |
| f | 10 acres | 400 | 100 | 100 | 100 | 200 | 50 | 100 | 100 | 300 | 45 | 30% | 0.30 |
| g | 2 acres | 200 | 100 | 100 | 100 | 200 | 25 | 100 | 25 | 50 | 35 | 20% | 0.20 |
| h | 50,000 square feet | 175 | 50 | 50 | 50 | 75 | 10 | 50 | 10 | 100 | 35 | 20% | 0.40 |
| k | 2 acres | 200 | 100 | 50 | 50 | 100 | 15 | 75 | 15 | 200 | 35 | 40% | 0.20 |
| l | 20,000 square feet | 100 | 20 | 20 | 0(10) | 0 | 0 | 25 | 10 | 100 | 45 | 75% | 1.5 |
| m | 40,000 square feet | 160 | 50 | 50 | 25 | 70 | 10 | 50 | 10 | 160 | 35 | 50% | 0.40 |
| n | 10 acres | 600 | 100 | 20 | 80 | 100 | 20 | 50 | 10 | 660 | 45 | 65% | 0.85 |
| q | 25,000 square feet | 150 | 50 | 50 | 25 | 80 | 10 | 50 | 10 | 160 | 35 | 40% | 0.40 |
| r | 25,000 square feet | 125 | 35 | 35 | 20 | 50 | 15 | 35 | 15 | 80 | 35 | 50% | 0.20 |
| r.1 | 15,000 | 100 | 35 | 35 | 15 | 20 | 5 | 35 | 5 | 85 | 35 | 50% | 0.40 |

*376 Attachment 5.1*

07 - 01 - 2014

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 119 of 416

## Zoning

RAMAPO CODE

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 |
|---|---|---|---|---|---|---|---|---|----|----|----|----|----|
| Use Group | Minimum Lot Area | Lot Width (feet) | Front Setback (feet) | Front Yard (feet) | Side Setback (feet) | Total Side Setback (feet) | Side Yard (feet) | Rear Setback (feet) | Rear Yard (feet) | Street Frontage (feet) | Maximum Height (feet) | Development Coverage | Floor Area Ratio (FAR) |
| | square feet | | | | | | | | | | | | |
| x.2 | 20,000 square feet | 125 | 35 | 35 | 20 | 50 | 5 | 35 | 5 | 125 | 35⁵ | 55% | 0.40 |
| x.3 | 10,000 square feet | 62.5 | 35 | 35 | 20³ | 20³ | 10 | 15³ | 5 | 62.5 | 35⁵ | 55% | 0.40³ |
| x.4 | 4 AC | 150 | 35 | 35 | 35⁴ | 70 | 20 | 35 | 20 | 150 | 40 | 65% | 0.75 |
| x.5 | 4 AC | 400 | 50 Town/County 100 State | 35 | 35 | 70 | 20 | 35 | 20 | 150 | 40 | 65% | 0.75 |
| x.6 | 15 | 150 | 25 | 25 | 15 | 30 | 10 | 25 | 20 | 150 | 40 | 65% | 0.80 |
| x.1 | 25,000 square feet | 125 | 35 | 35 | 20 | 50 | 10 | 35 | 10 | 90 | 33 | 65% | 0.25 |

**NOTES:**
¹ The floor area ratio (FAR) for this use group in the R-15C Zoning District shall be 0.90
² The side setback and total side setback in the R-15C Zone shall be 10 feet.
³ The rear setback in the R-15C Zone shall be 30 feet.
⁴ The side setback shall be 10 feet if adjoining a railroad right-of-way.
⁵ The maximum height in the R-15C Zone shall be 40 feet, for the purpose of enhancing roof design

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 120 of 416

ZONING

Town of Ramapo, New York
Table of General Use Requirements
Part I: Residential Districts
R-80, R-50 and R-15 Districts
§ 376-24

[Amended 6-16-2006 by L.L. No. 6-2006; 5-16-2012 by L.L. No. 6-2012]

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM INDEX NO. 036879/2021
NYSCEF DOC. NO. 32 RECEIVED NYSCEF: 03/18/2022

## Zoning

RAMAPO CODE

| |
|---|
| [illegible] |

Republic Valuations 66

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 122 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## Zoning

### § 376-127. Adult student housing.

The standards for adult student housing shall be as follows:

A.  The housing must be accessory to and on the same site as an approved postsecondary educational institution.

B.  Married students and faculty must be full time and the duration of residency shall be limited to the period of full-time study or teaching. If a person ceases to be eligible for occupancy, said person and family must vacate his/her dwelling unit within 90 days.

C.  The gross density shall not exceed 16 units per acre.

D.  The minimum lot size shall be four acres and the maximum lot size shall not exceed 12 acres.

E.  The project must be located on an already existing lot which meets the lot size requirements or on a lot created by subdivision from a larger existing lot and may not be the result of the combination of existing lots which separately fail to meet the lot size requirements. Upon creation of a lot for an adult student housing project, no further subdivision shall be permitted of any lot to create another site for adult student housing.
[Amended 4-16-2008 by L.L. No. 4-2008]

F.  The duration of a student's residency shall not exceed six years unless extended by the Planning Board for good cause upon written request. Good cause shall include, but not be limited to, a longer period of full-time study consistent with recognized religious practice or belief.

G.  Fifty percent of the dwelling units shall be either one- or two-bedroom units. The remaining 50% of the dwelling units may be three- or four-bedroom units. No more than 10% of the dwelling units may be occupied by faculty.

H.  The educational institution must occupy at least 10% of the project site.

I.  The size of the dwelling units shall be as follows:

    (1)  One- or two-bedroom units shall be no greater than 1,000 square feet.

    (2)  Three- or four-bedroom units shall be no greater than 2,000 square feet.

J.  It shall be the duty of the owner and occupant (student or faculty) to jointly file a certification with the Building Inspector indicating compliance with this section's requirements relating to the status of all occupants of each dwelling unit. Such certification shall be filed no later than January 1st of each year. Failure to file such certification shall be reported to the Planning Board which may revoke the approval after a public hearing.

K.  The project must comply with Chapter 144, Fire Prevention, of the Code of the Town of Ramapo. All buildings must be fully sprinklered and sprinklered.

L.  The units shall not be occupied by anyone other than adult married students, faculty members, spouses and minor children of married students and faculty.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 123 of 416
RECEIVED NYSCEF: 03/18/2022

# Zoning

M. If the postsecondary educational institution is discontinued, the approval for adult student housing shall automatically cease. The dwelling units must be vacated within six months of the discontinuance.

N. An applicant shall be required to identify all similar adult student housing projects within a useable 5 mile radius (measured from the edges of the property lines). In this area the total acreage of similar facilities together with the proposed project exceeds 5% of the surrounding area, the Planning Board shall decline to issue an approval if it determines that the application shall detrimentally impact the character of the area. In making such determination, the Board shall consider whether the proposed use will be of a location, size and character that it will be in harmony with the appropriate and orderly development of the area and not be detrimental to the use on nearby properties in accordance with the zoning classification of such properties.

O. The minimum distance between buildings shall be 20 feet.

P. The maximum building height is 35 feet.

Q. Central refuse collection areas shall be located for the convenience of all dwelling units. They shall be supplied with an adequate number and type of covered receptacles and shall be provided with proper screening and maintenance. Such areas shall not be located in the required front yard.

R. There shall be provided on site a minimum of 100 square feet per dwelling unit of usable outdoor recreation area. Such recreation area(s) that include playground equipment and/or other recreational facilities as determined by the Planning Board and shall be located in a safe and convenient location on the site.

S. The project shall be suitably landscaped with perimeter, foundation, parking lot and building plantings as required by the Planning Board.

T. The project shall provide a separate and off-road bus stop located on site along the street access which may be within the required front yard. The bus stop must be designed to ensure safe pickup and dropoff of children and to minimize impact on traffic flow. This requirement is subject to approval of the respective highway and school jurisdictions.
[Amended 01-10-2006 by L.L. 11-2006]

U. The project must undergo architectural review by the Community Design Review Committee.

V. No outside catering for nonresidents shall be permitted in the postsecondary educational institution. The postsecondary educational institution shall not contain commercial kitchen facilities.

W. All projects shall provide proper access for firefighting and emergency equipment and vehicles and shall provide hydrants in such number and location and with such water pressure as may be approved by the Planning Board based upon the recommendation of the Building Inspector and Fire Department.

X. All projects shall be connected to public water and sewer systems.

Y. No structure shall be located within 500 feet of abutting land with a village which is residentially zoned at a density of one dwelling unit per acre or less dense zoning districts. However, this requirement shall not apply to any land within the unincorporated area of the Town which was previously within a village, but which was removed from the village as the result of court order or other mutual agreement.

Z. A certificate of occupancy for the adjunct shall not be issued prior to the issuance of a certificate of occupancy for any residential buildings.

## Highest & Best Use

The objective of the highest and best use analysis is to determine which use or uses produce the greatest return on capital, time and effort. In an appraisal, the concept of highest and best use represents the premise upon which value is based.

The reasoning for the highest and best use analysis is to establish guidelines, for use, that result in the highest return on investment. The process takes into consideration physical and legal restrictions as well as limitations imposed by economic factors.

For the purpose of this appraisal highest and best use is defined as:

*Highest and Best Use* .....................................................................................................

The reasonably, probable and legal use of vacant land or an improved property, which is physically possible, appropriately supported, and financially feasible, results in the highest value. The four criteria The Highest and Best Use must meet are legal permissibility, physical possibility, financial feasibility, and maximum profitability.[12]

The highest and best use conclusion is based upon a deductive process, first considering all uses and then eliminating those that do not meet the four criteria. A highest and best use determination of the subject is reached when all the reasonably probable alternatives have been considered and a conclusion has been reached as to the best among them.

In order to establish the highest and best use of the subject, data is extracted from city, regional and governmental sources relative to the four criteria, and analyzed. The results of the analysis are used to decide what impact this information has on the highest and best use of the subject.

The conclusion of highest and best use of the subject denotes specific parameters for selecting comparable information in the three approaches to value. Therefore, highest and best use is directly related to value.

---

[12] **The Dictionary of Real Estate Appraisal**, 4th ed. (Chicago: American Institute of Real Estate Appraisers, 2002), p. 135.

# Highest & Best Use

### Analysis Of The Subject As If Vacant

*Legally Permissible:* Legal restrictions, as they apply to the subject property, include the public restrictions of zoning and the private restrictions of easements and restrictive covenants. The site is zoned R-25 Residential District. where residential use is legally permitted. The subject was granted the RSH-Specialized Housing Residential which permits a superior FAR development for adult-student-housing facility District zoning. to 16 units per acre to a total of 235 residential units.

There are no known private restrictions on land uses. In addition, there are no known adverse easements, which affect the property.

*Physically Possible:* The shape and size of the parcel lends itself to a variety of residential development possibilities. The topography and soil compositions appear to be adequate to support development of the parcel based upon the existence of the subject improvements and the surrounding structures. As mentioned in the site description, the property is level at street grade. Therefore, the physical characteristics of the parcels do not inhibit development of the site.

*Financially Feasible:* The demand for vacant land in the subject area is considered moderate due to the availability of vacant land which can be developed in a financially feasible manner. Based upon the uses permitted within the zoning codes, the parcels could be improved with residential project that would have to provide a positive net return to the land to be economically feasible. Land of this size could support a residential development. The property is located within a developed residential district. Rents as well as sale prices are stable.

*Maximally Productive:* Based upon the analysis of the legally permitted, physically possible and financially feasible uses for the property, the most profitable and highest and best use of the parcel, if vacant and available for development, is to develop to the maximum density permitted under current zoning.

## Highest & Best Use

### Analysis Of The Subject As Improved

This analysis of the subject as improved is a determination of what should be done with the existing improvement. There are three possible choices: leave the existing improvement(s) unchanged, demolish the improvement(s), or modify the improvement(s).

*Legally Permissible:* Legal restrictions, as they apply to the subject property, include the public restrictions of zoning and the private restrictions of easements and restrictive covenants. The site is zoned 1R-25 residential, where residential houses are legally permitted. The subject was granted the RSH-Specialized Housing Residential which permits a superior FAR development for adult-student-housing facility District zoning. to 16 units per acre to a total of 235 residential units.

There are no known private restrictions on land uses. In addition, there are no known adverse easements, which affect the property.

*Physically Possible:* The shape and size of the parcel lends itself to a variety of *residential* development possibilities. The topography and soil compositions appear to be adequate to support development of the parcel based upon the existence of the subject improvements and the surrounding structures. As mentioned in the site description the property is level at street grade. Therefore, the physical characteristics of the parcels do not inhibit development of the site.

*Financially Feasible:* The property is located within a developed residential district. Rents as well as sale prices are stable.

*Maximally Productive:* Based upon the analysis of the legally permitted, physically possible and financially feasible uses for the property, the most profitable and highest and best use of the parcel, is to develop to the maximum density permitted under current zoning.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 127 of 416

# Valuation Process

*Market Value:* The valuation process contains all the steps necessary for this type of assignment. The appraisal process also establishes the methodology for estimating many other forms of value. A specific series of procedures constitutes the valuation process; the application of these procedures depends on the nature of the appraisal assignment and the data available.

Traditional appraisal theory applies three approaches to arrive at an estimate of value. The foundations for these approaches are **Cost**, **Market** (Sales Comparison) and **Income**. One or more approaches to value may be used depending on their applicability to the particular appraisal assignment. All three approaches are applicable to many appraisal problems, but one or more of the approaches may have greater significance in a specific assignment. Wherever possible, the appraiser applies the approach or approaches deemed most appropriate in order to arrive at a final value estimate.

In an appraisal assignment, the ultimate goal of the valuation process is a well-supported conclusion that reflects all the factors that influence the value of the property being appraised. To achieve this goal, an appraiser studies a property from three different viewpoints, which correspond to the three traditional approaches to value. Other procedures such as the use of inferential statistics, regression analysis and economic models also contribute to the valuation process by providing the basis for assumptions, forecasts and conclusions.

From the approaches applied, the appraiser derives separate indications of value for the property being appraised. One or more of the approaches may not be applicable to a specific assignment or may be less reliable due to the nature of the property, the needs of the client, or the data available. The alternate value indicators tend to approach a conclusion of value from various points of perception, thus addressing the different reasoning and rationale for the final conclusion of value. In addition, alternative methods can serve as useful checks on one another. The appraisal process is reconciled in a conclusion which integrates the information drawn from market research and data with the appropriate valuation techniques. This conclusion may be presented as a single point estimate of value or as a range within which the value may fall.

*This appraisal will utilize the Sales Comparison and the income Approaches to value respectively. The cost approach was not utilized for the market value, the estimated cost was utilized for the land value utilizing the extraction method.*

# The Sales Comparison Approach

The Sales Comparison Approach is the process in which a Market Value estimate is derived by analyzing the market for similar properties and comparing these properties to the subject property. Estimates of market rent, cost, depreciation, and other value parameters may be derived in the other approaches to value using comparative techniques. Often these elements are also analyzed in the Sales Comparison Approach to determine the adjustments to be made to the sale prices of comparable properties. The comparative techniques of analysis applied in the Sales Comparison Approach are fundamental to the valuation process.

In the Sales Comparison Approach, market value is estimated by comparing the subject property to similar properties that have recently sold, are listed for sale, or are under contract (i.e., recently drawn up purchase offers accompanied by a cash or equivalent deposit). A major premise of the Sales Comparison Approach is that the market value of a property is directly related to the prices of comparable, competitive properties.

The comparative analysis performed in the approach focuses on similarities and differences among properties and transactions that affect value. These may include differences in the property rights appraised, the motivations of buyers and sellers, financing terms, market conditions at the time of sale, size, location, physical features, and if the properties produce income, economic characteristics. Elements of comparison are tested against market evidence to determine which elements are sensitive to change and how they affect value.[13]

---

[13]    The Appraisal of Real Estate, 12th ed. (Chicago: Appraisal Institute, 2001), p. 425.

# The Sales Comparison Approach

## Procedure

To apply the Sales Comparison Approach, an appraiser follows a systematic procedure. A general outline of the basic procedure follows.

1.  Research the market to obtain information on sales transactions, listings, and offers to purchase or sell properties that are similar to the subject property in terms of characteristics such as property type, date of sale, size, location, and zoning.

2.  Verify the information by confirming that the data obtained are factually accurate and that the transactions reflect arm's-length market considerations. Verification may also elicit additional information about the market.

3.  Select relevant units of comparison) e.g., income multipliers or dollars per acre or per square foot) and develop a comparative analysis for each unit.

4.  Compare comparable sale properties with the subject property using the elements of comparison and adjust the sale price of each comparable appropriately to the subject to varying occupancies and economies, a resulting range of values may be a better conclusion than a single value estimate in certain cases.

Adjustments can be made either to total property prices or to appropriate units of comparison. Often adjustments for the property rights conveyed, financing, conditions of sale (motivation), and date of sale (market conditions) are made to the total sale price. The adjusted price is then converted into a unit price (e.g., per square foot, per apartment unit, or per acre) and adjusted for other elements of comparison such as location and physical characteristics.[14]

In the case of the subject property, the unit of comparison selected is the price per square foot, and price per unit as this is typically the measure by which this type of property is valued.

---

[14]    The Appraisal Of Real Estate, 12th ed. (Chicago: Appraisal Institute, 2001), pp. 425-427

---

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 130 of 416
RECEIVED NYSCEF: 03/18/2022

## The Sales Comparison Approach- School Building

On the following pages, sales of similar type school buildings are presented. The sold properties represent buildings similar to the subject situated within the subject's immediate and surrounding neighborhoods. In the discussion below, the appraiser outlines various adjustments for market factors, which differ from those of the subject.

*Adjustment Process Overview:* In analyzing comparable sales data, it is important to note that the adjustment process adjusts the comparable sales to the subject. In adjusting for significant variations between the subject and the comparable properties, the analysis includes a percent adjustment reflecting the appropriate market reaction to those items. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (-) adjustment is made, thus reducing the indicated value of the subject; if a significant item in the comparable is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the indicated value of the subject. For example, if the comparable sale has a location inferior to the subject, it would require an upward adjustment in order to reflect the subject's geographical characteristics. All adjustments utilized will follow this process of adjusting the comparable sale to the subject.

*Real Property Rights Conveyed:* The transaction price is always based upon the property interest conveyed. For small multi-use residential and retail properties the interest appraised is usually the Leased Fee interest. However, it is assumed that the properties were leased at market rents at the time of sale. Therefore, no property rights adjustments are necessary.

*Financing Terms:* A property's sales price can also be influenced by the financing obtained to purchase the property. Any unusual financing such as below rate financing, balloon mortgages, installment sales contracts or any other unusual financing is examined and any appropriate adjustment is applied if necessary, comparable #4 was a cash sale, therefore an upward adjustment was applied.

*Conditions of Sale:* Conditions of sale adjusts for the motivation of the buyer and seller. An appropriate adjustment is developed based on whether the sale was an arms-length transaction, a distressed property sale, a foreclosure, or a land assemblage. The comparables were verified to be arms-length transactions and therefore no adjustment was applied.

*Date of Sale/Market Conditions:* This adjustment reflects the change in value from the date of sale to the date of appraised value caused by changes in market conditions. The adjustments applied to the comparable are derived from primary and secondary data extracted from the market as well as information provided by financial institutions and real estate publications. The market has been increasing year over year from 2015 and has been steady for the year of 2017, therefore an adjustment was applied for the comparable sales from 2015.

## The Sales Comparison Approach- School Building

*Location:* The factors that are considered in developing a location adjustment include visibility, access to major highways and traffic flow. After these factors are considered, an appropriate adjustment is developed and applied to the comparable sale. No location adjustments were applied.

*Improvement Size:* The market recognizes an economy of scale where by smaller buildings sell at a higher price per square foot than larger ones. Appropriate adjustment was applied to reflect the building size differences.

**Site Size - Land/Building Ratio** I have attempted to adjust the sales for Land/Building ratio, comparable #4 has an inferior Land/Building Ratio compared to the subject. Therefore an upward adjustment was applied.

*Age/Condition*: the subject was built in 1980, comparables #2, # 3, and #4 are were built in 2000's. Therefore, a downward adjustment was applied.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 132 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## The Sales Comparison Approach- School Building



### Comparable Sale #1: 415 Viola Road, Spring Valley, NY

| Address | 415 Viola Road |
|---|---|
| Location | Spring Valley, NY |
| Section/Block/Lot | 49.12-2-52.12 |
| Gross Building Area (SF) | 31,074 |
| Lot Size (Acres) | 5.56 Acres |
| Land/ Building Ratio | 7.8 |
| Property Rights | Fee Simple |
| Year Built | 1970 |
| Date of Sale | 9/22/2016 |
| Sale Price | $9,169,000 |
| Price Per SF | $295 |
| Grantor | Reform Temple Of Rockland |
| Grantee | United Talmudical Academy Of Monsey Inc |
| Financed By | First Commerce Bank |

Notes: This transaction represents a sale of a school facility building that is located in a similar area location, larger to the subject in size, similar in utility and use.

Source: this property was sold on a public auction for $8,650,000 plus a $519,000 premium paid by the buyer.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 133 of 416

## The Sales Comparison Approach- School Building



### Comparable #2: 51 Carlton Road, Spring Valley, NY

| Address | 51 Carlton Road |
|---|---|
| Location | Spring Valley, NY |
| Section/Block/Lot | 49.19-3-72 |
| Gross Building Area (SF) | 14,216 |
| Lot Size (Acres) | 3.55 Acres |
| Land/ Building Ratio | 10.9 |
| Property Rights | Fee Simple |
| Year Built | 2003 |
| Date of Sale | In contract for sale |
| Sale Price | $5,000,000 |
| Price Per SF | $352 |
| Grantor | Cong Ohr Hachaim |
| Grantee | N/A |
| Financed By | N/A |

Notes: This comparable is in contract for sale represents a school facility building that is located in a similar area location, similar to the subject in size, similar in utility and use.

Source: Broker Solomon Berko/ Green Triangle Equities Ltd..

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 134 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## The Sales Comparison Approach- School Building



### Comparable Sale #3: 775 Route 45, Spring Valley, NY

| Address | 775 Route 45 |
|---|---|
| Location | Spring Valley, NY |
| Section/Block/Lot | 42.18-2-24 |
| Gross Building Area (SF) | 26,876 |
| Lot Size (Acres) | 3.1 Acres |
| Land/ Building Ratio | 5.0 |
| Property Rights | Fee Simple |
| Year Built | 2001 |
| Date of Sale | 4/1/2015 |
| Sale Price | $3,500,000 |
| Price Per SF | $130 |
| Grantor | Jawonio Inc |
| Grantee | 775 N Main St LLC |
| Financed By | Customers Bank |

Notes: This transaction represents a sale of a school facility building that is located in a similar area location, larger to the subject in size, similar in utility and use

## The Sales Comparison Approach- School Building



### Comparable Sale #4: 78 S Main Street, Spring Valley, NY

| Address | 78 S Main Street |
|---|---|
| Location | Spring Valley, NY |
| Section/Block/Lot | 57.63-1-7 |
| Gross Building Area (SF) | 8,925 |
| Lot Size (Acres) | .46 Acre |
| Land/ Building Ratio | 2.2 |
| Property Rights | Fee Simple |
| Year Built | 2004 |
| Date of Sale | 3/29/2017 |
| Sale Price | $2,000,000 |
| Price Per SF | $224 |
| Grantor | Congregation Birchos Yosef |
| Grantee | Hamaspik Of Rockland Cnty Inc |
| Financed By | Cash Sale |

Notes: This transaction represents a sale of a religious facility building that is located in a similar area location, smaller to the subject in size, similar in utility and use

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 136 of 416

## The Sales Comparison Approach- School Building

### COMPARABLE SALES MAP

## The Sales Comparison Approach

| | Subject | Comparable Sale #1 | Comparable Sale #2 | Comparable Sale #3 | Comparable Sale #4 |
|---|---|---|---|---|---|
| | | **SALES COMPARISON APPROACH** | | | |
| Address | 82 Highview Road | 415 Viola Road | 51 Carlton Road | 775 Route 45 | 78 S Main Street |
| Location | Ramapo, NY | Spring Valley, NY | Monsey, NY | Spring Valley, NY | Spring Valley, NY |
| Section/Block/Lot | 49.17-2-42 | 49.12-2-52.12 | 49.19-3-72 | 42.18-2-24 | 57.63-1-7 |
| Gross Building Area (SF) | 13,468 | 31,074 | 14,216 | 26,876 | 8,925 |
| Lot Size (Acres) | 2 Acres | 5.56 Acres | 3.55 Acres | 3.1 Acres | .46 Acre |
| Land/ Building Ratio | 6.5 | 7.8 | 10.9 | 5.0 | 2.2 |
| Property Rights | Fee Simple | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Year Built | 1980 | 1970 | 2003 | 2001 | 2004 |
| Date of Sale | | 9/22/2016 | In contract for sale | 4/1/2015 | 3/29/2017 |
| Sale Price | | $9,169,000 | $5,000,000 | $3,500,000 | $2,000,000 |
| Price Per SF | | $295 | $352 | $130 | $224 |
| Grantor | | Reform Temple Of Rockland | Cong Ohr Hachaim | Jawonio Inc | Congregation Birchos Yosef |
| Grantee | | Talmudical Academy Of Mons | Green Triangle Equities Ltd. | 775 N Main St LLC | maspik of Rockland County |
| | | | | | |
| Adjustments | | | | | |
| Property Rights | | 0.0% | 0.0% | 0.0% | 0.0% |
| Financing Terms | | 0.0% | 0.0% | 0.0% | 10.0% |
| Conditions of Sale | | 0.0% | 0.0% | 0.0% | 0.0% |
| Market Conditions (time) | | 0.0% | 0.0% | 20.0% | 0.0% |
| | | 0.0% | 0.0% | 20.0% | 10.0% |
| Adjusted Price psf | | $295 | $352 | $156 | $246 |
| Location | | Similar | Similar | Similar | Similar |
| | | 0.0% | 0.0% | 0.0% | 0.0% |
| GBA | 13,468 | Larger | Similar | Larger | Smaller |
| | | 5.0% | 0.0% | 5.0% | -5.0% |
| Site size-Land/ Building Ratio | 6.5 | Similar | Similar | Similar | Inferior |
| | | 0.0% | 0.0% | 0.0% | 5.0% |
| Year Built - Condition | 1980 | Similar | Superior | Superior | Superior |
| | | 0.0% | -10.0% | -5.0% | -10.0% |
| Net Adjustments | | 5.0% | -10.0% | 0.0% | -10.0% |
| Adjusted Sale Price psf | | $310 | $317 | $156 | $222 |
| Price per Square Foot | | | | | |

| | |
|---|---|
| Minimum | $156 |
| Maximum | $317 |
| Average Price psf | $251 |

## The Sales Comparison Approach

**_Remarks & Conclusions_** The adjustment process considers the value of the subject "as is". The appraiser analyzed the four comparable sales and after adjustments noted a range from $156 to $317 per square foot, with an average of $251 per square foot. The appraiser selected a unit value of $250 per SF.

| (Building Size) | x | (Est. Value per SF) | | = | (Total Value) |
|---|---|---|---|---|---|
| 13,468 SF | x | $250 PSF | | = | $3,367,000 |
| | | | Rounded | = | $3,400,000 |

Based on the preceding analysis, the market value of the subject property lot 42 with the school building via the Sales Comparison Approach is therefore concluded to be:

### THREE MILLION FOUR HUNDRED THOUSAND DOLLARS

**$3,400,000**

## The Sales Comparison Approach-Land Value

On the following pages, sales of similar type of vacant land are presented. The sold properties represent land similar to the subject situated within the subject's immediate and surrounding neighborhoods. In the discussion below, the appraiser outlines various adjustments for market factors, which differ from those of the subject.

*Adjustment Process Overview:* In analyzing comparable sales data, it is important to note that the adjustment process adjusts the comparable sales to the subject. In adjusting for significant variations between the subject and the comparable properties, the analysis includes a percent adjustment reflecting the appropriate market reaction to those items. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (-) adjustment is made, thus reducing the indicated value of the subject; if a significant item in the comparable is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the indicated value of the subject. For example, if the comparable sale has a location inferior to the subject, it would require an upward adjustment in order to reflect the subject's geographical characteristics. All adjustments utilized will follow this process of adjusting the comparable sale to the subject.

*Real Property Rights Conveyed:* The transaction price is always based upon the property interest conveyed. For small multi-use residential and retail properties the interest appraised is usually the Leased Fee interest. However, it is assumed that the properties were leased at market rents at the time of sale. Therefore, no property rights adjustments are necessary.

*Financing Terms:* A property's sales price can also be influenced by the financing obtained to purchase the property. Any unusual financing such as below rate financing, balloon mortgages, installment sales contracts or any other unusual financing is examined and any appropriate adjustment is applied if necessary. Comparable #1 and #3, were a cash sale; therefore an upward adjustment was applied.

*Conditions of Sale:* Conditions of sale adjusts for the motivation of the buyer and seller. An appropriate adjustment is developed based on whether the sale was an arms-length transaction, a distressed property sale, a foreclosure, or a land assemblage. The comparables were verified to be arms-length transactions and therefore no adjustment was applied.

*Date of Sale/Market Conditions:* This adjustment reflects the change in value from the date of sale to the date of appraised value caused by changes in market conditions. The adjustments applied to the comparable are derived from primary and secondary data extracted from the market as well as information provided by financial institutions and real estate publications. The market has been steady therefore no adjustment was applied.

## The Sales Comparison Approach-Land Value

**_Location:_** The factors that are considered in developing a location adjustment include visibility, access to major highways and traffic flow. After these factors are considered, an appropriate adjustment is developed and applied to the comparable sales, no adjustment was applied.

**_Site Size:_** all comparables are smaller in site size therefore a downward adjustment was applied.

**_Zoning_**: The subject and all comparables are in similar R-25 zoning.

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 141 of 416

# The Sales Comparison Approach-Land Value



## Comparable Sale #1: 8 Lark Lane, Spring Valley, NY

| Address | 8 Lark Lane |
|---|---|
| Location | Spring Valley, NY |
| Section/Block/Lot | 62.08-2-30 |
| Lot Size (Acres) | 0.72 |
| Lot Size (SF) | 31,363 |
| Property Type | Development Site |
| Zoning | R25-Residential |
| Property Rights | Fee Simple |
| Date of Sale | April 15, 2016 |
| Sale Price | $589,000 |
| Price Per Acre | $818,056 |
| Price Per Land SF. | $19 |
| Grantor | Samet Gittel |
| Grantee | Rxh Us Holdings Inc |
| Financing By | Cash Sale |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 142 of 416

## The Sales Comparison Approach-Land Value



### Comparable Sale #2:

### 2,4,38 40, 26, 1 Fern Drive and 5, 6,9, 10 Gala Court, Monsey, NY

| Address | 2,4,38 40,26, 1 Fern Drive and 5, 6,9, 10 Gala Court |
|---|---|
| Location | Monsey, NY |
| Section/Block/Lot | 49.06-2-38.1,2,6,9,10,15,16,17,18,19 |
| Lot Size (Acres) | 5.21 |
| Lot Size (SF) | 226,948 |
| Property Type | Development Site |
| Zoning | R25-Residential |
| Property Rights | Fee Simple |
| Date of Sale | November 25, 2015 |
| Sale Price | $3,900,000 |
| Price Per Acre | $748,560 |
| Price Per Land SF. | $17 |
| Grantor | S Oberlander, LLC |
| Grantee | Viola Mansions, LLC |
| Financing By | Northeast Community Bank |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 143 of 416

## The Sales Comparison Approach-Land Value



### Comparable Sale #3:

### 14, 18, 22, 30, 34, 31, 27, 23,19 Fern Drive, Monsey, NY

| | |
|---|---|
| Address | 14,18,22,30,34,31,27,23,19 Fern Drive |
| Location | Monsey, NY |
| Section/Block/Lot | 49.06-2-38.3,4,5,7,8,11,12,13,14 |
| Lot Size (Acres) | 5.17 |
| Lot Size (SF) | 225,205 |
| Property Type | Development Site |
| Zoning | R25-Residential |
| Property Rights | Fee Simple |
| Date of Sale | August 27, 2015 |
| Sale Price | $3,600,000 |
| Price Per Acre | $696,325 |
| Price Per Land SF. | $16 |
| Grantor | Rockland Development, LLC |
| Grantee | Viola Mansions, LLC |
| Financing By | Cash Sale |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 144 of 416

# The Sales Comparison Approach-Land Value

## COMPARABLE SALES MAP



FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 145 of 416

## The Sales Comparison Approach-Land Value

| | Subject | Comparable Sale #1 | Comparable Sale #2 | Comparable Sale #3 |
|---|---|---|---|---|
| | | | *SUMMARY OF COMPARABL LAND SALES & ADJUSTMENT GRID* | |
| Address | 82 Highview Road | 6 Lark Lane | 2,4,38 40,26, 1 Fern Drive and 5, 6,9, 10 Gala Court | 14,18,22,30,34,31,27,23, 19 Fern Drive |
| Location | Ramapo, NY | Spring Valley, NY | Monsey, NY | Monsey, NY |
| Section/Block/Lot | 49.17-2-47,47.1 | 62.08-2-30 | 49.06-2-38.1,2,6,9,10,15,16,17,18,19 | 49.06-2-38.3,4,5,7,8,11,12,13,14 |
| Lot Size (Acres) | 12.74 | 0.72 | 5.21 | 5.17 |
| Lot Size (SF) | 554,954 | 31,363 | 226,948 | 225,205 |
| Property Type | Vacant Land | Development Site | Development Site | Development Site |
| Zoning | R25-Residential | R25-Residential | R25-Residential | R25-Residential |
| Property Rights | Fee Simple | Fee Simple | Fee Simple | Fee Simple |
| Date of Sale | | April 15, 2016 | November 25, 2015 | August 27, 2015 |
| Sale Price | | $589,000 | $3,900,000 | $3,600,000 |
| Price Per Acre | | $818,056 | $748,560 | $696,325 |
| Price Per Land SF. | | $19 | $17 | $16 |
| Grantor | | Samet Gittel | S Oberlander, LLC | Rockland Development, LLC |
| Grantee | | Rxh Us Holdings Inc | Viola Mansions, LLC | Viola Mansions, LLC |
| Financing By | | Cash Sale | Northeast Community Bank | Cash Sale |
| Adjustments | | | | |
| Property Rights | | 0.0% | 0.0% | 0.0% |
| Financing Terms | | 5.0% | 0.0% | 5.0% |
| Conditions of Sale | | 0.0% | 0.0% | 0.0% |
| Market Conditions (time) | | 0.0% | 0.0% | 0.0% |
| | | 5.0% | 0.0% | 5.0% |
| Adjusted Price per Acre | | $858,958 | $748,560 | $731,141 |
| Location | | Similar | Similar | Similar |
| | | 0.0% | 0.0% | 0.0% |
| Site size | 13 | Samller | Samller | Samller |
| | | -10.0% | -5.0% | -5.0% |
| Zoning | R25-Residential | Similar | Similar | Similar |
| | | 0.0% | 0.0% | 0.0% |
| Net Adjustments | | -10.0% | -5.0% | -5.0% |
| Adjusted Sale Price Per Acre | | $773,063 | $711,132 | $694,584 |
| Minimum | $694,584 | | | |
| Maximum | $773,063 | | | |
| Average Price Acre | $726,260 | | | |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 146 of 416

## The Sales Comparison Approach-Land Value

***Remarks & Conclusions*** The adjustment process considers the value of the subject "as is". The appraiser analyzed the three comparable sales and after adjustments noted a range from $694,584 to $773,063 per acre, with an average of $726,260 per acre. The appraiser selected a unit value of $700,000 per acre.

| (Land Acre) | x | (Est. Value per acre) | = | (Total Value) |
|---|---|---|---|---|
| 12.74 SF | x | $700,000 Per Acre | = | $8,918,000 |
| | | Rounded | = | $8,900,000 |

Based on the preceding analysis, the *AS IS Land* market value of the subject property lot 47 and 47.1 via the Sales Comparison Approach is therefore concluded to be:

### EIGHT MILLION NINE HUNDRED THOUSAND DOLLARS

### $8,900,000

## The Sales Comparison Approach-Land Value

### SALES COMPARISON APPROACH RECONCILIATION

The following is a summary of the conclusion of values, for the entire subject property, lot 42 with the school building + lot 47, and 47.1 land.

| | |
|---|---|
| Lot 42 - School Building | $3,400,000 |
| Lot 47, and 47.1- Land | $8,900,000 |
| | **Total $12,300,000** |

Based on the preceding analysis, the market value of the subject property via the Sales Comparison Approach is concluded to be:

### TWELVE MILLION THREE HUNDRED THOUSAND DOLLARS

### $12,300,000

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 32

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 148 of 416

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

# The Sales Comparison Approach- Proposed Development

## PROPOSED DEVELOPMENT – WITH APPROVED PLANS AND PERMITS.

The subject was granted the RSH-Specialized Housing Residential which permits a superior FAR development for adult-student-housing facility District zoning.

As per the client, the subject proposed adult-student-housing improvements will consist of 36, two story walk-up apartment buildings with a total of 180 residential units plus the existing two story School building. The total complex gross building area will consist of 277,468+/- square feet above grade. The units will be rented and income producing. The subject property is being valued to the legal potential as if approved plans and permits, and if ready for immediate development, this included Architectural, Engineering, planning and other soft costs associated with the approvals, this has a positive effect on value.

A development site would yield a higher return if sold with approved plans than without. This is reflective of the time and money spend obtaining it.

The following section will value the subject's value as a ready shovel ready development site, via analyzing and applying Net Residual Value of the proposed development of the subject property.

This step involved estimates the development cost of the improvements, including appropriate soft costs and entrepreneurial profit, which reflect the return a developer would require for his time and equity investment, and estimating the financing cost and then the amount of the sellout value for the finishing development is estimated and deducted to derive a Net Residual Value for the land.

## The Sales Comparison Approach- Proposed Development

The next step, is to calculate the Soft Cost & Insurance which is estimated of 10% of the hard cost and added 7% Contingency, and Entrepreneurial profit is calculated for 10% and Financing 0.8% for 18 months, and the sellout value as reported in the following of the report.

| Cost of a typical 180 Residential Units total of 264,000 SF | | |
|---|---|---|
| Total Hard Cost | $90 PSF | $ 23,760,000.00 |
| Soft Cost & Insurance | 10% | $ 2,376,000.00 |
| Total Hard & Soft  Cost | | $ 26,136,000.00 |
| Contingency | 7% | $ 1,829,520.00 |
| Total | | $ 27,965,520.00 |
| Entrepreneurial profit | 10% | $ 2,796,552.00 |
| Total Hard & Soft | | $ 30,762,072.00 |
| Financing & Closing costs | 8% for 18 Months | $ 3,355,862.40 |
| total Development cost | | $ 34,117,934.40 |
| Sellout | $215 PSF | $ 56,760,000.00 |
| Cost | | $ (34,117,934.40) |
| Net Residual Value | | $ 22,642,065.60 |
| | Say $ | 22,600,000.00 |
| Existing school Building Lot 42 | | $ 3,400,000.00 |
| As is Net Residual Value+ School Building | | $ 26,000,000.00 |

Therefore the AS IS Development value/Net Residual Value of the proposed development of the subject property, as of November 7, 2018, is:

### TWENTY SIX MILLION ($26,000,000) DOLLARS

## The Sales Comparison Approach- Residential

On the following pages, sales of similar type Multi-Family buildings are presented. The sold properties represent buildings similar to the subject situated within the subject's immediate and surrounding neighborhoods. In the discussion below, the appraiser outlines various adjustments for market factors, which differ from those of the subject.

***Adjustment Process Overview:*** In analyzing comparable sales data, it is important to note that the adjustment process adjusts the comparable sales to the subject. In adjusting for significant variations between the subject and the comparable properties, the analysis includes a percent adjustment reflecting the appropriate market reaction to those items. If a significant item in the comparable property is superior to, or more favorable than, the subject property, a minus (-) adjustment is made, thus reducing the indicated value of the subject; if a significant item in the comparable is inferior to, or less favorable than, the subject property, a plus (+) adjustment is made, thus increasing the indicated value of the subject. For example, if the comparable sale has a location inferior to the subject, it would require an upward adjustment in order to reflect the subject's geographical characteristics. All adjustments utilized will follow this process of adjusting the comparable sale to the subject.

***Real Property Rights Conveyed:*** The transaction price is always based upon the property interest conveyed. For small multi-use residential and retail properties the interest appraised is usually the Leased Fee interest. However, it is assumed that the properties were leased at market rents at the time of sale. Therefore, no property rights adjustments are necessary.

***Financing Terms:*** A property's sales price can also be influenced by the financing obtained to purchase the property. Any unusual financing such as below rate financing, balloon mortgages, installment sales contracts or any other unusual financing is examined and any appropriate adjustment is applied if necessary. Comparable #2, and #3 were cash sales; therefore an upward adjustment was applied.

***Conditions of Sale:*** Conditions of sale adjusts for the motivation of the buyer and seller. An appropriate adjustment is developed based on whether the sale was an arms-length transaction, a distressed property sale, a foreclosure, or a land assemblage. The comparables were verified to be arms-length transactions and therefore no adjustment was applied.

***Date of Sale/Market Conditions:*** This adjustment reflects the change in value from the date of sale to the date of appraised value caused by changes in market conditions. The adjustments applied to the comparable are derived from primary and secondary data extracted from the market as well as information provided by financial institutions and real estate publications. he market has been steady and therefore no adjustment was applied.

## The Sales Comparison Approach- Residential

*__Location:__*  The factors that are considered in developing a location adjustment include visibility, access to major highways and traffic flow.  After these factors are considered, an appropriate adjustment is developed and applied to the comparable sales. no adjustment was applied.

*__Age__*: The subject as a new construction is proposed for superior condition to all comparables. Appropriate adjustments were applied.

*__Complex Vs. Simplex__*: the subject is a build attached units and build in a complex style and all comparable sales are simplex build on a separate plot lot, therefore is considered superior when purchasing a residential unit, therefore a downward adjustment was applied.

## The Sales Comparison Approach- Residential



**Comparable Sale #1: 8 Jacaruso Drive, Spring Valley, NY**

| Address | 8 Jacaruso Drive |
| --- | --- |
| Location | Spring Valley, NY |
| Section -Block-Lot | 50.53-2-33 |
| Gross Building Area (SF) | 1,504 |
| Lot Size (SF) | 5,663 |
| Land/Building Ratio | 377% |
| Property Type | Multi-Family |
| # Units | 2 |
| Zoning | Residential |
| Property Rights | Leased Fee |
| Year Built | 1963 |
| Date of Sale | 5/25/2016 |
| Sale Price | $365,000 |
| Price Per SF | $243 |
| Price Per Unit | $182,500 |
| Grantor | Kent Akiva |
| Grantee | Singer, Joseph |
| Finance By | Plaza Home Mortgage Inc |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 153 of 416

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

## The Sales Comparison Approach- Residential



### Comparable Sale #2: 623 Viola Road, Spring Valley, NY

| | |
|---|---|
| Address | 623 Viola Road |
| Location | Spring Valley, NY |
| Section -Block-Lot | 50.13-3-9.2 |
| Gross Building Area (SF) | 2,484 |
| Lot Size (SF) | 15,246 |
| Land/Building Ratio | 614% |
| Property Type | Multi-Family |
| # Units | 2 |
| Zoning | R-15 |
| Property Rights | Leased Fee |
| Year Built | 2005 |
| Date of Sale | 10/10/2016 |
| Sale Price | $500,000 |
| Price Per SF | $201 |
| Price Per Unit | $250,000 |
| Grantor | Enderica Julio & |
| Grantee | 623 Viola Road, LLC |
| Finance By | N/A |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 154 of 416

## The Sales Comparison Approach- Residential



### Comparable Sale #3: 621 Viola Road, Spring Valley, NY

| Address | 621 Viola Road |
|---|---|
| Location | Spring Valley, NY |
| Section -Block-Lot | 50.13-3-9.1 |
| Gross Building Area (SF) | 2,220 |
| Lot Size (SF) | 16,117 |
| Land/Building Ratio | 726% |
| Property Type | Multi-Family |
| # Units | 2 |
| Zoning | R-15 |
| Property Rights | Leased Fee |
| Year Built | 2004 |
| Date of Sale | 10/10/2016 |
| Sale Price | $500,000 |
| Price Per SF | $225 |
| Price Per Unit | $250,000 |
| Grantor | Martinez Euier W |
| Grantee | 621 Viola Road, LLC |
| Finance By | N/A |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks    Pg 155 of 416

## The Sales Comparison Approach- Residential



### Comparable Sale #4: 38 Jacaruso Drive, Spring Valley, NY

| | |
|---|---|
| Address | 38 Jacaruso Drive |
| Location | Spring Valley, NY |
| Section -Block-Lot | 50.53-2-17 |
| Gross Building Area (SF) | 2,386 |
| Lot Size (SF) | 10,890 |
| Land/Building Ratio | 456% |
| Property Type | Multi-Family |
| # Units | 2 |
| Zoning | Residential |
| Property Rights | Leased Fee |
| Year Built | 1984 |
| Date of Sale | 9/21/2015 |
| Sale Price | $570,000 |
| Price Per SF | $239 |
| Price Per Unit | $285,000 |
| Grantor | Neuman, Issack |
| Grantee | Kohn Nissel & Yosef |
| Finance By | Resmac Inc |

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 156 of 416

## The Sales Comparison Approach- Residential

### COMPARABLE SALES MAP



FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 157 of 416
RECEIVED NYSCEF: 03/18/2022

## The Sales Comparison Approach-Residential

**SUMMARY OF COMPARABLE BUILDING SALES & ADJUSTMENT GRID — SALES COMPARISON APPROACH**

| | Subject | Comparable Sale #1 | Comparable Sale #2 | Comparable Sale #3 | Comparable Sale #4 |
|---|---|---|---|---|---|
| Address | 82 Highview Road | 8 Jacaruso Drive | 623 Viola Road | 621 Viola Road | 38 Jacaruso Drive |
| Location | Ramapo, NY | Spring Valley, NY | Spring Valley, NY | Spring Valley, NY | Spring Valley, NY |
| Section -Block-Lot | 49.17-2-47,47.1 | 50.53-2-33 | 50.13-3-9.2 | 50.13-3-9.1 | 50.53-2-17 |
| Gross Building Area (SF) | 264,000 | 1,504 | 2,484 | 2,220 | 2,386 |
| Lot Size (SF) | 564,954 | 5,663 | 15,246 | 16,117 | 10,890 |
| Land/Building Ratio | 2.10 | 3.77 | 6.14 | 7.26 | 4.56 |
| Property Type | Multi-Family | Multi-Family | Multi-Family | Multi-Family | Multi-Family |
| # Units | 180 | 2 | 2 | 2 | 2 |
| Zoning | R-25 | Residential | R-15 | R-15 | Residential |
| Property Rights | Leased Fee | Leased Fee | Leased Fee | Leased Fee | Leased Fee |
| Year Built | 2018 | 1963 | 2005 | 2004 | 1984 |
| Date of Sale | | 5/25/2016 | 10/10/2016 | 10/10/2016 | 9/21/2015 |
| Sale Price | | $366,000 | $500,000 | $500,000 | $570,000 |
| Price Per SF | | $243 | $201 | $225 | $239 |
| Price Per Unit | | $182,500 | $250,000 | $250,000 | $285,000 |
| Grantor | | Kent Akiva | Endevica Julio & | Martinez Euler W | Neuman, Issack |
| Grantee | | Singer, Joseph | 623 Viola Road, LLC | 621 Viola Road, LLC | Kohn Nissel & Yosef |
| Finance By | | Plaza Home Mortgage Inc | N/A | N/A | Resmac Inc |
| Mortgage Amount | | $292,000 | Cash | Cash | $444,000 |
| **Adjustments** | | | | | |
| Property Rights | | 0.0% | 0.0% | 0.0% | 0.0% |
| Elevator | | 0.0% | 0.0% | 0.0% | 0.0% |
| Financing Terms | | 0.0% | 5.0% | 5.0% | 0.0% |
| Conditions of Sale | | 0.0% | 0.0% | 0.0% | 0.0% |
| Market Conditions (time) | | 0.0% | 0.0% | 0.0% | 0.0% |
| | | 0.0% | 5.0% | 5.0% | 0.0% |
| Adjusted Price psf | | $243 | $211 | $236 | $239 |
| Adjusted Price per unit | | $182,500 | $262,500 | $262,500 | $285,000 |
| Location | | Similar | Similar | Similar | Similar |
| | | 0.0% | 0.0% | 0.0% | 0.0% |
| GBA | 264,000 | Similar | Similar | Similar | Similar |
| | | 0.0% | 0.0% | 0.0% | 0.0% |
| Year Built - Condition | 2018 | Inferior | Inferior | Inferior | Inferior |
| | | 10.0% | 5.0% | 5.0% | 10.0% |
| Complex vs. Simplex | Complex | Superior | Superior | Superior | Superior |
| | | -15.0% | -15.0% | -15.0% | -15.0% |
| Net Adjustments | | -5.0% | -10.0% | -10.0% | -5.0% |
| Adjusted Sale Price psf | | $231 | $190 | $213 | $227 |
| Adjusted Sale Price per unit | | $173,375 | $236,250 | $236,250 | $270,750 |

| Price per Square Foot Comparison | | Price per Unit Comparison | |
|---|---|---|---|
| Minimum | $190 | Minimum | $173,375 |
| Maximum | $231 | Maximum | $270,750 |
| Average Price psf | $215 | Average Price pu | $229,156 |

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 158 of 416

## The Sales Comparison Approach- Proposed Development

***Remarks & Conclusions:***  The adjustment process considers the value of the subject "as is".  The appraiser analyzed the comparable sales and after adjustments noted the following;

Price per SF Comparison :

The appraiser noted a range from $190 to $231 per square foot, with an average of $215 per square foot.  The appraiser selected a unit value toward the middle of the range.

| (Building Size) | x | (Est. Value per SF) | = | (Total Value) |
|---|---|---|---|---|
| 264,000 SF | x | $215 PSF | = | $56,760,000 |
| | | | Rounded | $56,750,000 |

The appraiser selected a Value per SF to estimate the subject residential units since there are larger units and smaller units therefore applied a value per Sf. for the all units.

Based on the preceding analysis, the *proposed* market value of the subject property via the Sales Comparison Approach is concluded to be:

### FIFTY SIX MILLION AND SEVEN HUNDRED FIFTY THOUSAND DOLLARS

### $56,750,000

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 159 of 416

## The Sales Comparison Approach- Proposed Development

### SALES COMPARISON APPROACH RECONCILIATION

The following is a summary of the conclusion of values, for the entire subject property, lot 42 with the school building + lot 47, and 47.1 proposed residential housing

| | | |
|---|---|---|
| Lot 42 - School Building | | $3,400,000 |
| Lot 47, and 47.1- Proposed Residential Housing | | $56,750,000 |
| | **Total** | **$60,150,000** |

Based on the preceding analysis, the _proposed_ market value of the subject property via the Sales Comparison Approach is concluded to be:

### SIXTY MILLION ONE HUNDRED FIFTY THOUSAND DOLLARS

### $60,150,000

**The Income Capitalization Approach**

# Income Capitalization Approach

Income-producing real estate is typically purchased as an investment, and from an investor's point of view earning power is the critical element affecting property value. One basic investment premise is that the higher the earnings, the higher the value. An investor who purchases income-producing real estate is essentially trading present dollars for the right to receive future dollars. The income capitalization approach to value consists of methods, techniques, and mathematical benefits (i.e., usually the monetary benefits of income and reversion), which are then converted to indicate a present value.

The Income Capitalization Approach is one of the three traditional approaches that an appraiser may use in the valuation process. However, it is not an independent system of valuation that is unrelated to the other approaches. The valuation process as a whole is comprised of integrated, interrelated, and inseparable techniques and procedures designed to produce a convincing and reliable estimate of value, usually market value.

The analysis of cost and sales data is often an integral part of the income capitalization approach, and capitalization techniques are frequently employed in the Cost and Sales Comparison approaches. Capitalization techniques are commonly used to analyze and adjust sales data in the Sales Comparison Approach; in the Cost Approach, obsolescence is often measured by capitalizing an estimated rent loss. The Income Capitalization Approach is described herein as part of the systematic valuation process, but the various methods, techniques, and procedures used in the approach are general-purpose analytical tools applicable in the valuation and evaluation of income-producing properties.[15]

[15]    The Appraisal Of Real Estate, 12th ed. (Chicago: Appraisal Institute, 2001), p. 471

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 161 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## The Income Capitalization Approach

This report will employ the technique of the Income Capitalization Approach known as Direct Capitalization of income. The procedure for employing the Direct Capitalization is as follows:

- Project the Potential Gross Income (PGI), which is the total income attributable to the property at full occupancy before deduction for vacancy and operating expenses.

- Project the appropriate factor for vacancy and collection loss from the subject's operating history or market-derived information.

- Project fixed and variable expenses that would typically occur at periodic rates during the projection period.

- Subtract the projections of fixed and variable expenses, as well as vacancy and collection loss from Potential Gross Income; resulting in Net Operating Income.

- Utilize investor surveys or other market-derived data to choose an appropriate cap rate. The capitalization rate is used to capitalize the stabilized NOI.

The applicable assumptions and conclusions of the Direct Capitalization Analysis in regard to the subject property are located on the succeeding pages of this appraisal report.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 162 of 416

## Income & Expense Assumptions

**SUBJECT RENT ROLL**

The subject will contain of 180 residential units: 84 four bedroom duplex units, 96 two bedroom units, with a estimated total gross yearly income of $4,788,000

Additional income is estimated for the synagogue building at $25 PSF which is the market rate for school buildings.

| Estimated Rent Roll: 82 Highview Road Campus Ramapo, NY | | | | | | | |
|---|---|---|---|---|---|---|---|
| # of Units | Size - SF | Rooms -Bed -Bath | Monthly Rent Each | Total Monthly | Total Annual Rent | $/PSF | Net Sf |
| 84 | 2,000 | 7-4-2.5 | $2,750 | $231,000 | $2,772,000 | | 168,000 |
| 96 | 1,000 | 5-2-1.5 | $1,750 | $168,000 | $2,016,000 | | 96,000 |
| | 13,468 | School Building | $25 PSF | $28,058.33 | $336,700 | $25 | 13,468 |
| 180 | 277,468 | | | $399,000 | $5,124,700 | | 277,468 |

The subject rent is considered at level with the market rent, as of the date of the valuation, and will be used in the pro forma analysis.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 163 of 416

## Income & Expense Assumptions

### *Potential Gross Income*

**Rental Revenue:** The potential gross income of $5,124,700 was developed based on estimated residential unit rents and for the school building.

### *Vacancy & Collection Loss*

The local residential market vacancy is less than 5%. However, collection loss can be a factor under current economic conditions. As a result, I have incorporated an overall 5.0% loss factor. and a 10% for the synagogue building. This adjustment covers losses incurred due to turnover, and nonpayment of rent by tenants.

### *Effective Gross Income*

Effective gross income (EGI) is the anticipated income from all operations of the real property adjusted for vacancy and collection losses. EGI is $4,851,630.

## OPERATING EXPENSES

### *Real Estate Taxes*

The subject current tax is $142,972. The proposed development will be tax exempt by the town of Ramapo and the county.

### *Electric & Gas*

Tenants will be responsible for electric and gas.

### *Utilities*

Common Area Utilities expense is estimate at $50,000 per year, water and sewer is estimated at $117,000 per year.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021

NYSCEF DOC. NO. 32
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 164 of 416

# Income & Expense Assumptions

### *Insurance*

A typical owner's policy for a building this size is is estimate at $113,900 per year

### *Repairs & Maintenance*

The subject repairs and maintenance expense is estimate at $138,734 per year.

### *Structural Reserves*

This expense category is a sinking fund that covers roof replacement, boiler replacement and other items needed to extend the life of major building components. For a new walk-up building the typical reserve is $0.10 per square foot, per year.

### *Management & Other*

This is an all inclusive expense category including rent collection, legal fees, accounting, and miscellaneous items. Market participants typically calculate this expense at 4.0% of effective gross income for a small building. Legal and accounting expense is estimated to be for $30,000 per year and other miscellaneous to be $72,500 per year.

**Rate Selection**

## Estimate of Capitalization Rate

**Market Rates Extracted from Sales**:

**Investor Surveys**

The following table is excerpted from the *Korpacz Investor Survey* for the Second Quarter of 2018.  The Korpacz report surveys major real estate owners, investors, lenders and other market participants as to their opinion of required investment rates for specific property types and specific locations.  The multi family capitalization rates range from 3.50% to 8.50%, averaging 5.26% as follows.

Table 28
NATIONAL APARTMENT MARKET
Second Quarter 2018

| | CURRENT | LAST QUARTER | 1 YEAR AGO | 3 YEARS AGO | 5 YEARS AGO |
|---|---|---|---|---|---|
| **DISCOUNT RATE (IRR)** | | | | | |
| Range | 5.25% – 10.00% | 5.25% – 10.00% | 5.50% – 10.00% | 5.00% – 12.00% | 5.00% – 11.00% |
| Average | 7.26% | 7.23% | 7.28% | 7.24% | 8.04% |
| Change (Basis Points) | | – 3 | – 8 | – 4 | – 84 |
| **OVERALL CAP RATE (OAR)** | | | | | |
| Range | 3.50% – 8.50% | 3.75% – 8.50% | 3.50% – 8.50% | 3.50% – 8.00% | 3.50% – 10.00% |
| Average | 5.26% | 5.33% | 5.40% | 7.30% | 5.70% |
| Change (Basis Points) | | – 7 | – 14 | – 9 | – 44 |
| **RESIDUAL CAP RATE** | | | | | |
| Range | 4.00% – 8.50% | 4.00% – 8.50% | 3.50% – 8.00% | 4.25% – 9.50% | 4.25% – 9.75% |
| Average | 5.51% | 5.60% | 5.82% | 5.93% | 6.18% |
| Change (Basis Points) | | – 5 | – 21 | – 32 | – 57 |
| **MARKET RENT CHANGE** | | | | | |
| Range | (2.00%) – 5.00% | (2.00%) – 5.00% | (1.00%) – 5.00% | 0.00% – 8.00% | (2.00%) – 7.00% |
| Average | 2.64% | 2.42% | 2.64% | 2.98% | 2.60% |
| Change (Basis Points) | | – 2 | – 20 | – 54 | – 16 |
| **EXPENSE CHANGE** | | | | | |
| Range | 2.00% – 5.00% | 2.00% – 3.00% | 2.00% – 3.00% | 1.00% – 4.00% | 1.00% – 3.50% |
| Average | 2.73% | 2.71% | 2.64% | 2.74% | 2.67% |
| Change (Basis Points) | | – 2 | – 6 | – 1 | + 6 |
| **MARKETING TIME** | | | | | |
| Range | 1 – 9 | 1 – 9 | 1 – 8 | 1 – 9 | 0 – 18 |
| Average | 3.7 | 3.8 | 3.8 | 3.2 | 5.1 |
| Change (▼ ▲ =) | | ▲ | ▼ | ▼ | ▼ |

# Rate Selection

**Estimates by Accepted Appraisal Techniques**

The overall capitalization rate can be estimated by analysis of equity and mortgage requirements. The derivation of an overall capitalization rate by this method is based on several market rates and assumptions.

| | |
|---|---|
| Holding Period | 10 years |
| Equity Yield Rate | 10.0% |
| Mortgage Interest Rate | 3.5% |
| Mortgage (%) | 70% |
| Equity Requirement | 30% |
| Amortization | 25 years |
| Value Change per Year | 1.0% |

The overall capitalization rate indicated through this technique is 5.74%. The above assumptions used to estimate an overall rate were based on current commercial lending parameters at regional lending institutions.

**Reconciliation of Rates:** Assuming sufficient data, the best indicator of cap rates is extracted from recent actual sales. The other methods are useful as support, but do not offer direct support for a cap rate conclusion.

**Conclusion** Based on the preceding analysis and local market data studies **a cap rate of 6.50%** is deemed appropriate for this property.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 167 of 416

# Direct Capitalization of Income

**PRO FORMA ANALYSIS**

| GBA | | 277,468 |
|---|---|---|
| **Income** | | |
| Gross Actual Income Residential Units | $ | 4,788,000 |
| Estimated Synagogue Building          $25 PSF | $ | 336,700 |
| **Total Income (PGI)** | $ | 5,124,700 |
| Vacancy and Collection Loss-Residential      -5% | $ | (239,400) |
| Vacancy and Collection Loss- Commercial    -10% | $ | (33,670) |
| **Effective Gross Income (EGI)** | $ | 4,851,630 |
| **Expenses** | | |
| Real Estate Tax | $ | 142,972 |
| Insurance | $ | 113,900 |
| Common Utilities | $ | 50,000 |
| Water and Sewer | $ | 117,000 |
| Fuel | | Tenant |
| Repairs & Maintenance | $ | 138,734 |
| Management (4%) | $ | 194,065 |
| Building Reserves | $ | 83,240 |
| Legal and Accounting | $ | 30,000 |
| Other & Miscellaneous | $ | 72,500 |
| **Total Expenses** | $ | 942,412 |
| | | |
| **Net operating Income** | | 3,909,218 |
| Overall Rate | | 6.50% |
| As Is Value Indicator | $ | 60,141,816 |
| **Rounded** | **$** | **60,150,000** |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM       INDEX NO. 036879/2021
NYSCEF DOC. NO. 32                                   RECEIVED NYSCEF: 03/18/2022

## Valuation

## Valuation

Based on the previous analysis and assumptions, the estimated market value by the Income Capitalization Approach is:

## SIXTY MILLION AND ONE HUNDRED FIFTY THOUSAND DOLLARS

**$60,150,000**

# Reconciliation

The values indicated by the approaches used in this analysis are:

THE COST APPROACH: ........................................................................... N/A

## AS IS VALUE

THE SALES COMPARISON APPROACH: Land Value + School Building ........... $12,300,000

THE SALES COMPARISON APPROACH: Development: + School Building ....... $26,000,000

## PROPOSED VALUE

THE SALES COMPARISON APPROACH: ................................................... $60,150,000

THE INCOME COMPARISON APPROACH: ............................................. $60,150,000

**AS IS — The subject property is approved for the adult student housing zoning development site; the development value was relied upon for the final conclusion of value.**

Therefore, it is the opinion of the appraiser that the *As Is* Market Value estimate of the *Fee Simple Estate* of the subject property, as of November 7, 2018, is:

## TWENTY SIX MILLION ($26,000,000) DOLLARS

**Proposed Value — The proposed subject property will be residential complex housing with the existing school building;**

The *Value upon Completion* of the proposed development of the subject property, as of November 7, 2018, is:

## SIXTY MILLION AND ONE HUNDRED THOUSAND DOLLARS

### $60,150,000

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 32
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 170 of 416

# ADDENDA

- **APPRAISER'S QUALIFICATIONS**

## APPRAISER'S QUALIFICATIONS

### QUALIFICATIONS OF VICTOR SCHLESINGER

New York and New Jersey Certified General Real Estate Appraiser

Victor Schlesinger is the President of Republic Valuations, a firm providing real estate appraisal and consulting services. The following is a summary resume of his background and experience.

### EXPERIENCE

Mr. Schlesinger has more than 25 years of experience in the real estate field and 15+ years of experience as a real estate appraiser, arbitrator and consultant in the fields of real estate and urban economics. He has conducted numerous real estate appraisals of office buildings, research and development (R&D) buildings, industrial facilities, retail stores and shopping centers, hotels, apartments, condominiums and vacant land. Mr. Schlesinger's real estate appraisal expertise is focused on urban/suburban buildings, development projects and land. He has extensive experience in appraising real estate for condemnations, rental and other appraisal arbitration matters, property tax assessment appeals, mortgage loans, assessment districts, community facilities districts and similar public finance bond financing. Analysis and valuation of leasehold, leased fee and other real estate interests are standard areas of practice. He also has experience in cost revenue analyses as they relate to municipal fiscal impacts from a land use project. Mr. Schlesinger is an Associate Member of the Appraisal Institute and is licensed as a New York and New Jersey Certified General Real Estate appraiser.

Mr. Schlesinger frequently provides litigation support and serves as an expert witness in court or in private arbitration proceedings. He also acts as either a neutral or party arbitrator in resolving matters of real estate values, rents and related issues. He has been qualified as a real estate appraisal expert and provided testimony in the New York court system and in the Federal United States Courts.

Republic Valuations is a real estate appraisal and consulting firm. The firm has a staff of approximately 10 real estate appraisal and market research professionals. Mr. Schlesinger has overall management responsibility for the firm, as well as being the partner in charge of many specific appraisal, arbitration and consulting assignments.

Other related experience includes teaching, speaking and publications on various facets of real estate appraisal, arbitration and market research.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 172 of 416

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

**PROFESSIONAL AFFILIATIONS & STATE CERTIFICATION**

State of New York Certified General Real Estate Appraiser No. 46000047078

State of New Jersey Certified General Real Estate Appraiser No. 42RG00225700

Associate Member of the Appraisal Institute Metropolitan New York chapter



FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 32

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 173 of 416

REPUBLIC VALUATIONS

184 PARK AVENUE, BROOKLYN, NEW YORK 11205

PHONE: 718-625-6900• FAX: 718-625-6898   •e-mail: Email@RepublicValuations.com

REAL ESTATE APPRAISERS ♦ CONSULTANTS

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 33

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 174 of 416

# EXHIBIT F

# EXHIBIT F



# BBG

## APPRAISAL REPORT

Community Facility/Development Site
82 Highview Road
Suffern, NY 10901

## REQUESTED BY

Rabbi Mayer Zaks
Del Realty, LLC
82 Highview Road
Suffern, NY 10901

## PREPARED BY

BBG, Inc.
112 Madison Avenue, 11th Floor
New York, New York 10016

## DATE OF VALUE ESTIMATE

October 1, 2018

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 176 of 416

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

# BBG

October 18, 2018

Rabbi Mayer Zaks
Del Realty, LLC
82 Highview Road
Suffern, NY 10901

Re:    BBG Appraisal File No. 0118010385
       Community Facility/Development Site
       82 Highview Road
       Suffern, NY 10901

Dear Mr. Zaks:

As requested, we have prepared a full narrative appraisal, of the above-captioned property, for estimating the "as is" market value of the subject property's fee simple interest.

The subject property includes three contiguous tax lots on the north side of Highview Road between Wandover Lane and Pine Road in the hamlet of Viola (Suffern address) in the Town of Ramapo, Rockland County, NY. The tax lots are identified on Town of Ramapo tax map 49.17, as Block 2, Lots 42, 47 and 47A.

Lot 42 contains 2.01 acres and is improved with a community facility building utilized as a religious school. This 2-story building contains 13,468 square feet.

Lot 47 contains 11.70 acres of vacant land with two, small older storage buildings that do not add value. The "as of right" zoning for this parcel (R-25) indicates a minimum lot size of 25,000 square feet per unit, yielding approximately 30 lots. However, based on information provided by the client referencing a State Environmental Quality Review, dated June 4, 2004 and referencing Town of Ramapo zoning ordinance applicable to adult student housing (ASH), this parcel can be developed as multi-family at a density of 16 units per acre, calculating to 187 units.

Lot 47A contains 1.02 acres of vacant land and based on "as of right" zoning allowing for single family development, with a minimum lot size of 25,000 square feet, would yield one, single family home site.

Our valuation includes the extraordinary assumptions that the entire 11.7-acre site is developable at 16 units per acre and that final approvals for development of 187 units can be obtained within 12 months. In addition, no record of ownership was available for Lot 47A and according to our client, the Town had a "mapping" issue with this lot which is now resolved. Thus, we are assuming that this lot is a legal lot owned by Del Realty, LLC and any ownership, deed or mapping issues have been remedied.

NEW YORK

P + 212 682 6306
F + 212 682 4331

152 MADISON AVENUE, ... FLOOR
NEW YORK, NY 10016

Rabbi Mayer Zaks
October 18, 2018
Page 2

After carefully considering all available information concerning the subject property and all apparent factors affecting value, our opinion of market value of the subject property is:

**Lot 42: Community Facility/Religious School**

| | |
|---|---|
| Community Facility | $3,569,020 |

**Lot 47: ASH Development Site**

| | |
|---|---|
| Building Units | 187 |
| Per Unit | $100,000 |
| Total Value | $18,700,000 |

**Lot 47A:  Single-Family Development Site**

| | |
|---|---|
| Building Units | 1 |
| Per Unit | $200,000 |
| Total Value | $200,000 |

Based on the above the total value of all parcels, subject to the defined extraordinary assumptions, as of October 1, 2018, is:

| | |
|---|---|
| Community Facility | $3,569,020 |
| Vacant Land (ASH) | $18,700,000 |
| Vacant Land R25 Zone | $200,000 |
| Total Value | $22,469,020 |
| **Rounded** | **$22,500,000** |

Our analyses, opinions and conclusions were developed, and this report has been prepared, in conformance with the Standards of Professional Practice and Code of Professional Ethics of the Appraisal Institute, the Uniform Standard of Professional Appraisal Practice (USPAP), and Title XI (with amendments) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA).

The opinion of value expressed herein is subject to the certification, contingent and limiting conditions, assumptions and all other information contained in the following report.

Thank you for the opportunity to serve you.

Sincerely,

William G. Freda
Senior Appraiser
State Certified General Appraiser #46-51249
bfreda@bbgres.com

Jon DiPietra, MAI
Managing Director
State Certified General Appraiser #46-46386

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 178 of 416





## SUMMARY OF FACTS AND CONCLUSIONS

**Subject Property:** Community Facility/Development Site
82 Highview Road
Suffern, NY 10901

**Location:** The subject property includes three contiguous tax lots on the north side of Highview Road between Wandover Lane and Pine Road in the hamlet of Viola (Suffern address) in the Town of Ramapo, Rockland County, NY. The tax lots are identified on Town of Ramapo tax map 49.17, as Block 2, Lots 42, 47 and 47A.

**Census Tract:** 116.02

**Description:** Lot 42 contains 2.01 acres and is improved with a community facility building utilized as a religious school. This 2-story building contains 13,468 square feet.

Lot 47 contains 11.70 acres of vacant land and based on information provided by the client, these parcels can be developed as multi-family at a density of 16 units per acre, calculating to 187 units.

Lot 47A contains 1.02 acres of vacant land and based on "as of right" zoning allowing for single family development, with a minimum lot size of 25,000 square feet, would yield one, single family home site.

**Block and Lot:** Town of Ramapo tax map 49.17, as Block 2, Lots 42, 47 and 47A.

**Site Area:**

| Tax Lot | Size (Acres) | Improvements |
|---|---|---|
| 42 | 2.01 | Community Facility |
| 47 | 11.70 | Vacant Land |
| 47A | 1.02 | Vacant Land |
| Site Area | 14.73 | |

**Building Area:** Lot 32/Community Facility:13,468 square feet

**Year Built:** 1970 (estimated)

**Zoning:** R-25 (See Extraordinary Assumption for Lot 47)

**Flood Zone:** The subject site is within a minimal risk Zone X flood area, according to the FIRM flood hazard map, Community Panel #36087C052G, dated March 3, 2014.

**Purpose of the Appraisal:** To provide the client with a credible opinion of the defined value of the subject property given the intended use of the appraisal.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 180 of 416

**Intended Use of the Appraisal:**    The intended use of this appraisal is for internal valuation.

**Marketing Time:**    Within one year

**Exposure Time:**    Within one year

**Property Rights Appraised:**    Fee simple interest

**Effective Date:**    October 1, 2018

**Date of Inspection:**    October 1, 2018

**Concluded Values:**

| | |
|---|---:|
| Community Facility | $3,569,020 |
| Vacant Land (ASH) | $18,700,000 |
| Vacant Land R25 Zone | $200,000 |
| Total Value | $22,469,020 |
| **Rounded** | **$22,500,000** |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
RECEIVED NYSCEF: 03/18/2022
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 181 of 416

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................1
     IDENTIFICATION OF THE SUBJECT PROPERTY ...........................................1
     PURPOSE OF THE APPRAISAL..........................................................................1
     IDENTIFICATION OF THE CLIENT .....................................................................1
     INTENDED USERS/USE .......................................................................................1
     PROPERTY RIGHTS APPRAISED.......................................................................1
     EFFECTIVE DATE ...............................................................................................1
     SUBJECT PROPERTY HISTORY ........................................................................2
     DEFINITION OF MARKET VALUE.......................................................................3
     DEFINITION OF REAL ESTATE-RELATED FINANCIAL TRANSACTION ..........3
     DATA SOURCES .................................................................................................3
     DEFINITION OF EXPOSURE TIME.....................................................................4
     ESTIMATE OF REASONABLE MARKETING TIME .............................................4
     LIMITING CONDITIONS AND SPECIAL ASSUMPTIONS...................................4
     EXTRAORDINARY ASSUMPTIONS ....................................................................4
     HYPOTHETICAL CONDITION..............................................................................5
     SCOPE OF THE APPRAISAL...............................................................................5
     COMPETENCY ....................................................................................................5
HUDSON VALLEY: REGIONAL ANALYSIS .................................................................6
AREA DESCRIPTION: ROCKLAND COUNTY ...........................................................11
TOWN OF RAMAPO OVERVIEW................................................................................19
     VIOLA/SUBJECT LOCATION ............................................................................22
     DEMOGRAPHIC OVERVIEW .............................................................................23
ORANGE-ROCKLAND-WESTCHESTER HOUSING MARKET AREA .........................29
ZONING ANALYSIS.....................................................................................................36
ASSESSED VALUE AND REAL ESTATE TAXES .......................................................41
SUBJECT PHOTOGRAPHS ........................................................................................45
SITE/IMPROVEMENT DESCRIPTION ........................................................................60
HIGHEST AND BEST USE ..........................................................................................64
APPRAISAL VALUATION PROCESS: DEVELOPMENT PARCELS.............................67
APPRAISAL VALUATION PROCESS: COMMUNITY USE BUILDING .........................69
SALES COMPARISON APPROACH: DEVELOPMENT SITE.......................................70
SALES COMPARISON APPROACH: COMMUNITY USE BUILDING...........................78
RECONCILIATION AND FINAL VALUE ESTIMATE.....................................................87

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 182 of 416

ADDENDUM ...................................................................................................................88

    ENGAGEMENT LETTER ...........................................................................................89

    CLIENT SUBMITTED DOCUMENT ..........................................................................91

    CONTINGENT AND LIMITING CONDITIONS ..........................................................110

    CERTIFICATION ......................................................................................................114

    QUALIFICATIONS....................................................................................................116

    APPRAISAL LICENSE .............................................................................................118

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 183 of 416
RECEIVED NYSCEF: 03/18/2022

# INTRODUCTION

## IDENTIFICATION OF THE SUBJECT PROPERTY

The subject property includes three contiguous tax lots on the north side of Highview Road between Wandover Lane and Pine Road in the hamlet of Viola (Suffern address) in the Town of Ramapo, Rockland County, NY. The tax lots are identified on Town of Ramapo tax map 49.17, as Block 2, Lots 42, 47 and 47A.

Lot 42 contains 2.01 acres and is improved with a community facility building utilized as a religious school. This 2-story building contains 13,468 square feet.

Lot 47 contains 11.70 acres of vacant land and based on information provided by the client, these parcels can be developed as multi-family at a density of 16 units per acre, calculating to 187 units.

Lot 47A contains 1.02 acres of vacant land and based on "as of right" zoning allowing for single family development, with a minimum lot size of 25,000 square feet, would yield one, single family home site.

## PURPOSE OF THE APPRAISAL

The purpose of the appraisal is to estimate the "as is" market value of the subject property's fee simple interest of as of October 1, 2018, in accordance with the highest and best use concept and market value definition.

## IDENTIFICATION OF THE CLIENT

Del Realty, LLC has engaged us and is our client for this assignment.

## INTENDED USERS/USE

The intended user of this report is Del Realty, LLC and/or its affiliates. The intended use of this appraisal is for internal valuation.

## PROPERTY RIGHTS APPRAISED[1]

The interest appraised in the subject property is that of a fee simple estate. The Dictionary of Real Estate Appraisal, published by the Appraisal Institute, defines a fee simple estate as "absolute ownership unencumbered by any other interest or estate; subject only to the limitations of eminent domain, escheat, police power, and taxation."

## EFFECTIVE DATE[2]

The date on which the appraisal or review opinion applies. The effective date is October 1, 2018, which is the date of inspection.

---

[1] Appraisal Institute, The Dictionary of Real Estate Appraisal, Sixth Edition, page 90 (Chicago: Appraisal Institute, 2015)

[2] Ibid, page 74

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 184 of 416

## SUBJECT PROPERTY HISTORY

Town of Ramapo records indicate that the owner of the subject property is Del Realty, LLC. A sale of the property is recorded on November 4, 2017 (Sale Date October 18, 2017) for a reported purchase price of $1,400,000, with the purchaser listed at Del Realty LLC and the seller listed an TD Bank, N.A.

This sale was not marketed and was allowable as part of agreement with the current user (and former owner prior to the bank/seller) which would allow the user to retain permanent occupancy. As part of the agreement, the current user will not take legal action opposing the sale which may or may not have been a legal sale, due a previous sale where attorney general approvals, necessary for religious property, was not obtained. Thus, the current user is essentially affiliated with the purchaser. Additionally, in a scenario where Adult Student Housing is developed, it must be developed with current user (as a religious facility) in place. Therefore, the value to the purchaser is reliant on the current user. Thus, the recent sale price does not reflect market. It is also noted that our value assume final approvals are in place for 187 units in Lot 47 (see Extraordinary Assumptions).

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33   22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 185 of 416

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

INTRODUCTION

## DEFINITION OF MARKET VALUE[3]

The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller each acting prudently and knowledgeably, and assuming the price is not affected by undue stimulus. Implicit in this definition are the consummation of a sale as of a specified date and the passing of title from seller to buyer under condition whereby:

> Buyer and seller are typically motivated;

> Both parties are well informed or well advised, and acting in what they consider their own best interests;

> A reasonable time is allowed for exposure in the open market;

> Payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and

> The price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions granted by anyone associated with the sale.

## DEFINITION OF REAL ESTATE-RELATED FINANCIAL TRANSACTION[4]

Any transaction involving:

> The sale, lease, purchase, investment in or exchange of real property, including interests in property, or the financing thereof; or

> The refinancing of real property or interests in real property; or

> The use of real property or interests in property as security for a loan or investment, including mortgage-backed securities.

## DATA SOURCES

The data contained within this appraisal was compiled from market analysis utilizing the following sources (unless otherwise noted): Town Ramapo and Rockland County Tax Assessors, Building and Zoning Departments, Claritas, CoStar, Federal Reserve, FEMA, and Reis. When possible, we have confirmed the reported data with parties to the transactions or those who are intimately familiar with their critical details.

---

[3] *Federal Reserve Bank of New York, The Federal Register: Real Estate Appraisal Standards Amendments to Regulation H and Y Final Rule (New York, Federal Reserve Bank of New York, 1990), page 2.*
[4] *12 U.S.C. 3350(5) (FIRREA section 1121(5)*

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

*INTRODUCTION*

## DEFINITION OF EXPOSURE TIME[5]

The time a property remains on the market.

The estimated length of time the property interest being appraised would have been offered on the market prior to the hypothetical consummation of a sale at market value on the effective date of the appraisal; a retrospective estimate based on an analysis of past events assuming a competitive and open market. Exposure time is always presumed to occur prior to the effective date of the appraisal. The overall concept of reasonable exposure encompasses not only adequate, sufficient and reasonable time but also adequate, sufficient and reasonable effort.

It is our opinion that a normal exposure time for the subject property is 6 to 12 months. This conclusion is predicated on interviews with brokers and other real estate industry sources and on information obtained in the verification process. The value reported herein presumes such an exposure time.

## ESTIMATE OF REASONABLE MARKETING TIME

Given the subject's present condition and location and the marketing times for similar properties, we estimate the marketing time for the subject to be between six months and one year.

## LIMITING CONDITIONS AND SPECIAL ASSUMPTIONS

Information, estimates and opinions furnished to the appraiser and contained in the report were obtained from sources considered reliable and believed to be true and correct. However, no responsibility for accuracy of such items furnished the appraiser can be assumed by the appraiser.

## EXTRAORDINARY ASSUMPTIONS

According to The Dictionary of Real Estate Appraisal (6th Edition), an Extraordinary Assumption is "An assumption, directly related to a specific assignment, which, if found to be false, could alter the appraiser's opinions or conclusions. Extraordinary assumptions presume as fact otherwise uncertain information about physical, legal, or economic characteristics of the subject property; or about conditions external to the property such as market conditions or trends; or about the integrity of data used in an analysis." In the development of our opinions of value, we have applied the following extraordinary assumptions:

Our valuation includes the extraordinary assumptions that the entire 11.7-acre site is developable at 16 units per acre, as adult student housing and that s final approvals for development of 187 units can be obtained within 12 months. In addition, no record of ownership was available for Lot 47A and according to our client, the Town had a "mapping" issue with this lot which is now resolved. Thus, we are assuming that this lot is a legal lot owned by Del Realty, LLC and any ownership, deed or mapping issues have been remedied.

---

*5 Source: Appraisal Institute, The Dictionary of Real Estate Appraisal, Sixth Edition, page 72 (Chicago: Appraisal Institute, 2015)*

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 187 of 416

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

INTRODUCTION

## HYPOTHETICAL CONDITION

According to The Dictionary of Real Estate Appraisal (6th Edition), a Hypothetical Condition is "that which is contrary to what exists but is supposed for the purpose of analysis. Hypothetical conditions assume conditions contrary to known facts about physical, legal, or economic characteristics of the subject property; or about conditions external to the property, such as market conditions or trends; or about the integrity of data used in an analysis." In the development of our opinions of value, we have applied the following Hypothetical Condition: None.

## SCOPE OF THE APPRAISAL

BBG, Inc. has been retained to prepare a market valuation of the subject property. Within the course of this assignment, the following analyses were prepared:

1.  Analyzed various population, labor, and economic growth statistics, development patterns, and recent real estate activity and competition and related these factors to their impact on local industrial markets;

2.  Evaluated the competitive position of the subject property in terms of its location, economic composition, development patterns, recent real estate activity, and competition within the subject's market;

3.  Inspected the property;

4.  Determined the highest and best use of the subject property based on an analysis of all relevant factors;

5.  Researched and ascertained comparable land and building sales from various sources including CoStar and our work files and further confirmed this data with parties involved in the transactions in deriving and supporting a market value estimate. The purpose of this analysis is to derive a market value for the subject property based on recent sales that are considered competitive;

6.  Estimated the as is market value of the subject property's fee simple interest, as of October 1, 2018.

## COMPETENCY

We have specific knowledge of appraisal methods and practices to complete the assignment competently and have extensive experience in appraising similar properties.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

222-2493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 188 of 416

# HUDSON VALLEY: REGIONAL ANALYSIS

## REGIONAL MAP



The Hudson Valley centers along the Hudson River which extends from the Adirondacks of Northern New York State to the southeastern most portion of New York State where the river flows past Manhattan into the Atlantic Ocean. Three general geographic areas are defined along the Hudson River, the Lower Hudson Valley, the Mid-Hudson Valley and the Upper Hudson Valley. The Upper Hudson Valley is north of Albany with Albany, Saratoga and Warren Counties west of the Hudson River and Washington and Rensselaer Counties east of the Hudson. Travelling south, the Mid-Hudson Valley includes Greene County and Ulster Counties west of the Hudson with Columbia and Dutchess Counties east of the Hudson River. It is noted that this geographic definition is somewhat flexible, thus Albany is often included as within the Mid-Hudson Valley and Dutchess and Ulster Counties are often included in the Lower Hudson Valley which also includes Westchester and Putnam Counties east of the Hudson with Rockland, Orange and Sullivan Counties west of the Hudson.

Alternately, the New York State Department of Labor divides New York into regions including the North Country (which would include the Upper Hudson Valley), the Capital Region (which would include the City of Albany and the Mid-Hudson Valley) and the Hudson Valley Region (which is actually the seven counties defined above as the Lower Hudson Valley). (Other regional areas of New York State as defined by the New York State Department of Labor include the Southern Tier, the Mohawk Valley, Western New York, the Finger Lakes, New York City and Long Island.)

## Unemployment Rates in New York State

| | [illegible] | [illegible] | | [illegible] | [illegible] | | [illegible] | [illegible] |
|---|---|---|---|---|---|---|---|---|
| New York State | [illegible] | [illegible] | Hudson Valley | [illegible] | [illegible] | Finger Lakes | [illegible] | [illegible] |
| Capital | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | Mohawk Valley | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Central New York | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | Western New York | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | North Country | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| Southern Tier | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | Long Island | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | New York City | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | | | | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | | | | [illegible] | [illegible] | [illegible] |

New York State Department of Labor

### EMPLOYMENT

The following Hudson Valley (as defined by the New York State Department of Labor) employment information was excerpted from the Employment in New York State Newsletter (October 2017) published by the New York State Department of Labor, (the most recent regional data available):

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 190 of 416
RECEIVED NYSCEF: 03/18/2022

*HUDSON VALLEY REGIONAL ANALYSIS*

# Focus on the Hudson Valley

*Region Enjoys Broad-based Job Growth Since End of Recession*



"Since 2009, the Hudson Valley's regional job market has enjoyed broad-based expansion, with many industries adding jobs."

## Who is Adding the Most Jobs?

HUDSON VALLEY REGIONAL ANALYSIS

**CURRENT AND HISTORICAL UNEMPLOYMENT RATES**



Unemployment Rates by County,
New York State,
May 2018

County Unemployment Rates (not seasonally adjusted)

- Rate is 7.0 percent or greater
- Rate is 6.0 - 6.9 percent
- Rate is 5.0 - 5.9 percent
- Rate is 4.0 - 4.9 percent
- Rate is less than 4.0 percent

New York State rate = 3.7 percent

Source: New York State Department of Labor

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM INDEX NO. 036879/2021
NYSCEF DOC. NO. 33 RECEIVED NYSCEF: 03/18/2022

Within the Hudson Valley, unemployment was the lowest in Putnam County, at 4.4%% as of March 2018, closely followed by Dutchess County and Rockland County at 4.5%. The highest unemployment is found in Ulster County at 4.9%. Currently, the Hudson Valley's overall unemployment rate is higher than the rate exhibited by New York City Metropolitan area and overall US rates and slightly lower than New York State (overall). Historically, the Hudson Valley appears to be in-line to slightly outperforming the State and National levels, although the most recent rate is significantly higher than national levels.

The following table illustrates historical unemployment rate statistics for the Hudson Valley.

**UNEMPLOYMENT STATISTICS --HUDSON VALLEY**

| | Mar-18 | 2017 | 2016 | 2015 | 2014 | 2013 | 2012 | 2011 | 2010 | 2009 | 2008 | 2007 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Dutchess County | 4.50% | 4.10% | 4.00% | 3.90% | 4.50% | 5.60% | 7.20% | 7.30% | 7.40% | 7.90% | 5.90% | 4.10% |
| Orange County | 4.80% | 4.40% | 4.10% | 4.00% | 4.60% | 5.70% | 7.20% | 7.50% | 7.70% | 8.00% | 6.20% | 4.40% |
| Putnam County | 4.40% | 4.10% | 3.90% | 3.70% | 4.20% | 5.00% | 6.60% | 7.00% | 6.80% | 6.90% | 5.10% | 3.50% |
| Sullivan County | 4.70% | 5.40% | 5.00% | 4.90% | 6.10% | 7.60% | 9.30% | 9.40% | 9.40% | 9.60% | 8.20% | 6.00% |
| Rockland County | 4.50% | 4.20% | 3.90% | 3.80% | 4.40% | 5.20% | 6.70% | 7.00% | 7.20% | 6.90% | 5.30% | 3.90% |
| Ulster County | 4.90% | 4.50% | 4.40% | 4.20% | 4.90% | 6.00% | 7.80% | 7.80% | 7.70% | 8.00% | 6.40% | 4.80% |
| Westchester County | 4.70% | 4.40% | 4.10% | 3.90% | 4.40% | 5.20% | 6.70% | 7.00% | 7.00% | 7.20% | 5.60% | 3.90% |
| **OVERALL** | **4.70%** | **4.44%** | **4.20%** | **4.06%** | **4.73%** | **5.76%** | **7.36%** | **7.57%** | **7.60%** | **7.79%** | **6.10%** | **4.37%** |

**UNEMPLOYMENT STATISTICS --NEW YORK CITY, NEW YORK STATE, USA**

| Year | NYC | Hudson Valley | NYS | USA |
|---|---|---|---|---|
| 2000 | 5.80% | 3.40% | 4.50% | 3.90% |
| 2001 | 5.90% | 3.70% | 4.80% | 5.70% |
| 2002 | 8.00% | 4.40% | 6.10% | 6.00% |
| 2003 | 8.30% | 4.50% | 6.40% | 5.70% |
| 2004 | 7.10% | 4.50% | 5.80% | 5.40% |
| 2005 | 5.80% | 4.10% | 5.00% | 4.90% |
| 2006 | 5.00% | 4.00% | 4.50% | 4.40% |
| 2007 | 5.00% | 4.37% | 4.60% | 4.80% |
| 2008 | 5.60% | 6.10% | 5.40% | 7.10% |
| 2009 | 9.30% | 7.79% | 8.30% | 9.70% |
| 2010 | 9.50% | 7.60% | 8.60% | 9.10% |
| 2011 | 9.10% | 7.57% | 8.30% | 8.30% |
| 2012 | 9.30% | 7.36% | 8.50% | 7.60% |
| 2013 | 8.80% | 5.76% | 7.70% | 6.50% |
| 2014 | 7.30% | 4.73% | 6.30% | 5.40% |
| 2015 | 5.70% | 4.06% | 5.30% | 4.80% |
| 2016 | 5.20% | 4.20% | 4.80% | 4.50% |
| 2017 | 3.90% | 4.30% | 4.40% | 3.90% |
| Mar-18 | 4.20% | 4.70% | 4.80% | 4.10% |

Source: New York State Department of Labor

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## AREA DESCRIPTION: ROCKLAND COUNTY

Rockland County is situated within the New York Metropolitan area. The New York metropolitan area's SCSA includes 17 counties in New York, New Jersey, and Connecticut and comprises approximately 13,000 square miles with a population of over 20 million. Approximately 60 million people live in the northeast corridor between Boston and Washington D.C. Commerce and population density have increasingly formed one interdependent environment throughout this region.

Rockland County is situated on the west side of the Hudson River approximately 25 miles north of New York City. It is triangular and encompasses approximately 199 square miles. Rockland County is bordered by Orange County to the north and west, the Hudson River to the east and Bergen County, New Jersey to the south. Rockland County is comprised of five townships: Ramapo, Clarkstown, Haverstraw, Stony Point, and Orangetown, and there are several villages and hamlets within the various townships. The New York State Thruway (Interstate 87) – a major transportation and freight corridor – runs through the county.

### POPULATION

Rockland County's proximity to New York City's economic opportunities, combined with its relatively uncrowded suburban profile, makes it a desirable area to live. Historical population, current estimates and five-year projections are presented below:

#### HISTORICAL AND CURRENT ESTIMATED POPULATION STATISTICS

|  | 2000 Census | 2010 Census | 2018 Estimate | 2023 Estimate | % Change 2000 – 2010 | % Change 2010 – 2018 | % Change 2018 – 2023 |
|---|---|---|---|---|---|---|---|
| Rockland County | 286,759 | 311,687 | 329,445 | 339,145 | 8.69% | 5.83% | 2.91% |
| Hudson Valley* | 2,179,196 | 2,290,851 | 2,334,391 | 2,365,156 | 5.12% | 1.90% | 1.32% |
| New York State | 18,976,447 | 19,378,102 | 19,788,463 | 20,046,549 | 2.12% | 2.12% | 1.30% |
| United States | 281,421,942 | 308,745,538 | 326,533,070 | 337,947,861 | 9.71% | 5.76% | 3.50% |

\* Westchester, Rockland, Putnam, Duetchess, Ulster, Orange and Sullivan Counties
Source: Claritas Inc.

As illustrated, Rockland County's historical population growth has well exceeded the overall growth in New York State and is consistent with the national average. The moderate growth in the county is attributable to new residential development and the region's economic expansion, which had enabled workers to move further out into the suburbs. As development in outlying areas had increased, people moved further into the suburbs in search of more affordable housing and less congestion. Overall, population growth in Rockland County has remained consistent with the surrounding region.

### Employment

Employment in Rockland County consists of a diversified mixture of manufacturing, trade, and service industries. Included in the county's economic base are numerous accounting firms, law firms, banking institutions, education institutions, insurance companies, manufacturers, and numerous corporate interests. Additionally, over the past decade, several Japanese corporations, including Hino Diesel Trucks, Yamato Scientific, Takeda Chemical, Pentax Products, Hitachi-

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 194 of 416

AREA DESCRIPTION: ROCKLAND COUNTY

Seiki, Subaru, and Minolta, have established significant operations in the county. This is primarily the result of the county's proximity to New York City where many of these companies have headquartered their U.S. operations.

Despite this, Rockland remains primarily a bedroom community for Manhattan, and has a much smaller local employment base than other New York metropolitan area suburbs such as Westchester, Nassau, and Suffolk Counties in New York, and northern New Jersey. A listing of Rockland County's major employers is illustrated in the following table.

ROCKLAND COUNTY'S LARGEST EMPLOYERS

| Company | | Employees | Business |
|---|---|---|---|
| Hamaspik of Rockland County | Monsey | 1,993 | Healthcare |
| Rockland County | New City | 1,943 | Government |
| Nyack Hospital | Nyack | 1,850 | Hospital |
| Good Samaratan Hospital | Suffern | 1,751 | Hospital |
| Rockland Psychiatric Center | Orangeburg | 1,219 | Healthcare |
| Jawonio, Inc. | New City | 1,100 | Healthcare |
| Boces of Rockland County | West Nyack | 933 | Education |
| Helen Hayes Hospital | Blauvelt | 891 | Hospital |
| Verizon Wireless | Orangeburg | 850 | Communications |
| SUNY Rockland Community College | Suffern | 839 | Education |
| Northern Services Group | Monsey | 832 | Healthcare |
| St Dominic's Home | Blauvelt | 820 | Healthcare |
| Orange & Rockland Utilities (Con Ed) | Pearl River | 819 | Electricity & Natural Gas |
| A T & T Healthcare Inc. | New City | 800 | Healthcare |
| PDI | Orangeburg | 753 | Healthcare |
| ARC of Rockland | Congers | 715 | Healthcare |
| Pfizer | Pearl River | 700 | Healthcare |
| Camp Venture Inc. | Nanuet | 675 | Recreational |
| PAR Pharmaceuticals | Chestnut Ridge | 636 | Government |
| Aide Services | Spring Valley | 600 | Healthcare |

Source: Rockland County Economic Development Corp. (2017)

As illustrated, Rockland County does not have a large corporate presence; with only five of the top 20 employers reflecting for-profit corporations. Four of the top 20 employers are local hospitals and eight of the top 20 employers are health care related services. The largest employer is Rockland County (This is typical of most counties.) Industrial firms in Rockland County provide a wide scale of products and services to local and distant markets including apparel, chemicals, electronic equipment, and machinery. Many of the employers in Rockland County have fewer than 50 employees.

The following table illustrates current employment by sector and occupation data for Rockland County:

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM INDEX NO. 036879/2021
NYSCEF DOC. NO. 33    22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 195 of 416    RECEIVED NYSCEF: 03/18/2022

*AREA DESCRIPTION, ROCKLAND COUNTY*

## EMPLOYMENT BY SECTOR/OCCUPATION – ROCKLAND COUNTY

| Description | Rockland County | |
|---|---|---|
| | Total | % |
| **2018 Est. Civ. Employed Pop 16+ by Class of Worker** | | |
| For-Profit Private Workers | 150,656 | 100% |
| Non-Profit Private Workers) | 90,914 | 60.34% |
| Local Government Workers | 19,644 | 13.04% |
| State Government Workers | 15,156 | 10.06% |
| Federal Government Workers | 7,081 | 4.70% |
| Self-Employed Workers | 1,024 | 0.68% |
| Unpaid Family Workers | 16,791 | 11.14% |

| Description | Rockland County | |
|---|---|---|
| | Total | % |
| Architecture/Engineering | 1,616 | 1.07% |
| Arts/Design/Entertainment/Spo | 3,660 | 2.43% |
| Building/Grounds Cleaning/Mai | 6,255 | 4.15% |
| Business/Financial Operations | 7,846 | 5.21% |
| Community/Social Services | 2,713 | 1.80% |
| Computer/Mathematical | 3,241 | 2.15% |
| Construction/Extraction | 6,109 | 4.05% |
| Education/Training/Library | 16,154 | 10.72% |
| Farming/Fishing/Forestry | 150 | 0.10% |
| Food Preparation/Serving Relat | 6,578 | 4.37% |
| Healthcare Practitioner/Technic | 12,204 | 8.10% |
| Healthcare Support | 4,769 | 3.17% |
| Installation/Maintenance/Repair | 3,597 | 2.39% |
| Legal | 1,413 | 0.94% |
| Life/Physical/Social Science | 1,817 | 1.21% |
| Management | 16,934 | 11.24% |
| Office/Administrative Support | 18,749 | 12.45% |
| Production | 3,891 | 2.58% |
| Protective Services | 4,894 | 3.25% |
| Sales/Related | 16,008 | 10.63% |
| Personal Care/Service | 5,820 | 3.86% |
| Transportation/Material Moving | 6,238 | 4.14% |

| Description | Rockland County | |
|---|---|---|
| | Total | % |
| **2018 Est. Employed Civilian Population 16+ by Occupation** | | |
| White Collar | 102,355 | 67.94% |
| Blue Collar | 19,835 | 13.17% |
| Service and Farming | 28,466 | 18.89% |

Source: Claritas Inc.

Rockland County's relatively low unemployment area is reflective of the county's diversified, educated and skilled employment base, and has shown relatively nominal fluctuations over the past several years.

*AREA DESCRIPTION: ROCKLAND COUNTY*

## Income Levels

The overall character of Rockland County is residential, with development consisting primarily of single-family detached dwelling units, although there are a number of multi-family garden apartment complexes. In addition, there are pockets of retail, office and industrial concentrations scattered throughout the county. Rockland is comprised mostly of upper-middle class residents, having a median household income level well above the state average. Median income figures are illustrated in the following table.

### HISTORICAL AND CURRENT ESTIMATED MEDIAN HOUSEHOLD INCOME STATISTICS

|  | 2000 Census | 2018 Estimate | 2023 Estimate | % Change 2000 – 2018 | Annual Rate 2000-2018 | % Change 2018 – 2023 |
|---|---|---|---|---|---|---|
| Dutchess County | 53,989 | 76,563 | 80,038 | 41.81% | 2.32% | 4.54% |
| Orange County | 52,778 | 78,305 | 84,787 | 48.37% | 2.69% | 8.28% |
| Putnam County | 72,506 | 94,749 | 94,550 | 30.68% | 1.70% | -0.21% |
| Sullivan County | 37,266 | 55,225 | 62,699 | 48.19% | 2.68% | 13.53% |
| **Rockland County** | **68,918** | **89,697** | **93,136** | **30.15%** | **1.68%** | **3.83%** |
| Ulster County | 42,942 | 62,005 | 65,858 | 44.39% | 2.47% | 6.21% |
| Westchester County | 64,036 | 93,113 | 99,519 | 45.41% | 2.52% | 6.88% |
| Totals | 392,435 | 549,657 | 580,587 | 40.06% | 2.23% | 5.63% |

Source: Claritas

As evident, Rockland County is of above average affluence in comparison to New York State and New York City levels. Rockland County has a lower cost of living than many of the other counties in the New York metropolitan area. For example, the home prices in the suburbs directly adjacent to New York City - Nassau, Westchester and Bergen Counties - have become prohibitively high to most of the region's population. This makes Rockland an attractive alternative, albeit a slightly longer commute into Manhattan. In addition, improvements in the area infrastructure, including the linking of I-287 with the New York State Thruway, and the upgrading of rail service for the area with a possible additional rail bridge across the Hudson, should serve to strengthen Rockland County's appeal as a place to live and do business. The following table illustrates median and average income levels for Rockland County:

### INCOME TRENDS – ROCKLAND COUNTY

|  | Median Household Income | Average Household Income | Per Capita Income |
|---|---|---|---|
| 2017 Projection | $91,941 | $118,526 | $38,779 |
| 2010 Estimate | $85,607 | $108,883 | $35,689 |
| 2000 Census | $69,252 | $85,236 | $28,082 |
| % Change – 2010-2017 | 6.89% | 8.14% | 7.97% |
| % Change – 2000-2010 | 19.10% | 21.72% | 21.31% |

Source: Claritas

The average and median income levels displayed in the above table generally fall above New York State and New York City MSA levels. Despite lower median income levels, Westchester County is more affluent overall, with higher average household income levels. Rockland County illustrates an above average level of affluence, with predictable moderate increases projected over the next five years. The following table presents the income distribution level among households in Rockland County.

*AREA DESCRIPTION: ROCKLAND COUNTY*

| 2018 Est. Households by Household Income | Households 104,229 |
|---|---|
| Income < $15,000 | 7.50% |
| Income $15,000 - $24,999 | 7.83% |
| Income $25,000 - $34,999 | 6.37% |
| Income $35,000 - $49,999 | 8.92% |
| Income $50,000 - $74,999 | 12.39% |
| Income $75,000 - $99,999 | 11.78% |
| Income $100,000 - $124,999 | 11.24% |
| Income $125,000 - $149,999 | 8.40% |
| Income $150,000 - $199,999 | 10.47% |
| Income $200,000 - $249,999 | 4.87% |
| Income $250,000 - $499,999 | 6.58% |
| Income $500,000+ | 3.66% |

Source: Claritas

As indicated, the majority of the income distribution is between $50,000 and $125,000, as 35.40% of the households fall within this range. Nearly 25.58% of the County residents have income levels above $150,000, which is indicative the county's high level of affluence.

## Transportation

The primary means of transportation in Rockland County is the automobile. Rockland County is accessible via an extensive network of roadways. Among them is the New York State Thruway which runs east to west through the county. I-287 (Westchester County), the Palisades Interstate Parkway, and the Garden State Parkway (New Jersey) all run north/south, and intersect with the Thruway. Rockland County's other major roadways include U.S. Routes 9W and 202, and State Routes 303, 304, 306, 340 and 59. Public vehicular transportation contributes minimally to travel in the region, but does play an integral role for some public transit-dependent citizens, such as the elderly, young, and handicapped. Commuter rail service to Manhattan provided by New Jersey Transit, and express bus service is also available.

Of the area's Hudson River crossings, the Tappan Zee Bridge links Rockland County directly with Westchester. The George Washington Bridge is located approximately 20 miles south connecting Bergen County with Manhattan. Route 59, a two to six lane thoroughfare which traverses the southern part of the county from east to west, is a densely developed retail and commercial corridor.

The Thruway (I-87) connects with the Garden State Parkway, and also turns southward, connecting with I-287, running through western Bergen and Passaic Counties, NJ. To the east, I-87 crosses the Hudson River via the Tappan Zee Bridge and connects with major highways in Westchester County, NY and Fairfield County, CT. Access to the area is very good via its numerous highways. Four major airports service the New York Metropolitan area, including Kennedy International, LaGuardia, and Newark (New Jersey). Stewart Airport in Orange County and Westchester County Airport provide additional air transportation.

## Recreation and Culture

Approximately 30.6% of Rockland's land is devoted to parks and recreation areas. The Palisades Interstate Park occupies approximately 30,000 acres, or 27% of Rockland County, with the Bear Mount and Harriman State Parks covering almost 50,000 additional acres. Thirteen county parks total almost 2,000 acres with town and village parks adding another 2,475 acres. Seven golf courses, 15 swimming areas, 5 public golf courses and 18 public and private marinas are located in Rockland. Park facilities and activities include skiing, camping, hiking, jogging, boating, fishing, picnicking, roller skating, ice skating, biking, tennis, and wildlife sanctuaries.

## Housing

Rockland County's housing stock, like many suburban counties, contains a mixture of older and newer developments. Rockland is considered a bedroom community and residential development is among its largest land uses. Increased housing prices in nearby Bergen County (New Jersey) and Westchester County (New York) have made Rockland a desirable alternative to residents seeking more affordable housing while still being within relatively reasonable commuting distance to Manhattan.

Rockland County, like other surrounding counties within the Lower Hudson Valley, had benefited from the increase in real property values which have occurred on both a regional and national level over the past several years. Rockland is considered a lower cost alternative to Westchester County. Although Rockland lacks Westchester County's rail system for access to New York City (i.e. Metro North Railroad), southern portions of Rockland County are within a 25-minute commute to Manhattan.

### ROCKLAND COUNTY

| ROCKLAND - First Quarters 2015-2018 | | | | | % Change |
| Property Type | 2015 Q1 | 2016 Q1 | 2017 Q1 | 2018 Q1 | 2017-2018 |
|---|---|---|---|---|---|
| **NUMBER OF SALES** | | | | | |
| Single Family Houses | 308 | 358 | 444 | 360 | -18.9% |
| Condominiums | 91 | 95 | 119 | 124 | 4.2% |
| Cooperatives | 29 | 7 | 20 | 15 | -25.0% |
| 2-4 Family | 30 | 16 | 22 | 23 | 4.5% |
| Total | 458 | 466 | 604 | 522 | -13.7% |
| **MEDIAN SALE PRICE** | | | | | |
| Single Family Houses | 430,000 | 399,500 | 401,000 | 435,000 | 7.4% |
| Condominiums | 215,000 | 196,500 | 203,000 | 229,750 | 11% |
| Cooperatives | 60,750 | 68,000 | 55,000 | 60,000 | 1.7% |
| 2-4 Family | 358,000 | 260,000 | 347,500 | 395,000 | 16.8% |
| **MEAN SALE PRICE** | | | | | |
| Single Family Houses | 451,700 | 418,894 | 419,142 | 486,140 | 1.1% |
| Condominiums | 235,598 | 226,817 | 255,015 | 255,520 | 0.2% |
| Cooperatives | 80,993 | 71,471 | 90,007 | 82,917 | -41.8% |
| 2-4 Family | 349,406 | 289,511 | 384,682 | 419,652 | 18.2% |
| **END OF QUARTER INVENTORY** | | | | | |
| Single Family Houses | 1,006 | 1,004 | 832 | 732 | -12.0% |
| Condominiums | 260 | 285 | 203 | 151 | -25.4% |
| Cooperatives | 64 | 51 | 47 | 46 | -12.4% |
| 2-4 Family | 63 | 72 | 52 | 47 | -9.7% |
| Total | 1,393 | 1,412 | 1,146 | 976 | -16.7% |

Source: Hudson Valley Multiple Listing Service (HGAR)

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM        INDEX NO. 036879/2021
NYSCEF DOC. NO. 33     22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of   RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 199 of 416

AREA DESCRIPTION: ROCKLAND COUNTY

Sales figures released by the Hudson Gateway Multiple Listing Service (first quarter 2018), indicate Rockland County posted a 13.7% decrease in overall number of sales as compared to the first quarter 2017. Single-family home sales decreased 18.9% and cooperative sales (a relatively small percentage of the inventory) decreased 25%. Sales of condominiums and 2-4-family homes exhibited modest increases in sales as compared to the first quarter of 2017. A significant decline in inventory of single family homes and cooperative likely accounts for fewer sales in the first quarter of 2018. In terms of the price levels, 2-4 family homes exhibited the highest increase from the first quarter of the 2017 to the first quarter of 2018, although a relatively small sample size may have skewed this increase. Overall, based on declining overall inventory and a steady stream of buyers, prices should continue to trend upward, assuming interest rates do not spike upward.

**Medical Facilities**

Rockland County is served primarily by two large community hospitals – Nyack Hospital in Nyack and Good Samaritan Hospital in Suffern. In addition, there are a number of specialized health care facilities including the Helen Hayes Hospital, a physical rehabilitation center located in West Haverstraw, and the Summit Park Adult Care Hospital in Pomona.

**Education**

With nearly 92 percent of Rockland students going on to attend institutions of higher learning, Rockland public education is among the most successful in New York State. More than 54 percent of Rockland's public-school graduates receive New York State Regents diplomas, again ranking Rockland County close to the top among all counties in the Empire State. The County's eight individual school districts offer high standards of excellence in both academic subjects and extracurricular activities.

Rockland's Board of Cooperative Educational Services (BOCES) offers comprehensive specialized programs, which are shared by the County's school districts. Approximately 2,000 Rockland students attend classes on a 40-acre campus in West Nyack, where most BOCES facilities are located. BOCES operates six separate facilities, including a school for technical and occupational education, one for adult education and four for special education.

Rockland County also has several institutions of higher learning. The following is a listing of college campuses within the county.

- Columbia University's Lamont-Doherty Earth Observatory
- Cornell Cooperative Extension
- Dominican College
- Empire State College/SUNY
- Iona College
- New York University School of Social Work at Dominican College
- Nyack College
- SUNY Rockland Community College
- Rockland Graduate Campus, Long Island University
- St. Thomas Aquinas College

AREA DESCRIPTION. ROCKLAND COUNTY

## Conclusion

Rockland County's long-term advantages of close proximity to Manhattan, as well as a highly educated workforce within high quality-of-life communities, bodes well for its future. Its position of relative business cost affordability within the region provides added reason for encouragement. Population, as well as the number of households, is projected to increase from 2018 to 2023. Also, median and average household incomes are both projected to show moderate growth. Rockland County continues to provide a convenient, lower cost alternative to both Westchester County and Bergen County (New Jersey). In addition, the ongoing diversification of the economy has helped to insulate Rockland from significant economic declines which have occurred over the past several years.

## TOWN OF RAMAPO OVERVIEW



**TOWN OF RAMAPO - OVERVIEW**

The Town of Ramapo is the largest township in Rockland County and was incorporated in 1791. The town is made up of an unincorporated section and several villages, including Airmont, Chestnut Ridge, Hillburn, Kaser, New Hempstead, New Square, Montebello, Sloatsburg, Suffern, Spring Valley and Wesley Hills. Additionally, a portion of the Village of Pomona falls within the Ramapo town borders. According to the 2000 U.S. Census, the population of the Town of Ramapo was 108,905. The 2010 Census also reported an estimated population of 126,595 persons including associated villages.

NEIGHBORHOOD DESCRIPTION: TOWN OF HAVERSTRAW/VILLAGE OF HAVERSTRAW

### HISTORY

During the American Revolutionary War, Commander-in-Chief George Washington is said to have climbed the Ramapo Torne (near Ramapo hamlet) with a telescope to watch the movement of British ships off Sandy Hook. The Town of Hempstead was formed from part of the Town of Haverstraw in 1791. In 1829 the name was changed to Ramapo. The first railroad line across Rockland County was built in 1841 and ran from Piermont to Ramapo. By 1851, the line was extended to Lake Erie, and was considered an engineering marvel. In 1916, what would become State Route 59, which reached from Nyack to Spring Valley in 1915, was extended to Suffern and Ramapo Hamlet.

### GEOGRAPHY

The Town of Ramapo is situated within the westerly portion of Rockland County. It is bordered by the Town of Haverstraw to the north, by the Towns of Clarkstown and Orangetown to the east, to the south by Passaic and Bergen Counties (New Jersey) and by Orange County to the west and northwest. The Town has a land area of 61.1 square miles, or 33% of the County overall. To the north, the Town is straddled by the Ramapo Mountains, which extend between Suffern in the southwest to Bear Mountain to the northeast. The mountain range and the encompassing parklands provide recreational facilities and a buffer between Rockland suburbs and communication center further north in south central Orange County.

The south town line is the border of New Jersey and the west town line is the border of Orange County. The break in the Ramapo Mountains at Suffern formed by the Ramapo River causes the town to be the site of the New York State Thruway and I-287, New York State Route 17, and a railroad line. The Palisades Interstate Parkway also runs through the northeast corner of the town, with an exit at the Haverstraw, New York town line on the northern border.

### DEMOGRAPHIC TRENDS

The following table illustrates pertinent demographic data for the Town of Ramapo:

### TOWN OF RAMAPO DEMOGRAPHIC CHARACTERISTICS

| Category | 2010 Census | 2018 Estimate | 2023 Projection | % Change 2010–2018 | % Change 2018–2023 |
|---|---|---|---|---|---|
| Population | 126,595 | 138,735 | 144,927 | 9.59% | 4.46% |
| Households | 34,731 | 37,455 | 38,923 | 7.84% | 3.92% |
| Families | 27,261 | 29,516 | 30,711 | 8.27% | 4.05% |
| Housing Units | 36,754 | 39,639 | 41,183 | 7.85% | 3.90% |
| Category | 2000 Census | 2018 Estimate | 2023 Projection | % Change 2010–2018 | % Change 2018–2023 |
| Average Household Income | $78,341 | $101,582 | $104,816 | 29.67% | 3.18% |
| Median Household Income | $60,500 | $69,233 | $71,673 | 14.43% | 3.52% |

Source: Nielsen Segmentation Solutions

The trends indicate a relatively strong increase in population, households, families and housing units over the past decade, with additional growth and expansion projected through 2023. It is apparent by the average and median household income levels that the Town of Ramapo is considered average in terms of overall affluence within Rockland County. Minimal income growth is projected over the next 5 years.

## LAND USE

Notwithstanding the multitude of commercial development in the Town of Ramapo, residential uses remain the primary land use. This is true of Rockland County as a whole as well. In terms of education, the Town of Ramapo is serviced by 14 public schools within the East Ramapo School District and 7 within the Ramapo Central School District. There are also a number of private and specialty schools available. Ramapo's town parks cover 525 acres and include the award-winning 18-hole golf course at Spook Rock, as well as two town swimming pools. The following table illustrates land use within the Town of Ramapo (including villages).

## LAND USE – TOWN OF RAMAPO

| Broad Use Category | Description | Parcel Count |
|---|---|---|
| 100 | Agricultural Properties | 6 |
| 200 | Residential Properties | 20,269 |
| 300 | Vacant Land | 2,276 |
| 400 | Commercial Properties | 6,422 |
| 500 | Recreation and Entertainment Properties | 52 |
| 600 | Community Service Properties | 423 |
| 700 | Industrial Properties | 40 |
| 800 | Public Service Properties | 446 |
| 900 | Public Parks, Wild, Forested and Conservation Properties | 221 |
| **Total Parcels in All Broad Use Categories** | | **30,155** |

Source: New York State Office of Real Property Services (2017)

The Town of Ramapo is largely residential in nature although there are a number of commercial properties which represents the second largest land use. Residential properties comprise nearly 70% of the total parcel count, with commercial properties comprising approximately 19%. Residential uses include single family, two to six-family and a number of apartment properties exceeding six units. Vacant land represents the third largest land use component within the town; however, much is not buildable such as dedicated open space. New development is limited.

## TRANSPORTATION

Several major highways and local arterials traverse the Town of Ramapo. These include the New York State Thruway (I-87 and I-287) which generally runs east-west. State Route 17 runs north-south through Suffern and Sloatsburg, as well as the Garden State Parkway connection, which extends south from Spring Valley through New Jersey. Route 59, which parallels the Thruway, delineates the primary east-west commercial corridor through the center of the Town. State Routes 306 and 45 run in a north-south direction, through Monsey and Spring Valley, respectively. The town is also served by numerous secondary roadways. Public transportation is limited to local bus and taxi services, although there is commuter rail line service via New Jersey Transit in Suffern.

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks    Pg 204 of 416

NEIGHBORHOOD DESCRIPTION, Town of Haverstraw /Village of Haverstraw

VIOLA/SUBJECT LOCATION

Viola is a hamlet and census-designated place in the town of Ramapo, Rockland County, New York, United States. It is located north of Airmont, east of Montebello, south of Wesley Hills, and west of Hillcrest. The population was 6,868 at the 2010 census

This is a generally suburban/rural area with no central commercial corridors. Viola is located adjacent to the hamlet of Monsey and locally considered as a sub-community of Monsey, which also include the sub-communities of Kaser and New Square. This area is known for its large religious population base. Several houses of worship and schools are set within walking distance of the primary residential neighborhoods, which are clustered around Route 306 and also directly east of the subject along Maple Avenue. Residential improvements consist primarily of single-family homes, although some multi-family properties exist in this area as well. Homes range from modest dwellings on smaller lots to larger, newer properties on one acre or larger lots, particularly in the northern sections of Monsey. Further east, the character of the area changes somewhat as a mixture of older and newer retail uses is prevalent along Route 59 past the New York State Thruway access.

The character of the subject's immediate locale is one of residential. To the north, College Road and Monsey Boulevard access residential neighborhoods and streets. To the south and east, Melnick Road and Robert Pitt Drive are developed with several quasi office and flex properties, including the Monsey Post Office. Situated along Route 59, just to the south of the subject, are various small retail strip centers and a neighborhood center. Located to the east along Route 59 is the Spring Valley Senior High School and an Orange and Rockland Utilities station. A small number of professional offices properties are scattered throughout the area along Routes 59 and 306, as well as on Kennedy Drive, Main Street and Old Nyack Turnpike to the south.

One the more prominent retail centers catering to the subject location is situated within one mile of the subject at Orchard Street and Main Street. This center, known as the Shoppers Haven, opened in 2005 and consists of a two story, 120,000 square foot retail center anchored by a Kosher supermarket. In addition, a neighborhood shopping center on Route 59 across from Robert Pitt Drive has recently been redeveloped and re-leased, with a Pathmark supermarket anchor. Other prominent commercials in the area include two larger office complexes on Robert Pitt Drive with over 100,000 square feet of Class A/B office space.

In terms of recreation, a number of municipal parks are situated in the general area, including the Monsey Glen County Park, Viola Park, and Spring Valley Town Park. The Spook Rock Public Golf Course is located approximately 5 miles northwest of the subject.

## DEMOGRAPHIC OVERVIEW

The following demographic profile, assembled by Claritas, Inc., a nationally recognized compiler of demographic data, reflects subject neighborhood (hamlet of Viola) and wider market (Rockland County). The local area is projected to have a 2018 population of 7,805 in 1,940 household units. The current projection s, as forecasted by Claritas, are as follows:

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 206 of 416

*NEIGHBORHOOD DESCRIPTION: TOWN OF HAVERSTRAW/VILLAGE OF HAVERSTRAW*

## UNIVERSE TOTALS

| Description | Hamlet of Viola | | | Rockland County | | |
|---|---|---|---|---|---|---|
| | 2018 Estimate | % Change 2010-2018 | % Change 2018-2023 | 2018 Estimate | % Change 2010-2018 | % Change 2018-2023 |
| Universe Totals | | | | | | |
| Population | 7,805 | 13.64% | 4.47% | 329,849 | 5.83% | 2.91% |
| Households | 1,940 | 13.92% | 3.92% | 104,229 | 5.03% | 2.64% |
| Families | 1,542 | 13.05% | 4.15% | 77,899 | 5.05% | 2.63% |
| Housing Units | 1,919 | | | 104,318 | | |

## HOUSEHOLD INCOME

The estimated average household income is $161,294, while the median income is $94,105. Approximately 17.7% of households have an income of less than $25,000, while 34.0% of the households earn over $150,000 per year.

## HOUSEHOLD INCOME

| Households by Household Income | Hamlet of Viola | % of Total | Rockland County | % of Total |
|---|---|---|---|---|
| 2018 Est. Households by Household Income | 1,940 | | 104,229 | |
| Income < $15,000 | 163 | 8.4% | 7,820 | 7.5% |
| Income $15,000 - $24,999 | 181 | 9.3% | 8,160 | 7.8% |
| Income $25,000 - $34,999 | 101 | 5.2% | 6,639 | 6.4% |
| Income $35,000 - $49,999 | 139 | 7.2% | 9,300 | 8.9% |
| Income $50,000 - $74,999 | 255 | 13.1% | 12,909 | 12.4% |
| Income $75,000 - $99,999 | 167 | 8.6% | 12,273 | 11.8% |
| Income $100,000 - $124,999 | 151 | 7.8% | 11,715 | 11.2% |
| Income $125,000 - $149,999 | 123 | 6.3% | 8,755 | 8.4% |
| Income $150,000 - $199,999 | 163 | 8.4% | 10,912 | 10.5% |
| Income $200,000 - $249,999 | 101 | 5.2% | 5,081 | 4.9% |
| Income $250,000 - $499,999 | 181 | 9.3% | 6,855 | 6.6% |
| Income $500,000+ | 215 | 11.1% | 3,810 | 3.7% |
| 2018 Est. Average Household Income | $161,294 | | $122,610 | |
| 2018 Est. Median Household Income | $94,105 | | $89,697 | |

## POPULATION CHARACTERISTICS

The neighborhood has an average age of 31 and a median age near 24. 20.50% of the area population is aged 54 and over, while 40.13% is younger than 18 years old.

## AGE CHARACTERISTICS

| 2018 Est. Population by Age | Hamlet of Viola | % of Total | Rockland County | % of Total |
|---|---|---|---|---|
| Age 0-17 | 3,132 | 40.13% | 90,247 | 27.36% |
| Age 18-34 | 1,837 | 23.54% | 71,379 | 21.64% |
| Age 35-54 | 1,235 | 15.82% | 76,380 | 23.16% |
| 54 and above | 1,601 | 20.50% | 91,843 | 27.84% |
| 2018 Est. Median Age | 24 | | 36 | |
| 2018 Est. Average Age | 31 | | 38 | |

In terms of household size, 19.2% of households are single persons, 21.4% have two persons, and 10.8% have 3 persons. Only 36.5% of households have five or more.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-2493-shr    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 207 of 416
RECEIVED NYSCEF: 03/18/2022

*NEIGHBORHOOD DESCRIPTION: TOWN OF HAVERSTRAW / VILLAGE OF HAVERSTRAW*

## HOUSEHOLDS BY SIZE

| 2018 Est. Households by Household Size | Hamlet of Viola | % of Total | Rockland County | % of Total |
|---|---|---|---|---|
| 1-person | 372 | 19.2% | 22,112 | 21.2% |
| 2-person | 415 | 21.4% | 28,659 | 27.5% |
| 3-person | 209 | 10.8% | 17,116 | 16.4% |
| 4-person | 236 | 12.2% | 16,181 | 15.5% |
| 5-person | 189 | 9.7% | 9,307 | 8.9% |
| 6-person | 159 | 8.2% | 4,658 | 4.5% |
| 7-or-more-person | 360 | 18.6% | 6,196 | 6.0% |

## EDUCATIONAL ATTAINMENT

The population is relatively under educated. 8.6% have not earned a high school diploma in contrast to 19.19% with a bachelor's degree and 24.4% with advanced degrees.

| Educational Attainment | Hamlet of Viola | % of Total | Rockland County | % of Total |
|---|---|---|---|---|
| 2018 Est. Pop Age 25+ by Edu. Attainment | 3,742 | | 206,752 | |
| Less than 9th grade | 139 | 3.71% | 12,345 | 5.97% |
| Some High School, no diploma | 184 | 4.92% | 14,295 | 6.91% |
| High School Graduate (or GED) | 975 | 26.06% | 47,518 | 22.98% |
| Some College, no degree | 684 | 18.28% | 32,754 | 15.84% |
| Associate Degree | 129 | 3.45% | 17,977 | 8.69% |
| Bachelor's Degree | 718 | 19.19% | 44,530 | 21.54% |
| Master's Degree | 605 | 16.17% | 27,835 | 13.46% |
| Professional School Degree | 200 | 5.34% | 5,904 | 2.86% |
| Doctorate Degree | 108 | 2.89% | 3,594 | 1.74% |

## EMPLOYMENT DYNAMICS

According to Claritas 83.86% of workers are characterized as "blue collar," while 8.66% are engaged in "white collar" activities. 7.49% of the employed population works in the service and farm sectors. Within these broad categories, the largest employment sectors in the city are Management (15.7%), Education/Training/Library (14.5%), and Sales/Related (12.7%).

## OCCUPATION CLASSIFICATION

| Occupation Classification | Hamlet of Viola | % of Total | Rockland County | % of Total |
|---|---|---|---|---|
| 2018 Est. Pop 16+ by Occupation Classification | 2,391 | | 150,656 | |
| Blue Collar | 2,005 | 83.86% | 102,355 | 67.94% |
| White Collar | 207 | 8.66% | 19,835 | 13.17% |
| Service and Farm | 179 | 7.49% | 28,466 | 18.89% |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 208 of 416

NEIGHBORHOOD DESCRIPTION: TOWN OF HAVERSTRAW/VILLAGE OF HAVERSTRAW

## OCCUPATION BREAKDOWN

| Occupation | Hamlet of Viola | % of Total | Rockland County | % of Total |
|---|---|---|---|---|
| 2018 Est. Civ. Employed Pop 16+ by Occupation | 2,391 | | 150,656 | |
| Architect/Engineer | 18 | 0.75% | 1,616 | 1.07% |
| Arts/Entertainment/Sports | 51 | 2.13% | 3,660 | 2.43% |
| Building Grounds Maintenance | 17 | 0.71% | 6,255 | 4.15% |
| Business/Financial Operations | 154 | 6.44% | 7,846 | 5.21% |
| Community/Social Services | 55 | 2.30% | 2,713 | 1.80% |
| Computer/Mathematical | 60 | 2.51% | 3,241 | 2.15% |
| Construction/Extraction | 38 | 1.59% | 6,109 | 4.05% |
| Education/Training/Library | 347 | 14.51% | 16,154 | 10.72% |
| Farming/Fishing/Forestry | 2 | 0.08% | 150 | 0.10% |
| Food Prep/Serving | 62 | 2.59% | 6,578 | 4.37% |
| Health Practitioner/Technician | 280 | 11.71% | 12,204 | 8.10% |
| Healthcare Support | 39 | 1.63% | 4,769 | 3.17% |
| Maintenance Repair | 36 | 1.51% | 3,597 | 2.39% |
| Legal | 34 | 1.42% | 1,413 | 0.94% |
| Life/Physical/Social Science | 41 | 1.71% | 1,817 | 1.21% |
| Management | 376 | 15.73% | 16,934 | 11.24% |
| Office/Admin. Support | 285 | 11.92% | 18,749 | 12.44% |
| Production | 62 | 2.59% | 3,891 | 2.58% |
| Protective Services | 9 | 0.38% | 4,894 | 3.25% |
| Sales/Related | 304 | 12.71% | 16,008 | 10.63% |
| Personal Care/Service | 50 | 2.09% | 5,820 | 3.86% |
| Transportation/Moving | 71 | 2.97% | 6,238 | 4.14% |

## TRANSIT DYNAMICS

There are good links to employment centers via public transport and the local highway network. Based on its urban location, roughly 61.22% of the employed drove alone to work. Given strong public transit service, 10.66% traveled by public transportation. The average travel time is roughly 37 minutes. Within this, roughly 31.3% of workers travel less than 15 minutes, while 55% live within 30 minutes of their jobs. The remaining workers travel in excess of a half hour. 25.1% work an hour or more away from home.

## TRANSPORTATION TO WORK

| Transportation To Work | Hamlet of Viola | % of Total | Rockland County | % of Total |
|---|---|---|---|---|
| 2018 Est. Workers Age 16+ by Transp. to Work | 2,326 | | 146,994 | |
| Drove Alone | 1,424 | 61.22% | 103,626 | 70.50% |
| Car Pooled | 209 | 8.99% | 16,829 | 11.45% |
| Public Transportation | 248 | 10.66% | 11,960 | 8.14% |
| Walked | 92 | 3.96% | 5,087 | 3.46% |
| Bicycle | 6 | 0.26% | 109 | 0.07% |
| Other Means | 57 | 2.45% | 1,843 | 1.25% |
| Worked at Home | 290 | 12.47% | 7,540 | 5.13% |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM    INDEX NO. 036879/2021

NYSCEF DOC. NO. 33    22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 209 of 416    RECEIVED NYSCEF: 03/18/2022

*NEIGHBORHOOD DESCRIPTION: TOWN OF HAVERSTRAW/VILLAGE OF HAVERSTRAW*

## TRAVEL TIME TO WORK

| Travel Time to Work | Hamlet of Viola | % of Total | Rockland County | % of Total |
|---|---|---|---|---|
| 2018 Est. Workers Age 16+ by Travel Time to Work | 2,035 | | 139,958 | |
| Less than 15 Minutes | 636 | 31.3% | 37,370 | 26.7% |
| 15 - 29 Minutes | 476 | 23.4% | 41,845 | 29.9% |
| 30 - 44 Minutes | 244 | 12.0% | 24,906 | 17.8% |
| 45 - 59 Minutes | 169 | 8.3% | 13,012 | 9.3% |
| 60 or more Minutes | 510 | 25.1% | 22,823 | 16.3% |
| 2018 Est. Avg Travel Time to Work in Minutes | 37 | | 34 | |

## HOUSING DYNAMICS

Housing units are minority renter occupied (32.37%), with 67.63% owner occupied. Reflecting this dynamic, the distribution of housing units is skewed towards single unit and two- to four-unit homes which makes up 83.4% of the total, while 16.6% is multi-unit residential housing.

## TENURE OF OCCUPIED HOUSING UNITS

| Occupied Housing Units By Tenure | Hamlet of Viola | % of Total | Rockland County | % of Total |
|---|---|---|---|---|
| 2018 Est. Occupied Housing Units by Tenure | 1,940 | | 104,229 | |
| Owner Occupied | 1,312 | 67.63% | 71,242 | 68.35% |
| Renter Occupied | 628 | 32.37% | 32,987 | 31.65% |

## HOUSING BY UNITS IN STRUCTURE

| Housing Units by Units in Structure | Hamlet of Viola | % of Total | Rockland County | % of Total |
|---|---|---|---|---|
| 2018 Est. Housing Units by Units in Structure | 2,109 | | 109,409 | |
| 1 Unit Attached | 150 | 7.11% | 8,806 | 8.05% |
| 1 Unit Detached | 1,417 | 67.19% | 61,963 | 56.63% |
| 2 Units | 108 | 5.12% | 7,252 | 6.63% |
| 3 or 4 Units | 83 | 3.94% | 9,030 | 8.25% |
| 5 to 19 Units | 133 | 6.31% | 12,585 | 11.50% |
| 20 to 49 Units | 71 | 3.37% | 3,404 | 3.11% |
| 50 or More Units | 147 | 6.97% | 4,893 | 4.47% |
| Mobile Home or Trailer | 0 | 0.00% | 1,463 | 1.34% |
| Boat, RV, Van, etc. | 0 | 0.00% | 13 | 0.01% |

New development in the neighborhood represents 9.90% of the total stock added in this period. Given the overwhelming presence of older housing stock, the median year built is 1982.

## HOUSING BY YEAR STRUCTURE BUILT

| Housing Units by Year Structure Built | Hamlet of Viola | % of Total | Rockland County | % of Total |
|---|---|---|---|---|
| 2018 Est. Housing Units by Year Structure Built | 1,919 | | 104,318 | |
| Built 2014 or Later | 190 | 9.90% | 5,091 | 4.88% |
| Built 2010 to 2013 | 49 | 2.55% | 1,239 | 1.19% |
| Built 2000 to 2009 | 320 | 16.68% | 8,750 | 8.39% |
| Built 1990 to 1999 | 341 | 17.77% | 9,364 | 8.98% |
| Built ▆▆▆ ▆▆ | 183 | 9.54% | 11,468 | 10.99% |
| Built 1970 to 1979 | 227 | 11.83% | 19,729 | 18.91% |
| Built 1960 to 1969 | 528 | 27.51% | 22,700 | 21.76% |
| Built 1950 to 1959 | 181 | 9.43% | 14,137 | 13.55% |
| Built 1940 to 1949 | 22 | 1.15% | 3,706 | 3.55% |
| Built 1939 or Earlier | 68 | 3.54% | 13,225 | 12.68% |

The median owner-occupied home value is $664,845, with 101% of homes valued at $300,000 or more.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021

NYSCEF DOC. NO. 33

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 210 of 416

RECEIVED NYSCEF: 03/18/2022

*Neighborhood Description: Town of Haverstraw/Village of Haverstraw*

## OWNER OCCUPIED HOUSING VALUES

| Owner-Occupied Housing Units by Value | Hamlet of Viola | % of Total | Rockland County | % of Total |
|---|---|---|---|---|
| 2018 Est. Owner-Occupied Housing Units by Value | 1,267 | | 70,273 | |
| Value Less than $20,000 | 13 | 1.03% | 708 | 1.01% |
| Value $20,000 - $39,999 | 0 | 0.00% | 494 | 0.70% |
| Value $40,000 - $59,999 | 3 | 0.24% | 344 | 0.49% |
| Value $60,000 - $79,999 | 0 | 0.00% | 431 | 0.61% |
| Value $80,000 - $99,999 | 1 | 0.08% | 524 | 0.75% |
| Value $100,000 - $149,999 | 3 | 0.24% | 1,399 | 1.99% |
| Value $150,000 - $199,999 | 1 | 0.08% | 2,079 | 2.96% |
| Value $200,000 - $299,999 | 15 | 1.18% | 7,678 | 10.93% |
| Value $300,000 - $399,999 | 106 | 8.37% | 14,546 | 20.70% |
| Value $400,000 - $499,999 | 198 | 15.63% | 16,147 | 22.98% |
| Value $500,000 - $749,999 | 466 | 36.78% | 18,180 | 25.87% |
| Value $750,000 - $999,999 | 368 | 29.04% | 5,756 | 8.19% |
| Value $1,000,000 - $1,499,999 | 93 | 7.34% | 1,987 | 2.83% |
| Value $1,500,000 - $1,999,999 | 32 | 2.53% | 471 | 0.67% |
| Value $2,000,000 or more | 13 | 1.03% | 498 | 0.71% |
| 2018 Est. Median All Owner-Occupied Housing Value | $664,845 | | $444,793 | |

The general demographics for hamlet of Viola indicate that this an established moderate-income residential community, which has seen significant population increase over the past several years (over 13.64%) as compared to Rockland County (5.83%), which corresponds to the development of the demand and development related to the growing local religious population.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 211 of 416

ORANGE-ROCKLAND-WESTCHESTER HOUSING MARKET AREA

## ORANGE-ROCKLAND-WESTCHESTER HOUSING MARKET AREA



The following information is from the U.S. Department of Housing and Urban Development Office of Policy Development and Research, as of November 1, 2017.

The Orange-Rockland-Westchester Housing Market Area (hereafter, Westchester HMA) consists of Orange, Rockland, and Westchester Counties in New York. The HMA, which is immediately north of New York City, is part of the New York-Newark-Jersey City, NY-NJ-PA Metropolitan Statistical Area (hereafter, New York MSA). The HMA is partially a bedroom community, with approximately 28 percent of employed residents working in other portions of the New York MSA.

***Sales Market:*** The sales housing market in the HMA is currently balanced. The estimated sales vacancy rate is 1.1 percent, down from 1.7 percent in 2010. During the next 3 years, demand is estimated for 4,125 new homes (following table) The 200 homes under construction and some of the estimated 19,000 other vacant units that may reenter the market will satisfy a portion of the demand.

***Rental Market***: The rental housing market in the HMA is currently balanced. The estimated overall rental vacancy rate is 5.3 percent, down from 6.0 percent in 2010. Conditions in the apartment market are slightly tight. The apartment vacancy rate was 3.5 percent during the third quarter of 2017, down from 5.2 percent in 2009 (Reis, Inc.). During the forecast period, demand is estimated for 3,850 new market-rate units (following table). The 1,900 units under construction will satisfy a portion of this demand.

## HOUSING DEMAND DURING FORECAST PERIOD

|  | Westchester HMA* | |
|  | Sales Units | Rental Units |
| --- | --- | --- |
| Total demand | 4,125 | 3,850 |
| Under construction | 200 | 1,900 |

*Orange-Rockland-Westchester HMA.*

*Notes: Total demand represents estimated production necessary to achieve a balanced market at the end of the forecast period. Units under construction as of November 1, 2017. A portion of the estimated 19,000 other vacant units in the HMA will likely satisfy some of the forecast demand. The forecast period is November 1, 2017, to November 1, 2020.*

*Source: Estimates by analyst*

## SALE MARKET

The sales housing market in the Westchester HMA is currently balanced. The current sales vacancy rate is estimated at 1.1 percent, down from 1.7 percent in 2010 (Table DP-1 at the end of this report). During the third quarter of 2017, the HMA had 4.3 months of available existing inventory, down slightly from 4.9 months of inventory during the third quarter of 2016 and from 7.3 months of inventory during the first quarter of 2013 (Hudson Gateway Association of Realtors®, Inc.).

Sales market conditions in the HMA were balanced from 2000 through 2002 but transitioned to soft conditions from 2003 through 2008 because of high levels of single-family construction activity and strong net outmigration. From 2009 through 2011, conditions remained soft because of weak economic conditions and tighter lending standards. Since 2012, however, the sales market has transitioned into balanced conditions, because improving economic conditions in the HMA enabled more residents to purchase a home.

During the 12 months ending August 2017, approximately 13,500 new and existing single-family homes, townhomes, and condominiums sold, representing an increase of 1,225 homes sold, or 10 percent, from the 12 months ending August 2016 (CoreLogic, Inc., with adjustments by the analyst). Steadily improving economic conditions in the HMA led to home sales increasing an average of 9 percent annually during the past 5 years, and the current level of sales is up 53 percent compared with the 8,800 homes sold during 2012. Sales

activity, however, is still down 39 percent from the average of 22,250 homes sold annually from 2000 through 2005, when sales levels were at their highest because of lenient borrowing requirements

During the 12 months ending August 2017, the average sales price of new and existing single-family homes, townhomes, and condominiums decreased 1 percent to $419,000. The average sales price decreased an average of 3 percent annually during the past 6 years despite increases in each county in the HMA. Prices declined in recent years, because a larger portion of all sales were in the more affordable counties of Orange and Rockland, where the combined average sales price was 59 percent lower than in Westchester County during the past year. Since 2012, nearly two-thirds of all home sales in the HMA have been in Orange and Rockland Counties. By comparison, from 2005 through 2008 when the average sales price in the HMA was at a peak level of $542,800, approximately one-half of home sales were in Orange and Rockland County.

The rate of seriously delinquent loans (loans that are 90 or more days delinquent or in foreclosure) and real estate owned (REO) properties in the HMA did not reach the same peaks as the rest of the nation during the housing crisis, but rates declined more slowly in the HMA and state. These trends are, in part, because New York is a judicial foreclosure state in which the average length of the foreclosure process is longer than in states with a nonjudicial foreclosure process. In September 2017, 4.1 percent of home loans in the HMA were seriously delinquent or had transitioned into REO status, down from 5.1 percent in September 2016 and a peak of 8.2 percent in February 2013 (CoreLogic, Inc.). The current rate in the HMA is slightly lower than the statewide rate of 4.9 percent but higher than the national rate of 2.2 percent. The peak rate in the HMA, however, was lower than both the statewide and nationwide peaks of 8.6 percent each in January 2013 and February 2010 respectively.

Single-family homebuilding activity, as measured by the number of homes permitted, increased during the past 5 years. Recent levels, however, are well below those from the early to mid-2000s, which is partially attributed to a lack of developable land in Westchester County. From 2000 through 2005, an average of 2,750 homes were permitted annually.

**SINGLE FAMILY HOME PERMITTED IN WESTCHESTER HMA**



¹ *Orange-Rockland-Westchester HMA*
*Notes: Includes townhomes. Current includes data through October 2017.*
*Sources: U.S. Census Bureau, Building Permits Survey; estimates by analyst*

Homebuilding activity decreased to an average of 1,550 annually from 2006 through 2008 in response to rising sales vacancy rates from net out-migration. Activity further declined to an

average of 690 homes permitted annually from 2009 through 2012 because of low levels of sales activity. Increased sales activity partially contributed to construction activity increasing to an average of 860 homes permitted annually from 2013 through 2016. During the 12 months ending October 2017, approximately 670 homes were permitted, up 11 percent from the previous 12-month period (preliminary data).

Recent construction activity has largely been concentrated in Orange and Rockland Counties because of a lack of developable land in Westchester County. Current development includes Forest Ridge in the city of Newburgh in Orange County. Nearly one-half of the 45 planned single-family homes at the community have been completed since 2014, and the remaining homes are expected to be constructed during the next 3 years. Prices for these three- and four-bedroom homes start at $389,900 and $424,900 respectively. In the hamlet of Pine Bush in Orange County, the final six townhomes are currently being constructed at Bonivista Village. Approximately 95 homes have been completed since 1997, and prices for the recently completed one- and two-bedroom townhomes start at $194,500 and $204,500 respectively. Construction in Westchester County includes Toll Brothers at Valeria, a townhome community in the town of Cortlandt. Approximately one-third of the 147 planned homes have been completed since 2015, and prices range from $557,000 to $681,000 for these newly constructed two-bedroom, two-bathroom townhomes.

During the 3-year forecast period, demand is estimated for 4,125 new single-family homes, townhomes, and condominiums (Table 1). The 200 homes under construction and a portion of the estimated 19,000 other vacant homes that may reenter the market will satisfy some of the demand. Demand is expected to be relatively steady during all 3 years. New home prices are expected to start at $200,000 for townhomes and $300,000 for single-family homes; 45 percent of all demand is estimated to be for homes priced from $300,000 to $499,999.

**ESTIMATED DEMAND FOR NEW MARKET-RATE SALES HOUSING IN THE WESTCHESTER HMA DURING FORECAST PERIOD**

| Price Range ($) | | Units of | Percent |
|---|---|---|---|
| From | To | Demand | of Total |
| 200,000 | 299,999 | 830 | 20.0 |
| 300,000 | 399,999 | 1,025 | 25.0 |
| 400,000 | 499,999 | 830 | 20.0 |
| 500,000 | 599,999 | 410 | 10.0 |
| 600,000 | 699,999 | 410 | 10.0 |
| 700,000 | 799,999 | 410 | 10.0 |
| 800,000 | and higher | 210 | 5.0 |

ᴵ Orange-Rockland-Westchester HMA

*Notes: The 200 homes currently under construction and a portion of the estimated 19,000 other vacant units in the HMA will likely satisfy some of the forecast demand. The forecast period is November 1, 2017, to November 1, 2020.*

*Source: Estimates by analyst*

ORANGE-ROCKLAND-WESTCHESTER HOUSING MARKET AREA

## RENTAL MARKET

The rental housing market, including apartment units and single-family rental homes, in the Westchester HMA is currently balanced. In 2016, 49 percent of all rental units were in structures with four or fewer units, up from approximately 48 percent of all rental units in 2010 (ACS 1-year data). The overall rental vacancy rate is estimated at 5.3 percent, down from 6.0 percent in 2010 (Figure 8). Rental market conditions were slightly tight from 2000 through 2003 but transitioned to slightly soft from 2004 through 2007 because of high levels of apartment construction activity and net out-migration. As a result of limited construction activity, the rental market transitioned to balanced from 2008 through 2010, and conditions have remained balanced since 2011, as construction of new apartment units and the conversion of owner-occupied units to rentals have kept up with increasing demand for rentals.

### RENTAL VACANCY RATE IN THE WESTCHESTER HMA 2000 TO CURRENT



Conditions in the apartment market are currently slightly tight compared with slightly soft conditions in 2010. During the third quarter of 2017, the apartment vacancy rate was 3.5 percent (Reis, Inc.). The current vacancy rate is up slightly from 3.2 percent during the third quarter of 2016 but down from the 5.2-percent rate in 2009. Vacancy rates are down compared with 2009, largely because young professionals chose to rent apartments as opposed to purchasing homes because of high housing prices in Westchester County, where housing demand by this group is strongest because it is closest to New York City. During the third quarter of 2017, the average asking rent was $2,146, relatively unchanged compared with the third quarter of 2016. By comparison, during corresponding periods from 2010 through 2016, average asking rents increased an average of 3 percent annually because of tightening market conditions.

Multifamily building activity, as measured by the number of units permitted, has been strong since 2011. From 2000 through 2007, an average of 1,825 units were permitted annually.

*ORANGE-ROCKLAND-WESTCHESTER HOUSING MARKET AREA*

## MULTI-FAMILY UNITS PERMITTED IN THE WESTCHESTER HMA 2000 TO CURRENT



Rising apartment vacancy rates resulted in construction activity slowing to an average of 1,050 units permitted annually from 2008 through 2010. From 2011 through 2016, permitting activity increased to an average of 1,575 units permitted, which is attributed to tightening apartment market conditions. During the 12 months ending October 2017, approximately 1,650 units were permitted, down 12 percent compared with the number of units permitted during the previous 12-month period (preliminary data). Since 2009, approximately 2 percent of all multifamily units permitted have been for condominiums compared with 12 percent of all units permitted from 2000 through 2008.

Recent apartment construction activity in the HMA has been largely concentrated near transit stations with service to New York City. In the city of Yonkers in Westchester County, construction included 330 units at River Tides at Greystone, which was completed in early 2017. Rents for these studio, one-, two-, and three-bedroom units start at $1,700, $2,200, $2,700, and $4,500 respectively. In Orange County, the second phase of 202 units at Southgate Middletown in the city of Middletown is currently under way and expected to be complete in mid-2018. The first phase, which contains 108 units, was completed in late 2016, and rents for these one- and two-bedroom units start at $1,625 and $1,850 respectively.

The HMA is home to 16 colleges and universities that house students. The total enrollment at these schools is approximately 60,000 students, down approximately 5 percent compared with 2011 (Westchester County Business Journal; analyst estimates). Approximately 24 percent of currently enrolled students are housed in on-campus dormitories. Of the remaining students, an estimated 90 percent reside within the HMA, and student households account for approximately 6 percent of all renter households. Two buildings with approximately 750 new beds were recently constructed on the Pleasantville Campus of Pace University in Westchester County, which helped alleviate tight apartment conditions near the university; the two buildings were completed during 2015 and 2016.

During the 3-year forecast period, demand is expected for 3,850 new market-rate rental units. The 1,900 units under construction will satisfy a portion of the demand. Demand is expected to be relatively steady throughout the forecast period, and new supply should be targeted to become available during the second and third years, because the units under construction will satisfy all demand during the first year. Table 5 shows the estimated demand by rent level and number of bedrooms for new market-rate rental housing in the HMA.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 217 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## MARKET RENT AND DEMAND FOR NEW MARKET RATE RENTAL HOUSING IN THE WESTCHESTER HMA DURING THE FORECAST PERIOD

| One Bedroom | | Two Bedrooms | | Three or More Bedrooms | |
|---|---|---|---|---|---|
| Monthly Rent ($) | Units of Demand | Monthly Rent ($) | Units of Demand | Monthly Rent ($) | Units of Demand |
| 1,500 to 1,699 | 260 | 1,700 to 1,899 | 290 | 3,500 to 3,699 | 20 |
| 1,700 to 1,899 | 170 | 1,900 to 2,099 | 190 | 3,700 to 3,899 | 40 |
| 1,900 to 2,099 | 170 | 2,100 to 2,299 | 95 | 3,900 to 4,099 | 30 |
| 2,100 to 2,299 | 170 | 2,300 to 2,499 | 190 | 4,100 to 4,299 | 20 |
| 2,300 to 2,499 | 260 | 2,500 to 2,699 | 290 | 4,300 to 4,499 | 40 |
| 2,500 or more | 690 | 2,700 or more | 870 | 4,500 or more | 50 |
| Total | 1,725 | Total | 1,925 | Total | 190 |

¹ Orange-Rockland-Westchester HMA

Notes: Numbers may not add to totals because of rounding. Monthly rent does not include utilities or concessions. The 1,925 units currently under construction will likely satisfy some of the estimated demand. The forecast period is November 1, 2017, to November 1, 2020.

Source: Estimates by the analyst

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## ZONING ANALYSIS

### ZONING MAP



The subject parcels are zoned R-25 by the Town of Ramapo.

**Principal Uses**

**The following principal uses are permitted "as of right" in the R25 zoning district:**

1. Underground surface or overhead utilities, including gas, electrical and water transmission systems, including appurtenances thereto except transmission towers; telephone and cable lines, call boxes and other similar equipment and accessories necessary for furnishing of adequate service by public/private utilities; substations, pumping stations and other unmanned structures that harmonize with the neighborhood, having adequate fences and other safety

2. Houses of worship, local and community

3. 1-family detached residences, with not more than 1 principal residential building on a lot
4. to Town Board approval as to site selection, pursuant to § 41.34 of the Mental Hygiene Law
5. The following agricultural operations, provided that there shall be no structures or storage of odor- or dust-producing substances within a distance of 250 feet of a lot line:

   a. Nurseries, greenhouses and other enclosed structures for growth and production of plants
   b. Open field agriculture, including orchards, truck gardening, vineyards and other field crops None of the foregoing shall be construed to permit the raising of any livestock or agricultural industries such as cage-type poultry operations or processing of animal products

In addition to permitted use, several uses are allowable as Special Permit Uses by Planning Board

**Special Permit Uses by Planning Board**

    Public utility structures
    Reservoirs
    Recreation
    Accessory recreation structures
    Accessory sale stands
    Camps
    Schools
    Nursery
    Home professional office
    Libraries, etc.
    **Adult Student Housing** (ASH
    Cemeteries
    Stables
    Ambulance corps
    Family and group care facility
    Community mikvah
    Day care

**PERMITTED BULK**

Bulk requirements are specific per use group.

As the development of Lot 47 is under ASH, we have included the standards for ASH:

**(Zoning Chapter 376-1215) Adult student housing.**

The standards for adult student housing shall be as follows:

NYSCEF DOC. NO. 33

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 220 of 416

A. The housing must be accessory to and on the same site as an approved postsecondary educational institution.

B. Married students and faculty must be full time and the duration of residency shall be limited to the period of full-time study or teaching. If a person ceases to be eligible for occupancy, said person and family must vacate his/her dwelling unit within 30 days.

**C. The gross density shall not exceed 16 units per acre.**

D. The minimum lot size shall be four acres and the maximum lot size shall not exceed 12 acres.

E. E. The project must be located on an already existing lot which meets the lot size requirements or on a lot created by subdivision from a larger existing lot and may not be the result of the combination of existing lots which separately fail to meet the lot size requirements. Upon creation of a lot for an adult student housing project, no further subdivision shall be permitted of any lot to create another site for adult student housing.
[Amended 6-14-2006 by L.L. No. 4-2006]

F   The duration of a student's residency shall not exceed six years unless extended by the Planning Board for good cause upon written request. Good cause shall include, but not be limited to, a longer period of full-time study consistent with recognized religious practice or belief.

F. Fifty percent of the dwelling units shall be either one- or two-bedroom units. The remaining 50% of the dwelling units may be three- or four-bedroom units. No more than 10% of the dwelling units may be occupied by faculty.

G. The educational institution must occupy at least 10% of the project site.

I. The size of the dwelling units shall be as follows:
(1) One- or two-bedroom units shall be no greater than 1,000 square feet.
(2) Three- or four-bedroom units shall be no greater than 2,000 square feet.

J   It shall be the duty of the owner and occupant (student or faculty) to jointly file a certification with the Building Inspector indicating compliance with this section's requirements relating to the status of all occupants of each dwelling unit. Such certification shall be filed no later than January 31 of each year. Failure to file such certification shall be reported to the Planning Board which may revoke the approval after a public hearing.

K. The project must comply with Chapter 144, Fire Prevention, of the Code of the Town of Ramapo. All buildings must be fully alarmed and sprinklered

L. The units shall not be occupied by anyone other than adult married students, faculty members, spouses and minor children of married students and faculty.

M. If the postsecondary educational institution is discontinued, the approval for adult student housing shall automatically cease. The dwelling units must be vacated within six months of the discontinuance.

N. All applications shall be required to identify all similar adult student housing projects within a one-half-mile radius measured from the edges of the property. If within this area the total acreage of similar facilities together with the proposed project exceeds 3% of the surrounding area, the Planning Board shall decline to issue an approval if it determines that the application shall detrimentally impact the character of the area. In making such determination, the Board shall consider whether the proposed use will be of a location, size and character that it will be in harmony with the appropriate and orderly development of the area and not be detrimental to the site or nearby properties in accordance with the zoning classification of such properties.

O. The minimum distance between buildings shall be 20 feet.

P. The maximum building height is 35 feet.

Q. Central refuse collection areas shall be located for the convenience of all dwelling units. They shall be supplied with an adequate number and type of covered receptacles and shall be provided with proper screening and maintenance. Such areas shall not be located in the required front yard.

R. There shall be provided on site a minimum of 100 square feet per dwelling unit of usable outdoor recreation area. Such recreation area(s) shall include playground equipment and/or other recreational facilities as determined by the Planning Board and shall be located in a safe and convenient location on the site.

S. The project shall be suitably landscaped with perimeter, foundation, parking lot and building plantings as required by the Planning Board

T. The project shall provide a separate and divided bus stop located on site along the street access which may be within the required front yard. The bus stop must be designed to ensure safe pickup and dropoff of children and to minimize impact on traffic flow. This requirement is subject to approval of the respective highway and school jurisdictions. [Amended 6-14-2006 by L.L. No. 4-2006]

U. The project must undergo architectural review by the Community Design Review Committee.

V. No outside catering for nonresidents shall be permitted in the postsecondary educational institution. The postsecondary educational institution shall not contain commercial kitchen facilities.

W. All projects shall provide proper access for fire-fighting and emergency equipment and vehicles and shall provide hydrants in such number and location and with such

ZONING ANALYSIS

water pressure as may be approved by the Planning Board based upon the recommendation of the Building Inspector and Fire Department.

X.   All projects shall be connected to public water and sewer systems.

Y.   No structure shall be located within 500 feet of abutting land within a village which is residentially zoned at a density of one dwelling unit per acre or less dense zoning districts. However, this requirement shall not apply to any land within the unincorporated area of the Town which was previously within a village, but which was removed from the village as the result of court order or intermunicipal agreement.

Z.   A certificate of occupancy for the educational institution must be issued prior to the

Bulk Restrictions summarized from the above ASH Standards include:

| | |
|---|---|
| Density: | 16 units per are |
| Minimum Lot Size: | 4 acres |
| Maximum Lot Site: | 12 acres |
| Size of Dwelling Units | |
| 1 and 2 Bedroom: | Less than 1,00 per unit |
| 2 and 3 Bedroom: | less than 2,000 per unit |
| Minimum Distance between Building: | 10 feet |
| Maximum Building Height: | 35 feet |

**SUMMARY**

Lot 42: This parcel is improved with a community facility building and based on the lot size of over 2-acres and the specific building size, set-backs, height, it appears to comply with current bulk regulations. Additionally, as a community facility the building appears to be a conforming use.

Lot 47: The proposed use for "Adult Student Housing" is a very restrictive use. However, based on the letter in State Environmental Quality Review, it appears this site, is one of only four sites in the Town of Ramapo that complies with restrictions. It is noted that we are assuming a scenario where final approvals are in place and despite the apparent allowability of this housing final approvals are not approved.

Lot 47A is a vacant land and the ASH use is not available for this site. Therefore, based on a minimal lot area of 25,000, this site, with 1.02 acres, is a viable single-family home site.

It should be noted that we are not experts in the interpretation of complex zoning ordinances. The determination of compliance, however, is beyond the scope of a real estate appraisal. We know of no deed restrictions, private or public, that further limit the subject's use; and the research required to determine whether or not such restriction existing is beyond the scope of this appraisal assignment.

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 223 of 416

## ASSESSED VALUE AND REAL ESTATE TAXES

### TAX MAP

22-2243-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 224 of 416

## TAX MAP DETAIL





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 225 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

ASSESSED VALUE AND REAL ESTATE TAXES

The subject is identified on the Town of Ramapo tax assessment maps as Map/Section 49.17, Block 2, Lots 42, 47 and 47A. The 2018/2019 assessed value, tax rates and real estate taxes for the subject property are as follows:

## Lot 42 (Community Facility)

| | |
|---|---|
| SWIS S/B/L | 392689 49.17-2-42 |
| ADDRESS | 82 HIGHVIEW RD |
| OWNER | DEL REALTY LLC |
| MUNICIPALITY | RAMAPO |
| SCHOOL | RAMAPO CENTRAL |
| PARCEL TYPE:CODE | Schools:612 |
| ROLL SECTION | 1 |
| PARCEL DIMENSIONS -- ACREAGE | Acreage = 2.01 |
| BANK CODE | |
| ACCOUNT NUMBER | 00448500000 |
| LAND VALUE | $48,000.00 |
| TOTAL VALUE | $226,600.00 |
| DEED BOOK/PAGE | 2017/31745 |
| OLD S/B/L | |

*(Tax information tables partially illegible)*

| Town and County | $73,172 |
|---|---|
| Suffern School/Library | $44,803 |
| Total Real Estate Taxes | $117,975 |
| Taxes PSF | $8.76 |

## Lot 47 (Community Facility)

| | |
|---|---|
| SWIS S/B/L | 392689 49.17-2-47 |
| ADDRESS | 105 CARLTON RD |
| OWNER | DEL REALTY LLC |
| MUNICIPALITY | RAMAPO |
| SCHOOL | RAMAPO CENTRAL |
| PARCEL TYPE:CODE | Res and incl sm impr:no in:210 |
| ROLL SECTION | 1 |
| PARCEL DIMENSIONS -- ACREAGE | Acreage = 11.74 |
| BANK CODE | |
| ACCOUNT NUMBER | 00448500000 |
| LAND VALUE | $240,000.00 |
| TOTAL VALUE | $250,000.00 |
| DEED BOOK/PAGE | 2017/31745 |
| OLD S/B/L | |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
22-2493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 226 of 416

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

*ASSESSED VALUE AND REAL ESTATE TAXES*

| Town and County | $78,340 |
| Suffern School/Library | $49,430 |
| Total Real Estate Taxes | $127,770 |

## Lot 47A

## No Records

## Summary

The preceding real estate tax data is presented for informational purposes. As out valuation relies on the Sales Approach, real estate taxes are not considered. Additionally, the property may be exempt from real estate taxes as a religious use.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 227 of 416

SITE/IMPROVEMENT DESCRIPTIONS

## SUBJECT PHOTOGRAPHS





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 228 of 416

SITE-IMPROVEMENT DESCRIPTIONS

Street Scene: East on Hungary Road



Street Scene: West on Hungary Road



FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 229 of 416

SITE/IMPROVEMENT DESCRIPTIONS





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 230 of 416

*Site/Improvement Descriptions*





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 231 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

SITE/IMPROVEMENT DESCRIPTIONS





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 232 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## General Site





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
RECEIVED NYSCEF: 03/18/2022

22-2493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 233 of 416

*SITE IMPROVEMENT DESCRIPTIONS*

## GENERAL BUILDING EXTERIOR





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 234 of 416

*Site/Improvement Descriptions*





22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 235 of 416

SITE/IMPROVEMENT DESCRIPTIONS





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 236 of 416
RECEIVED NYSCEF: 03/18/2022

SITE/IMPROVEMENT DESCRIPTIONS

**BUILDING ENTRANCES**



**BUILDING INTERIOR**



22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 237 of 416

SITE IMPROVEMENT DESCRIPTIONS

BUILDING INTERIOR





SITE/IMPROVEMENT DESCRIPTIONS





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 240 of 416

SITE/IMPROVEMENT DESCRIPTIONS

BUILDING INTERIOR





FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 241 of 416

*SITE/IMPROVEMENT DESCRIPTIONS*





SITE/IMPROVEMENT DESCRIPTIONS

## SITE/IMPROVEMENT DESCRIPTION

Lot 42 contains 2.01 acres and is improved with a community facility building utilized as a religious school. This 2-story building contains 13,468 square feet.

Lot 47 contains 11.20 acres of vacant land and based on information provided by the client, these parcels can be developed as multi-family at a density of 16 units per acre, calculating to 187 units.

Lot 47A contains 1.02 acres of vacant land and based on "as of right" zoning allowing for single family development, with a minimum lot size of 25,000 square feet, would yield one, single family home site.

| | |
|---|---|
| **Address:** | 82 Highview Road |
| | Suffern, NY 10901 |
| **Tax Lot Identification:** | Town of Ramapo: Map/Section 49.17, Block 2, Lots 42, 47 and 47A |
| **Zoning:** | R-25 |

**Size:**

| Tax Lot | Size (Acres) | Improvements |
|---|---|---|
| 42 | 2.01 | Community Facility |
| 47 | 11.70 | Vacant Land |
| 47A | 1.02 | Vacant Land |
| Site Area | 14.73 | |

**Shape:** Irregular, not limiting

**Frontage:**

| Tax Lot | Frontage (Feet) | Road |
|---|---|---|
| 42 | 184.81 | Highview Road |
| 47 | 0.00 | |
| 47A | 184.68 | Highview Road |
| Total | 369.49 | |

It is noted that since the community facility is included in the ASH, the lack of road frontage does not have a negative impact on the Lot 47 since access will be via Lot 42.

**Topography:** Generally, level.

**Street Orientation/Access:** Highview Road is an ease/west roadway with one lane of traffic flow in each direction.

**Drainage:** Appears adequate.

SITE/IMPROVEMENT DESCRIPTIONS

| | |
|---|---|
| **Easements:** | None noted, (typical utilities assumed) |
| **Surrounding Improvements:** | Surrounding improvements generally consist of mid-century vintage, single-family and post-2000 multi-family consisting mostly of 2 and 3-unit townhouse, attached and semi-attached buildings. In addition, there are several houses of worship in the immediate area. |
| **Site Improvements:** | The site is improved with all local utility hook-ups. |
| **Off-site Improvements:** | Streets are paved with macadam paving, curbing and fire hydrants, and above and below grade utilities. |
| **Environmental Issues:** | We have not observed and are not qualified to detect, the existence of any potentially hazardous materials or underground storage tanks which may be present and have an effect on the value of the property. For the purpose of this assignment, we have specifically assumed that the subject is not affected by any hazardous materials and/or underground storage tanks, which may be present on or near the property. |

| **Utilities** | Water Supply: | Domestic water is supplied by the municipality |
|---|---|---|
| | Gas and Electric Service: | Orange & Rockland Gas and Electric. |
| | Telephone: | Verizon maintains lines. |

| | |
|---|---|
| **Conclusion:** | The subject site has characteristics, both external and internal, that are functional and marketable within the local market area. The site conforms to neighborhood standards in most respects. There are no significant negative location factors affecting the site. Based on the foregoing the subject site is well suited for residential use. |

## IMPROVEMENTS

The building improvement is 2-stories, no elevator, no basement and contains 13,468 square feet of gross building area. The estimated date of completion is 1970. The building frame is concrete with brick façade and painted cinderblock interior walls, along with some sheetrock partition walls. Each floor has a central hallway accessing mostly larger classroom type space. Floors are commercial vinyl tile and ceilings are generally acoustical tile on suspended grid, with recessed fluorescent fixtures. Heat is electric baseboard and air conditioning is thru wall units and window units. The building includes a cafeteria with kitchen, including cooking and exterior duct. The building also includes a sprinkler system. The overall condition is considered average.

SITE/IMPROVEMENT DESCRIPTIONS

## FLOOD HAZARDS

The subject site is within a minimal risk Zone X flood area, according to the FIRM flood hazard map, Community Panel #36087C052G, dated March 3, 2014.

| Flood Zone Code | Flood Zone Panel | Panel Date |
|---|---|---|
| X | 365340 - 36087C0152G | 03/03/2014 |

| Special Flood Hazard Area (SFHA) | Within 250 ft. of multiple flood zones? | Community Name |
|---|---|---|
| Out | No | RAMAPO |

Flood Zone Description

Zone X-An area that is determined to be outside the 100- and 500-year floodplains.



Flood Zones

| | Coastal 100-year floodway | | 100-year floodway | Undetermined | | 100-year floodplain, incl. areas protected area |
|---|---|---|---|---|---|---|
| | Coastal 100-year floodplain | | 100-year floodplain | Unknown or Area Not Included | | Out of Special Flood Hazard Area |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 245 of 416

SITE/IMPROVEMENT DESCRIPTIONS

## CONCLUSION

To summarize, the subject property conforms to its immediate area with no evidence of unusual external negative forces foreseeable over the near future. Considering the foregoing, it is our opinion that the subject property is a good residential site (Lot 47 and 47A) and functional community/religious school building. The information contained in the sections entitled "ZONING ANALYSIS," "ASSESSED VALUE AND REAL ESTATE TAXES," and "SITE DESCRIPTION" was obtained from the following sources:

1.    Formal field inspection, October 1, 2018; and,

2.    Information provided by ownership;

3.    Town Ramapo/Rockland County, Zoning, and Assessment records.

## HIGHEST AND BEST USE

The following definition of Highest and Best Use is set forth in The Dictionary of Real Estate Appraisal 6th edition sponsored by the Appraisal Institute. Highest and Best Use is:

The reasonably probable use of property that results in the highest value. The four criteria that the highest and best use must meet are legal permissibility, physical possibility, financial feasibility, and maximum productivity.

The use of an asset that maximizes its potential and that is possible, legally permissible, and financially feasible. The highest and best use may be for continuation of an asset's existing use or for some alternative use. This is determined by the use that a market participant would have in mind for the asset when formulating the price that it would be willing to bid.

The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future.

### HIGHEST AND BEST USE CRITERIA

We have evaluated the sites' highest and best use both as currently improved and as if vacant. In both cases, the property's highest and best use must meet four criteria:

1.    legally permissible;

2.    physically possible;

3.    financially feasible; and,

4.    maximally productive.

### LEGALLY PERMISSIBLE

The first test concerns permitted uses. The zoning code is the main law regarding the legality of development.

### PHYSICALLY POSSIBLE

The second test is what is physically possible. Size, shape, street layout are all factors that may or may not inhibit development.

### FINANCIAL FEASIBILITY AND MAXIMAL PRODUCTIVITY

The third and fourth tests are, respectively, what is feasible and what will produce the highest net return. After analyzing the physically possible and legally permissible uses of the property, the highest and best use must be considered in light of financial feasibility and maximum productivity. For a potential use to be seriously considered, it must have the potential to provide a sufficient return to attract investment capital over alternative forms of investment. A positive net income or acceptable rate of return would indicate that a use is financially feasible.

*HIGHEST AND BEST USE*

## AS VACANT

**Legally Permissible**

The subject property is zoned R-25 with permissible uses for new construction including low density residential and community facility No known zoning changes to uses other than these are currently being considered or anticipated. The residential nature of the area, combined with the generally good condition of the area's improvements and the current and expected trends in supply and demand, all support the current zoning. It is our opinion that the site, if vacant, could be developed for the above legally permitted uses.

**It is noted, per extraordinary assumption defined earlier in the report, that Lot 47 of the subject property, containing 11.7 acres, can be developed as adult student housing at a density of 16 units per acre.**

**Physically Possible**

The subject site is a suitable size and has good street access. All necessary utilities are available, and there are no apparent easements or encroachments that would hinder or prevent development. The subject site is similar in size, configuration and topography to other site to competing sites. Therefore, any of the above legally permitted uses, therefore, are considered physically possible.

**It is noted, per extraordinary assumption defined earlier in the report, that we are assuming that the entire 11.7 acres in the parcel identified as Lot 47 is developable (and physical impairments such as wetland or similar, are not present.)**

**Financially Feasible**

The subject is in a lower density residential area near Monsey. In Rockland County, after a period of rapid growth and development through the mid-2000s, new development stagnated, encountering difficulty in financing and/or absorption in the after 2009 due to economy. More recently, prices have recovered and at least some development has become feasible, especially within some Rockland County submarkets including Spring Valley and Ramapo (including Monsey), where the demand for housing has been very strong due to a rapidly growing religious community. The subject is considered within a market where the demand for housing is very strong due to the religious community. Thus, market conditions are such that new market-oriented residential construction, to the highest density, is feasible.

**Maximally Productive/ Highest and Best Use**

All legally permissible, physically possible, and financially feasible uses of the subject property, as vacant, have been presented and examined. In conclusion, it is our opinion that the highest and best use of the subject property, as vacant, is residential development, to the highest allowable density.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks   Pg 248 of 416

*HIGHEST AND BEST USE*

AS IMPROVED

| | |
|---|---|
| **Legally Permissible** | The community facility building is legal permissible. |
| **Physically Possible** | The subject site is a suitable size and has good street access. All necessary utilities are available, and there are no apparent easements or encroachments that impair the current improvements. Thus, the current improvement is physically possible. |
| **Financially Feasible** | As a community/religious facility, the subject add value to the land Furthermore, in order to develop the adjacent parcel, this improvement (or a similar improvement) must be situated on this site. Therefore, demolition would significant impair the value of the overall site. |
| **Maximally Productive/ Highest and Best Use** | All legally permissible, physically possible, and financially feasible uses of the subject property, as vacant, have been presented and examined. In conclusion, it is our opinion that the highest and best use of the subject property, is as currently improved. |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM    INDEX NO. 036879/2021
NYSCEF DOC. NO. 33    22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of   RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 249 of 416

*APPRAISAL VALUATION PROCESS*

## APPRAISAL VALUATION PROCESS: DEVELOPMENT PARCELS

As discussed ion our highest and best use, we will value the subject as a development site. In the appraisal of development parcels, several possible approaches exist. The four most widely used approaches are summarized as follows:

1.  The Sales Comparison Approach: "The Sales Comparison Approach may be used to value land that is actually vacant, land that is being considered as though vacant for appraisal purposes, an improved site or a vacant shell building. Sales comparison is the most common technique for valuing land and it is the preferred method when comparables sales are available. To apply this method, sales of similar parcels are analyzed, compared and adjusted to provide a value indication for the land being appraised. In the comparison process, the similarity or dissimilarity of parcels is considered."[6]

2.  Allocation: "The allocation method is based on the principle of balance and related concept of contribution. Both affirm that there is a normal and typical ratio of land value to property value for specific categories of real estate in specific location. Meaningful support for allocation ratios may be derived from mass appraisals prepared by assessors or through consultations with developers who sell improved properties and can allocate sale prices between land and the improvements based on their cost."[7]

3.  Extraction: "Extraction is the method in which land value is extracted from the sales price of an improved property by deducting the value contribution of the improvements, estimates as their depreciated costs. The remaining value represents the value of the development site." [8]

4.  Income Capitalization Procedures:

    a)  Direct Capitalization: Land Residual - The land residual technique is used to estimate land value when sales data on similar vacant land parcels of vacant land are not available. The technique is applicable when 1) building value is known or can accurately be estimated, 2) net operating income to the property is known or can be accurately estimated, and 3) both building and land capitalization rates can be extracted from the market.

    b)  To apply the land residual, an appraiser first determines what actual or hypothetical improvements represent the highest and best use of the site. Then the net operating income to the property is estimated from market rents and operating expenses as of the date of the appraisal. Next, income attributed to the building is calculated and subtracted from the net operating income. The remainder is the residual income to the land which is capitalized at a market-derived rate to provide an estimate of land value.

---

[6] *The Appraisal of Real Estate*, 14th Edition., Appraisal Institute, 2015, p. 324.
[7] *Ibid, p. 326*
[8] *Ibid, p. 326.*

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 250 of 416

c) Direct Capitalization: Ground Rent Capitalization - Ground rent can be capitalized at an appropriate rate to indicate market value of the site.

d) Yield Capitalization: Discounted Cash Flow Analysis (Subdivision Development Analysis) - Discounted Cash Flow Analysis (Subdivision Development Analysis) is used to value vacant land that has potential for development as a subdivision when that use represents the likely highest and best use of the land. The development of any project extends over stages, the construction stage and the development stage.

To perform this subdivision development analysis, data on development sales and costs for developed lots must be available.[9]

Generally, the Sales Comparison Approach is considered the most reliable indicator of value of development sites, when sales of similar sites are available. Based on a relatively active market of land sales, we have relied on the Sales Comparison Approach as our sole indicator of value.

---

[9] Ibid, p. 328.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM    INDEX NO. 036879/2021
NYSCEF DOC. NO. 33    22-2493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of    RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 251 of 416

*APPRAISAL VALUATION PROCESS*

## APPRAISAL VALUATION PROCESS: COMMUNITY USE BUILDING

In advancing an opinion of the value of the subject improvements, we considered the three primary approaches to real estate valuation: The Cost Approach; the Income Capitalization Approach and the Sales Approach.

The *Cost Approach* is traditionally a good indicator of value when properties being appraised are new or close to new. Since the subject property was constructed over 10 years ago, construction costs, accrued physical depreciation that has occurred to the structure as a result of age and normal wear, and functional obsolescence resulting from inadequacies in design that are less than current market standards are difficult to estimate. This fact tends to make the Cost Approach a less effective and unreliable tool for estimating market value.

The *Income Approach* is generally based on two methods of valuation: Direct Capitalization and Discounted Cash Flow. Direct capitalization measures a single year's anticipated income in order to determine its capital sum by means of an overall capitalization rate. This appropriate rate considers risk, debt, and equity goal requirements. This analysis relies on existing (or projected) income and market expenses in order to determine annual net operating income levels. The net operating income is capitalized to a present market value. Direct Capitalization is especially useful when valuing properties with market level leases, when a property is owner occupied in which case a market rent is ascribed to the property or when the income stream is stable. In a situation where a property is encumbered by a lease that is above market, or below market and expiring within the next few years, or where a property is encumbered by several leases that will expire within a typical holding period of 10-years, a DCF analysis is considered appropriate because this analysis considers fluctuations in the income stream over the holding period.

For the *Sales Comparison Approach*, market value is estimated by comparing the subject property to sales of similar properties. This approach is based on the principle of substitution and contribution which states that a knowledgeable investor will pay no more for a property than would be paid for a comparable substitute property.

Finally, the relative strengths and weaknesses of each approach are discussed, and a final value opinion is offered.

Not-for-profit schools/religious related are typically owner-user properties; the purpose of these uses is not typically for income generation. Additionally, larger, multi-building institutional facilities are rarely leased to third party operators. Accordingly, the Income Capitalization Approach is of limited relevance in the valuation of the subject property and is utilized as an abbreviated support of the Sales Approach

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM          INDEX NO. 036879/2021
NYSCEF DOC. NO. 33     22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of   RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 252 of 416

SALES COMPARISON APPROACH

## SALES COMPARISON APPROACH: DEVELOPMENT SITE

The Sales Comparison Approach is defined as:

"A set of procedures in which a value indication is derived by comparing the property being appraised to similar properties that have been sold recently, then applying appropriate units of comparison and making adjustments to the sale prices of the comparables based on the elements of comparison. The sales comparison approach may be used to value improved properties, vacant land, or land being considered as though vacant; it is the most common and preferred method of land valuation when an adequate supply of comparable sales are available."[10]

The Sales Comparison Approach is based on the principle of substitution. This principle implies that a knowledgeable investor will pay no more for a property than the price that would be paid for a substitute property of similar utility and desirability. The procedure involved in this approach is to research the market for sales of properties which are comparable to the subject, select appropriate units of comparison, adjust the sale prices to the subject, and then reconcile the range of adjusted sale prices into a single indication of value for the subject property.

### UNIT OF COMPARISON

To analyze the comparable sales, it is generally considered necessary to convert the sales prices into an appropriate unit of comparison. The effect of this process is to adjust for differences among the sales and make the sale prices more similar to the subject property. The comparable sales will be analyzed on the basis of price per unit, the unit of comparison most commonly used to analyze sales of vacant land in the subject's market area. For Lot 47, we are assuming 187 buildable units. For Lot 47A, we are assuming one single-family lot.

### COMPARABLE SALES

The comparable sales are summarized on the following pages. Pertinent information on the transactions, a map indicating the location of each sale in relation to the subject and an adjustment grid for the sale prices are presented in this section. After analyzing the sales information, an indication of the value can be derived.

---

[10] Appraisal Institute, The Dictionary of Real Estate Appraisal, Sixth Edition, page 207 (Chicago: Appraisal Institute, 2015)

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
22-2493-shf   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 253 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

SALES COMPARISON APPROACH

## COMPARABLE SUB-DIVISION SALES MAP



22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 254 of 416

*SALES COMPARISON APPROACH*

**COMPARABLE SALE NO. 1**
**295 RED SCHOOL HOUSE ROAD AND 160 SPRING VALLEY ROAD**



*SALES COMPARISON APPROACH*

## COMPARABLE SALE NO. 1

| | |
|---|---|
| **Location:** | 295 Red School House Road and 160 Spring Valley Road |
| | Chestnut Ridge, NY and Montvale, NJ |
| **Block/Lot:** | Map 301 Lots 2 and 3 (NJ Lots) and Section 62, Block 1, Lot 1 (NY Lot) |
| **Date of Sale:** | NJ Lot 2: 5/31/17  NJ Lot 3: 4/17/17  NY Lot: 7/27/17 |
| **Grantor:** | Metropolitan HM Dev of Werimus, LLC |
| **Grantee:** | 160 Spring Valley RD, LLC (NJ Lots) and 295 Red Sch House RD, LLC (NY Lot) |
| **Site Area:** | 11.01 acres |
| **Units:** | 81 |
| **Sale Price:** | $11,250,000 |
| **Terms:** | Market financing and all cash to seller |
| **Zoning:** | Residential |
| **Document No.:** | NJ Lot 2: 2607-873, NJ Lot 3: 2607-880, NY Lot: 26203 |
| **Sale Price Per Unit:** | $138,889 |
| **Comments:** | The purchase was part of a three-lot sale, with two adjacent parcels, located at 160 Spring Valley Road in Montvale, NJ, containing 9.57 acres, sold on the same day, from the same seller for $11,250,000 (two sales In Montvale, $10,100,000/8.70 acres and $600,000/0.87 acres) and one sale in Chestnut Ridge (1.44 acres/$550,000)  The seller had assembled this site, as a single development parcel, obtaining all approvals for 81 dwelling units, prior to selling the site to the current owner/developer. |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks    Pg 256 of 416
RECEIVED NYSCEF: 03/18/2022

SALES COMPARISON APPROACH

**COMPARABLE SALE NO. 2**
**39 HARRIMAN HEIGHTS**



FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 257 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

SALES COMPARISON APPROACH

## COMPARABLE SALE NO. 1

| | |
|---|---|
| **Location:** | 39 Harriman Heights |
| | Monroe, NY |
| **Block/Lot:** | 327 individual units |
| **Date of Sale:** | February 29, 2016 |
| **Grantor:** | Cornell Woodbury, LLC |
| **Grantee:** | Woodbury Complex A, LLC Woodbury Complex B, LLC |
| **Site Area:** | 92.00 acres |
| **Units:** | 327 |
| **Sale Price:** | $35,374,998 |
| **Terms:** | Market financing and all cash to seller |
| **Zoning:** | Residential |
| **Document No.:** | 14018-1891 |
| **Sale Price Per Unit:** | $108,180 |
| **Comments:** | Large subdivision in Monroe NY. Vacant, wooed, but approvals in place. |

SALES APPROACH

## SUMMARY OF COMPARABLE SALES

| No. | Address | Sale Date | Sale Price | Site Area (Acres) | Buildable Units | Sale Price Per Unit |
|---|---|---|---|---|---|---|
| 1 | 295 Red School House Road and 160 Spring Valley Road | NJ Lot 2: 5/31/17 NJ Lot 3: 4/17/17 NY Lot: 7/27/17 | $11,250,000 | 11.01 | 81 | $138,889 |
| 2 | 39 Harriman Heights | 2/29/2016 | $35,374,998 | 92.00 | 327 | $108,180 |

## Conclusion

Due to minimal larger sub-divisions in the market, we were limited to two local sales. It is noted that while the subject will be restricted to "Adult Student Housing,' this restriction in the local religious market is significantly mitigated as most of the potential buyers/renters qualify for this classification. Nonetheless, some adjustment is warranted. Therefore, have concluded to a market value of $100,000 per unit, slightly below the comparables. Our unit value selection results in the following market value conclusion.

| | | |
|---|---|---|
| Value Per Unit | | $100,000 |
| Units | × | 187 |
| Value Indicator | | $18,700,000 |

**VALUE VIA THE SALES APPROACH**
**APRIL 1, 2019**
**$36,300,000**

*SALES APPROACH*

## COMPARABLE SINGLE-FAMILY SITE SALES



| Address | Sale Date | Size (Acres) | Sale Price | Buyer | Seller | Document ID |
|---|---|---|---|---|---|---|
| 4 Rockwood Lane | 5/2/2018 | 1.28 | $435,000 | Hamburger | Kaplan | 15075 |
| 4 Tasha Drive (Wesley Chapel Road) | 6/12/2018 | 1.19 | $336,600 | Green Mountain Dev Corp | N/A | 17250 |
| 255 Spook Rock Road | 11/2/2017 | 0.98 | $150,000 | Blassberg | Bagad Corp | 22289 |
| 4 Saego Ct | 9/20/2017 | 1.13 | $132,500 | Spokojny | Olivera | 33814 |
| 456 Saddle River Road | 2/28/2018 | 1.19 | $325,000 | Upscale Home Rockland Corp | Wiess | 10489 |

## Conclusion

Single-family site prices vary due to configuration, topography and other physical characteristics. The comparables are all located in the subject and adjacent zip code and reflect a reasonable anticipated range in the local market. The subject lot has excellent frontage, is level and regular shaped, all positive attributes. However, the anticipated large development, adjacent to lot 47 with development potential of 187 units, could be a negative influence (although, it is also possible that this could enhance the value of the subject as one of the religious facility leaders could utilize the site for large single-family home). Taking into consideration all factor, as well as Comparable 3 which is the closest location to the subject, we have concluded to a value of $200,000 for the single-family lot.

## SALES COMPARISON APPROACH: COMMUNITY USE BUILDING

### UNIT OF COMPARISON

To analyze the comparable sales, it is generally considered necessary to convert the sales prices into an appropriate unit of comparison. The effect of this process is to adjust for differences among the sales and make the sale prices more similar to the subject property. The comparable sales will be analyzed based on price per square foot, the unit of comparison most commonly used to analyze sales of community use buildings in the market area.

### COMPARABLE SALES

The comparable sales are summarized on the following pages. Photographs of each of the sales along with pertinent information on the transactions, a map indicating the location of each sale in relation to the subject and an adjustment grid for the sale prices are presented in this section. After analyzing the sales information, an indication of the value can be derived.

*SALES COMPARISON APPROACH*

## COMPARABLE SALES MAP



FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 262 of 416
RECEIVED NYSCEF: 03/18/2022

*SALES COMPARISON APPROACH*

## COMPARABLE BUILDING SALE No. 1
## 56 RIDGEWOOD ROAD



| | |
|---|---|
| SALE NO: | 1 |
| LOCATION: | 56 Ridgewood Road |
| | Washington Township, NJ |
| TAX IDENTIFICATION: | 66-02506-0000-00009 |
| SITE AREA (ACRES): | 2.30 |
| GBA (ABOVE GRADE): | 22,000 |
| PROPERTY DESCRIPTION: | This is the sale of a religious facility building.  Formerly occupied by Temple Beth Or, the building was constructed in 1956 and expanded in 1975.  Marketed as owner/use for school, religious uses or possible redevelopement. 10,000 square feet on main level with none classrooms,common area, library and lobby.  6,000 square foot santuary and 6,000 square feet of lower level finished space. |
| SALE DATE: | Under Contract |
| YEAR BUILT: | 1956/1995 |
| GRANTOR: | Temple Beth |
| GRANTEE: | N/A |
| SALE PRICE: | $4,200,000 |
| PRICE PER SF: | $190.91 |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM          INDEX NO. 036879/2021

NYSCEF DOC. NO. 33          22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01          Declaration of          RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 263 of 416

*SALES COMPARISON APPROACH*

## COMPARABLE BUILDING SALE No. 2
## 399 PASCACK ROAD



| | |
|---|---|
| SALE NO: | 2 |
| LOCATION: | 399 Pascack Road |
| | Washington Township, NJ |
| TAX IDENTIFICATION: | 66-03301-0000-00015 |
| SITE AREA (SF): | 0.98 |
| GBA (ABOVE GRADE): | 5,905 |
| PROPERTY DESCRIPTION: | This is the sale of a religious facility building. The property is recently renovated and in excellent condition. Sold by house of worship due to small size (relocated to a larger facility). The buyer is establishing a new church. |
| SALE DATE: | February 9, 2018 |
| YEAR BUILT: | 1928 |
| GRANTOR: | Bethany Church of the Assemblies of God |
| GRANTEE: | Pope Kryillos VI Coptic Orod |
| SALE PRICE: | $2,250,000 |
| PRICE PER SF: | $381.03 |

SALES COMPARISON APPROACH

## COMPARABLE BUILDING SALE NO. 3
## 78 S MAIN Street



| SALE NO: | 3 |
|---|---|
| LOCATION: | 78 S Main Street |
| | Spring Valley, NY |
| TAX IDENTIFICATION: | 392605-057-063-0001-007-000-0000 |
| SITE AREA (ACRES): | 0.46 |
| GBA (ABOVE GRADE): | 6,640 |
| PROPERTY DESCRIPTION: | This is the sale of a 2-story office/religius use building sold to a non-for-profit related to heath and human services. |
| | |
| SALE DATE: | March 29, 2017 |
| YEAR BUILT: | 2004 |
| GRANTOR: | Congregation Birchos Yosef |
| GRANTEE: | Hamaspik Of Rockland Cnty Inc |
| SALE PRICE: | $2,000,000 |
| PRICE PER SF: | $301.20 |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 265 of 416

SALES COMPARISON APPROACH

## COMPARABLE BUILDING SALE No. 4
### 3525 BAYCHESTER AVENUE



| | |
|---|---|
| SALE NO: | 4 |
| LOCATION: | 415 Viola Road<br>Spring Valley, NY |
| TAX IDENTIFICATION: | 392689-049-012-0002-052-012-0000 |
| SITE AREA (ACRES): | 5.66 |
| GBA (ABOVE GRADE): | 31,074 |
| PROPERTY DESCRIPTION: | This was sold at auction. However, the property was marketed and generated signficant bids. The initial asking bid was $5,000,000 and was bid up to $9,169,000. The new owners (United Talmudical Academy) currently occupy the property. |
| SALE DATE: | September 22, 2016 |
| YEAR BUILT: | 1965 |
| GRANTOR: | The Reform Temple of Rockland, New York |
| GRANTEE: | United Talmudical Academy |
| SALE PRICE: | $9,169,000 |
| PRICE PER SF: | $295.07 |

*SALES COMPARISON APPROACH*

## SUMMARY OF COMPARABLE SALES

| No. | Address | Sale Date | Size (SF) | Sale Price | Sale Price Per SF |
|-----|---------|-----------|-----------|------------|-------------------|
| 1 | 56 Ridgewood Road | Under Contract | 22,000 | $4,200,000 | $191 |
| 2 | 399 Pascack Road | Feb-18 | 5,905 | $2,250,000 | $381 |
| 3 | 78 S Main Street | Mar-17 | 6,640 | $2,000,000 | $301 |
| 4 | 415 Viola Road | Sep-16 | 31,074 | $9,169,000 | $295 |

## Adjustments

Adjustments for the comparable sales have been considered, based on comparison to the subject, for property rights, appraised, financing terms, conditions of sale, market conditions (time), location, size, utility, income level and condition.

| | |
|---|---|
| **Property Rights Appraised** | The purpose of this adjustment is to account for differences in the property rights which were transferred with the sale. The property rights being valued in this land analysis are leased fee interest for the subject. All of the comparable properties are similar fee simple ownership interests, no adjustments were required. |
| **Financing Terms** | The purpose of adjusting for financing terms is to determine cash equivalent sale prices for the comparable sales in accordance with the definition of market value for this report. All of the sales were cash transactions or financed at market rates. No adjustments were required. |
| **Conditions of Sale** | Conditions of sale refer to the motivations of the buyer and seller involved in a particular transaction. All sales appear to be arm's length transactions and did not require adjustments. |
| **Market Conditions (Time)** | Market conditions have generally improved in the area over the past few years. We have adjusted the sales at 3% per annum. Thus, Sale 4 is adjusted 6% upward and Sale 3 is adjusted 3% upward. Sale 1, as under contract and Sale 2 from 2018 are not adjusted. |
| **Location** | The subject is located along a main roadway in the Town of Ramapo (Suffern) address. The comparables are considered similar in location desirability. Therefore, no location adjustments are indicated. |
| **Size** | The subject contains 13,468 square feet. The comparable range from 5,905 to 31,074 square feet. Generally, larger building sell at a lower per square foot than smaller buildings. Sales 2 and 3 are sufficiently smaller than the subject and are adjusted downward and Sales 1 and 4 are sufficiently larger than the subject and are adjusted upward. |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM INDEX NO. 036879/2021

NYSCEF DOC. NO. 33   22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of   RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks   Pg 267 of 416

*SALES COMPARISON APPROACH*

| | |
|---|---|
| **Utility** | This adjustment accounts for such differences in building characteristics such as layout, elevators, exterior appeal and also general site differences such as site size/parking. The subject property consists of a fully functioning community facility with kitchen, cafeteria, classrooms and office on a t2-acre site.<br><br>Sale 1 has approximately 25% of the building area in a lower level, which is inferior to the subject. As such Sale 1 is adjusted upward for layout. Sales 2 and 3 are on smaller sites (less than 1-acre) and are adjusted upward and Sale 4 is on a significantly larger site (5.66 acres) and is adjusted downward. |
| **Age/Condition** | The subject property building is in average condition, similar Sales 1 and 4 which are not adjusted. Sales 2 and 3 are newer building/or recently renovated and are superior in condition to the subject and are adjusted downward. |

**COMPARABLE SALES ADJUSTMENT GRID**

| Sale No. | 1 | 2 | 3 | 4 |
|---|---|---|---|---|
| Address: | 56 Ridgewood Road | 399 Pascack Road | 78 S Main Street | 415 Viola Road |
| Sale Date: | Under Contract | 2/9/2018 | 3/29/2017 | 9/22/2016 |
| Size (SF): | 22,000 | 5,905 | 6,640 | 31,074 |
| Sale Price: | $4,200,000 | $2,250,000 | $2,000,000 | $9,169,000 |
| Sale Price Per Unit: | $191 | $381 | $301 | $295 |
| Property Rights: | 0% | 0% | 0% | 0% |
| Financing Terms: | 0% | 0% | 0% | 0% |
| Conditions of Sale: | 0% | 0% | 0% | 0% |
| Market Conditions (Time): | 0% | 0% | 3% | 6% |
| Trended Price Per Unit: | $191 | $381 | $310 | $313 |
| Location: | 0% | 0% | 0% | 0% |
| Size: | 10% | -10% | -10% | 10% |
| Utility: | 5% | 5% | 5% | -25% |
| Condition: | 0% | -10% | -10% | 0% |
| Total Adjustments: | 15% | -15% | -15% | -15% |
| Adjusted Price PSF: | $220 | $324 | $264 | $266 |

| UNADJUSTED | | ADJUSTED | |
|---|---|---|---|
| LOW | $191 | | $220 |
| HIGH | $381 | | $324 |
| AVERAGE | $292 | | $268 |
| MEDIAN | $298 | | $265 |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021

NYSCEF DOC. NO. 33    22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 268 of 416

Before adjustments, the comparable sales show a price range from $191 to $381 per square foot. After adjustments, the comparable sales show a range of $220 to $324 per square foot, with an average of $268 and a median of $265 per square foot.

Given the condition and location of the property, we expect the property would command a value near mid-point of the market range. With most weight on the direct comparable sales we have concluded to a sales price of $265 per square foot or an indicator of value of $3,569,020

**VALUE VIA THE SALES COMPARISON APPROACH**
**$3,600,000 (RD)**

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM    INDEX NO. 036879/2021
NYSCEF DOC. NO. 33                                  RECEIVED NYSCEF: 03/18/2022

## RECONCILIATION AND FINAL VALUE ESTIMATE

As discussed, we have relied exclusively on the Sales Approach for valuing the subject's three lots.

Based on our analysis, subject to the defined extraordinary assumptions, as of October 1, 2018, is:

| | |
|---|---|
| Community Facility | $3,569,020 |
| Vacant Land (ASH) | $18,700,000 |
| Vacant Land R25 Zone | $200,000 |
| Total Value | $22,469,020 |
| **Rounded** | **$22,500,000** |

*ADDENDUM*

## ADDENDUM

1. ENGAGEMENT LETTER

2. CLIENT SUBMITTED DOCUMENT

3. CONTINGENT AND LIMITING CONDITIONS

4. CERTIFICATION

5. QUALIFICATIONS

6. APPRAISAL LICENSE

ADDENDA

## ENGAGEMENT LETTER



August 29, 2018

Dell Realty, LLC
82 Highview Road
Suffern, NY 10901
vccrachm@gmail.com

RE:   82 Highview Road
      Suffern, New York

We are pleased to submit this proposal and our terms and conditions for the appraisal of the referenced real estate.

### PROPOSAL SPECIFICATIONS

| | |
|---|---|
| **Purpose/Valuation Premise:** | Form opinion of the as-is market value |
| **Property Rights Appraised:** | Fee simple interest (leased fee for school building on a small part of the site) |
| **Intended Use:** | Asset valuation |
| **Intended User:** | Dell Realty, LLC and its related entities, successors, and/or assigns |
| **Scope of Work/Report Type:** | The appraisal will include a development model and sales comparison approach. |
| **Appraisal Standards:** | Uniform Standards of Professional Appraisal Practice (USPAP), Financial Institution Reform, Recovery, and Enforcement Act (FIRREA), and Code of Professional Ethics and the Standards of Professional Appraisal Practice of the Appraisal Institute |
| **Fee:** | $7,500 |

NEW YORK

ADDENDA

Mr. Henoch Zaks
Page 2
August 29, 2018

| | |
|---|---|
| **Payment Terms:** | **A retainer in the amount of one-half of our fee is due and payable upon acceptance of the terms of this letter.** The balance is due upon delivery of the final report or within 30 days of your receipt of our draft report, whichever is sooner. If a draft report is requested, the fee is considered earned upon delivery of our draft report. |
| **Report Copies:** | PDF delivery of draft and/or final reports |
| **Delivery Date:** | Delivery of the appraisal conclusions and/or report(s) will be within 2 weeks of timely receipt of your written authorization to proceed, the retainer, and any necessary data. |
| **Acceptance Date:** | Date of execution |

The attached General Assumptions and Limiting Conditions (Exhibit A) are deemed part of this agreement as though set forth in full herein.

We appreciate this opportunity to be of service to you on this assignment. If you have additional questions, please contact us.

Sincerely,

BBG, Inc.

Jon DiPietra, MAI
Managing Director

**AGREED AND ACCEPTED**

........................................    09 28 2018

Date

Dell Realty LLC

ADDENDA

## CLIENT SUBMITTED DOCUMENT

SEQR Negative Declaration

State Environmental Quality Review
**NEGATIVE DECLARATION**
Notice of Determination of Non-Significance

Date: June 4, 2004

This notice is issued pursuant to Part 617 of the implementing regulations pertaining to Article 8 (State Environmental Quality Review Act) of the Environmental Conservation Law.

Based upon the reasoning below and a review of the information in the Full Environmental Assessment Report, and upon plans and narrative submitted, the Town of Ramapo Board, as Lead Agency for the Proposed Action, hereby finds that the proposed Special Permit Use – Adult Student Housing will not have a significant adverse impact on the environment and that no further environmental impact statement need be prepared.

| | | |
|---|---|---|
| **Name of Action:** | Adult Student Housing Special Permit Use | |
| **SEQR Status:** | Type I | _X_ |
| | Unlisted | __ |

| | | |
|---|---|---|
| **Conditioned Negative Declaration:** | ___ Yes | |
| | _X_ No | |

**Description of Action:** The Town of Ramapo Board has proposed to revise its special permit uses for residential zones to include the provision of adult student housing for post secondary educational uses. The requirements for this special permit use include:

- a minimum lot size of 4 acres
- a maximum of 12 acres for density purposes
- public water supply must be available
- public sewerage facilities must be available
- residents must be full time students, their spouses and children or educators associated with that facility
- the housing must be provided on the same site as the educational institution
- the educational facility must occupy 10% of the site
- the permit must be renewed annually
- approval of an application requires that a one half mile buffer from all points of the proposed site be established and all similar facilities be identified within that buffer. If the total acreage of adult student housing exceeds 5% of the total developable area within that buffer, the Town shall not approve the application.
- The maximum density provided for this type of housing is 16 dwelling units per acre (equivalent to the R16C densities)

Post secondary education has been defined as education for persons beyond high school. The need for this type of housing has been identified in the context of a RULIPA issue, arising from private schools which have no mechanism to provide such housing under the current regulations. The Town is addressing this requirement in a more generic fashion which would apply to any educational institution including groups such as Volunteers of America, Salvation Army

**Location:**

Based upon a review of the sites meeting the requirements, only a handful of sites would meet the base criteria established. The following general areas have been identified where a facility could be located. It is unlikely that more than one facility could be approved in each of the five areas subject to the 1 mile buffer analysis required of applicants. Although 4 areas have been identified, only two potential candidates have been identified.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 274 of 416
RECEIVED NYSCEF: 03/18/2022

ADDENDA

SEQR Negative Declaration

- In the northern most portion of the town of Ramapo – generally north of Pomona Road in the vicinity of Patrick Farms
- One 4.7 acre parcel at the Nike site on Grandview Avenue
- One 4.6 acre parcel in lands north of Spruce Road
- On an 11.7 acre site off Highview Road

Each site identified must undergo a complete environmental review as part of the standard site plan approval process. Any proposal would be subject to deductions for steep slopes, wetlands, floodplains and any other encumbrances.

**Reasons Supporting This Determination:** The Town Board finds that the proposed action will not have a significant adverse impact on the environment based on the Criteria for Determining Significance in SEQRA Section 617.(c)(1) and based on the approved full Environmental Assessment prepared as part of the request and the plans and reports submitted for this project.

**If Conditioned Negative Declaration, provide attachment of specific mitigation measures imposed.**

**For Further Information:**

Contact Person:     Brian Brophy, Director of Building, Planning and Zoning

Address:            Department of Building, Planning and Zoning
                    237 Route 59
                    Suffern, New York 10901

Telephone Number:   (845) 357-5100

**For Type I Actions and Conditioned Negative Declarations, a copy of this notice sent to:**
n/a                                                   532847.kccmnegneg.pfi

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM INDEX NO. 036879/2021
NYSCEF DOC. NO. 33    RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 275 of 416

ADDENDA

14-16-2(9/95)-7c                                                    SEQR

617.20
**Appendix A**
**State Environmental Quality Review**
**FULL ENVIRONMENTAL ASSESSMENT FORM**

**Purpose:** The full EAF is designed to help applicants and agencies determine, in an orderly manner, whether a project or action may be significant. The question of whether an action may be significant is not always easy to answer. Frequently, there are aspects of a project that are subjective or unmeasurable. It is also understood that those who determine significance may have little or no formal knowledge of the environment or may be technically expert in environmental analysis. In addition, many who have knowledge in one particular area may not be aware of the broader concerns affecting the question of significance.

The full EAF is intended to provide a method whereby applicants and agencies can be assured that the determination process has been orderly, comprehensive in nature, yet flexible to allow introduction of information to fit a project or action.

**Full EAF Components:** The full EAF is comprised of three parts:

**Part 1:** Provides objective data and information about a given project and its site. By identifying basic project data, it assists a reviewer in the analysis that takes place in Parts 2 and 3.

**Part 2:** Focuses on identifying the range of possible impacts that may occur from a project or action. It provides guidance as to whether an impact is likely to be considered small to moderate or whether it is a potentially large impact. The form also identifies whether an impact can be mitigated or reduced.

**Part 3:** If any impact in Part 2 is identified as potentially large, then Part 3 is used to evaluate whether or not the impact is actually important.

---

**DETERMINATION OF SIGNIFICANCE - Type 1 and Unlisted Actions**

**Identify the Portions of EAF completed for this project:**    ☒ Part 1 ☒ Part 2 ☐ Part 3  *NARRATIVE*

Upon review of the information recorded on this EAF (Parts 1 and 2 and 3 if appropriate), and any other supporting information, and considering both the magnitude and importance of each impact, it is reasonable determined by the lead agency that:

☒ A. The Project will not result in any large and important impact(s) and, therefore, is one which will not have a significant impact on the environment, therefore a negative declaration will be prepared.

☐ B. Although the project could have a significant effect on the environment, there will not be a significant effect for this Unlisted Action because the mitigation measures described in PART 3 has been required, therefore a CONDITIONED negative declaration will be prepared.*

☐ C. The project may result in one or more large and important impacts that may have a significant impact on the environment, therefore a positive declaration will be prepared.
* A Conditioned Negative Declaration is only valid for Unlisted Actions

Adult Student Housing Ordinance
_____
Name of Action

Town of Ramapo, New York
_____
Name of Lead Agency

Paul Gdanski                                          Town Engineer
Print or Type Name of Responsible Officer in Lead Agency    Title of Responsible Officer

_____        _____
Signature of Responsible Officer in Lead Agency    Signature of Preparer (if different from responsible officer)

June 1, 2004
_____
Date

ADDENDA

# PART 1 - PROJECT INFORMATION

## Prepared by Project Sponsor

NOTICE: This document is designed to assist in determining whether the action proposed may have a significant effect on the environment. Please complete the entire Form, Parts A through E. Answers to these questions will be considered as part of the application for approval and may subject to further verification and public review. Provide any additional information you believe will be needed to complete Parts 2 and 3.

It is expected that completion of the full EAF will be dependant on information currently available and will not involve new studies, research or investigation. If information requiring such additional work is unavailable, so indicate and specify each instance.

| NAME OF ACTION | |
|---|---|
| Adult Student Housing Amendment to Special Use Zoning Ordinance | |
| LOCATION OF ACTION (Include Street Address, Municipality and County) | |
| Town of Ramapo | |
| NAME OF APPLICANT/SPONSOR | BUSINESS TELEPHONE |
| Town of Ramapo | (845 ) 357-5100 |
| ADDRESS | |
| 237 Route 59 | |
| CITY/PO | STATE | ZIP CODE |
| Ramapo, | NY 10901 |
| NAME OF OWNER (if different) | BUSINESS TELEPHONE |
| | ( ) |
| ADDRESS | |
| | |
| CITY/PO | STATE | ZIP CODE |
| DESCRIPTION OF ACTION: Proposed Adult Student Housing Special Use Amendment to Zoning Ordinance | |

Please Complete Each Question - Indicate N.A. if not applicable

## A.    Site Description (see Environmental Assessment Statement – attached)

Physical setting of overall project, both developed and undeveloped areas.

1. Present land use:  ☐ Urban    ☐ Industrial    ☐ Commercial    X☐ Residential (suburban)    ☐ Rural (non-farm)
   ☐ Forest    ☐ Agriculture    X☐ Other – Variable conditions 3 potential locations within the Town

2. Total acreage of project area: 124.7 – 11.7 acres; (See attached narrative for description of potential properties)

| APPROXIMATE ACREAGE | PRESENTLY | AFTER COMPLETION |
|---|---|---|
| Meadow or Brushland (Non-agricultural) | ___ acres | ___ acres |
| Forested | ___ acres | ___ acres |
| Agriculture (includes orchards, cropland, pasture, etc.) | ___ acres | ___ acres |
| Wetland (Freshwater or tidal as per Article 24, 25 of ECL) acres | ___ | ___ acres |
| Water Surface Area | ___ acres | ___ acres |
| Unvegetated (Rock, earth or fill) | ___ acres | ___ acres |
| Roads, Buildings and Other Paved Surfaces | ___ acres | ___ acres |
| Other (indicate type) | ___ acres | |

3. What is predominant soil type(s) on project site?
   a. Soil drainage    ☐ Well drained    90    % of site    ☐ Moderately well drained 15    % of site
   ☐ Poorly drained    5    % of site
   b. If any agricultural land is involved, how many acres of soil are classified within soil group 1 through 4 of the NYS Land Classification System?    N/A    acres. (See 1 NYCRR 370)

4. Are there bedrock outcroppings on the project site?    ☐ Yes    X☐ No
   a. What is depth to bedrock?    ≥ 5'    (in feet)

ADDENDA

5. Approximate percentage of proposed project site with slopes:

| | | | |
|---|---|---|---|
| Patrick Farm | ☐ 0-10% 80% ☐ 10-15% __20_% | ☐ 15% or greater ____% | |
| Nike | ☐ 0-10% 100% ☐ 10-15% ____% | ☐ 15% or greater ____% | |
| Highview Site | ☒ 0-10% 100% ☐ 10-15% ____% | ☐ 15% or greater ____% | |
| Spruce Road | ☐ 0-10% 100% ☐ 10-15% ____% | ☐ 15% or greater ____% | |

6. Is project substantially contiguous to, or contain a building, site, or district, listed on the State or the National Registers of Historic Places? ☐ Yes ☒ No

7. Is project substantially contiguous to a site listed on the Register of National Natural Landmarks? ☐ Yes ☒ No

8. What is the depth of the water table? Varies from 3 feet to bedrock_____ (in feet)

9. Is site located over a primary, principal or sole source aquifer? ☐ Yes ☒ No

10. Do hunting, fishing or shell fishing opportunities presently exist in the project area?    ☐ Yes ☒ No

11. Does project site contain any species of plant or animal life that is identified as threatened or endangered?
☐ Yes ☒ No According to: Comprehensive Planning Document
Identify each species _____

12. Are there any unique or unusual land forms on the project site? (i.e., cliffs, dunes, other geological formations)
☐ Yes ☒ No Describe_____

13. Is the project site presently used by the community or neighborhood as an open space or recreation area?
☒ Yes ☐ No   If yes, explain _one site has been used for horse riding; currently serves police

14. Does the present site include scenic views known to be important to the community?
☒ Yes ☐ No

15. Streams within or contiguous to project area: un-named_____
a. Name of Stream and name of River to which it is tributary_____ - Tributary to Mawah River

16. Lakes, ponds, wetland areas within or contiguous to project area:
a. Name Patrick Farm Pond_____   b. Size (in acres)_____4 acres_____

17. Is the site served by existing public utilities? ☒ Yes ☐ No
a. If Yes, does sufficient capacity exist to allow connection?   ☒ Yes   ☐ No
b. If yes, will improvements be necessary to allow connection? ☒ Yes   ☐ No

18. Is the site located in an agricultural district certified pursuant to Agriculture and Market Law, Article 25-AA
Section 303 and 304?   ☐ Yes ☒ No

19. Is the site located in or substantially contiguous to a Critical Environmental Area designated pursuant to Article
8 of the ECL, and 6 NYCRR 617?   ☒ Yes ☐ No

20. Has the site ever been used for the disposal of solid or hazardous waste?   ☐ Yes ☒ No


## B.   Project Description- 4 distinct potential sites: 12 acres (out of a 200 acre site); 4.7 acres; 11 acres; 4.8 acres – see attached narrative

1. Physical dimensions and scale of project (fill in dimensions as appropriate) See Attached Narrative Statement

a. Total contiguous acreage owned or controlled by project sponsor _____acres.
b. Project acreage to be developed _____ acres initially; _____ acres ultimately.
c. Project acreage to remain undeveloped _____ acres.
d. Length of project in miles _____ (if appropriate)
e. If the project is an expansion, indicate percent of expansion proposed _____%
f. Number of off-street parking spaces existing _____; proposed _____
g. Maximum vehicular trips generated per hour _____ (upon completion of project)?
h. If residential: Number and type of housing units:

| | One Family | Two Family | Multiple Family | Condominium |
|---|---|---|---|---|
| Initially | | | | |
| Ultimately | | | | |

i. Dimensions (in feet) of largest proposed structure _____ height: _____ width; _____ length.

3

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 33

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 278 of 416

ADDENDA

j. Linear feet of frontage along a public thoroughfare project will occupy is? _____ ft.

4

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 279 of 416

ADDENDA

2. How much natural material (i.e. rock, earth, etc.) will be removed from the site? _____ tons/cubic yards

3. Will disturbed areas be reclaimed?   ☐ Yes   ☐ No   ☐ N.A.
   a. If yes, for what intended purpose is the site being reclaimed? _____
   b. Will topsoil be stockpiled for reclamation?   ☐ Yes   ☐ No
   c. Will upper subsoil be stockpiled for reclamation?   ☐ Yes   ☐ No

4. How many acres of vegetation (trees, shrubs, ground covers) will be removed from site? _____ acres.

5. Will any mature forest (over 100 years old) or other locally-important vegetation be removed by this project?
   ☐ Yes   ☐ No

6. If single phased project: Anticipated period of construction _____ months, (including demolition).

7. If multi-phased:
   a. Total number of phases anticipated _____ (number)
   b. Anticipated date of commencement phase 1 _____ month _____ year, (including demolition).
   c. Approximate completion date of final phase _____ month _____ year.
   d. Is phase 1 functionally dependent on subsequent phases?   ☐ Yes   ☐ No

8. Will blasting occur during construction?   ☐ Yes   ☒ No

9. Number of jobs generated: during construction _____ after project is complete _____

10. Number of jobs eliminated by this project   None_____

11. Will project require relocation of any projects or facilities?   ☐ Yes   ☒ No  If yes, explain _____

12. Is surface liquid waste disposal involved?   ☐ Yes   ☒ No
    a. If yes, indicate type of waste (sewage, industrial, etc.) and amount _____
    b. Name of water body into which effluent will be discharged _____

13. Is subsurface liquid waste disposal involved?   ☐ Yes   ☒ No  Type _____

14. Will surface area of an existing water body increase or decrease by proposal?   ☐ Yes   ☒ No
    Explain _____

15. Is project or any portion of project located in a 100 year flood plain?   ☐ Yes   ☒ No

16. Will the project generate solid waste?   ☒ Yes   ☐ No
    a. If yes, what is the amount per month  27 tons
    b. If yes, will an existing solid waste facility be used?   ☒ Yes   ☐ No
    c. If yes, give name Rockland County Solid Waste Authority; location Hilburn NY_____
    d. Will any waste not go into a sewage disposal system or into a sanitary landfill? ☐ Yes   ☒ No
    e. If Yes, explain _____

17. Will the project involve the disposal of solid waste?   ☐ Yes   ☒ No
    b. If yes, what is the anticipated rate of disposal? _____ tons/month
    h. If yes, what is the anticipated site life? _____ years.

18. Will project use herbicides or pesticides?   ☐ Yes   ☒ No

19. Will project routinely produce odors (more than one hour per day?)   ☐ Yes   ☒ No

20. Will project produce operating noise exceeding the local ambient noise levels?   ☐ Yes   ☒ No

21. Will project result in an increase in energy use?   ☒ Yes ☐ No
    If yes, indicate type(s)  Electric for lighting; gas or oil for heating/hotwater; gas or electric for cooking

22. If water supply is from wells, indicate pumping capacity   N/A _____ gallons/minute.

23. Total anticipated water usage per day 250,000 gallons/day.

24. Does project involve Local, State or Federal funding?   ☐ Yes   ☒ No
    If yes, explain _____

5

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM INDEX NO. 036879/2021

NYSCEF DOC. NO. 33    22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of    RECEIVED NYSCEF: 03/18/2022

Rabbi Mayer Zaks    Pg 280 of 416

ADDENDA

**25. Approvals Required:**

|  |  |  | Type | Submittal Date |
|---|---|---|---|---|
| City, Town, Village Board | X☐ Yes☐ No |  | Adopt Special Use |  |
| City, Town, Village Planning Board | X☐ Yes | ☐ No | Site Plan/SP use |  |
| City, Town, Zoning Board | ☐ Yes X ☐ No |  |  |  |
| City, County Health Department | X ☐ Yes | ☐ No | Drainage |  |
| Other Local Agencies | X ☐ Yes | ☐ No | Sewage Permit |  |
| Other Regional Agencies | X ☐ Yes | ☐ No | Water permit |  |
| State Agencies | ☐ Yes ☐ No |  |  |  |
| Federal Agencies | ☐ Yes ☐ No |  |  |  |

## C.    Zoning and Planning Information

1. Does proposed action involve a planning or zoning decision? X☐ Yes☐ No
   If yes, indicate decision required:
   ☐ zoning amendment   ☐ zoning variance   X☐ special use permit   ☐ subdivision   ☐ site plan
   ☐ new/revision of master plan   ☐ resource management plan   ☐ other _____

2. What is the zoning classification(s) of the site? RESIDENTIAL_____

3. What is the maximum potential development of the site if developed as permitted by the present zoning?
   Each Site is limited to 12 acres: 12 of 200+ acres; 4.7 acres; 11.7 acres; and 4.8 acres_____

4. What is the proposed zoning of the site? RESIDENTIAL _____

5. What is the maximum potential development of the site if developed as permitted by the proposed zoning?
   **182 du's; 76du's; 187 du's and 77 du's (total max is 531)**

6. Is the proposed action consistent with the recommended uses in adopted local land use plans? X☐ Yes   ☐ No

7. What are the predominant land use(s) and zoning classification within a 1/4 mile radius of proposed action?
   Residential/vacant_____

8. Is the proposed action compatible with adjoining/surrounding land uses within a 1/4 mile?    X☐ Yes☐ No

9. If the proposed action is the subdivision of land, how many lots are proposed? NA_____
   a. What is the minimum lot size proposed? **4 Acres**_____

10. Will proposed action require any authorization(s) for the formation of sewer or water districts? X☐ Yes ☐ No

11. Will the proposed action create a demand for any community provided services (recreation, education, police, fire protection)?   X☐ Yes☐ No
    a. If yes, is existing capacity sufficient to handle projected demand?    X☐ Yes☐ No

12. Will the proposed action result in the generation of traffic significantly above present levels?   ☐ Yes   X☐ No
    a. If yes, is the existing road network adequate to handle the additional traffic?   X☐Yes ☐ No

## D.    Informational Details – See Narrative

Attach any additional information as may be needed to clarify your project. If there are or may be any adverse impacts associated with your proposal, please discuss such impacts and the measures which you propose to mitigate or avoid them.

## E.    Verification

I certify that the information provided above is true to the best of my knowledge.
Applicant/Sponsor Name: Paul Gdanski _____ Date 6/3/09

Signature _____ Title: Town Engineer

If the action is in the Coastal Area, and you are a state agency, complete the Coastal Assessment Form before proceeding with this assessment.

6

ADDENDA

## Part 2-PROJECT IMPACTS AND THEIR MAGNITUDE
### Responsibility of Lead Agency

**General Information (Read Carefully)**

* In completing the form the reviewer should be guided by the question: Have my responses and determinations been reasonable? The reviewer is not expected to be an expected to be an expert environmental analyst.

* Identify that an impact will be potentially large (column 2) does not mean that it is also necessarily significant. Any large impact must be evaluated in Part 3 to determine significance. Identifying an impact in column 2 simply asks that it be looked at further.

* The Examples provided are to assist the reviewer by showing types of impacts and wherever possible the threshold of magnitude that would trigger a response in column 2. The responses are generally applicable throughout the State and for most situations. But, for any specific project or site other examples and/or lower thresholds may be appropriate for a Potential Large Impact response, thus requiring evaluation in Part 3.

* The impacts of each project, on each site, in each locality, will vary. Therefore, the examples are illustrative and have been offered as guidance. They do not constitute an exhaustive list of impacts and thresholds to answer each question.

* The number of examples per question does not indicate the importance of each question.

* In identifying impacts, consider long term and cumulative effects.

**Instructions (Read carefully)**

a. Answer each of the 19 questions in PART 2. Answer Yes if there will be any impact.

b. **Maybe** answers should be considered as **Yes** answers.

c. If answering yes to a question then check the appropriate box (column 1 or 2) to indicate the potential size of the impact. If impact threshold equals or exceeds any example provided, check column 2. If impact will occur but threshold is lower than example, check column 1.

d. If reviewer has doubt about size of the impact then consider the impact as potentially large and proceed to PART 3.

e. If a potentially large impact checked in column 2 can be mitigated by change(s) in the project to a small to moderate impact, also check the **Yes** box in column 3. A **No** response indicates that such a reduction is not possible. This must be explained in Part 3.

| IMPACT ON LAND | 1<br>Small to<br>Moderate<br>Impact | 2<br>Potential<br>Large<br>Impact | 3<br>Can Impact Be<br>Mitigated By<br>Project Change | |
|---|---|---|---|---|
| 1. Will the proposed action result in a physical change to the project site?<br>☐ NO ☒ YES | | | | |
| Examples that would apply to column 2 | | | | |
| • Any construction on slopes of 15% or greater, (15 foot rise per 100 foot of length), or where the general slopes in the project area exceed 10%. | ☒☐ | ☐ | ☐YES | ☐ NO |
| • Construction on land where the depth to the water table is less than 3 feet. | ☒☐ | ☐ | ☐YES | ☐ NO |
| • Construction of paved parking area for 1,000 or more vehicles. | ☒☐ | ☐ | ☐YES | ☐ NO |
| • Construction on land where bedrock is exposed or generally within 3 feet of existing ground surface. | ☒☐ | ☐ | ☐YES | ☐ NO |
| • Construction that will continue for more than 1 year or involve more than one phase or stage. | ☒☐ | ☐ | ☐YES | ☐ NO |
| • Excavation for mining purposes that would remove more than 1,000 tons of natural material (i.e., rock or soil) per year. | ☒☐ | ☐ | ☐YES | ☐ NO |
| • Construction or expansion of a sanitary landfill. | ☒☐ | ☐ | ☐YES | ☐ NO |
| • Construction in a designated floodway. | ☒☐ | ☐ | ☐YES | ☐ NO |
| • Other impacts _____ | ☐ | ☐ | ☐YES | ☐ NO |
| 2. Will there be an effect to any unique or unusual land forms found on the site? (i.e., cliffs, dunes, geological formations, etc.) ☒ NO ☐ YES | | | | |
| • Specific land forms _____ | ☒☐ | ☐ | ☐YES | ☐ NO |

7

ADDENDA

| | 1<br>Small to<br>Moderate<br>Impact | 2<br>Potential<br>Large<br>Impact | 3<br>Can Impact Be<br>Mitigated By<br>Project Change |
|---|---|---|---|
| **IMPACT ON WATER** | | | |
| 3. Will proposed action affect body designated as protected?<br>(Under Articles 15,24,25 of the Environmental Conservation Law, ECL)<br>X☐ NO  ☐ YES | | | |
| Examples that would apply to column 2 | | | |
| • Developable area of site contains a protected water body. | ☐ | ☐ | ☐YES  ☐ NO |
| • Dredging more than 100 cubic yards of material from channel of a protected stream. | ☐ | ☐ | ☐YES  ☐ NO |
| • Extension of utility distribution facilities through a protected water body. | ☐ | ☐ | ☐YES  ☐ NO |
| • Construction in a designated freshwater or tidal wetland. | ☐ | ☐ | ☐YES  ☐ NO |
| • Other impacts:_____ | ☐ | ☐ | ☐YES  ☐NO |
| 4. Will proposed action affect any non-protected existing or new body of water?<br>X☐ NO  ☐ YES | | | |
| Examples that would apply to column 2 | | | |
| • A 10% increase or decrease in the surface area of any body of water or more than a 10 acre increase or decrease. | ☐ | ☐ | ☐YES  ☐ NO |
| • Construction of a body of water that exceeds 10 acres of surface area. | ☐ | ☐ | ☐YES  ☐ NO |
| • Other impacts:_____ | ☐ | ☐ | ☐YES  ☐ NO |
| 5. Will Proposed Action affect surface or groundwater quality or quantity?<br>☐ NO  X☐ YES | | | |
| Examples that would apply to column 2 | | | |
| • Proposed Action will require a discharge permit. | X | ☐ | ☐YES  ☐ NO |
| • Proposed Action requires use of a source of water that does not have approval to serve proposed (project) action. | ☐ | ☐ | ☐YES  ☐ NO |
| • Proposed Action requires water supply from wells with greater than 45 gallons per minute pumping capacity. | X☐ | ☐ | ☐YES  ☐ NO |
| • Construction or operation causing any contamination of a water supply system. | X☐ | ☐ | ☐YES  ☐ NO |
| • Proposed Action will adversely affect groundwater. | ☐ | ☐ | X☐YES  ☐ NO |
| • Liquid effluent will be conveyed off the site to facilities which presently do not exist or have inadequate capacity. | ☐ | ☐ | ☐YES  ☐ NO |
| • Proposed Action would use water in excess of 20,000 gallons per day. | X☐ | ☐ | X☐YES  ☐ NO |
| • Proposed Action will likely cause siltation or other discharge into an existing body of water to the extent that there will be an obvious visual contrast to natural conditions. | ☐ | ☐ | X☐YES  ☐ NO |
| • Proposed Action will require the storage of petroleum or chemical products greater than 1,100 gallons. | ☐ | ☐ | ☐YES  ☐ NO |
| • Proposed Action will allow residential uses in areas without water and/or sewer services. | ☐ | ☐ | ☐YES  ☐ NO |
| • Proposed Action locates commercial and/or industrial uses which may require new or expansion of existing waste treatment and/or storage facilities. | ☐ | ☐ | ☐YES  ☐ NO |
| • Other impacts:_____ | ☐ | ☐ | ☐YES  ☐ NO |
| 6. Will proposed action alter drainage flow or patterns, or surface water runoff?<br>X☐ NO  ☐ YES | | | |
| Examples that would apply to column 2 | | | |
| • Proposed Action would change flood water flows. | ☐ | ☐ | ☐YES  ☐ NO |
| • Proposed Action may cause substantial erosion. | ☐ | ☐ | ☐YES  ☐ NO |
| • Proposed Action is incompatible with existing drainage patterns. | ☐ | ☐ | ☐YES  ☐ NO |
| • Proposed Action will allow development in a designated floodway. | ☐ | ☐ | ☐YES  ☐ NO |
| • Other impacts:_____ | ☐ | ☐ | ☐YES  ☐ NO |

8

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 33

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 283 of 416

| 1<br>Small to<br>Moderate<br>Impact | 2<br>Potential<br>Large<br>Impact | 3<br>Can Impact Be<br>Mitigated By<br>Project Change | |
|---|---|---|---|

**IMPACT ON AIR**

7. Will proposed action affect air quality?   X □ NO   □ YES
Examples that would apply to column 2

| | | | |
|---|---|---|---|
| • Proposed Action will induce 1,000 or more vehicle trips in any given hour. | □ | □ | □ YES   □ NO |
| • Proposed Action will result in the incineration of more than 1 ton of refuse per hour. | □ | □ | □ YES   □ NO |
| • Emission rate of total contaminants will exceed 5 lbs. per hour or a heat source producing more than 10 million BTU's per hour. | □ | □ | □ YES   □ NO |
| • Proposed action will allow an increase in the amount of land committed to industrial use. | □ | □ | □ YES   □ NO |
| • Proposed action will allow an increase in the density of industrial development within existing industrial areas. | □ | □ | □ YES   □ NO |
| • Other impacts: | □ | □ | □ YES   □ NO |

**IMPACT ON PLANTS AND ANIMALS**

8. Will Proposed Action affect any threatened or endangered species?   X □ NO   □ YES
Examples that would apply to column 2

| | | | |
|---|---|---|---|
| • Reduction of one or more species listed on the New York or Federal list, using the site, over or near site or found on the site. | □ | □ | □ YES   □ NO |
| • Removal of any portion of a critical or significant wildlife habitat. | □ | □ | □ YES   □ NO |
| • Application of pesticide or herbicide more than twice a year, other than for agricultural purposes. | □ | □ | □ YES   □ NO |
| • Other impacts: | □ | □ | □ YES   □ NO |

9. Will Proposed Action substantially affect non-threatened or non-endangered species?   X □ NO   □ YES
Examples that would apply to column 2

| | | | |
|---|---|---|---|
| • Proposed Action would substantially interfere with any resident or migratory fish, shellfish or wildlife species. | □ | □ | □ YES   □ NO |
| • Proposed Action requires the removal of more than 10 acres of mature forest (over 100 years of age) or other locally important vegetation. | □ | □ | □ YES   □ NO |

**IMPACT ON AGRICULTURAL LAND RESOURCES**

10. Will the Proposed Action affect agricultural land resources?   X □ NO   □ YES

Examples that would apply to column 2

| | | | |
|---|---|---|---|
| • The proposed action would sever, cross or limit access to agricultural land (includes cropland, hayfields, pasture, vineyard, orchard, etc. | □ | □ | □ YES   □ NO |
| • Construction activity would excavate or compact the soil profile of agricultural land. | □ | □ | □ YES   □ NO |
| • The proposed action would irreversibly convert more than 10 acres of agricultural land or, if located in an Agricultural District, more than 2.5 acres of agricultural land. | □ | □ | □ YES   □ NO |
| • The proposed action would disrupt or prevent installation of agricultural land management systems (e.g., subsurface drain lines, outlet ditches, strip cropping); or create a need for such measures (e.g. cause a farm field to drain poorly due to increased runoff). | □ | □ | □ YES   □ NO |
| • Other impacts: | □ | □ | □ YES   □ NO |

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM   INDEX NO. 036879/2021

NYSCEF DOC. NO. 33    22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of   RECEIVED NYSCEF: 03/18/2022

Rabbi Mayer Zaks   Pg 284 of 416

*ADDENDA*

| | 1 Small to Moderate Impact | 2 Potential Large Impact | 3 Can Impact Be Mitigated By Project Change |
|---|---|---|---|
| **IMPACT ON AESTHETIC RESOURCES** | | | |
| 11. Will proposed action affect aesthetic resources? ☒ NO ☐ YES (If necessary, use the Visual EAF Addendum in Section 617.21, Appendix B.) **Examples that would apply to column 2** | | | |
| • Proposed land uses, or project components obviously different from or in sharp contrast to current surrounding land use patterns, whether man-made or natural. | ☐ | ☐ | ☐ YES ☐ NO |
| • Proposed land uses, or project components visible to users of aesthetic resources which will eliminate or significantly reduce their enjoyment of the aesthetic qualities of that resource. | ☐ | ☐ | ☐ YES ☐ NO |
| • Project Components that will result in the elimination or significant screening of scenic views known to be important to the area. | ☐ | ☐ | ☐ YES ☐ NO |
| • Other impacts:_____ | ☐ | ☐ | ☐ YES ☐ NO |
| **IMPACT ON HISTORIC AND ARCHAEOLOGICAL RESOURCES** | | | |
| 12. Will Proposed Action impact any sites or structure of historic, pre-historic or paleontological importance? ☒ NO ☐ YES **Examples that would apply to column 2** | | | |
| • Proposed Action occurring wholly or partially within or substantially contiguous to any facility or site listed on the State or National Register of historic places. | ☐ | ☐ | ☐ YES ☐ NO |
| • Any impact to any facility or site listed on the State or National Register project site. | ☐ | ☐ | ☐ YES ☐ NO |
| • Proposed Action will occur in an area designated as sensitive for archaeological sites on the NYS Site Inventory. | ☐ | ☐ | ☐ YES ☐ NO |
| • Other impacts:_____ | ☐ | ☐ | ☐ YES ☐ NO |
| **IMPACT ON OPEN SPACE AND RECREATION** | | | |
| 13. Will Proposed Action affect the quantity or quality of existing or future open spaces or recreational opportunities? **Examples that would apply to column 2** ☒ NO ☐ YES | | | |
| • The permanent foreclosure of a future recreational opportunity. | ☐ | ☐ | ☐ YES ☐ NO |
| • A major reduction of an open space important to the community. | ☐ | ☐ | ☐ YES ☐ NO |
| • Other impacts:_____ | ☐ | ☐ | ☐ YES ☐ NO |
| **IMPACT ON CRITICAL ENVIRONMENTAL AREAS** | | | |
| 14. Will Proposed Action impact the exceptional or unique characteristics of a critical environmental area (CEA) established pursuant to subdivision 6 NYCRR 617.14(g)? ☒ NO ☐ YES List the environmental characteristics that caused the designation of the CEA. **This use is not permitted in a CEA.** | | | |
| **Examples that would apply to column 2** | | | |
| • Proposed Action to locate within the CEA? | ☐ | ☐ | ☐ YES ☐ NO |
| • Proposed Action will result in a reduction in the quantity of the resource? | ☐ | ☐ | ☐ YES ☐ NO |
| • Proposed Action will result in a reduction in the quality of the resource? | ☐ | ☐ | ☐ YES ☐ NO |
| • Proposed Action will impact the use, function or enjoyment of the resource? | ☐ | ☐ | ☐ YES ☐ NO |
| • Other impacts:_____ | ☐ | ☐ | ☐ YES ☐ NO |

10

AGENDA

| | 1 Small to Moderate Impact | 2 Potential Large Impact | 3 Can Impact Be Mitigated By Project Change |
|---|---|---|---|

## IMPACT ON TRANSPORTATION

15. Will there be an effect to existing transportation systems?
☒ NO ☐ YES

**Examples that would apply to column 2**
- Alteration of present patterns of movement of people and/or goods. ☐ ☐ ☐YES ☐NO
- Proposed Action will result in major traffic problems. ☐ ☐ ☐YES ☐NO
- Other impacts: ☐ ☐ ☐YES ☐NO

## IMPACT ON ENERGY

16. Will proposed action affect the community's sources of fuel or energy supply? ☒ NO ☐ YES

**Examples that would apply to column 2**
- Proposed Action will cause a greater than 5% increase in the use of any form of energy in the municipality. ☐ ☐ ☐YES ☐NO
- Proposed Action will require the creation or extension of an energy transmission or supply system to serve more than 50 single or two family residences or to serve a major commercial or industrial use. ☐ ☐ ☐YES ☐NO
- Other impacts: ☐ ☐ ☐YES ☐NO

## NOISE AND ODOR IMPACTS

17. Will there be objectionable odors, noise, or vibration as a result of the Proposed Action? ☒ NO ☐ YES

**Examples that would apply to column 2**
- Blasting within 1,500 feet of a hospital, school or other sensitive facility. ☐ ☐ ☐YES ☐NO
- Odors will occur routinely (more than one hour per day). ☐ ☐ ☐YES ☐NO
- Proposed Action will produce operating noise exceeding the local ambient noise levels for noise outside of structures. ☐ ☐ ☐YES ☐NO
- Proposed Action will remove natural barriers that would act as a noise screen. ☐ ☐ ☐YES ☐NO
- Other impacts: ☐ ☐ ☐YES ☐NO

## IMPACT ON PUBLIC HEALTH

18. Will Proposed Action affect public health and safety? ☒ NO ☐ YES

**Examples that would apply to column 2**
- Proposed Action may cause a risk of explosion or release of hazardous substances (i.e. oil, pesticides, chemicals, radiation, etc.) in the event of accident or upset conditions, or there may be a chronic low level discharge or emission. ☐ ☐ ☐YES ☐NO
- Proposed Action may result in the burial of "hazardous wastes" in any form (i.e. toxic, poisonous, highly reactive, radioactive, irritating, infectious, etc.) ☐ ☐ ☐YES ☐NO
- Storage facilities for one million or more gallons of liquefied natural gas or other flammable liquids. ☐ ☐ ☐YES ☐NO
- Proposed action may result in the excavation or other disturbance within 2,000 feet of a site used for the disposal of solid or hazardous waste. ☐ ☐ ☐YES ☐NO
- Other impacts: ☐ ☐ ☐YES ☐NO

## IMPACT ON GROWTH AND CHARACTER OF COMMUNITY OR NEIGHBORHOOD

19. Will Proposed Action affect the character of the existing community? ☐ NO ☒ YES

**Examples that would apply to column 2**
- The permanent population of the city, town or village in which the project is located is likely to grow by more than 5%. ☐ ☐ ☐YES ☐NO
- The municipal budget for capital expenditures or operating services will increase by more than 5% as a result of this project. ☐ ☐ ☐YES ☐NO
- Proposed Action will conflict with officially adopted plans or goals. ☒ ☐ ☐YES ☐NO
- Proposed Action will cause a change in the density of land use. ☒ ☐ ☐YES ☐NO
- Proposed Action will replace or eliminate existing facilities, structures or areas of historic importance to the community. ☐ ☐ ☐YES ☐NO
- Development will create a demand for additional community services (e.g. schools, police and fire, etc.) ☐ ☐ ☐YES ☐NO
- Proposed Action will set an important precedent for future projects. ☐ ☐ ☐YES ☐NO
- Proposed Action will create or eliminate employment. ☐ ☐ ☐YES ☐NO
- Other impacts: ☐ ☐ ☐YES ☐NO

11

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 286 of 416

ADDENDA

20. Is there, or is there likely to be, public controversy related to
potential adverse environmental impacts?                     ☐ NO  ☒ YES

**If Any Action in Part 2 is Identified as a Potential Large Impact or if You Cannot Determine the Magnitude of Impact,
Proceed to Part 3**

## Part 3 - EVALUATION OF THE IMPORTANCE OF IMPACTS

Responsibility of Lead Agency

**Part 3 must be prepared if one or more impact(s) is considered to be potentially large, even if the impact(s)
may be mitigated.**

**Instructions**
Discuss the following for each impact identified in Column 2 of Part 2:

1. Briefly describe the impact.
2. Describe (if applicable) how the impact could be mitigated or reduced to a small to moderate impact by project
   change(s).
3. Based on the information available, decide if it is reasonable to conclude that this impact is important.

To answer the question of importance, consider:
   - The probability of the impact occurring
   - The duration of the impact
   - Its irreversibility, including permanently lost resources of value
   - Whether the impact can or will be controlled
   - The regional consequence of the impact
   - Its potential divergence from local needs and goals
   - Whether known objections to the project relate to this impact.

gen/leaf

12

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 287 of 416
RECEIVED NYSCEF: 03/18/2022

ADDENDA

Environmental Assessment Statement
for
Provision of Adult Student Housing
as a Special Permit Use in residential districts
Town of Ramapo, New York

The Town of Ramapo has proposed to revise its special permit uses for all residential zones to include the provision of adult student housing for post secondary educational uses. The requirements for this special permit use include:

- a minimum lot size of 4 acres
- a maximum lot size of 12 acres
- no pre-existing lots can be combined to create sufficient acreage
- larger lots can subdivided to create an adult student housing site
- public water supply must be available
- public sewerage facilities must be available
- residents must be full time students, their spouses and children or educators associated with that facility
- the housing must be provided on the same site as the educational institution
- the educational facility must allocate/comprise at least 10% of the site
- the school must be a recognized post secondary academic institution
- the permit must be renewed annually
- the duration of a student's residency shall not exceed 6 years unless extended for good cause. Good cause shall include, but not be limited to a longer period of full time study consistent with recognized religious practices or beliefs
- approval of an application requires that a 1 mile buffer from all points of the proposed site be established and all similar facilities be identified within that buffer. If the total acreage of adult student housing exceeds 5% of the total developable residential area within that buffer, the Town is not mandated to approve the application.
- The maximum density provided for this type of housing is 16 dwelling units per acre (equivalent to the R15C densities)
- a separated and divided off road bus stop must be provided for each facility to smooth traffic flow while school buses are loading

Post secondary education has been defined as education for persons who have completed the equivalent of a high school education. The need for this type of housing has been identified in the context of a religious land use (RLUIPA) issue, arising from private schools which have no mechanism to provide such housing under the current regulations. The Town is addressing this requirement in a more generic fashion which would apply to any post secondary educational institution including groups such as Volunteers of America, the Salvation Army or any other educational or training facility.

ADDENDA

**Location:**

Based upon a review of the sites meeting the base requirement of vacant lands over 4 acres in size, over 100 sites were identified. The list was reduced by eliminating County and Town parks, cemeteries, sources of water supply, and lands consisting predominantly of steep slopes, wetlands, floodplains. In addition, all parcels with applications for development were also eliminated. The parcels in southwestern Ramapo were also eliminated as being incompatible with the proposed Critical Environmental Area (CEA). Finally, adjacent parcels in the same ownership were identified. This whittled down the number of parcels to less than 20.

Further analysis of the remaining sites revealed ownership restrictions which prevented this type of use on several more sites. Others were eliminated as the owners of record seeking market level investment returns precluding educational institutional uses.

After this round of elimination, only four sites remain:

- Patrick Farms – 5 contiguous parcels comprising a total of 198.4 acres
- Nike Site – 1 parcel of 4.7 acres
- Highview Road site – 1 parcel of 11.7 acres
- Spruce Road Site – 1 parcel of 4.8 acres

| Site | Max Size | Acreage Available | Density | Dwelling units |
|------|----------|-------------------|---------|----------------|
| Patrick Farm | 12 | 200 | 16 | 192 |
| Nike Site | 4.7 | 4.7 | 16 | 75 |
| Highview Road | 11.7 | 11.7 | 16 | 187 |
| Spruce Road | 4.8 | 4.8 | 16 | 77 |
| | | | | Max DU's  531 |

**Characteristics of Adult Student Housing Sites**

Since the students by definition are full time, most of them will remain on site for the majority of the day as would any collegian. The number of vehicles and trips generated will be less than the standard population. In some specific cases, spouses may not drive, minimizing the number of trips that might be generated.

Each site identified will require a complete environmental review as part of the standard site plan approval process. Any proposal would be subject to the normal deductions for steep slopes, wetlands, floodplains, or any other encumbrances. The intent of this ordinance is to limit the number and size of

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 289 of 416

ADDENDA

these sites to a reasonable number and to minimize the impacts on neighborhoods.

In the case of the Patrick Farm properties, the desired outcome would be a centrally located facility amidst the proposed 40,000 square foot lots of the surrounding area. In this manner, neighbors surrounding Patrick Farms will be insulated from the adult student housing by houses similar to their own. The density for this portion of the parcel would be 18 dwelling units per acre compared to the proposed R-40 zones. A maximum of 12 acres of the contiguous 200 acres would be permitted.

In the case of the Nike property, it is located adjacent to an existing public school site with thick vegetative buffers to the south and west. It just exceeds the minimum acreage required. This would be a small scale implementation of the adult student housing development. The density for this development would be 16 dwelling units per acre compared with the current R25 zoning. It should be pointed out that this site was ceded back to the Town of Ramapo for Ramapo to handle the Adult Student Housing requirements. Since this site is an island site adjacent to the boundary of the Village of New Hempstead and Wesley Hills, it is not possible to create a buffer from the Village boundaries.

The Highview Road site is also adjacent to a private school site, set in a neighborhood of single family dwellings. Access would be from Highview Road. The density would increase over the current R25 zone. Without a specific proposal, this site could range from a smaller adult student housing site could be proposed, there are 11.7 acres available to develop as a post secondary academic institution with Adult Student Housing.

The Spruce Road site consists if 4.8 acres at the end of Spruce Road. Except for the western portion and part of the northern portion, it is surrounded by other vacant wooded parcels. It is anticipated that an adult student housing project here could be effectively screened by the woodland cover and buffers to the residential properties. The 16 dwelling unit density would be an increase over the R40A zone.

Each Adult Student Housing site must be provided with an off street, barrier separated bus stop to minimize interruptions with the flow of traffic. In this manner vehicles will not be required to stop for loading school buses.

In each case, a post secondary academic institution will be built at the same time as the Student Housing.

Existing traffic levels near each site have been assessed for adequacy. For Patrick Farms, Route 202 is characterized as level "C", desirable levels of traffic with average delays. The detailed analysis for an actual site development would determine adequacy and the exact configuration of the roads, ingress and

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 33

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 290 of 416

ADDENDA

egress. Traffic in the vicinity of the Nike site is also judged to be level "C" or desirable with average delays, and this development would have a minimal impact. Traffic near the Highview Road site is at or near capacity and mitigation might be required. Traffic for the Spruce Road site would use Spruce Road, or possibly another road provided by the development of the vacant parcels to the east

As with all new multifamily developments within the Town of Ramapo, applicants will be subject to new architectural standards to enhance the design and appearance of these housing units. It should be noted that the densities of these developments will be equivalent to the R15C developments, but the design will focus on apartment style structures. In order to insure that these developments do not overwhelm a neighborhood, a one mile buffer has been established around each site. A threshold has been established to keep the adult student housing complexes from exceeding five percent (5%) of the total land area surrounding each facility.

There is only one site which has a specific proposal for this type of development and that site is the Nike site. That site has 12 single family ranch houses which are slated to be demolished for the post secondary academic institution and adult student housing.

In terms of generic environmental impacts, the negative impacts have been mitigated to a large extent by the requirement for public water and sewer systems. Preliminary information regarding traffic at each site has been reviewed and the additional traffic generated from these facilities is generally within the capacity of the road system in the area. One site, the Highview site is currently near the capacity of the roadway without improvements. Improvements may be required for specific movements and the detailed evaluation will be dependent on the specifics of the site development plans which will locate the entrances/exits and require a traffic study for each site.

The requirements for this use mandate heavy and effective landscaping for building, site, and parking perimeters.

**Assessment of Water Capacity**
LBG (Leggette, Brashears and Graham, a groundwater consultant been conducting a study to determine the capacity of the potable water system to supply all of the water required for the additional densities. The completed study is expected in about two weeks. However, preliminary results received indicate that there is sufficient capacity to serve all four sites. This will be included in the final report assessing the capacity of all of the zoning density increases.

**Assessment of Sewage Collection System Capacity**
In meetings with the Rockland County Sewage Authority, regarding the capacity of the collection system to handle increased flows from changes in zoning

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 291 of 416

ADDENDA

including these four sites, the County advised us that since the Southwestern portions of the Town of Ramapo will have their own collection and treatment facilities, the interceptor sewer that services the Monsey area will no longer be used to handle the flows previously expected. Hence the interceptors will have additional excess capacity to handle the flows projected. The County is preparing final calculations, but the increases in zoning are all near or adjacent to the key interceptors involving very little of the collection system. They had expressed a need to check calculations for peak events and those calculations will be forthcoming shortly. In the event that a peak flow problem is identified, the traditional approach is to conduct a joint and manhole sealing program to minimize inflow and infiltration -- a process that is funded by the additional fees collected for higher density developments.

In the case of Patrick Farms, depending upon the outcome of their final calculations, the County expressed a possible need to upgrade the pumps at the pumping station serving that area, but the interceptor capacity is sufficient. The fees associated with the higher density applications will cover the costs of upgrading the pump station.

## CONTINGENT AND LIMITING CONDITIONS

This appraisal report has been made with the following general assumptions:

1. Any legal description or plats reported herein are assumed to be accurate. Any sketches, surveys, plats, photographs, drawings or other exhibits are included only to assist the intended user to better understand and visualize the subject property, the environs, and the competitive data. We have made no survey of the property and assume no responsibility in connection with such matters.

2. The appraiser has not conducted any engineering or architectural surveys in connection with this appraisal assignment. Information reported pertaining to dimensions, sizes, and areas is either based on measurements taken by the appraiser or the appraiser's staff or was obtained or taken from referenced sources and is considered reliable. No responsibility is assumed for the costs of preparation or for arranging geotechnical engineering, architectural, or other types of studies, surveys, or inspections that require the expertise of a qualified professional.

3. No responsibility is assumed for matters legal in nature. Title is assumed to be good and marketable and in fee simple unless otherwise stated in the report. The property is considered to be free and clear of existing liens, easements, restrictions, and encumbrances, except as stated.

4. Unless otherwise stated herein, it is assumed there are no encroachments or violations of any zoning or other regulations affecting the subject property and the utilization of the land and improvements is within the boundaries or property lines of the property described and that there are no trespasses or encroachments.

5. BBG, Inc. assumes there are no private deed restrictions affecting the property which would limit the use of the subject property in any way.

6. It is assumed the subject property is not adversely affected by the potential of floods; unless otherwise stated herein.

7. It is assumed all water and sewer facilities (existing and proposed) are or will be in good working order and are or will be of sufficient size to adequately serve any proposed buildings.

8. Unless otherwise stated within the report, the depiction of the physical condition of the improvements described herein is based on visual inspection. No liability is assumed for the soundness of structural members since no engineering tests were conducted. No liability is assumed for the condition of mechanical equipment, plumbing, or electrical components, as complete tests were not made. No responsibility is assumed for hidden, unapparent or masked property conditions or characteristics that were not clearly apparent during our inspection.

9. If building improvements are present on the site, no significant evidence of termite damage or infestation was observed during our physical inspection, unless so stated in the report. No termite inspection report was available, unless so stated in the report. No responsibility is assumed for hidden damages or infestation.

10. Any proposed or incomplete improvements included in this report are assumed to be satisfactorily completed in a workmanlike manner or will be thus completed within a reasonable length of time according to plans and specifications submitted.

11. No responsibility is assumed for hidden defects or for conformity to specific governmental requirements, such as fire, building, safety, earthquake, or occupancy codes, except where specific professional or governmental inspections have been completed and reported in the appraisal report.

12. Responsible ownership and competent property management are assumed.

13. The appraisers assume no responsibility for any changes in economic or physical conditions which occur following the effective date of value within this report that would influence or potentially affect the analyses, opinions, or conclusions in the report. Any subsequent changes are beyond the scope of the report.

14. The value estimates reported herein apply to the entire property. Any proration or division of the total into fractional interests will invalidate the value estimates, unless such proration or division of interests is set forth in the report.

15. Any division of the land and improvement values estimated herein is applicable only under the program of utilization shown. These separate valuations are invalidated by any other application.

16. Unless otherwise stated in the report, only the real property is considered, so no consideration is given to the value of personal property or equipment located on the premises or the costs of moving or relocating such personal property or equipment.

17. Unless otherwise stated, it is assumed that there are no subsurface oil, gas or other mineral deposits or subsurface rights of value involved in this appraisal, whether they are gas, liquid, or solid. Nor are the rights associated with extraction or exploration of such elements considered; unless otherwise stated. Unless otherwise stated it is also assumed that there are no air or development rights of value that may be transferred.

18. Any projections of income and expenses, including the reversion at time of resale, are not predictions of the future. Rather, they are our best estimate of current market thinking of what future trends will be. No warranty or representation is made that these projections will materialize. The real estate market is constantly fluctuating and changing. It is not the task of an appraiser to estimate the conditions of a future real estate market, but rather to reflect what the investment community envisions for the future in terms of expectations of growth in rental rates, expenses, and supply and demand. The forecasts, projections, or operating estimates contained herein are based on current market conditions, anticipated short-term supply and demand factors, and a continued stable economy. These forecasts are, therefore, subject to changes with future conditions.

19. Unless subsoil opinions based upon engineering core borings were furnished, it is assumed there are no subsoil defects present, which would impair development of the land to its maximum permitted use or would render it more or less valuable. No responsibility is assumed for such conditions or for engineering which may be required to discover them.

20. BBG, Inc. representatives are not experts in determining the presence or absence of hazardous substances, defined as all hazardous or toxic materials, wastes, pollutants or contaminants (including, but not limited to, asbestos, PCB, UFFI, or other raw materials or chemicals) used in construction or otherwise present on the property. We assume no responsibility for the studies or analyses which would be required to determine the presence or absence of such substances or for loss as a result of the presence of such substances. Appraisers are not qualified to detect such substances. The client is urged to retain an expert in this field.

21. We are not experts in determining the habitat for protected or endangered species, including, but not limited to, animal or plant life (such as bald eagles, gophers, tortoises, etc.) that may be present on the property. We assume no responsibility for the studies or analyses which would be required to determine the presence or absence of such species or for loss as a result of the presence of such species. The appraiser hereby reserves the right to alter, amend, revise, or rescind any of the value opinions based upon any subsequent endangered species impact studies, research, and investigation that may be provided.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 294 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22. No environmental impact studies were either requested or made in conjunction with this analysis. The appraiser hereby reserves the right to alter, amend, revise, or rescind any of the value opinions based upon any subsequent environmental impact studies, research, and investigation that may be provided.

23. The appraisal is based on the premise that there is full compliance with all applicable federal, state, and local environmental regulations and laws unless otherwise stated in the report; further, that all applicable zoning, building, and use regulations and restrictions of all types have been complied with unless otherwise stated in the report; further, it is assumed that all required licenses, consents, permits, or other legislative or administrative authority, local, state, federal and/or private entity or organization have been or can be obtained or renewed for any use considered in the value estimate.

24. Neither all nor any part of the contents of this report or copy thereof, shall be conveyed to the public through advertising, public relations, news, sales, or any other media, without the prior written consent and approval of the appraisers. This limitation pertains to any valuation conclusions, the identity of the analyst or the firm and any reference to the professional organization of which the appraiser is affiliated or to the designations thereof.

25. Although the appraiser has made, insofar as is practical, every effort to verify as factual and true all information and data set forth in this report, no responsibility is assumed for the accuracy of any information furnished the appraiser either by the client or others. If for any reason, future investigations should prove any data to be in substantial variance with that presented in this report, the appraiser reserves the right to alter or change any or all analyses, opinions, or conclusions and/or estimates of value.

26. If this report has been prepared in a so-called "public non-disclosure" state, real estate sales prices and other data, such as rents, prices, and financing, are not a matter of public record. If this is such a "non-disclosure" state, although extensive effort has been expended to verify pertinent data with buyers, sellers, brokers, lenders, lessors, lessees, and other sources considered reliable, it has not always been possible to independently verify all significant facts. In these instances, the appraiser may have relied on verification obtained and reported by appraisers outside of our office. Also, as necessary, assumptions and adjustments have been made based on comparisons and analyses using data in the report and on interviews with market participants. The information furnished by others is believed to be reliable, but no warranty is given for its accuracy.

27. The American Disabilities Act (ADA) became effective January 26, 1992. The appraiser has not made a specific compliance survey or analysis of the property to determine whether or not it is in conformity with the various detailed requirements of ADA. It is possible that a compliance survey of the property and a detailed analysis of the requirements of the ADA would reveal that the property is not in compliance with one or more of the requirements of the act. If so, this fact could have a negative impact upon the value of the property. Since the appraiser has no direct evidence relating to this issue, possible noncompliance with the requirements of ADA was not considered in estimating the value of the property.

28. This appraisal report has been prepared for the exclusive benefit of the client. It may not be used or relied upon by any other party. Any other party who is not the identified client within this report who uses or relies upon any information in this report does so at their own risk.

29. The dollar amount of any value opinion herein rendered is based upon the purchasing power and price of the United States Dollar as of the effective date of value. This appraisal is based on market conditions existing as of the date of this appraisal.

ADDENDA

30. The right is reserved by the appraiser to make adjustments to the analyses, opinions, and conclusions set forth in this report as may be required by consideration of additional or more reliable data that may become available. No change of this report shall be made by anyone other than the appraiser or appraisers. The appraiser(s) shall have no responsibility for any unauthorized change(s) to the report.

31. If the client instructions to the appraiser were to inspect only the exterior of the improvements in the appraisal process, the physical attributes of the property were observed from the street(s) as of the inspection date of the appraisal. Physical characteristics of the property were obtained from tax assessment records, available plans, if any, descriptive information, and interviewing the client and other knowledgeable persons. It is assumed the interior of the subject property is consistent with the exterior conditions as observed and that other information relied upon is accurate.

32. The submission of this report constitutes completion of the services authorized. It is submitted on the condition the client will provide reasonable notice and customary compensation, including expert witness fees, relating to any subsequent required attendance at conferences, depositions, and judicial or administrative proceedings. In the event the appraiser is subpoenaed for either an appearance or a request to produce documents, a best effort will be made to notify the client immediately. The client has the sole responsibility for obtaining a protective order, providing legal instruction not to appear with the appraisal report and related work files and will answer all questions pertaining to the assignment, the preparation of the report, and the reasoning used to formulate the estimate of value. Unless paid in whole or in part by the party issuing the subpoena or by another party of interest in the matter, the client is responsible for all unpaid fees resulting from the appearance or production of documents regardless of who orders the work.

33. Use of this appraisal report constitutes acknowledgement and acceptance of the general assumptions and limiting conditions, special assumptions (if any), extraordinary assumptions (if any), and hypothetical conditions (if any) on which this estimate of market value is based.

34. If provided, the estimated insurable value is included at the request of the client and has not been performed by a qualified insurance agent or risk management underwriter. This cost estimate should not be solely relied upon for insurable value purposes. The appraisers are not familiar with the definition of insurable value from the insurance provider, the local governmental underwriting regulations, or the types of insurance coverage available. These factors can impact cost estimates and are beyond the scope of the intended use of this appraisal. The appraisers are not cost experts in cost estimating for insurance purposes.

ADDENDA

## CERTIFICATION

We certify that, to the best of our knowledge and belief:

- The statements of fact contained in this report are true and correct.

- The reported analyses, opinions, and conclusions are limited only by the reported assumptions and limiting conditions and are our personal, impartial, and unbiased professional analyses, opinions, and conclusions.

- We have no present or prospective interest in the property that is the subject of this report and no personal interest with respect to the parties involved.

- We have not performed appraisal services for the subject of this report within the past three-years.

- We have no bias with respect to the property that is the subject of this report or to the parties involved with this assignment.

- Our engagement in this assignment was not contingent upon developing or reporting predetermined results.

- Our compensation for completing this assignment is not contingent upon the development or reporting of a predetermined value or direction in value that favors the cause of the client, the amount of the value opinion, the attainment of a stipulated result, or the occurrence of a subsequent event directly related to the intended use of this appraisal.

- Our analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the *Uniform Standards of Professional Appraisal Practice*.

- We made a personal inspection of the property that is the subject of this report.

- No one provided significant real property appraisal assistance to the persons signing this certification.

- The reported analyses, opinions, and conclusions were developed, and this report has been prepared, in conformity with the Code of Professional Ethics and Standards of Professional Appraisal Practice of the Appraisal Institute.

- The use of this report is subject to the requirements of the Appraisal Institute relating to review by its duly authorized representatives.

- As of the date of this report, Jon DiPietro has completed the continuing education program for Designated Members of the Appraisal Institute.

AGENDA

– As of the date of this report, we have completed the Standards and Ethics Education Requirements for Candidates/Practicing Affiliates of the Appraisal Institute.


William G. Freda                        Jon DiPietra, MAI
Senior Appraiser                        Managing Director
State Certified General Appraiser #46-51249    State Certified General Appraiser #46-46386
(212) 682-2864
bfreda@bbgres.com

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

INDEX NO. 036879/2021

NYSCEF DOC. NO. 33

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 298 of 416

RECEIVED NYSCEF: 03/18/2022

ADDENDA

## QUALIFICATIONS

**BBG**

**Jon DiPietra, MAI**
Managing Director
Work: 212.682.5360
jdipietra@bbgres.com

PROFILE

Jon is currently Managing Director of BBG in New York City, offering 17 years of experience analyzing all major property types throughout the Tri-State Area and beyond. Developing a specialty in Market Analysis, Jon has built a broad client base ranging from large institutions, community banks, and local attorneys. He has been admitted as an expert witness in the New York State Supreme Court (NY County) and has prepared numerous assignments in support of litigation.

Jon began his career as an appraiser in 2001, starting out valuing residential property. Gaining training and education, Jon joined Neglia Appraisals in Brooklyn as a commercial appraiser. Later, he was an Assistant Vice President at Sovereign Bank, where he served on the management team of the Appraisal Department. Jon joined Leitner Group (now BBG) in 2007.

In the last few years, Jon has consistently been the top producer while running the in-house training program. Continuing his commitment to the professional development of the next generation, Jon serves as Chairman of the Internship Committee of American Immobiliare, a not-for-profit organization based in New York City which provides a forum for professionals in commercial real estate, and serves on the Board of the Metro NY Chapter of the Appraisal Institute.

Recent assignments of note include: 7 World Trade Center, a 52-story Class-A office building; 650 Fifth Avenue, Nike's new global flagship store; Hallett's Point, a seven building, 2.4 million square foot multi-use development.

PROFESSIONAL AFFILIATIONS

General Certified Appraiser:
State of New York (License # 46-46386)
State of Maryland (License # 33247)
Member of the Appraisal Institute

EDUCATION

The University of Phoenix
Bachelor of Science, Business Finance

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 299 of 416

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

ADDENDA

# BBG

**William G. Freda**
Senior Appraiser
Work: 212.682.2864
Cell: 817.353-8125
bfreda@bbgres.com

PROFILE

William (Bill) is a Senior Appraiser at BBG in New York City (formerly Leitner Group). Bill has extensive experience analyzing all asset types. He has been in the real estate appraisal business since July 2001. He has appraised many existing and proposed property types including the following:

- Multi-family Residential
- Single-family Residential
- Condominium Properties
- Retail Properties
- Shopping Centers
- Office Buildings
- Industrial Facilities
- Vacant Land
- Movie Theatres
- Community Facilities
- Restaurants
- Easements/Eminent Domain

EDUCATION

Bard College (Annandale-On-The-Hudson, New York), Bachelor of Arts, Social Science with a concentration in Urban Sociology

UCC Ulster County, New York
Basic Architecture
Architectural Drawing

PROFESSIONAL AFFILIATIONS

Member of the Appraisal Institute

General Certified Appraiser
State of New York (License # 46-51249)

ADDENDA

## APPRAISAL LICENSE

UNIQUE ID NUMBER
46000051249
DUPLICATE
LICENSE

State of New York
*Department of State*
DIVISION OF LICENSING SERVICES

FOR OFFICE USE ONLY
Control
No.    110426

PURSUANT TO THE PROVISIONS OF ARTICLE 6E OF THE
EXECUTIVE LAW AS IT RELATES TO R.E. APPRAISERS

EFFECTIVE DATE
05 10 18

FREDA WILLIAM G
C/O SBO, INC
112 MADISON AVE 11TH FL
NEW YORK CITY, NY  10016

EXPIRATION DATE
05 09 20

HAS BEEN DULY CERTIFIED TO TRANSACT BUSINESS AS A
R.E. GENERAL APPRAISER

ROSSANA ROSADO
SECRETARY OF STATE

UNIQUE ID NUMBER
46000046386

State of New York
*Department of State*
DIVISION OF LICENSING SERVICES

Control
No.

PURSUANT TO THE PROVISIONS OF ARTICLE 6E OF THE
EXECUTIVE LAW AS IT RELATES TO R.E. APPRAISERS

03 13 18

DIPIETRA JON A
C/O JON DIPIETRA APPRAISER
171 68TH ST
BROOKLYN, NY  11220

03 12 20

HAS BEEN DULY CERTIFIED TO TRANSACT BUSINESS AS A
R.E. GENERAL APPRAISER

ROSSANA ROSADO
SECRETARY OF STATE

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 301 of 416

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## Highview Property URGENT

From: Yeshiva CC (yeshivacc@yahoo.com)

To: rabbimbergman@gmail.com

Cc: feag123@yahoo.com

Date: Sunday, August 27, 2017, 10:23 PM EDT

Good evening

We have a person Mr Jacob Karmel who was brought to us through Mr Shimon Ganz who wants to buy the 14 acre yeshiva property from TD Bank for 2 million dollars under an LLC called Del Realty LLC.
He is agreeing to donate the property to the Mosad of our choice (me and my Brother) for a deduction of 12 million after a year and a day and if not we have the right to repurchase this for the price he paid plus direct expenses such as taxes if any are paid during this time. If the amount of the deduction is more that 12 Mil then he will give another 6% of the additional value as a donation to the charity of our choice.
During this time he is not allowed to transfer, lien, encumber, or mortgage the property without our written permission.
He never met with us but he is willing to sign and make a Kabolas Kinyan before Rabbi Bergman that he is going to do what he said. He is willing to sign that if we have any dispute about anything relating to this he is willing to have Rav Bergman as the sole arbitrator.

I have also made a lease between myself and my brother and him with an arbitration clause for three years to further give us some protection. Ganz has said he would fund the lease for the year. This needs to be confirmed by Rabbi Bergman as well.
Attached lease for your review
We need this done ASAP

Thank You

 Yeshiva -triple-net-commercial-lease.pdf
600.8kB

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## Revised appraisal 82 Highview Rd

From:  Yeshiva CC (yeshivacc@yahoo.com)

To:      simong@platinumhrm.com; simong5055@gmail.com

Cc:     feag123@yahoo.com

Date:  Tuesday, November 6, 2018, 06:00 PM EST

Good afternoon,

Please see the revised appraisal attached.

Thank You
Aryeh Zaks

  0118010385 - 82 Highview Road _Report_ Nov 6 2018.pdf
12.2MB

## Fw: 82 Highview Donation

From: Yeshiva CC (yeshivacc@yahoo.com)

To:    simong@platinumhrm.com

Cc:    feag123@yahoo.com

Date: Tuesday, October 16, 2018, 12:29 PM EDT

Good afternoon

We spoke with Riverside the title company and they said they would prepare the new deed and take care of the property transaction. I will have to let them know who is the lawyer they need to contact for DEL Realty.

I spoke with Ezra Dykman Esq of Roberts and Holland and he said the IRS looks straight past the new LLC and the donation for all IRS purposes with the EIN for the receipt of donation is from Yeshiva Chofetz Chaim Inc. That EIN is ███████████

I forward attached the LLC formation documents

----- Forwarded Message -----
**From:** Yeshiva CC <yeshivacc@yahoo.com>
**To:** Moshe Underweiser <munderweiser@rsabstract.com>
**Sent:** Tuesday, October 16, 2018, 12:10:29 PM EDT
**Subject:** 82 Highview Donation

Please see attached.

The property is being donated by Del Realty LLC to Yeshiva Chofetz Chaim to its solely owned 82 Highview LLC.

I attach the deed that you filed for Del Realty
I attach the new LLC docs as well

We need a deed to the new LLC prepared and filed ASAP

Thank You

 DEL REALTY DEED .pdf
510.9kB

 82 Highview LLC FILED.pdf
1.6MB

 82 Highview LLC_FilingReceipt.pdf
11.2kB

## 82 Highview

From: Yeshiva CC (yeshivacc@yahoo.com)

To:    simong@platinumhrm.com; simong5055@gmail.com

Cc:    feag123@yahoo.com

Date: Monday, November 26, 2018, 08:29 PM EST

Good evening Reb Shimon,

B"h we have the completed appraisals and I believe you received them.

Moshe Underwiser from Riverside Abstract is preparing the deed and documents.

He would like to know to know who is the attorney for the grantor, for them to communicate with and to make sure the documents are acceptable.

The prepared deed by the Title company is from **Del Realty LLC** to **82 Highview Rd LLC** located at 82 Highview Rd Suffern NY 10901.
82 Highview Rd LLC is a New York State "single member" LLC belonging solely to **Yeshiva Chofetz Chaim Inc**.

A copy of the NYS LLC formation docs is attached.

The recognized tax exempt entity giving the receipt for donations is Yeshiva Chofetz Chaim Inc. EIN # 113179075

The title company has the previously filed deed and the property description in their files as they gave the title insurance policy and filed the documents last year.

Thank you
Tizkeh limitzvos
Rabbi Aryeh Zaks

 82 Highview LLC FILED.pdf
1.8MB

 82 Highview LLC_FilingReceipt.pdf
112kB

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 305 of 416

See attached

From:  Yeshiva CC (yeshivacc@yahoo.com)

To:  feag123@yahoo.com

Date:  Tuesday, February 5, 2019, 10:48 AM EST

 82 Highview Road Appraisal 11 7 2018.02.pdf
7.9MB

## 0118010385 - 82 Highview Road _Report

From:   Clint S. Davis (cdavis@bbgres.com)

To:     yccradin@gmail.com; feag123@yahoo.com

Cc:     bfreda@bbgres.com; jdipietra@bbgres.com; gsullivan@bbgres.com

Date:   Thursday, October 18, 2018, 12:05 PM EDT


Attached you will find the report and invoice for the above referenced property.


Thank You


# BBG

Clint S. Davis
Production Specialist
8300 Douglas Avenue, Suite 600
Dallas, TX 75225
C 972-415-1832
E cdavis@bbgres.com
bbgres.com

VALUATION + ADVISORY + ASSESSMENT



 0118010385 - 82 Highview Road _Report.pdf
11.4MB

 0118010385 - 82 Highview Road _Invoice.pdf
16.3kB

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 307 of 416
RECEIVED NYSCEF: 03/18/2022

Fwd: 82 Highview Project

From: Simon Ganz (simong@platinumhrm.com)

To: feag123@yahoo.com

Date: Tuesday, July 25, 2017, 07:05 PM EDT

Sent from my iPhone

Begin forwarded message:

> **From:** Jacob Karmel <JKarmel@apexhcp.com>
> **Date:** July 25, 2017 at 6:54:12 PM EDT
> **To:** Simon Ganz <SimonG@PlatinumHRM.com>, Victor Weiss Esq. <victor@vicweisslaw.com>,
> "SSteinberg@vicweisslaw.com" <SSteinberg@vicweisslaw.com>
> **Cc:** Adina Kontorovich <AKontorovich@axgsolutions.com>
> **Subject: 82 Highview Project**
>
> Shimon
> Please put my attorney in touch with the seller.
> Thanks

This electronic mail transmission, and any attachment to it, may contain confidential information and/or information that is exempt from disclosure under applicable law. It is intended only for the use of the individual(s) or entity named on the e-mail. If the reader of this electronic mail transmission is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that reading, disseminating, distributing, or copying of this communication is strictly prohibited. If you have received this e-mail in error, please delete it from your system and notify the sender as soon as possible. Thank you.

# BBG

October 12, 2018

Rabbi Mayer Zaks
Del Realty, LLC
82 Highview Road
Suffern, NY 10901

Re:     BBG Appraisal File No. 0118010385
        Community Facility/Development Site
        82 Highview Road
        Suffern, NY 10901

Dear Mr. Zaks:

As requested, we have prepared the following letter valuation, which will be supported by a full narrative appraisal, of the above-captioned property, for estimating the "as is" market value of the subject property's fee simple interest.

The subject property includes three tax lots on the north side of Highview Road between Wandover Lane and Pine Road hamlet of Viola (Suffern address) in the Town of Ramapo, Rockland County, NY. The tax lots are identified on Town of Ramapo tax map 49.17, as Block 2, Lots 42, 47 and 47A.

Lot 42 contains 2.01 acres and is improved with a community facility building utilized as a religious school. This 2-story building contains 13,468 square feet.

Lot 47 contains 11.20 acres of vacant land and based on information provided by the client, these parcels can be developed as multi-family at a density of 16 units per acre, calculating to 179 units.

Lot 47A contains 1.02 acres of vacant land and based on "as of right" zoning allowing for single family development, with a minimum lot size of 25,000 square feet, would yield one, single family home site.

NEW YORK

P + 212 692 5300
F + 212 692 2031

112 MADISON AVENUE 4 TH FLOOR
NEW YORK, NY 10016

Rabbi Mayer Zaks
October 12, 2018
Page 2

**Value Assumptions for Community Building**

| | | |
|---|---|---|
| Market Rent | $20.00 | Triple Net |
| Market Vacancy and Collection Loss | 5% | |
| Owner Insurance Insurance | $0.25 | PSF |
| Owner Manaagement/Administration Costs | 1% of | EGI |
| Market Capitalization Rate | 7% | |

Based on these assumptions, the value of community building is as follows:

| Stabilized Income and Expense Statement | | |
|---|---|---|
| | Whole Dollar | PSF |
| **Income** | | |
| Potential Gross Income | $269,360 | $20.00 |
| Less Vacancy and Collection Loss @ 5% | -$13,468 | -$1.00 |
| Effective Gross Income | $255,892 | $19.00 |
| | | |
| **Operating Expenses** | | |
| Insurance | $3,367 | $0.25 |
| Misc, Management & Reserves | $2,559 | $0.19 |
| Total Operating Expenses | $5,926 | $0.44 |
| | | |
| Net Operating Income | $249,966 | $18.56 |
| Operating Expense Ratio | 2% | |
| | | |
| Capitalizatoion Rate | 7.00% | |
| Value of Community Building | $3,570,944 | |

**Lot 47: Development Site**

In a document submitted by the client, dated June 4, 2003, "pursuant to Part 617 of the implementing regulations pertaining to article 8 (State Environmental Quality Review Act) of the Environmental Conservation Law," the subject site qualifies for Adult Student Housing under a Special Permit Use. The document further indicates regulations that are required for this use and due to the regulations, determines that there are only three sites in the Town of Ramapo that can comply to the regulations:

"One 4.7-acre parcel at the Nike site on Grandview Avenue"
"One 4.8-acre parcel in the land north of Spruce Road"
"On an 11.7-acre site off of Highview Road"

The third site is the Lot 47 of the subject property. The document also indicated each site must undergo an environmental review as part of the standard approval practice and could be subject to deductions for slopes, wetland, etc.

Rabbi Mayer Zaks
October 12, 2018
Page 2

Our valuation includes the extraordinary assumptions that the entire 11.7-acre site is developable at 16 units per acre and that approvals final approvals for development of 179 units can be obtained within 12 months. In addition, no record of ownership was available for Lot 47A and according to our client, the Town had a "mapping" issue with this lot which is now resolved. Thus, we are assuming that this lot is a legal lot owned by Del Realty, LLC and any ownership, deed or mapping issues have been remedied.

## Value Assumptions for Lot 47

| | |
|---|---|
| Building Units | 179 |
| Per Unit | $100,000 |
| Total Value | $17,900,000 |

## Lot 47A: Development Site

| | |
|---|---|
| Building Units | 1 |
| Per Unit | $200,000 |
| Total Value | $200,000 |

Based on the above the total value of all parcels, subject to the defined extraordinary assumptions, as of October 1, 2018, is:

| | |
|---|---|
| Community Facility | $3,570,944 |
| Vacant Land (ASH) | $17,900,000 |
| Vacant Land R25 Zone | $200,000 |
| Total Value | $21,670,944 |
| **Rounded** | **$21,700,000** |

Our analyses, opinions and conclusions were developed, and this report has been prepared, in conformance with the Standards of Professional Practice and Code of Professional Ethics of the Appraisal Institute, the Uniform Standard of Professional Appraisal Practice (USPAP), and Title XI (with amendments) of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA).

The opinion of value expressed herein is subject to the certification, contingent and limiting conditions, assumptions and all other information contained in the following report.

Thank you for the opportunity to serve you.

Sincerely,

William G. Freda
Senior Appraiser
State Certified General Appraiser #46-51249
(212) 682-2864
bfreda@bbgres.com

Jon DiPietra, MAI
Managing Director
State Certified General Appraiser #46-46386

FW: Rabbi zaks asked if possible if you can look this over.

From: Simon Ganz (simong@platinumHRM.com)

To: feag123@yahoo.com

Date: Monday, August 19, 2019, 12:56 PM EDT

**From:** Simon Ganz
**Sent:** Wednesday, June 26, 2019 2:03 PM
**To:** Simon Ganz <simong5055@gmail.com>
**Subject:** Fwd: Rabbi zaks asked if possible if you can look this over.

J brach



Sent from my iPhone

Begin forwarded message:

> **From:** Shloime Silbiger <SSilbiger@axgsolutions.com>
> **Date:** June 26, 2019 at 12:35:44 PM EDT
> **To:** "pdinter@hirschcpa.com" <pdinter@hirschcpa.com>, Simon Ganz <SimonG@PlatinumHRM.com>
> **Cc:** Jacob Karmel <jkarmel@axgsolutions.com>
> **Subject:** RE: Rabbi zaks asked if possible if you can look this over.

Re-sharing this email to be discussed/confirmed.

Shloime Silbiger | Controller
Office: 845-736-5804

> **From:** pdinter@hirschcpa.com [mailto:pdinter@hirschcpa.com]
> **Sent:** Thursday, May 23, 2019 7:17 PM
> **To:** Shloime Silbiger <SSilbiger@axgsolutions.com>; 'Simon Ganz' <SimonG@PlatinumHRM.com>
> **Cc:** Jacob Karmel <jkarmel@axgsolutions.com>
> **Subject:** RE: Rabbi zaks asked if possible if you can look this over.

I prefer if you relay the message.

Perry Dinter, CPA

Solomon Hirsch, CPA P.C.

Please note our new address:

21 Remsen Ave. Suite 302

Monsey NY 10952

TEL. (845) 517-4222 EXT.118

FAX (845) 517-4225

EMAIL: pdinter@hirschcpa.com

Check out our new website:

www.hirschcpa.com

Note: The information contained in this message may be privileged, confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employee delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this error, please notify us immediately by replying to the message and deleting it from your computer. Thank you. Solomon Hirsch CPA, P.C.

The written advice was not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. (The foregoing affixed pursuant to U.S. Treasury Regulations governing tax practice).

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 312 of 416

**From:** Shloime Silbiger <SSilbiger@axgsolutions.com>
**Sent:** Thursday, May 23, 2019 6:23 PM
**To:** pdinter@hirschcpa.com; 'Simon Ganz' <SimonG@PlatinumHRM.com>
**Cc:** Jacob Karmel <jkarmel@axgsolutions.com>
**Subject:** RE: Rabbi zaks asked if possible if you can look this over.

Thanks Pincus.

Simon,

Can you please follow up with Rabbi Zaks to make this change/updates?



Shloime Silbiger | Controller
Office: 845-746-0004

**From:** pdinter@hirschcpa.com [mailto:pdinter@hirschcpa.com]
**Sent:** Thursday, May 23, 2019 5:49 PM
**To:** Shloime Silbiger <SSilbiger@axgsolutions.com>; 'Simon Ganz' <SimonG@PlatinumHRM.com>
**Cc:** Jacob Karmel <jkarmel@axgsolutions.com>
**Subject:** RE: Rabbi zaks asked if possible if you can look this over.

Here are my comments:

I would add "real property" to the description on the 8283 and they have to check box e (other real estate). I think it would also look better if the receipt would describe the proper out the value. Letter looks great, and they should probably also attach the appraisal report to this package.

Perry Dinter, CPA

Solomon Hirsch, CPA P.C.

**Please note our new address:**

21 Remsen Ave. Suite 302

Monsey NY 10952

TEL. (845) 517-4222 EXT.118

FAX. (845) 517-4225

EMAIL: pdinter@hirschcpa.com

Check out our new website:

www.hirschcpa.com

Note: The information contained in this message may be privileged, confidential and protected from disclosure. If the reader of this message is not the intended recipient, or an employ delivering this message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received error, please notify us immediately by replying to the message and deleting it from your computer. Thank you.  Solomon Hirsch CPA, P.C.

The written advice was not intended or written to be used, and cannot be used by any taxpayer, for the purpose of avoiding penalties that may be imposed on the taxpayer. (The foreg affixed pursuant to U.S. Treasury Regulations governing tax practice).

**From:** Shloime Silbiger <SSilbiger@axgsolutions.com>
**Sent:** Thursday, May 23, 2019 5:13 PM
**To:** Simon Ganz <SimonG@PlatinumHRM.com>
**Cc:** Dinter Pinchus <pdinter@hirschcpa.com>
**Subject:** RE: Rabbi zaks asked if possible if you can look this over.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 313 of 416

Pincus?

We really want to get this done...

Can you call?


**Shloime Silbiger**
Controller

 APEX GLOBAL

400 Rella Boulevard Suite 200
Montebello, NY 10901
Office: 845-746-5904
Fax: 845-256-8422

**From:** Shloime Silbiger
**Sent:** Tuesday, May 21, 2019 5:47 PM
**To:** 'Simon Ganz' <SimonG@PlatinumHRM.com>
**Cc:** Dinter Pinchus <pdinter@hirschcpa.com>
**Subject:** RE: Rabbi zaks asked if possible if you can look this over.


Pincus,

Can you or someone from your team follow up with Rabbi about this?


**From:** Simon Ganz [mailto:SimonG@PlatinumHRM.com]
**Sent:** Tuesday, May 21, 2019 5:27 PM
**To:** Shloime Silbiger <SSilbiger@axgsolutions.com>
**Cc:** Dinter Pinchus <pdinter@hirschcpa.com>
**Subject:** RE: Rabbi zaks asked if possible if you can look this over.


Hi sorry for missing this email , I just spoke to rabbi Zaks he's avail anytime 18456643625


**From:** Shloime Silbiger [mailto:SSilbiger@axgsolutions.com]
**Sent:** Tuesday, May 14, 2019 3:30 PM
**To:** Simon Ganz <SimonG@PlatinumHRM.com>
**Cc:** Dinter Pinchus <pdinter@hirschcpa.com>
**Subject:** RE: Rabbi zaks asked if possible if you can look this over.


Shimon,

Can we please setup a call with whoever prepared this & Perry Dinter?


**Shloime Silbiger**
Controller

 APEX GLOBAL

400 Rella Boulevard Suite 200
Montebello, NY 10901
Office: 845-746-5904
Fax: 845-256-8422

**From:** Simon Ganz [mailto:SimonG@PlatinumHRM.com]
**Sent:** Sunday, May 12, 2019 11:30 PM
**To:** Shloime Silberger <shloimes@gmail.com>
**Subject:** Fwd: Rabbi zaks asked if possible if you can look this over.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 314 of 416

Sent from my iPhone

Begin forwarded message:

From: "Ari Zaks" <arohyz123@gmail.com>
To: "Simon Ganz" <SimonG@PlatinumHRM.com>
Subject: Rabbi zaks asked if possible if you can look this over.



22-2493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 315 of 416

Form 8283 (Rev. 12-2014)

Name(s) shown on your income tax return

Page **2**

Identifying number

**Section B. Donated Property Over $5,000 (Except Publicly Traded Securities)**—Complete this section for one item (or one group of similar items) for which you claimed a deduction of more than $5,000 per item or group (except contributions of publicly traded securities reported in Section A). Provide a separate form for each property donated unless it is part of a group of similar items. An appraisal is generally required for property listed in Section B. See instructions.

**Part I**    Information on Donated Property — To be completed by the taxpayer and/or the appraiser.

4    Check the box that describes the type of property donated:

a ☐ Art* (contribution of $20,000 or more)    d ☐ Art* (contribution of less than $20,000)    g ☐ Collectibles**    j ☐ Other

b ☐ Qualified Conservation Contribution    e ☐ Other Real Estate    h ☐ Intellectual Property

c ☐ Equipment    f ☐ Securities    i ☐ Vehicles

*Art includes paintings, sculptures, watercolors, prints, drawings, ceramics, antiques, decorative arts, textiles, carpets, silver, rare manuscripts, historical memorabilia, and other similar objects.

# YESHIVA CHOFETZ
# CHAIM OF RADIN

82 Highview Rd. Suffern NY 10901 845-357-6191

## _Donation Receipt:_

**Date:** May 9, 2019

**To:** Del Realty LLC

**Address:** 400 Rella Boulevard
Suffern, N.Y 10901

**Amount Received:** $22,500,000
As per submitted appraisal of BBG

**Date Donation Received:** December 31, 2018

No goods or benefits received for this donation

**Comments:** Tax I.D. # 11-6179075

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 317 of 416

  

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 33
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 318 of 416

## COMMERCIAL LEASE CONTRACT - TRIPLE NET

THIS LEASE is made as of September 1, 2017, between Del Realty LLC, ("Landlord") a Delaware limited liability company, Jacob Karmel, ("Principal") of 16 New County Rd Monsey NY, and Rabbi Aryeh Zaks and Rabbi Mayer Zaks (together as "Tenant"), with an address of 18 Mountain Ave Monsey New York , who hereby agree as follows:

1.      **PREMISES**. Subject to the covenants and conditions of this Lease, Landlord leases to Tenant, and Tenant leases from Landlord, the premises (the "Premises") commonly known and numbered as 24 and 82 Highview Rd in the City of Suffern, County of Rockland in the State of New York Consisting of 14.8 Acres more or less and a building of 12,000+ SF Together with all rights of ingress and egress and the exclusive use of all the campus areas, as further described in Exhibit A property map attached hereto.

2.      **USE OF PREMISES**. The Premises shall be used as a school, Yeshiva, House of worship or any other use permitted by law. (collectively, the "Permitted Use").

3.      **TERM**. The Term of this Lease (the "Term") is for **(3) THREE years** and 0 months, commencing on the First day of September 2017 , and ending on the First day of September 2020

4.      **RENT PAYMENTS**. Tenant shall pay to Landlord $150,000.00 as yearly rent in monthly installments over the Term of this Lease.  The first monthly rent installment of $ 12,500 shall be paid one month after the execution of this Lease and all subsequent monthly rent installments shall be due as monthly on the first of the month.

Each monthly installment is due payable in advance without notice or demand at Landlord's above stated address, or at any other place Landlord designates in writing.

6.      **POSSESSION**. Possession shall be on September 1st, 2017. Landlord shall use due diligence to give possession as nearly as possible at the beginning of the Term. Rent shall abate pro rata for the period of any delay in giving Tenant possession, and Term shall be extended as a result of such delay.

7.      **PROPERTY INSURANCE.** Throughout the term of this Lease and any extensions thereof, Tenant shall obtain and pay for fire and extended coverage casualty insurance for the building and other improvements on the leased premises, with such comprehensive or so called "all risk" endorsements and in such amounts as Landlord may, from time to time, deem reasonably necessary, and shall show the Tenant and the Landlord, as the insured thereon.

8.      **INDEMNITY AND LIABILITY INSURANCE (Tenant)**. Tenant shall at all times indemnify, defend and hold Landlord harmless from all loss, liability, costs, damages and expenses that may occur or be claimed with respect to any person or persons, or property on or about the Premises or to the Premises resulting from any act done or omission by or through Tenant, its agents, employees, invitees or any person on the Premises by reason of Tenant's use or occupancy or resulting from Tenant's non-use or possession of said property and any and all loss, cost, liability or expense resulting therefrom. Tenant shall maintain, at all times during the Term, comprehensive general liability insurance in an insurance company licensed to do business in the state in which the Premises are located protecting and indemnifying Landlord with single limit coverage of not less than $

1,000,000.00 for injury to or $1,000,000.00 death of persons and $ 2,000,000.00 for property damage.

**10.    TAXES**. Tenant shall pay, during the term of this Lease, the real estate taxes and special taxes and assessments (collectively, the "taxes") attributable to the premises and accruing during such term. Taxes for any fractional calendar year during the term hereof shall be prorated

**11.    OPERATING EXPENSES.** Unless modified in accordance with a Landlord maintenance addendum, it is the intention of the parties and they hereby agree that this shall be a triple net Lease, and the Landlord shall have no obligation to provide any services, perform any acts or pay any expenses, charges, obligations or costs of any kind whatsoever with respect to the Premises, and Tenant hereby agrees to pay one hundred percent (100%) of any and all Operating Expenses as hereafter defined for the entire term of the Lease and any extensions thereof in accordance with specific provisions hereinafter set forth. The term Operating expenses shall include all costs to Landlord of operating and maintaining the Building and related parking areas, and shall include, without limitation, real estate and personal property taxes and assessments, management fee, heating, electricity, water, waste disposal, sewage, operating materials and supplies, service agreements and charges, lawn care, snow removal, restriping, repairs, repaving, cleaning and custodial, security, insurance, the cost of contesting the validity or applicability of any governmental acts which may affect operating expenses, and all other direct operating costs of operating and maintaining the Building and related parking areas, unless expressly excluded from operating expenses. Notwithstanding the foregoing, operating costs (and Tenant's obligations in relation thereto) shall not include (i) any expense chargeable to a capital account or capital improvement, ground leases; principal or interest payments on any mortgage or deed of trust on the premises; (ii) any amount for which Landlord is reimbursed through insurance, by third persons, or directly by other tenants of the premises.

**12.    NO SERVICES** Landlord may not elect to perform and provide certain maintenance and services pertaining to the entire building or area of which the Premises are a part including, but not limited to, landscaping, trash removal, lawn maintenance, common area lighting, watering, paving maintenance, tree maintenance and snow removal without the express permission of tenant.

**13.    MUNICIPAL** Tenant agrees to conduct its business in a manner that shall not be unlawful, or illegal, in the building of which the Premises are a part, including but not limited to noise, vibration, odor, trash or fumes. Tenant shall have the right to file this lease and any municipal documents, applications and permits that may be required in furtherance of the property use.

**14.    ASSIGNMENT AND SUBLETTING**. Tenant shall not assign, transfer or encumber this Lease and shall not sublease the Premises or any part thereof or allow any other person to be in possession thereof without the prior written consent of Landlord, in each and every instance. Said consent shall not be unreasonably withheld by Landlord. For the purpose of this provision, any transfer of a majority or controlling interest in Tenant (whether in one or more related or unrelated transactions), whether by transfer of stock, consolidation, merger, transfer of a partnership interest or transfer of any or all of Tenant's assets or otherwise, or by operation of law, shall be deemed an assignment of this lease. Notwithstanding any permitted assignment or subletting, Tenant shall at all times remain directly, primarily and fully responsible and liable for the payment of the rent herein specified and for compliance with all of its other obligations under the terms and provisions of this Lease.

**15.    SIGNS AND ADVERTISEMENTS**. Tenant have the full rights and is permitted to place upon any part of the Premises, any signs, billboards or advertisements, without the prior written

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 320 of 416

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

consent of Landlord. All signage shall be at Tenant's sole expense. Landlord may not display any signs on the Premises.

**16.    CONDITION OF PREMISES**. Tenant acknowledges that it has inspected the Premises and, Tenant accepts the Premises in its present condition. At the end of the Term, except for damage caused by fire or other perils, Tenant, at its expense, shall (a) surrender the Premises in the same or similar condition as existed at the time the Premises were accepted and possession taken by Tenant, subject to reasonable wear resulting from uses permitted hereunder, and further subject to Tenant's obligations; (b) have removed all of Tenant's property from the Premises; (c) have repaired any damage to the Premises caused by the removal of Tenant's Property; and (d) leave the Premises free of trash and debris and the building in "broom clean" condition.

**17.    LANDLORD'S RIGHT OF ENTRY**. From 90 days before the expiration of this lease upon written 7 days notice, Landlord may enter at reasonable hours to inspect or show the Premises to prospective purchasers, and to do anything Landlord may be required to do hereunder or which may be deemed necessary for the good of the Premises or any building of which they are a part,

**17.    PERSONAL PROPERTY**. Landlord shall not be liable for any loss or damage to any merchandise inventory, goods, fixtures, improvements or personal property of Tenant in or about the Premises.

**18.    ALTERATIONS**. Tenant shall not make any material or structural alterations or additions in or to the Premises without the prior written consent of Landlord.

**19.    UTILITIES AND SERVICES**. Tenant shall furnish and pay for all electricity, gas, water, fuel, trash removal, telephone, internet, T-1 and any services or utilities used in or assessed against the Premises, unless otherwise provided.

**20.    LEGAL REQUIREMENTS**. Tenant shall comply with all laws, orders, ordinances and other public requirements now or hereafter affecting the Premises or the use thereof, and Tenant shall indemnify, defend and hold Landlord harmless from expense or damage resulting from failure to do so.

**21.    FIXTURES**. Except for Tenant's personal property and trade fixtures, all buildings, repairs, alterations, additions, improvements, installations and other non-trade fixtures installed or erected on the Premises, whether by or at the expense of Landlord or Tenant, shall belong to Landlord and shall remain on and be surrendered with the Premises at the expiration or termination of this Lease. However, at Landlord's option, Tenant shall remove Tenant's alterations or improvements prior to the expiration of this Lease and return the Premises to its original condition.

**22.    TAXES ON LEASEHOLD**. Tenant shall be responsible for and shall pay before delinquency all municipal, county, or state taxes assessed during the term of this Lease against any leasehold interest or personal property of any kind owned by or placed in, upon, or about the Premises by Tenant.

**24.     EMINENT DOMAIN.** Should all of the Premises be taken under the power of eminent domain or a conveyance in lieu thereof by any authority having the right of condemnation, or if a portion thereof is taken so that the Premises are unsuitable, in Tenant's reasonable opinion, for Tenant's use, then the term of this lease shall terminate as of the date that title shall vest in the acquiring authority and the rent and other charges shall be adjusted as of the date of such taking. In such case, Landlord shall be entitled to the proceeds of the condemnation award made to Landlord. Nothing herein shall be construed to prevent Tenant from separately pursuing a claim against the condemning authority for its independent loss or damages to the extent available, provided, however, that no award made to or on behalf of Tenant shall reduce, limit, or restrict the award to Landlord, and no allocation of Landlord's award in condemnation shall occur.

**25.     WAIVER OF SUBROGATION.** As part of the consideration for this Lease, each of the parties hereby releases the other party from all liability for damage due to any act or neglect of the other party occasioned to property owned by said parties which is or might be incident to or the result of a fire or other casualty against loss for which either of the parties is now carrying or hereafter may carry insurance; provided, however, that the releases herein contained shall not apply to any loss or damage occasioned by intentional acts of either of the parties, and the parties further covenant that any insurance they obtain on their respective properties shall contain an appropriate provision whereby the insurance company, or companies, consent to the mutual release of liability contained in this paragraph.

**26.     DEFAULT AND REMEDIES.** If: (a) Tenant fails to comply with any term, provision, condition or covenant of this Lease; (b) Tenant deserts or vacates the Premises; (c) (d) Tenant becomes insolvent or makes a transfer in fraud of creditors; (e) Tenant makes an assignment for benefit of creditors; Tenant shall be in default and Landlord shall have the option to do any one or more of the following: upon ten (10) days prior written notice, excepting the payment of rent or additional rent for which no demand or notice shall be necessary, in addition to and not in limitation of any other remedy permitted by law, Landlord may not at any time terminate this Lease by reason of any default without first having the matter heard and arbitrated by Rabbi Moshe Bergman of Congregation- Khal Bnei Avrohom Yaakov in Brooklyn NY . Landlord shall have not have the right and remedy to seek redress in the courts at any time to correct or remedy any default of Tenant by injunction or otherwise, without having the matter heard by the arbitrator. Both parties agree and accept that in case of any dispute or disagreement arising from the use of the premises, this lease, or any other issue that may arise between the parties during the time of this lease, the parties shall both be bound to use the fore-mentioned arbitrator and his decision may be confirmed in a court of law. If the arbitrator allows and feels it is necessary for Landlord to bring any court or legal action under this Lease, or to consult with an attorney concerning or for the enforcement of any of Landlord's rights, then Tenant agrees in each and any such case to pay to Landlord, Landlord's reasonable attorney's fees.

**27.     WAIVER.** The rights and remedies of Landlord under this Lease, as well as those provided by law, shall be cumulative, and none shall be exclusive of any other rights or remedies. A waiver by Landlord of any breach or default of Tenant shall not be deemed or construed to be a continuing waiver of such breach or default nor as a waiver of or permission, expressed or implied, for any subsequent breach or default. It is agreed that the acceptance by Landlord of any installment of rent subsequent to the date the same should have been paid shall not alter the covenant and obligation of Tenant to pay subsequent installments of rent promptly upon the due date. Receipt by Landlord of partial payment after Tenant's default shall not be construed to be or constitute a cure of any such default. No receipt of money by Landlord before or after the termination of this Lease shall in any way reinstate, continue or extend the term above demised.

**27.    TOXIC OR HAZARDOUS MATERIALS.** Tenant shall not store, use or dispose of any toxic or hazardous materials in, on or about the Premises without the prior written consent of Landlord. Tenant, at its sole cost, shall comply with all laws relating to Tenant's storage, use and disposal of hazardous or toxic materials. Tenant shall be solely responsible for and shall defend, indemnify and hold Landlord, its agents and employees, harmless from and against all claims, costs and liabilities, including attorney's fees and costs, arising out of or in connection with the Tenant storage, use or disposal of any toxic or hazardous material in, on or about the Premises including, but not limited to, removal, clean-up and restoration work and materials necessary to return the Premises, and any other property of whatever nature located on the Premises, to their condition existing prior to the appearance of toxic or hazardous materials on the Premises. Tenant's obligations under this paragraph shall survive the termination of this Lease.

**28.    NOTICES.** Any notice hereunder shall be sufficient if sent by certified mail, addressed to Tenant at the Premises, and to Landlord where rent is payable.

**29.    SUBORDINATION OF LEASE AND RIGHTS OF TENANT.** This Lease shall not be subject and subordinate at any times to the liens and of mortgages which hereafter may be made a lien on the Premises. Landlord agrees not to transfer, encumber, pledge, mortgage or place any lien on the property during the time of this lease and will not sell the property without giving tenant 30 days advanced written notice and a right of first refusal. Tennant shall respond in writing within 30 days if tenant wishes act under this right be the purchaser or not. It is accepted and agreed that anything above done without said notice and acceptance of the tenant shall be void ab initio, and shall be a breach of this lease agreement.

**30.    SUCCESSORS.** The provisions, covenants and conditions of this Lease shall bind and inure to the benefit of the legal representatives, heirs, successors and assigns of each of the parties hereto, except that no assignment or subletting by Tenant without the written consent of Landlord shall vest any rights in the assignee or subtenant of Tenant.

**34.    QUIET POSSESSION.** Landlord agrees, so long as Tenant fully complies with all of the terms, covenants and conditions herein contained on Tenant's part to be kept and performed, Tenant shall and may peaceably and quietly have, hold and enjoy the Premises for the Term aforesaid, it being expressly understood and agreed that the aforesaid covenant of quiet enjoyment shall be binding upon Landlord, its heirs, successors or assigns, not only during such party's ownership of the Premises. Landlord, Principal and Tenant further covenant and represent that each has full right, title, power and authority to make, execute and deliver this Lease.

**35.    BANKRUPTCY.** Landlord accepts that this lease and all its terms shall survive any bankruptcy filing and neither this Lease nor any interest therein nor any estate hereby created shall pass to any trustee or receiver in bankrutcy or to any other receiver or assignee for the benefit of creditors by operation of law or otherwise during the Term or any renewal thereof.

**36.    ENTIRE AGREEMENT.** This Lease contains the entire agreement between the parties, and no modification of this Lease shall be binding upon the parties unless evidenced by an agreement in writing signed by Landlord and Tenant after the date hereof. If there be more than one Tenant named herein, the provisions of this Lease shall be applicable to and binding upon such Tenants, jointly and severally.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 33

22-22493-shl Doc 7-1 Filed 08/03/22 Entered 08/03/22 10:30:01 Declaration of
Rabbi Mayer Zaks Pg 323 of 416

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

**37.  ESTOPPEL CERTIFICATES.** Tenant shall at any time upon not less than thirty (30) days prior written notice from Landlord execute, acknowledge and deliver to Landlord a statement in writing certifying that this Lease is unmodified and in full force and effect (or if modified stating the nature of such modification) and the date to which the rent and other charges are paid in advance, if any, and acknowledging that there are not, to Tenant's knowledge, any uncured defaults on the part of Landlord or specifying such defaults if any are claimed.

**38.  ADDENDA AND EXHIBITS:**
Exhibit A: Description MAP of leased premises.

IN WITNESS WHEREOF, said parties hereunto subscribed their names. Executed in originals.

LANDLORD

By:_____ Date:        Time:
Del Realty LLC

PRINICIPAL
_____ Date:        Time:
Jacob Karmel


TENANT- Rabbi Aryeh Zaks and Rabbi Mayer Zaks

By:_____ and  _____

Date:        Time:




State of New York
                    }
County of Rockland

On the_____day of_____in the Year 2017 Before me, the undersigned, personally appeared Daniel Lazarous  and Jacob Karmel and Aryeh Zaks and Mayer Zaks all Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

_____
Signature and Office if individual Taking acknowledgement

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 33

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 324 of 416

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

## Exhibit A



# EXHIBIT 2

 **IRS** DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI  OH  45999-0031

Date of this notice:  02-20-2019

Employer Identification Number:
83-3639126

Form:  SS-4

Number of this notice:  CP 575 G

82 HIGHVIEW LLC
% YESHIVA CHOFETZ CHAIM INC SOLE MB
82 HIGHVIEW ROAD
SUFFERN, NY  10901

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN 83-3639126.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

A limited liability company (LLC) may file Form 8832, *Entity Classification Election*,
and elect to be classified as an association taxable as a corporation.  If the LLC is
eligible to be treated as a corporation that meets certain tests and it will be electing S
corporation status, it must timely file Form 2553, *Election by a Small Business
Corporation*.  The LLC will be treated as a corporation as of the effective date of the S
corporation election and does not need to file Form 8832.

To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

IMPORTANT REMINDERS:

  * Keep a copy of this notice in your permanent records.  **This notice is issued only
    one time and the IRS will not be able to generate a duplicate copy for you.**  You
    may give a copy of this document to anyone asking for proof of your EIN.

  * Use this EIN and your name exactly as they appear at the top of this notice on all
    your federal tax forms.

  * Refer to this EIN on your tax-related correspondence and documents.

If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice.  If you write, please tear off the stub
at the bottom of this notice and send it along with your letter.  If you do not need to
write us, do not complete and return the stub.

Your name control associated with this EIN is 82HI.  You will need to provide this
information, along with your EIN, if you file your returns electronically.

Thank you for your cooperation.

(IRS USE ONLY)     575G              02-20-2019  82HL  O  9999999999  SS-4

Keep this part for your records.     CP 575 G (Rev. 7-2007)

--------------------------------------------------------------------------------

Return this part with any correspondence
so we may identify your account.  Please                        CP 575 G
correct any errors in your name or address.
                                                                9999999999

Your Telephone Number  Best Time to Call   DATE OF THIS NOTICE:  02-20-2019
(    )      -                              EMPLOYER IDENTIFICATION NUMBER:  83-3639126
                                           FORM:  SS-4              NOBOD
_____   _____

INTERNAL REVENUE SERVICE                   82 HIGHVIEW LLC
CINCINNATI  OH  45999-0023                 % YESHIVA CHOFETZ CHAIM INC SOLE MB
Ilıldılddlddlıdıhdılıhıllıonıldılıldıl     82 HGHVIEW ROAD
                                           SUFFERN, NY  10901

# EXHIBIT G

# EXHIBIT G

FILED: ROCKLAND COUNTY CLERK 02/15/2022 09:43 PM    INDEX NO. 036879/2021
NYSCEF DOC. NO. 15    RECEIVED NYSCEF: 02/15/2022
Page 1 of 7

Paul Piperato, County Clerk
1 South Main St., Ste. 100
New City, NY 10956
(845) 638-5070

## Rockland County Clerk Recording Cover Sheet

**Received From :**
RIVERSIDE ABSTRACT,LLC
3839 FLATLANDS AVE
SUITE 208
BROOKLYN, NY 11234

**Return To :**
RIVERSIDE ABSTRACT,LLC
3839 FLATLANDS AVE
SUITE 208
BROOKLYN, NY 11234

Method Returned : ERECORDING

**First GRANTOR**

DEL REALTY LLC

**First GRANTEE**

82 HIGHVIEW LLC

**Index Type :** Land Records
**Instr Number :** 2018-00037834
**Book :**          **Page :**

**Type of Instrument :** Deed
**Type of Transaction :** Deed Other
**Recording Fee:**          $321.00

The Property affected by this instrument is situated in Ramapo, in the
County of Rockland, New York

**Recording Pages :**          6

| Real Estate Transfer Tax | |
|---|---|
| RETT # : | 3038 |
| Deed Amount : | $0.00 |
| RETT Amount : | $0.00 |
| | |
| Total Fees : | $321.00 |

State of New York

County of Rockland

I hereby certify that the within and foregoing was
recorded in the Clerk's office for Rockland County,
New York

On (Recorded Date) : 12/31/2018

At (Recorded Time) : 12:27:00 PM

Paul Piperato, County Clerk

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 39
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks   Pg 330 of 416

Bargain and Sale Deed, with Covenant against Grantor's Acts — Individual or Corporation

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT—THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY.

**THIS INDENTURE,** made as of the 23rd Day of October, 2018

**BETWEEN DEL REALTY LLC** having an address at 20 F Robert Pitt Drive, Suite 204, Monsey, NY 10952, party of the first part,

**AND 82 HIGHVIEW LLC** having an address at 82 Highview Road, Suffern, NY 10952, party of the second part,

WITNESSETH, that the party of the first part, in consideration of Ten dollars and other good and valuable consideration paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs or successors and assigns of the party of the second part forever,

**See attached Schedule A**

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of the second part forever.

AND the party of the first part covenants that the party of the first part has not done or suffered anything whereby the said premises have been encumbered in any way whatever, except as aforesaid.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the first part will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose. The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so requires.

**IN WITNESS WHEREOF,** the party of the first part has duly executed this deed the day and year first above written.

IN PRESENCE OF:

                                                          DEL REALTY LLC

_____            By: _____
                                                          Jacob Karmel, Authorized Signatory

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM    INDEX NO. 036879/2021
NYSCEF DOC. NO. 39    22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 331 of 416    RECEIVED NYSCEF: 03/18/2022

FILED: ROCKLAND COUNTY CLERK 02/15/2022 09:43 PM    INDEX NO. 036879/2021
NYSCEF DOC. NO. 15    RECEIVED NYSCEF: 02/15/2022
Page 3 of 7

USE ACKNOWLEDGEMENT FORM BELOW WITHIN NEW YORK STATE ONLY:

State of New York,
County of *Rockla*                           ) ss.:
On the _22_ of _December_ , 2018
before me, the undersigned, personally appeared
*Jacob Kermd*
personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

SHLOIME SILBIGER
Notary Public - State of New York
NO. 01SI6236859
Qualified in Rockland County
My Commission Expires Mar 7, 2019

USE ACKNOWLEDGEMENT FORM BELOW WITHIN NEW YORK STATE ONLY:

State of New York,
County of _____ ) ss.:
On the _____ of _____ , 2018
before me, the undersigned, personally appeared

personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

ACKNOWLEDGEMENT FORM FOR USE WITHIN NEW YORK STATE ONLY:
(New York Subscribing Witness Acknowledgement Certificate)
State of New York, County of
) ss.:
On the _____ of _____ , _____
before me, the undersigned, personally appeared

the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in

*(If the place of residence is in a city, include the street and street number if any, thereof)*; that he/she/they know(s)

to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said

execute the same; and that said witness at the same time subscribed his/her/their name(s) as a witness thereto

ACKNOWLEDGEMENT FORM FOR USE OUTSIDE NEW YORK STATE ONLY:
(Out of State or Foreign General Acknowledgement Certificate)
) ss.:
(Complete Venue with State, Country, Province or Municipality)
On the _____ of _____ , _____
before me, the undersigned, personally appeared

Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual make such appearance before the undersigned in the

*(Insert the city or other political subdivision and the state or country or other place the acknowledgement was taken).*

Bargain and Sale Deed
with Covenant against Grantors Acts

TITLE NO: Ra-rec-36375

| DISTRICT | |
|---|---|
| SECTION | 49.17 |
| BLOCK | 2 |
| LOT | 42 & 47 |
| COUNTY OR TOWN | ROCKLAND |

DISTRIBUTED BY:

RIVERSIDE ABSTRACT LLC
3839 FLATLANDS AVENUE, SUITE 208
BROOKLYN, NY 11234

RECORD & RETURN TO:

<div align="center">

## RIVERSIDE ABSTRACT, LLC

as Agent for

Fidelity National Title Insurance Company

### SCHEDULE A – DESCRIPTION

</div>

Title No.: RANY-15937

Parcel I:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Suffern, Town of Ramapo, County of Rockland, State of New York, more particularly bounded and described as follows:

BEGINNING at a point locate on the northerly boundary of Highview Road, said point being located 30 feet from the centerline of the original right of way of Highview Road and further described as being located 301.34 feet from the westerly terminus of the westerly return curve formed by the intersection of the northerly right of way of Highview Road and the westerly boundary of Wendover Lane:

thence the following courses and distances:

Parallel to Highview Road North 74 degrees 40 minutes 00 seconds West 171.28 feet;

Along a stone wall North 2 degrees 40 minutes 06 seconds East 369.05 feet;

THENCE South 74 degrees 27 minutes 03 seconds West 300.81 feet;

THENCE South 19 degrees 22 minutes 00 seconds East 336.53 feet;

On a curve to the right on a tangent to the previous course a radius of 25 feet, an arc length of 37.51 feet, subtended by a central angle of 85 degrees 58 minutes 00 seconds to the point of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as Section 49.17 Block 2, Lot 42 Rockland County and also known as 24 Highview Road.

<div align="center">

Schedule A Description  Page 1 of 2

</div>

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 34                                                  Declaration of
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Rabbi Mayer Zaks   Pg 333 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

FILED: ROCKLAND COUNTY CLERK 02/15/2022 09:43 PM
NYSCEF DOC. NO. 15
Page 5 of 7
INDEX NO. 036879/2021
RECEIVED NYSCEF: 02/15/2022

SCHEDULE A cont.

Parcel II:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Suffern, Town of Ramapo, County of Rockland, State of New York, known and designated as Lot 47 and 47.1 Block No. 2, which said lot is more particularly bounded and described as follows:

BEGINNING at a point locate on the northerly boundary of Highview Road, said point being located, 30 feet from the centerline of the original right of way of Highview Road and further described as being located 102.01 feet from the westerly terminus of the westerly return curve formed by the intersection of the northerly right of way of Highview Road and the westerly boundary of Wendover Lane;

thence the following courses and distances:

Parallel to Highview Road North 74 degrees 40 minutes 00 seconds West 199.33 feet;

On a curve to the left on a reverse tangent to the previous course a radius of 25 feet, an arc length of 37.51 feet, subtended by a central angle of 85 degrees 58 minutes 00 seconds;

North 19 degrees 22 minutes 00 seconds East 336.53 feet;

North 74 degrees 27 minutes 03 seconds west 300.81 feet to a point located along a stone wall;

Along a stone wall North 2 degrees 40 minutes 06 seconds East 831.09 feet to a point located 25 feet southerly from the centerline of the original right of way of Carlton Road;

On a curve to the left, concentric with Carlton Road a radius of 94.42 feet, an arc length of 27.61 feet, subtended by a central angle of 16 degrees 45 minutes 11 seconds and having a chord bearing North 34 degrees 12 minutes 12 seconds East;

Along a stone wall South 72 degrees 15 minutes 00 seconds East 707.77 feet to an existing marble monument;

South 19 degrees 22 minutes 00 seconds West 1170.03 feet to the point of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only

Designated as Section 49.17 Block 2, Lot 47 Rockland County and also known as 82 Highview Road.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 34  22-22493-shl  Doc 7-1  Filed 08/03/22  Entered 08/03/22 10:30:01  INDEX NO. 036879/2021
Rabbi Mayer Zaks  Pg 334 of 416  RECEIVED NYSCEF: 03/18/2022
FILED: ROCKLAND COUNTY CLERK 02/15/2022 09:43 PM
NYSCEF DOC. Pago 5of 715  INDEX NO. 036879/2021
RECEIVED NYSCEF: 02/15/2022

INSTRUCTIONS(RP-5217-PDF-INS): www.orps.state.ny.us

**FOR COUNTY USE ONLY**

C1. SWIS Code: 392607

C2. Date Deed Recorded: 12/31/2018 (Month/Day/Year)

C3. Book: 2018  C4. Page: 37834

New York State Department of
**Taxation and Finance**
Office of Real Property Tax Services
**RP- 5217-PDF**
Real Property Transfer Report (8/10)

**PROPERTY INFORMATION**

1. Property Location:
   - STREET NUMBER: 82 and 105
   - STREET NAME: Highview Rd. & Carlton Rd
   - CITY OR TOWN: Ramapo
   - VILLAGE:
   - ZIP CODE: 10901

2. Buyer Name:
   - LAST NAME/COMPANY: 82 Highview LLC
   - FIRST NAME:

3. Tax Billing Address: Indicate where future Tax Bills are to be sent if other than buyer address(at bottom of form)
   - LAST NAME/COMPANY:
   - FIRST NAME:
   - STREET NUMBER AND NAME:
   - CITY OR TOWN:
   - STATE:
   - ZIP CODE:

4. Indicate the number of Assessment Roll parcels transferred on the deed: 2 # of Parcels  OR  ☐ Part of a Parcel

   (Only If Part of a Parcel) Check as they apply:
   - 4A. Planning Board with Subdivision Authority Exists ☐
   - 4B. Subdivision Approval was Required for Transfer ☐
   - 4C. Parcel Approved for Subdivision with Map Provided ☐

5. Deed Property Size:
   - FRONT FEET: ____ X ____ DEPTH  OR  14.14 ACRES

6. Seller Name:
   - LAST NAME/COMPANY: Del Realty LLC
   - FIRST NAME:
   - LAST NAME/COMPANY:
   - FIRST NAME:

*7. Select the description which most accurately describes the use of the property at the time of sale:
   I. Community Service

   Check the boxes below as they apply:
   - 8. Ownership Type is Condominium ☐
   - 9. New Construction on a Vacant Land ☐
   - 10A. Property Located within an Agricultural District ☐
   - 10B. Buyer received a disclosure notice indicating that the property is in an Agricultural District ☐

**SALE INFORMATION**

11. Sale Contract Date: ____

*12. Date of Sale/Transfer: 10/23/2018

*13. Full Sale Price: .00

(Full Sale Price is the total amount paid for the property including personal property. This payment may be in the form of cash, other property or goods, or the assumption of mortgages or other obligations.) Please round to the nearest whole dollar amount.

14. Indicate the value of personal property included in the sale: .00

15. Check one or more of these conditions as applicable to transfer:
   - A. Sale Between Relatives or Former Relatives
   - B. Sale between Related Companies or Partners in Business.
   - C. One of the Buyers is also a Seller
   - D. Buyer or Seller is a Government Agency or Lending Institution
   - ☒ E. Deed Type not Warranty or Bargain and Sale (Specify Below)
   - F. Sale of Fractional or Less than Fee Interest (Specify Below)
   - G. Significant Change in Property Between Taxable Status and Sale Dates
   - H. Sale of Business is Included in Sale Price
   - I. Other Unusual Factors Affecting Sale Price (Specify Below)
   - J. None

*Comment(s) on Condition:

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

16. Year of Assessment Roll from which information taken(YY): 17

*17. Total Assessed Value: 476,600

*18. Property Class: 612

*19. School District Name: Ramapo

*20. Tax Map Identifier(s)/Roll Identifier(s) (If more than four, attach sheet with additional identifier(s)):
49.17-2-42    49.17-2-47

**CERTIFICATION**

I Certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein subject me to the provisions of the penal law relative to the making and filing of false instruments.

**SELLER SIGNATURE**

SELLER SIGNATURE ____ DATE ____

BUYER SIGNATURE ____ DATE ____

**BUYER CONTACT INFORMATION**
(Enter information for the buyer. Note: If buyer is LLC,society, association, corporation, joint stock company, estate or entity that is not an individual agent or fiduciary, then a name and contact information of an individual/responsible party who can answer questions regarding the transfer must be entered. Type or print clearly.)

- LAST NAME: ZAKS  FIRST NAME: DOSBA
- AREA CODE: 845  TELEPHONE NUMBER (Ex 9899999): 538-7909
- STREET NUMBER: 82  STREET NAME: 82 HIGHVIEW RD
- CITY OR TOWN: SUFFERN  STATE: NY  ZIP CODE: 10904

**BUYER'S ATTORNEY**
- LAST NAME: ____  FIRST NAME: ____
- AREA CODE: ____  TELEPHONE NUMBER (Ex 9899999): ____

# EXHIBIT I

# EXHIBIT I

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 38
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

## Highview Property URGENT

From:  Yeshiva CC (yeshivacc@yahoo.com)

To:    rabbimbergman@gmail.com

Cc:    feag123@yahoo.com

Date:  Sunday, August 27, 2017, 10:23 PM EDT


Good evening

We have a person Mr Jacob Karmel who was brought to us through Mr Shimon Ganz
who wants to buy the 14 acre yeshiva property from TD Bank for 2 million dollars
under an LLC called Del Realty LLC.
He is agreeing to donate the property to the Mosad of our choice (me and my Brother)
for a deduction of 12 million after a year and a day and if not we have the right to
repurchase this for the price he paid plus direct expenses such as taxes if any are paid
during this time. If the amount of the deduction is more that 12 Mil then he will give
another 6% of the additional value as a donation to the charity of our choice.
During this time he is not allowed to transfer, lien, encumber, or mortgage the property
without our written permission.
He never met with us but he is willing to sign and make a Kabolas Kinyan before Rabbi
Bergman that he is going to do what he said. He is willing to sign that if we have any
dispute about anything relating to this he is willing to have Rav Bergman as the sole
arbitrator.

I have also made a lease between myself and my brother and him with an arbitration
clause for three years to further give us some protection. Ganz has said he would fund
the lease for the year. This needs to be confirmed by Rabbi Bergman as well.
Attached lease for your review
We need this done ASAP

Thank You

 Yeshiva -triple-net-commercial-lease.pdf
600.8kB

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 337 of 416

# EXHIBIT J

# EXHIBIT J

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 37

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 338 of 416

82 Highview

From: Yeshiva CC (yeshivacc@yahoo.com)

To: simong@platinumhrm.com; simong5055@gmail.com

Cc: feag123@yahoo.com

Date: Monday, November 26, 2018, 08:29 PM EST

Good evening Reb Shimon,

B"h we have the completed appraisals and I believe you received them.

Moshe Underwiser from Riverside Abstract is preparing the deed and documents.

He would like to know to know who is the attorney for the grantor, for them to communicate with and to make sure the documents are acceptable.

The prepared deed by the Title company is from **Del Realty LLC** to **82 Highview Rd LLC** located at 82 Highview Rd Suffern NY 10901.
82 Highview Rd LLC is a New York State "single member" LLC belonging solely to **Yeshiva Chofetz Chaim Inc**.

A copy of the NYS LLC formation docs is attached.

The recognized tax exempt entity giving the receipt for donations is Yeshiva Chofetz Chaim Inc. EIN # 113179075

The title company has the previously filed deed and the property description in their files as they gave the title insurance policy and filed the documents last year.

Thank you
Tizkeh limitzvos
Rabbi Aryeh Zaks

 82 Highview LLC FILED.pdf
1.6MB

 82 Highview LLC_FilingReceipt.pdf
11.2kB

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 38

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 339 of 416

# EXHIBIT K

# EXHIBIT K

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 38
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 340 of 416
RECEIVED NYSCEF: 03/18/2022



**NYS DEPARTMENT OF TAXATION & FINANCE**
**OFFICE OF REAL PROPERTY TAX SERVICES**

RP-420-a/b-Use (9/08)

## APPLICATION FOR REAL PROPERTY TAX EXEMPTION FOR
## NONPROFIT ORGANIZATIONS
## II – PROPERTY USE

YESHIVA CHOFETZ CHAIM INC

1 a.   Name of organization

18 MOUNTAIN AVE

b.   Mailing address
MONSEY NY 10952

82 HIGHVIEW RD  SUFFERN NY 10901

c.   Address of property

d.   Property identification (see tax bill or assessment roll) Tax map number or section/block/lot _____

113179075

2.   Employer ID no

3a.   Name of contact person
RABBI ZAKS

b.   Day telephone no. of contact person
845 538 7909

Evening telephone no.

c.   E-mail address (optional)

4 a.   Has any part of this property been conveyed to another person or organization?  ☐ Yes  ☑ No
b.   Is the property or any part thereof under contract for sale?  ☐ Yes  ☑ No
c.   Is the property or any part thereof for sale?  ☐ Yes  ☑ No
d.   If answer to 4 a, b, or c is yes, give full details (indicate question letter): _____
_____
_____
_____

5.   Name of grantee as set forth in deed by which property was acquired if different from answer to question 1.
DEL REALTY

6.   If the property was acquired within the last three (3) years, indicate:  Date of acquisition: Dec 2018

Deed recording information – Book of Deeds: 49.17 BL 2 LOT42-47-47.1  Page: _____

7.   Was the property acquired from anyone who has or had any interest in the owning organization (e.g., officer,
director, employee, member, etc.)?  ☐ Yes  ☑ No

If yes, explain the relationship and circumstances of sale (including purchase price and terms of sale):
_____
_____

8.   Is the property mortgaged?  ☐ Yes  ☑ No

a.   If yes, does the holder of the mortgage presently (or did it formerly) have any interest in the owning
organization?  ☐ Yes  ☐ No

b.   If answer to 8a is yes, explain the relationship and details of mortgage(s), original principal amount,
principal currently outstanding, interest rate, original term of mortgage, term remaining: _____
_____
_____

(attach additional sheets if necessary)

━━━━━━━━━━━━━  **FOR ASSESSOR'S USE**  ━━━━━━━━━━━━━

Assessing unit _____   County _____

City/Town _____   Village _____

School District _____

RP-420-a/b-Use (9/08)

2

9.  Does any person or organization have a reversionary interest in this property?  ☐ Yes  ☑ No

    a.  If yes, indicate name and address of such person and state terms of right of reverter: _____

_____

_____

10. Describe, in detail, use or uses of the property:
YESHIVA RELIGIOUS AND EDUCATIONAL CAMPUS _____

_____

**IF THE ORGANIZATION SEEKING EXEMPTION HAS INDICATED ONE OF ITS CORPORATE
PURPOSES IS HOSPITAL IN QUESTION 2a. ON FORM RP-420-a-Org, ANSWER QUESTION 11.
IF NOT SKIP TO 12.**

11.  Are the premises or any portion thereof leased or otherwise occupied as professional offices?  ☐ Yes  ☑ No

    If yes, answer a through c.

    a.  The professional offices are leased or otherwise occupied by:  (1) ☐ members of the staff, e.g. doctors
        (2) ☐ professionals not on the staff of the hospital  (3) ☐ a combination of 1 and 2

    b.  If leased to members of the staff, are the offices used:  (1) ☐ solely for hospital related matters
        (2) ☐ for the private practice of the staff members  (3) ☐ a combination of 1 and 2

    c.  If not used solely for direct-hospital related purposes, what percentage of time and space are the offices
        used for direct hospital-related purposes, and what percentage of time and space are they used for private
        practice of the staff? _____

12.  Is the property or any portion thereof regularly occupied by persons or organizations other than applicant?

    ☐ Yes  ☑ No

    If yes, answer a through d.

    a.  Name of occupant(s) _____

    b.  Use by occupant(s) (also indicate specific portion of property so occupied): _____

    c.  Term(s) of occupancy (e.g. one-year lease, month-to-month tenancy): _____
    d.  Amount of rental paid by occupant(s) _____

13.  Is the property or any portion thereof <u>occasionally</u> used by persons or organizations other than the applicant?

    ☐ Yes  ☑ No

    If yes, state use and indicate specific portion of property used, frequency of use and fee charged or
    contributions received for use: _____

_____

14.  Are there any buildings or other improvements on the property?  ☑ Yes  ☐ No

    If yes, skip questions a through e. If no, answer a-e and skip questions 15-16.

    a.  Use or uses of property if not described in question 10. _____

_____

    b.  Are building or other improvements contemplated on this unimproved land?  ☐ Yes  ☐ No
        If yes, give full details including proposed use(s): _____

_____

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 38

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22483-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 342 of 416

RP-420-a/b-Use (9/08)

3

c. Do the minutes of the organization contain a resolution(s) authorizing contemplated building or other improvements?  ☐ Yes  ☑ No
   If yes, attach a copy of resolution(s). _____

d. State detailed financial resources for contemplating buildings or other improvements (including building fund). _____

e. When will construction begin? _____

15. Describe, briefly, the building(s) or other improvements: _____

a. Approximate acreage of land not underlying buildings or other improvements: _____

b. Use or uses of land referred to in 15a. if not described in question 10. _____

c. Are buildings or other improvements contemplated on this unimproved land?  ☐ Yes  ☐ No
   If yes, give full details including proposed use(s): _____

d. Do the minutes of the organization contain a resolution authorizing contemplated buildings or other improvements?  ☐ Yes  ☐ No    If yes, attach copy of resolution(s) _____

e. State financial resources for contemplated buildings or other improvements (including building fund). _____

f. When will construction begin? _____

16. Are there any unoccupied buildings or other improvements on this property?  ☐ Yes  ☑ No

a. Date(s) they became unoccupied _____

b. Describe contemplated use(s) of the buildings or other improvements: _____

State of New York

**VERIFICATION**

County of Rockland                    ss:

I, ___ ARYEH ZAKS ___, being duly sworn, says that __ he is the __ CFO ____
of the applicant organization, that the statements contained in this application (including the attached sheets consisting of _____ pages) are true and correct and complete, and that __ he makes this application for real property tax exemption as provided by law.

_____
Signature of owner or authorized representative

ROCHELLE INGER
Notary Public, State of New York
No. 02IN6063222
Qualified in Rockland County
Commission Expires Aug. 27, 20__

Subscribed and sworn to before me

this __28__ day of __Feb__    20_19_

_____
Commissioner of deeds or notary public

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 39

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 343 of 416

# EXHIBIT L

# EXHIBIT L



**NYS DEPARTMENT OF TAXATION & FINANCE**
**OFFICE OF REAL PROPERTY TAX SERVICES**

RP-420-a/b-Use (9/08)

**APPLICATION FOR REAL PROPERTY TAX EXEMPTION FOR**
**NONPROFIT ORGANIZATIONS**
**II – PROPERTY USE**

1 a. Name of organization *YESHIVA CHOFETZ CHAIMING / 82 HIGHVIEW LLC. OWNER OF*

b. Mailing address *18 MOUNTAIN AVE. MONSEY NY 10952*

c. Address of property *82 HIGHVIEW RD. SUFFERN NY*

2. Employer ID no *113179075*

3a. Name of contact person *RABBI ARYEH ZAKS*

b. Day telephone no. of contact person *845-538-7100*

Evening telephone no.

c. E-mail address (optional)

d. Property identification (see tax bill or assessment roll) Tax map number or section/block/lot _____

4 a. Has any part of this property been conveyed to another person or organization? ☐ Yes ☒ No
b. Is the property or any part thereof under contract for sale? ☐ Yes ☒ No
c. Is the property or any part thereof for sale? ☐ Yes ☒ No
d. If answer to 4 a, b, or c is yes, give full details (indicate question letter): _____

5. Name of grantee as set forth in deed by which property was acquired if different from answer to question 1.

6. If the property was acquired within the last three (3) years, indicate: Date of acquisition: _____
Deed recording information – Book of Deeds: _____ Page: _____

7. Was the property acquired from anyone who has or had any interest in the owning organization (e.g., officer, director, employee, member, etc.)? ☐ Yes ☒ No
If yes, explain the relationship and circumstances of sale (including purchase price and terms of sale):

8. Is the property mortgaged? ☐ Yes ☒ No
a. If yes, does the holder of the mortgage presently (or did it formerly) have any interest in the owning organization? ☐ Yes ☐ No
b. If answer to 8a is yes, explain the relationship and details of mortgage(s), original principal amount, principal currently outstanding, interest rate, original term of mortgage, term remaining: _____

(attach additional sheets if necessary)

**━━━━ FOR ASSESSOR'S USE ━━━━**

Assessing unit _____ County _____
City/Town _____ Village _____
School District _____

RP-420-a/b-Use (9/08)                                                    2

9.  Does any person or organization have a reversionary interest in this property?   ☐ Yes   ☑ No

   a.  If yes, indicate name and address of such person and state terms of right of reverter: _____
   _____
   _____

10.  Describe, in detail, use or uses of the property: _Yeshiva Campus_____
   _____

**IF THE ORGANIZATION SEEKING EXEMPTION HAS INDICATED ONE OF ITS CORPORATE PURPOSES IS HOSPITAL IN QUESTION 2a. ON FORM RP-420-a-Org, ANSWER QUESTION 11. IF NOT SKIP TO 12.**

11.  Are the premises or any portion thereof leased or otherwise occupied as professional offices?  ☐ Yes ☐ No

   If yes, answer a through c.

   a.  The professional offices are leased or otherwise occupied by:  (1) ☐ members of the staff, e.g. doctors
       (2) ☐ professionals not on the staff of the hospital       (3) ☐ a combination of 1 and 2

   b.  If leased to members of the staff, are the offices used:  (1) ☐ solely for hospital related matters
       (2) ☐ for the private practice of the staff members       (3) ☐ a combination of 1 and 2

   c.  If not used solely for direct-hospital related purposes, what percentage of time and space are the offices used for direct hospital-related purposes, and what percentage of time and space are they used for private practice of the staff? _____

12.  Is the property or any portion thereof regularly occupied by persons or organizations other than applicant?

       ☐ Yes   ☐ No

   If yes, answer a through d.

   a.  Name of occupant(s) _____
   b.  Use by occupant(s) (also indicate specific portion of property so occupied): _____
       _____
   c.  Term(s) of occupancy (e.g. one-year lease, month-to-month tenancy): _____
   d.  Amount of rental paid by occupant(s) _____

13.  Is the property or any portion thereof <u>occasionally</u> used by persons or organizations other than the applicant?

       ☐ Yes   ☐ No

   If yes, state use and indicate specific portion of property used, frequency of use and fee charged or contributions received for use: _____
   _____

14.  Are there any buildings or other improvements on the property?   ☐ Yes   ☐ No

   If yes, skip questions a through e.  If no, answer a-e and skip questions 15-16.

   a.  Use or uses of property if not described in question 10. _____
       _____

   b.  Are building or other improvements contemplated on this unimproved land?  ☐ Yes   ☐ No
       If yes, give full details including proposed use(s): _____
       _____

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 346 of 416

RP-420-a/b-Use (9/08)                                                        3

c.  Do the minutes of the organization contain a resolution(s) authorizing contemplated building or other improvements?  ☐ Yes  ☐ No

If yes, attach a copy of resolution(s).

d.  State detailed financial resources for contemplating buildings or other improvements (including building fund). _____

_____

e.  When will construction begin? _____

15. Describe, briefly, the building(s) or other improvements: _____

_____

a.  Approximate acreage of land not underlying buildings or other improvements: _____

b.  Use or uses of land referred to in 15a. if not described in question 10. _____

_____

c.  Are buildings or other improvements contemplated on this unimproved land?  ☐ Yes  ☐ No

If yes, give full details including proposed use(s): _____

d.  Do the minutes of the organization contain a resolution authorizing contemplated buildings or other improvements?  ☐ Yes  ☐ No     If yes, attach copy of resolution(s)

e.  State financial resources for contemplated buildings or other improvements (including building fund).

_____

_____

f.  When will construction begin? _____

16. Are there any unoccupied buildings or other improvements on this property?  ☐ Yes  ☐ No

a.  Date(s) they became unoccupied _____

b.  Describe contemplated use(s) of the buildings or other improvements: _____

_____

_____

## VERIFICATION

State of New York

County of Rockland                              ss:

I, RABBI ARYEH ZAKS _____, being duly sworn, *affirms* says that __he is the *President* _____ of the applicant organization, that the statements contained in this application (including the attached sheets consisting of _____ pages) are true and correct and complete, and that __he makes this application for real property tax exemption as provided by law.

Subscribed and sworn to before me

this 26th day of February 20 2e

Signature of owner or authorized representative

OSCAR J FUQUENE
Notary Public, State of New Jersey
No. 2413667
Qualified in Bergen County
Commission Expires October 20, 2022

Commissioner of deeds or notary public

OSCAR J FUQUENE
Notary Public, State of New Jersey
No. 2413667
Qualified in Bergen County
Commission Expires October 20, 2022

# EXHIBIT M

# EXHIBIT M



**NYS DEPARTMENT OF TAXATION & FINANCE**
**OFFICE OF REAL PROPERTY TAX SERVICES**

RP-420-a/b-Use (9/08)

**APPLICATION FOR REAL PROPERTY TAX EXEMPTION FOR**
**NONPROFIT ORGANIZATIONS**
**II – PROPERTY USE**

1 a. Name of organization
Yeshiva chofetz Chaim Inc

2. Employer ID no   113179075

3a. Name of contact person   Rabbi Aryeh Zaks

b. Mailing address   18 mountain Ave
Monsey NY 10952

b. Day telephone no. of contact person   845 538 7100

Evening telephone no.

c. Address of property   105 Carlton Rd - 80 Highview Rd

c. E-mail address (optional)

d. Property identification (see tax bill or assessment roll) Tax map number or section/block/lot   49.17-2 -47

4 a.   Has any part of this property been conveyed to another person or organization?   ☐ Yes   ☒ No
  b.   Is the property or any part thereof under contract for sale?   ☐ Yes   ☒ No
  c.   Is the property or any part thereof for sale?   ☐ Yes   ☒ No
  d.   If answer to 4 a, b, or c is yes, give full details (indicate question letter): _____

5.   Name of grantee as set forth in deed by which property was acquired if different from answer to question 1.
       82 Highview LLC

6.   If the property was acquired within the last three (3) years, indicate: Date of acquisition:   12/31 2018
     Deed recording information – Book of Deeds: _____   Page: _____

7.   Was the property acquired from anyone who has or had any interest in the owning organization (e.g., officer, director, employee, member, etc.)?   ☐ Yes   ☒ No
     If yes, explain the relationship and circumstances of sale (including purchase price and terms of sale):
     _____

8.   Is the property mortgaged?   ☐ Yes   ☒ No
  a.   If yes, does the holder of the mortgage presently (or did it formerly) have any interest in the owning organization?   ☐ Yes   ☒ No
  b.   If answer to 8a is yes, explain the relationship and details of mortgage(s), original principal amount, principal currently outstanding, interest rate, original term of mortgage, term remaining: _____
     _____
     (attach additional sheets if necessary)

**FOR ASSESSOR'S USE**

Assessing unit _____   County _____
City/Town _____   Village _____
School District _____

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 40
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 349 of 416

RP-420-a/b-Use (9/08)                                        2

9. Does any person or organization have a reversionary interest in this property? ☐ Yes ☒ No

   a. If yes, indicate name and address of such person and state terms of right of reverter: _____
_____
_____

10. Describe, in detail, use or uses of the property: part of Yeshiva campus
   part of Yeshiva campus, Play ground, parking, and nature study area. All Religious use

**IF THE ORGANIZATION SEEKING EXEMPTION HAS INDICATED ONE OF ITS CORPORATE PURPOSES IS HOSPITAL IN QUESTION 2a. ON FORM RP-420-a-Org, ANSWER QUESTION 11. IF NOT SKIP TO 12.**

11. Are the premises or any portion thereof leased or otherwise occupied as professional offices? ☐ Yes ☐ No
If yes, answer a through c.

   a. The professional offices are leased or otherwise occupied by: (1) ☐ members of the staff, e.g. doctors
   (2) ☐ professionals not on the staff of the hospital (3) ☐ a combination of 1 and 2

   b. If leased to members of the staff, are the offices used: (1) ☐ solely for hospital related matters
   (2) ☐ for the private practice of the staff members (3) ☐ a combination of 1 and 2

   c. If not used solely for direct-hospital related purposes, what percentage of time and space are the offices used for direct hospital-related purposes, and what percentage of time and space are they used for private practice of the staff? _____

12. Is the property or any portion thereof regularly occupied by persons or organizations other than applicant?
   ☐ Yes ☒ No
If yes, answer a through d.

   a. Name of occupant(s) _____
   b. Use by occupant(s) (also indicate specific portion of property so occupied): _____
_____
   c. Term(s) of occupancy (e.g. one-year lease, month-to-month tenancy): _____
   d. Amount of rental paid by occupant(s) _____

13. Is the property or any portion thereof _occasionally_ used by persons or organizations other than the applicant?
   ☐ Yes ☒ No
If yes, state use and indicate specific portion of property used, frequency of use and fee charged or contributions received for use: _____
_____

14. Are there any buildings or other improvements on the property? ☒ Yes ☐ No
If yes, skip questions a through e. If no, answer a-e and skip questions 15-16.

   a. Use or uses of property if not described in question 10. _____
_____

   b. Are building or other improvements contemplated on this unimproved land? ☐ Yes ☒ No
If yes, give full details including proposed use(s): _____
_____

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM INDEX NO. 036879/2021

NYSCEF DOC. NO. 40    22-22483-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of    RECEIVED NYSCEF: 03/18/2022

Rabbi Mayer Zaks    Pg 350 of 416

RP–420-a/b-Use (9/08)                                                                 3

c.   Do the minutes of the organization contain a resolution(s) authorizing contemplated building or other improvements?   ☐ Yes   ☐ No

If yes, attach a copy of resolution(s).

d.   State detailed financial resources for contemplating buildings or other improvements (including building fund). _____

_____

e.   When will construction begin? _____

15.  Describe, briefly, the building(s) or other improvements: _____

_____

a.   Approximate acreage of land not underlying buildings or other improvements: ____12 Acres____

b.   Use or uses of land referred to in 15a. if not described in question 10. ___part of Yeshiva campus___

c.   Are buildings or other improvements contemplated on this unimproved land?   ☐ Yes   ☐ No

If yes, give full details including proposed use(s): _____

d.   Do the minutes of the organization contain a resolution authorizing contemplated buildings or other improvements?   ☐ Yes   ☐ No    If yes, attach copy of resolution(s)

e.   State financial resources for contemplated buildings or other improvements (including building fund).

_____

_____

f.   When will construction begin? _____

16.  Are there any unoccupied buildings or other improvements on this property?   ☐ Yes   ☐ No

a.   Date(s) they became unoccupied _____

b.   Describe contemplated use(s) of the buildings or other improvements: _____

_____

_____

## VERIFICATION

State of New York

County of  Rockland                          ss:

Rabbi Aryeh Zaks                     Affirms                              President
_____, being duly sworn, says that __he is the _____
of the applicant organization, that the statements contained in this application (including the attached sheets consisting of _____ pages) are true and correct and complete, and that __he makes this application for real property tax exemption as provided by law.

                                                 Affirmed
                                        Subscribed and sworn to before me

                              this_____day of___March____ 20_21_

_____          _____
Signature of owner or authorized representative       Commissioner of deeds or notary public

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 40

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 351 of 416

RP-420-a/b-Use (9/08)                                                            3

c.  Do the minutes of the organization contain a resolution(s) authorizing contemplated building or other
    improvements?  ☐ Yes    ☐ No
    If yes, attach a copy of resolution(s).

d.  State detailed financial resources for contemplating buildings or other improvements (including
    building fund). _____
    _____
    _____

e.  When will construction begin? _____

15. Describe, briefly, the building(s) or other improvements: _____

a.  Approximate acreage of land not underlying buildings or other improvements: _____ 12 Acres

b.  Use or uses of land referred to in 15a. if not described in question 10. ___ part of Yeshiva campus

c.  Are buildings or other improvements contemplated on this unimproved land?  ☐ Yes    ☐ No
    If yes, give full details including proposed use(s): _____
    _____

d.  Do the minutes of the organization contain a resolution authorizing contemplated buildings or other
    improvements?  ☐ Yes    ☐ No    If yes, attach copy of resolution(s)

e.  State financial resources for contemplated buildings or other improvements (including building fund).
    _____

f.  When will construction begin? _____

16. Are there any unoccupied buildings or other improvements on this property?  ☐ Yes    ☐ No

a.  Date(s) they became unoccupied _____

b.  Describe contemplated use(s) of the buildings or other improvements: _____
    _____
    _____

**VERIFICATION**

State of New York
County of  Rockland                        ss:

___ Rabbi Aryeh Zaks ___        Affirms
_____, being duly sworn, says that __ he is the ___ President ___
of the applicant organization, that the statements contained in this application (including the attached sheets
consisting of _____ pages) are true and correct and complete, and that __ he makes this application for real
property tax exemption as provided by law.

                                        Affirmed
                            Subscribed and sworn to before me
                            through teleconference being present in the county
                        this  9th  day of  March      20  21

_____          _____
Signature of owner or authorized representative    Commissioner of deeds or notary public

                            David Schlachter, Notary
                            02SC6182166 Expires: 8/23/2024
                            Rockland County

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 40

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 352 of 416

# APPLICATION FOR REAL PROPERTY TAX EXEMPTION
# PROPERTY USE – <u>OCCUPANCY STATEMENT</u>

PROPERTY ADDRESS LOCATION: ___105 Carlton Rd - 80 Highview Rd___

APPLICANT ORGANIZATION NAME: ___Yeshiva chofetz Chaim Inc___

ORGANIZATION'S MAILING ADDRESS: ___18 Mountain AvenueMonsey NY 10952___

PARCEL DESCRIPTION AS IT APPEARS ON ASSESSMENT ROLL: ___49.17-2-47___

A. NAME OF OCCUPANTS:
  1. ___Yeshiva Chofetz Chaim Inc___
  2. _____
  3. _____
  4. _____

B. SPECIFY THE EXACT USE OF THE PROPERTY BY THE OCCUPANT(S):
  1. ___part of Yeshiva campus, Play ground, parking, and nature study area. All Religious use___
  2. ___Enire campus is used by the Yeshiva on site located at 82 Highview Rd___
  3. _____
  4. _____
  ***<u><i>PLEASE PROVIDE WRITTEN NARRATIVE OF WORK OR STUDENT STATUS FOR EACH RESIDENT.</i></u>

C. TERM(S) OF OCCUPANCY:
  1. ___N/A___
  2. _____
  3. _____
  4. _____

D. AMOUNT OF RENT PAID BY OCCUPANT(S):
  1. ___)0___
  2. _____
  3. _____
  4. _____

E. IS THIS PROPERTY OR ANY PORTION THEREOF AT ANY TIME USED BY OTHERS THAN
   THE APPLICANT OR THE OCCUPANTS NAMED ABOVE? YES _____ NO __X__
   IF YES, SPECIFICALLY FOR WHAT PURPOSE: _____

PRINT NAME: ___Rabbi Aryeh Zaks___    SIGNATURE: _____

TITLE: ___Pres___    TELEPHONE: ___845 538 7100___    DATE: _____

g:\forms\exemption forms\2011 exemption forms\occupancy statement.doc

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 41

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 353 of 416

# EXHIBIT N

# EXHIBIT N

ישיבה חפץ חיים מראדין

**Yeshiva Chofetz Chaim of Radin**
18 Mountain Ave Monsey NY 10952
Tel 845-538-7100  Fax 845-503-2308






Founded in Radin
by the
Chofetz Chaim Zt"l
1864 (5624)

In the U.S. by his son-in-law
Hagaon Moran
Rabbeinu Menachem
Mendel Yoseph Zaks Zt"l

In Suffern by his son
Moran Rabbeinu
Avrohom Gershon
Zaks zt"l

Harav Arych Zev Zaks Shlit'a
Rosh Hayeshiva

February 12, 2021

Scott Schedler
Town Of Ramapo
Office of the Assessor
Route 59
Suffern NY 10901

Re: Income and expense statement

Dear Mr Schedler

We submit our exemption application for this year as we have done in years past. The property in question belongs to Yeshiva chofetz Chaim Inc. and is listed in the name of 82 Highview LLC a single member LLc that belongs to the Yeshiva.

As per our discussions in years past, we are inclosing a general approximation of annual income and expenditures for the yeshiva and our campus at 82 Highview Rd. These numbers include all funds including funds raised charitably as income, and all student support Kollel stipends are included in the expenses. Funds spent in excess of income are borrowed to cover the deficit.

The Total income for the last year (School year starts in September and ends in August) is $400,000.00 Total annual expenditures are $400,000.00

Please note the numbers of this income and expense statement were not audited and were prepared exclusively for the Town of Ramapo at the assessors request for review of our real property tax exemption. We do not accept responsibility to any other person for the contents of this letter. This review did not include general accounting verification or validation procedures. Accordingly no assurance of accuracy is expressed. As mentioned earlier, we have compiled the financial information based on information readily available to us which has not been subject to an accounting review. Accordingly we, do not accept any responsibility for the reliability, accuracy or completeness of the financial information nor do we accept any liability of any kind whatsoever, including liability by reason of negligence, to any person for losses incurred as a result of placing reliance on the information provided.

Sincerely

Rabbi Zaks

# EXHIBIT O

# EXHIBIT O

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM    INDEX NO. 036879/2021
NYSCEF DOC. NO. 42    22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of    RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 356 of 416

$P$ 10

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND:        CIVIL TERM
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

YESHIVA CHOFETZ CHAIM, INC.,

                    Plaintiff,

        -against-                          Index No.
                                           033156/2020
YESHIVA CHOFETZ CHAIM, INC.,
and JOHN DOES NOS. 1-10,

                    Defendants.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

                    Rockland County Courthouse
                    One South Main Street
                    New City, New York
                    August 18, 2020
                    (Proceedings held virtually)




BEFORE:    HONORABLE SHERRI L. EISENPRESS
           Justice of the Supreme Court

APPEARANCES:

For the Plaintiff:

    LEVINE & ASSOCIATES, P.C.
    15 Barclay Road
    Scarsdale, New York  10583
    BY:  MICHAEL LEVINE, ESQ.

For the Defendants:

    SAVAD CHURGIN, ESQS.
    55 Old Turnpike Road, Suite 209
    Nanuet, New York  10954
    BY:  JOSEPH CHURGIN, ESQ.
         SUSAN COOPER, ESQ.


                                  Michele Mastropolo, RPR
                                  Senior Court Reporter

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 42
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 357 of 416

2

```
 1              THE CLERK:  This is Yeshiva Chofetz Chaim versus

 2    Yeshiva Chofetz Chaim.

 3              MR. LEVINE:  Levine & Associates, P.C. by Michael

 4    Levine for the plaintiff.

 5              MR. CHURGIN:  Joseph Churgin from Savad Churgin on

 6    behalf of the defendant along with Susan Cooper.

 7              Mr. Levine apparently sent his bylaws five seconds

 8    ago.

 9              MR. LEVINE:  I was under Court order to do it.

10              MR. CHURGIN:  Not five seconds before the

11    appearance.

12              THE COURT:  Come on, guys, look, look.  I see there

13    are other people on this call.  Who else is on the call?

14              MR. CHURGIN:  I wrote to the Court asking if I

15    could do that.

16              MR. LEVINE:  I was not going to have my client on,

17    Judge, but when I saw Mr. Churgin's client on, I got my

18    client on.

19              THE COURT:  Tell your clients to put their cameras

20    on.

21              MR. LEVINE:  Henoch, you have to put your camera

22    on.

23              MR. CHURGIN:  My clients, whoever is there for my

24    client, has put their cameras on as well.

25              THE COURT:  Cameras on, folks, or I'm going to
```

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 42

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 358 of 416

3

1      knock you off the call.

2              THE CLERK:  If they're not going to speak, put

3      their microphones on mute, please.

4              MR. LEVINE:  Judge, this is Henoch Zaks.

5              THE COURT:  Very good.  That is the son of Aryeh?

6              MR. LEVINE:  Yes, Your Honor.

7              THE COURT:  And where is Mayer Zaks?

8              MR. LEVINE:  I don't know.

9              SPECTATOR:  This is Rabbi Mayer Zaks.  I'm on.

10             THE COURT:  Hi, Rabbi.  Could you put your camera

11     on, please?

12             SPECTATOR:  Somebody is trying to help me, just one

13     second.  You have disabled access to your camera.  I'm not

14     so good at this.  I don't use -- scrolling to business --

15     turn to access to the camera.

16             THE COURT:  All right.

17             SPECTATOR:  I'm not so knowledgeable, one second.

18             MR. LEVINE:  I think my client is knocked off.

19             THE COURT:  No, your client is right there.  I see

20     him.

21             SPECTATOR:  It's disabled.  It says disabled.

22             THE COURT:  All right.  All right.  Just mute your

23     phone, and if I ask you a question, you can unmute and talk,

24     same thing for you.  Everybody is muted.

25             Look, I got your letters.  First of all, this

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM    INDEX NO. 036879/2021
NYSCEF DOC. NO. 42    22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of    RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 359 of 416

4

1    dispute can go one of two ways.

2        This dispute can go on for years and blow up into a

3    huge thing or we could do this in a way -- I mean we are

4    talking about brothers here and family members, and I don't

5    understand why documents can't be civilly exchanged,

6    everybody can't figure out what's going on.

7        Because if that doesn't happen, I will look at all

8    the documents, and I will figure out what's going on, and

9    I'm going to have to make a decision.

10        Is there any way we could try to resolve this, Mr.

11    Churgin?  I mean it's insane.

12        MR. CHURGIN:  Your Honor, I think this comes back

13    to a question of who were the trustees and who are the

14    trustees.  That's what everything goes to, and I think

15    that's a threshold question.

16        And if you deal with that question first before all

17    the other garage, it probably would be more civil.

18        THE COURT:  Let me ask you a question, both you and

19    Mr. Levine.

20        At the last conference, everyone agreed that Rabbi

21    Mayer Zaks and Rabbi -- I think he's a rabbi, too.  Is your

22    father a rabbi, Henoch?

23        SPECTATOR:  He is.

24        THE COURT:  And Rabbi Aryeh Zaks are both on the

25    board, everyone agrees.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM INDEX NO. 036879/2021
NYSCEF DOC. NO. 42
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 360 of 416
RECEIVED NYSCEF: 03/18/2022

5

1          MR. LEVINE:  No, Judge.  The only thing everybody

2     agrees to is that my client is on the board.

3          THE COURT:  No, no.  You agreed last time we were

4     here that Rabbi Mayer Zaks was on the board.

5          MR. LEVINE:  No, Judge.  He was on the board.  He

6     agrees that my client is on the board.

7          THE COURT:  The agreement was -- I was there, Mr.

8     Levine.  My brain is not dead yet.

9          You agreed -- you both agreed -- I specifically

10    asked the question, and I think I asked the question three

11    times -- that both Rabbi Mayer Zaks and Aryeh Zaks are

12    members of the board.

13         MR. LEVINE:  I think that's incorrect, Judge.

14         THE COURT:  Okay.  I heard it.  So I'm going to go

15    with that, because I heard it myself.

16         So I really don't need to be -- it wasn't that long

17    ago, and I'm not that old.  I'm old but not that old, and I

18    have the transcript.

19         So my question based on that is that is there any

20    way -- if these two are on the board, can't we select some

21    agreed-upon trustees, everybody follow the procedure?

22         Mr. Churgin is laughing like this Judge is naive.

23    I understand this has been going on a while, but this is

24    going to be an ongoing forever fight between brothers for

25    what, to what end?

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 42

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 361 of 416

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

6

```
 1              MR. LEVINE:  Judge, we have -- if I may answer that
 2       question.  We have a hearing set -- a trial set up before
 3       Judge Drain for September 4.  That is going to --
 4              MR. CHURGIN:  Not on this case.
 5              MR. LEVINE:  I need to be able to talk without
 6       being interrupted.  That's going to resolve the issue of who
 7       the trustees are.
 8              MR. CHURGIN:  No, it is not.
 9              MR. LEVINE:  I need to be able to finish my
10       statement before I'm interrupted.
11              THE COURT:  Okay.  If you can't stop and act like
12       adults, I'm going to kick you both off.  One person talks at
13       a time, not for 12 hours, and then give the other person an
14       opportunity to respond.
15              Mr. Levine, finish your answer.
16              MR. LEVINE:  So we have this hearing coming up on
17       September 4 before Judge Drain.  That's going to resolve the
18       issue of corporate governance.
19              There are significant disputes about who is
20       trustees on what board.  I only started this action with
21       Judge Drain's permission because we have information that
22       Rabbi Aryeh Zaks filed a PPP --
23              THE COURT:  Okay.  I don't need the whole gishpeel
24       all over again.  I got it.  I know what the issues are.
25              But how is Judge Drain's action going to resolve
```

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 12
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 362 of 416

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

7

1    the governance issue?

2         MR. LEVINE:  That's the single issue before him

3    right now, the corporate governance, and he said multiple

4    times on the record that that is going to -- that's the key

5    that's going to unlock the entire door.

6         THE COURT:  Here's what I'm going to do.  I'm going

7    to call Judge Drain myself, and I'm going to find out what's

8    going on in that Court and what the hearing is about on

9    September 4 and what his orders are with respect to the

10   activities.

11        And in the meantime, I want all the documents that

12   both of you were supposed to produce.

13        Where are they, by the way?

14        MR. LEVINE:  I was supposed to get them today.

15        MR. CHURGIN:  So Your Honor, can I be heard on

16   that?

17        MR. LEVINE:  You wanted them --

18        THE COURT:  Mr. Levine, I didn't ask you.

19        I asked Mr. Churgin.  Go ahead.

20        MR. CHURGIN:  Look, he was ordered to produce

21   bylaws.  We got -- five minutes ago we got bylaws that

22   looked like they were typed on a word processor yesterday.

23   They're brand new.  There's nothing --

24        MR. LEVINE:  That is outrageous.

25        THE COURT:  Mr. Levine, do not speak.  Mr. Levine,

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 42
INDEX NO. 036879/2021
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 363 of 416
RECEIVED NYSCEF: 03/18/2022

8

1    mute your phone, and don't speak until I talk to you.

2              MR. LEVINE:  I'm muting.

3              MR. CHURGIN:  Okay.  So Your Honor, we would have

4    to -- there's other documents that have to exist to show

5    whether this was authentic or not because it doesn't look

6    like anything.

7              However, however, in terms of the production that

8    you had asked of us, Your Honor, we are very much concerned.

9    There was a deposition of Aryeh on Friday.

10             THE COURT:  So let me stop you.  So what I'm

11   hearing is that no one really complied with my order.

12   That's what I'm hearing.

13             MR. CHURGIN:  Your Honor, I filed an order to show

14   cause to ask you for relief from the order.  I at least did

15   that.

16             THE COURT:  I don't have an order to show cause.

17   Do I?

18             MR. CHURGIN:  I delivered it myself personally on

19   Friday, Your Honor.  I handed it in on Friday.

20             THE COURT:  Did I sign it?

21             MR. LEVINE:  No.

22             MR. CHURGIN:  No.

23             THE CLERK:  I have it here.  I was out Friday and

24   Monday, so I have it on my desk to be brought down.

25             THE COURT:  When orders to show cause come in,

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM          INDEX NO. 036879/2021
NYSCEF DOC. NO. 42     22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of   RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks     Pg 364 of 416

9

1       Alicia, and you're not here, someone has to deal with that.

2             So I didn't see the order to show cause. So I had

3       no idea about it, number one.

4             Number two, I thought that I asked for all the

5       documents to be exchanged and not just a set of bylaws faxed

6       five minutes before a conference, Mr. Levine.

7             I asked for a whole series of documents to be

8       exchanged. I asked you, Mr. Churgin, to exchange documents

9       that were designated for attorneys' eyes only, and neither

10      of you have done what I ordered.

11            MR. LEVINE: May I be heard, Judge?

12            THE COURT: I don't know if I would need to hear

13      anymore. I issued an order. Neither of you complied.

14            MR. LEVINE: I complied with your order.

15            THE COURT: Compliance is not faxing bylaws five

16      minutes before we have a telephone conference. That's not

17      compliance. Stop.

18            MR. LEVINE: In your --

19            THE COURT: Shira, mute these people.

20            MR. LEVINE: It's not fair that I can't be heard.

21            THE COURT: I will let you be heard when I want you

22      to be heard. Mute them.

23            The Court Reporter can't take down when everybody

24      is yelling at each other, and I'm not going to listen to it.

25      So one person at a time.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM          INDEX NO. 036879/2021
NYSCEF DOC. NO. 42          22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of   RECEIVED NYSCEF: 03/18/2022
                            Rabbi Mayer Zaks     Pg 365 of 416

                                                                              10

 1          I did not see any documents, and from what I

 2     gather, Mr. Churgin hasn't provided you with documents, Mr.

 3     Levine, and all you got from Mr. Levine, as best as I could

 4     tell, Mr. Churgin, is a set of bylaws that may or may not be

 5     real faxed to you five minutes ago.

 6          Do I have that right?

 7          MR. LEVINE:  Are you asking me, Judge?

 8          THE COURT:  Yes.  Do I have that right?

 9          MR. LEVINE:  I produced bylaws.  That's what you

10     ordered me to do.

11          THE COURT:  No, that's not what I ordered you to

12     do.  What I ordered you to do was to produce all the

13     documents that show the election of the members that you're

14     claiming are on the board of trustees, not a set of bylaws

15     whether they're created yesterday or three years ago.

16     That's not sufficient.

17          That doesn't prove anything other than what the

18     process is for selection.

19          Mr. Churgin, I didn't ask you to file an order to

20     show cause.  I asked you to produce documents.  So again,

21     neither one of you have complied with my order.

22          So here's what we are going to do.  By Monday at

23     5:00, both of you are going to produce all of those

24     documents to my chambers.

25          I'm going to review those documents, and then we

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 42

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 366 of 416

11

1    are going to have a conference.

2         Any questions?  Now you're all muted.

3         Am I off next week?  By Friday, not Monday.  Unmute

4    them and see if they could behave.  Unmute yourselves.

5         MR. LEVINE:  Judge, please can I just have two

6    minutes to talk?  You don't want me to talk?  I won't talk.

7         We argued this before you, and you directed them to

8    give me -- attorneys' eyes only -- the application.

9         THE COURT:  Mr. Levine, I don't really need you to

10   summarize what happened.  I know what happened.  I was

11   there.

12        MR. LEVINE:  But you ordered me to give them bylaws

13   and any minutes that I could find of any meetings.  That's

14   what you ordered me to do.

15        THE COURT:  And any documents that support your

16   contention as to who the trustees are.

17        So you're telling me that -- you're telling me you

18   have no documents, period?

19        MR. LEVINE:  No, I'm not telling you that.

20        I'm telling you that I told you during our

21   conference that the bylaws were immediately available.

22        I told you that I would have my client do a search

23   for any other minutes.  He's in the process of that search.

24        I will produce those documents, but that's not the

25   point.  Mr. Churgin wanted to produce them in camera, and

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 12
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 367 of 416

12

1      you denied that.

2             He brings an order to show cause.  I spend hours

3      putting in opposition papers that shows the law that there's

4      no way you could issue a stay on this thing.

5             He has done nothing -- how has your order changed

6      between then and now?  Why can't I have the documents for

7      attorneys' eyes only?

8             They put in papers that says we suspect that

9      (inaudible) harassing people.  Mayer Zaks says for the first

10     time -- for the first time -- I didn't sign the application

11     for the PPP loan.  Mayer Zaks says that in his order to show

12     cause.  Some undisclosed person supposedly signed it --

13            MR. CHURGIN:  The --

14            THE COURT:  This conference is over.  You gentlemen

15     need to learn how to be civil and polite and respectful

16     which you're clearly unable to do today.

17            So by Friday at 5:00, I expect all the documents

18     from both of you.  Actually, I'm going to make it Thursday.

19     Thursday at 5:00 I expect all the documents in my chambers.

20            MR. LEVINE:  May I say one more thing?

21            THE COURT:  No, you cannot.  No, you cannot.  No,

22     you cannot say anything.

23            MR. LEVINE:  Why?

24            THE COURT:  Because I said so.  Because I said so.

25            So I want the documents in my chambers Thursday at

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 42    22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks    Pg 368 of 416
RECEIVED NYSCEF: 03/18/2022

13

1    5:00, and we will let you know what time on Friday we are

2    going to reconvene this conference, and if you guys can't be

3    civilized and you can't be polite, then you're going to come

4    in in person, and you're going to spend hours sitting in

5    this courtroom waiting to have your conference.

6            MR. LEVINE:  I think I was quiet and Mr. Churgin

7    was -- you said on the record last time --

8            THE COURT:  Okay.  We are done.  This conference is

9    over.  This conference is over.  I issued my order.  This

10   conference is over.  Thank you, everybody.

11

12

13

14   *****************************************************************

15

16                    C E R T I F I C A T I O N

17

18       The foregoing is hereby certified to be a true and

19   accurate transcript of the VIRTUAL proceedings as transcribed

20   from my stenographic notes to the best of my ability as the

21   parties are required to wear face masks due to COVID-19.

22

23                                    *Michele Mastropolo*

24                              Michele Mastropolo, RPR
                               Senior Court Reporter

25

22-22493-shl     Doc 7-1     Filed 08/03/22     Entered 08/03/22 10:30:01     Declaration of
Rabbi Mayer Zaks     Pg 369 of 416

# EXHIBIT P

# EXHIBIT P

1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF ROCKLAND:        CIVIL TERM
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

YESHIVA CHOFETZ CHAIM, INC.,

                    Plaintiff,

        -against-                        Index No.
                                         033156/2020
YESHIVA CHOFETZ CHAIM, INC.,
and JOHN DOES NOS. 1-10,

                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

                        Rockland County Courthouse
                        One South Main Street
                        New City, New York
                        August 19, 2020
                        (Proceedings held virtually)


BEFORE:    HONORABLE SHERRI L. EISENPRESS
           Justice of the Supreme Court

APPEARANCES:

For the Plaintiff:

     LEVINE & ASSOCIATES, P.C.
     15 Barclay Road
     Scarsdale, New York  10583
     BY:  MICHAEL LEVINE, ESQ.

For the Defendants:

     SAVAD CHURGIN, ESQS.
     55 Old Turnpike Road, Suite 209
     Nanuet, New York  10954
     BY:  JOSEPH CHURGIN, ESQ.
          SUSAN COOPER, ESQ.


                             Michele Mastropolo, RPR
                             Senior Court Reporter

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 43

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 371 of 416

2

1          THE COURT:  Okay.  So this is a conference on Chaim

2     versus Chaim, et al.  Appearances?

3          MR. LEVINE:  For the plaintiff, Levine &

4     Associates, P.C. by Michael Levine.

5          MR. CHURGIN:  Joseph Churgin from Savad Churgin on

6     behalf of the defendant, and Susan Cooper is directly with

7     me to my right.

8          THE COURT:  Okay.  I see someone else on this line.

9     I don't know what it is.

10          MR. CHURGIN:  It could be my client.  It could

11     Michael's client.

12          MR. LEVINE:  I don't believe it's my client.  Could

13     you identify yourself, sir or ma'am?

14          THE COURT:  Who is the other person on this call?

15          SPECTATOR:  Rabbi Zaks.

16          THE COURT:  Which one?

17          SPECTATOR:  Rabbi Mayer Zaks.

18          THE COURT:  Mr. Levine, is your client joining?

19          MR. LEVINE:  I don't believe so, Judge.  I didn't

20     ask him to.

21          THE COURT:  Okay.  All right.  So I got the order

22     to show cause, and what I'm going to ask in light of

23     yesterday's conference, is that no one talk until I ask you

24     to talk.  I will give -- I promise I will give even equal

25     opportunity to address what I'm about to say, but not if you

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM          INDEX NO. 036879/2021
NYSCEF DOC. NO. 43    22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of    RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 372 of 416

3

1    interrupt each other or me.

2          So here's the problem that I keep encountering when

3    I go round and round in a circle on this is that,

4    Mr. Churgin, you submitted affidavits from people saying we

5    affirm the arbitration agreement on behalf of the board of

6    trees.  Okay, that's awesome.  And in most circumstances, I

7    would say okay, go to arbitration then, bye and smile and go

8    have a drink.

9          But in this case, the problem I have with doing

10    that is the allegation is that they're not actually the

11    board of trustees.  So how do I do that?

12          And similarly, you know, Mr. Levine says his

13    clients are entitled as the board of trustees to see all

14    this stuff and whatever, but how do I know they're the board

15    of trustees?

16          So I think as I go round and round on this, is that

17    there needs to be an order, for any of the issues to be

18    decided, I need to know who the board of trustees is.

19          And then I could decide does it go to arbitration,

20    because if your guys are in the board of trustees and

21    they're telling me they all agree, then I'm sending it to

22    arbitration.

23          But if his guys are the board of trustees, and

24    they're -- Mr. Levine's guys are the board of trustees and

25    they're objecting to that and saying we didn't sign it on

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 43

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 373 of 416

4

1    behalf of the yeshiva and we don't want to go, and we are

2    entitled to see the PPP and if they're the actual board,

3    then they're entitled to that, and I think you both would

4    agree with all of those things I just said, right,

5    Mr. Churgin?  You're shaking your head yes.

6         And Mr. Levine, do you disagree with that premise?

7         MR. LEVINE:  Slightly, Judge.  Did you get a chance

8    to see my opposition papers to the TRO?

9         THE COURT:  I did not, no.  I don't know what the

10   story is.  I think -- did you upload them to the e-file --

11        MR. LEVINE:  Yeah.

12        THE COURT:  I don't know why -- there's something

13   going on in the clerk's office.  I have to find out but no,

14   I haven't.  Go ahead.

15        MR. LEVINE:  I'm upstate right now.  I'm coming

16   home tonight.  I could give you those delivered to you

17   tomorrow morning, but I agree that the issue ultimately of

18   who is a trustee is important, but I don't think it's

19   important for the issue of the PPP because --

20        THE COURT:  Well, go ahead.

21        MR. LEVINE:  Whoever the trustee is -- whoever the

22   trustees are -- everybody is acknowledging that Rabbi Mayer

23   Zaks is -- Rabbi Aryeh Zaks is a trustee.

24        So he, as a trustee -- this is what we argued

25   before you last time, Judge -- he has a right to know

5

1  whether or not the entity has filed an improper application

2  or what happened to the money.

3        So I'm happy to have a conference or a hearing,

4  whatever you want, but I don't think that should affect our

5  ability to determine whether or not this is a valid PPP

6  because my client is an acknowledged trustee at the worst.

7        THE COURT:  I looked back.  I read the transcript.

8  So just -- not to put a fine point on it -- but I did ask

9  for things beyond the bylaws --

10        MR. LEVINE:  Yes, you did.

11        THE COURT:  -- as I recalled yesterday.

12        MR. LEVINE:  You were correct.

13        THE COURT:  And so I want those documents.  I mean,

14  look, I thought -- and it did seem, although, it was a

15  little more confusing than I remember it being, the colloquy

16  about both of them being on the board, you know, it does

17  seem to me that -- it seems to me that both brothers are on

18  the board.

19        MR. LEVINE:  I accept that premise for now.  I

20  accept that premise for the purpose of this motion.

21        THE COURT:  Okay, as does Mr. Churgin, correct?

22        MR. CHURGIN:  I accept that Aryeh is a trustee.

23  However, Aryeh's actions that he has been taking as late as

24  Friday which was after the last appearance --

25        THE COURT:  I'm going to get to that.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 13

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 375 of 416

6

1          MR. CHURGIN:  Okay.

2          THE COURT:  So look, clearly, there's -- we have to

3     sort that out, and I understand your point, Mr. Levine, that

4     potentially, just as a board member he would be entitled to

5     that, but there is all kinds of things allegedly going on.

6          So here's what I'm going to do.  I'm going to have

7     -- as I said yesterday -- I want the following documents

8     produced for my -- initially for my in-camera review, and

9     those documents are going to include the following:  The PPP

10    loan application I want, and along with that, Mr. Churgin, I

11    would like to see who got paid from the proceeds of that

12    loan, and when I say who got paid, I would like them

13    identified by who they are.  Are they teachers?  Are they

14    students?  Are they -- what their role is.

15         And I assume also certain expenses got paid out of

16    that money, like utilities or rent or whatever.  So I would

17    like to see an accounting of what got paid out of that money

18    and who got paid, if it was paid to individuals, and the

19    final piece of that is I would like to know who, if any, of

20    those people got, you know, tax forms in connection with

21    that not because -- I don't know and I would have to look at

22    the PPP rules.  Maybe you could pay people who are in the

23    capacity of the students that you're talking about.  I don't

24    know.  I don't know what the rules are.  I don't know how

25    they were represented.  So I have to look into that.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 43
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 376 of 416
RECEIVED NYSCEF: 03/18/2022

7

1          If you want to submit with those documents a short

2     argument on what the rules are and why the application is in

3     conformance with those rules, you can do that.

4          If Mr. Levine then wants to submit a letter saying

5     -- well, I don't know that we want to get into it, the

6     argument itself, but if you want to submit that, obviously

7     copied on Mr. Levine, so that it could be reviewed because

8     Mr. Levine did represent that he would withdraw this lawsuit

9     if, in fact, it wasn't a fraud, and so let's at least use

10    that as a starting point, and obviously, if we need to go

11    further, we will, but then I would also like from you, Mr.

12    Levine, I want all of the documents -- I have the bylaws.  I

13    would like to see all of the minutes, resolutions or any

14    other documents relating to or concerning the election of or

15    appointment of members of the board of trustees and/or --

16    well, and officers of the board.

17         Mr. Churgin, I would like those same documents from

18    you because you also -- we got two sets of people claiming

19    they are board members.  So let me see everybody's support

20    for their folks being the board members and officers.

21         MR. CHURGIN:  Your Honor --

22         THE COURT:  That's number two.  Let me finish.  I

23    will get to you.

24         The third thing I want is I want all documents from

25    Joseph Haspel's file which relate to the yeshiva -- not -- I

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 43
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 377 of 416
RECEIVED NYSCEF: 03/18/2022

8

1    mean with respect to any of these issues, so anything he may

2    have or -- I don't know if he has any at all -- but anything

3    relating to the PPP, anything relating to the appointment or

4    election of trustees, the removal of trustees, any of those

5    documents, so we could see -- and I gather from what you

6    have said in your order to show cause that Rabbi Aryeh Zaks

7    communicated with Mr. Haspel and asked him not to provide

8    those documents.  So I want all those documents provided to

9    me so I can see if I could get a sense from the documents

10   what's going on.

11        I will obviously reconvene with both of you to

12   discuss that afterwards and to see if there are any

13   additional questions I have.

14        With respect to the mortgage documents, I have a

15   call -- my law clerk has spoken with Judge Drain's law

16   clerk, and I'm scheduling a time to speak with Judge Drain

17   to get an idea of what he views as the item -- the

18   particular issues that are stayed to see whether or not the

19   mortgage is part of what we are doing here or if it has to

20   await his determination.

21        If he does not say that this is stayed, then I'm

22   going to want all the mortgage documents as well.  So as

23   soon as I have that information from Judge Drain, I'm going

24   to have my law clerk reach out to you, Mr. Levine and Mr.

25   Churgin, and let you know if I want those documents or not.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 43

INDEX NO. 036879/2021

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 378 of 416

RECEIVED NYSCEF: 03/18/2022

9

1          And I was just handed your opposition which I will

2     read, but I think that this initial determination keeps

3     everything kind of status quo.  The bills are getting paid

4     pursuant to what I ordered the other day.  So nothing is

5     going to fall apart while I review these documents, and then

6     I will be able to -- and we have a date already set for a

7     hearing in the event that I determine we still need one, and

8     otherwise, if I determine it goes to arbitration, I will let

9     you know that as well.

10          Okay.  Go ahead, Mr. Churgin, and then I will hear

11     from Mr. Levine.

12          MR. CHURGIN:  So just I want to clarify.  When you

13     mention the mortgage, because I was going to ask you about

14     that, we are talking about the mortgage on the yeshiva's

15     property, not on Mosdos' property, on the yeshiva's

16     property, correct?

17          THE COURT:  Yeah.  That's all -- the Mosdos -- I

18     don't even know what Mosdos is -- but whatever mortgage is

19     there -- the allegation with respect to the mortgage that

20     you made is that it was improperly made a debt of the

21     yeshiva, correct?

22          MR. CHURGIN:  That's my allegation, sure.

23          THE COURT:  Right, so but Mr. Levine is saying that

24     that issue is something that's being handled in the context

25     of the bankrupt case.  You say that's not true.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021

NYSCEF DOC. NO. 43
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 379 of 416
RECEIVED NYSCEF: 03/18/2022

10

1          So like all the other issues, I have no idea.  So

2     I'm going to talk to Judge Drain and find out exactly the

3     scope of what is before him, and if it's before him, I'm

4     going to leave it, and if it's not before him, I will deal

5     with it, and then I will get the mortgage documents and look

6     at those as well.

7          MR. CHURGIN:  And I just want to remind Your Honor,

8     I'm sure you do remember it, but I took notes on it.  Mr.

9     Levine said that yesterday that Judge Drain's hearing in

10    early September -- the date I don't remember, the 3rd,

11    4th --

12         THE COURT:  September 4.

13         MR. CHURGIN:  -- was going to be determinative of

14    the issue of who the trustees of YCC are.  That's the

15    question that I think you need to know.

16         MR. LEVINE:  That's not what I said.

17         MR. CHURGIN:  It's what you said yesterday,

18    absolutely.

19         MR. LEVINE:  I will clarify when I get my chance.

20         THE COURT:  Here's what I'm going to ask Judge

21    Drain.  I'm going to ask Judge Drain what issues are before

22    him for the September 4 hearing, and specifically, is the

23    issue of the makeup of the board of trustees before him

24    and --

25         MR. CHURGIN:  Of YCC, that's what's important.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 43
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 380 of 416
RECEIVED NYSCEF: 03/18/2022

11

1    He's going to think that the question of the makeup of the

2    board of Mosdos is in front of him and it is.

3           MR. LEVINE:  No, just when I get my chance --

4           THE COURT:  I'm not concerned about the board of

5    trustees of Mosdos.

6           MR. CHURGIN:  I know.

7           THE COURT:  Mosdos is not a party in front of me.

8    So I will specify that it's the trustees of YCC.

9           MR. CHURGIN:  Thank you.

10          THE COURT:  And I will also ask him if the issue of

11   YCC's mortgage is 9.2 million or 12 million -- I'm not quite

12   clear -- if that is before him and if that is -- and if

13   that's been stayed.  Those are the two questions I want an

14   answer to.

15          If there's anything else you want him me to ask

16   him, I'm happy to do that.

17          MR. LEVINE:  Yes, Judge.  As soon as I get my turn,

18   I will address that.

19          THE COURT:  Mr. Churgin, anything else?

20          MR. CHURGIN:  I'm good, Your Honor.  The only thing

21   I would say is that given what you're asking, can we have

22   two weeks to provide it, both sides?

23          THE COURT:  Yes, if you need it.

24          MR. LEVINE:  I think that's a little lengthy.

25          THE COURT:  The reality is that actually I'm going

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 13
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 381 of 416
RECEIVED NYSCEF: 03/18/2022

12

1    to be out next week anyway.  So how about if you get it by

2    the end of the day next Friday?  So it's kind of like a week

3    and a half.

4            MR. CHURGIN:  Okay.

5            THE COURT:  And that way when I come on Monday, the

6    following Monday, I should have all of the documents.

7            Okay.  Mr. Mr. Levine, go.

8            MR. LEVINE:  I just want to say a couple of things

9    Judge.  Haspel's files are comprised of about nine boxes of

10    materials.  So I don't know if he still has them in hard

11    copy or electronic form, but it's a quite a bite of stuff.

12    I think your decision is very rational.  I think it makes a

13    lot of sense.

14            I just want to clarify the Judge Drain situation

15    and the YCC situation so that you know what to ask him

16    intelligently.

17            In the first place, there were letters sent to him

18    by Mr. Churgin and myself that lay out the issues as to

19    what's here and whether it is or it isn't stayed.  So you

20    may want to just remind him that he has those two letters

21    that set forth that information.  It's not the --

22            THE COURT:  Do I have those letters?

23            MR. LEVINE:  No, Judge.  I'm happy to send them to

24    you -- wait, yes, you do, in my original opposition papers.

25            THE COURT:  Could you do me a favor?  Could you

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 43
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks     Pg 382 of 416
RECEIVED NYSCEF: 03/18/2022

13

1    e-mail both letters, yours and Mr. Churgin's to my law

2    secretary and copy Mr. Churgin on that e-mail.

3          MR. LEVINE:  Yup, and just so I'm clear, that's the

4    address that we got the notices from today, that e-mail

5    address?

6          THE COURT:  No, I'm sorry.  E-mail them to SKrance,

7    to Shira, at NYcourts.gov and then copy Mr. Churgin.

8          MR. LEVINE:  So just so I could finish it up, Judge

9    -- and I do think this is a very well-thought-out

10   decision -- the issue with the mortgage is -- I know Mr.

11   Churgin is saying it's the mortgage itself -- but that

12   mortgage has been paid.  There's no more debt that YCC has

13   with respect to that mortgage.

14         The issue is that the payment came from a mortgage

15   that was obtained on property that was owned by Chofetz

16   Chaim, not the yeshiva, but the other entity, Mosdos Chofetz

17   Chaim.

18         And what they're claiming in their complaint -- I

19   know it's crazy -- what they're claiming in their complaint

20   is that that payment of the mortgage was somehow improper

21   because the mortgage on the Mosdos property should not have

22   been used to pay the yeshiva property.  That's what the

23   allegation is in the complaint.

24         And that's -- you will see that in the letters, Mr.

25   Churgin's and my letters.  That's the issue.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 43
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 383 of 416

14

1          It's not was the mortgage proper.  It's that

2     mortgage that was used to pay it, that's what is before

3     Judge Drain.  That's what they're saying was improper, and

4     he's going to decide that.

5               THE COURT:  Who is this Mosdos?  What is that?

6               MR. LEVINE:  The two Zaks brothers owned at one

7     point Mosdos --

8               MR. CHURGIN:  It's a religious corporation.

9               THE COURT:  I will get back to you, Mr. Churgin.

10    Don't interrupt.  I will let you talk.  Go ahead.

11              MR. LEVINE:  They and their wives were the initial

12    trustees on Mosdos.  That filed the bankrupt petition before

13    Judge Drain.

14              Ultimately, there was a bankruptcy plan, an amended

15    bankruptcy plan, and a confirmation order that confirmed the

16    amended plan.  That confirmation order basically said that

17    that mortgage is a valid mortgage and permitted the sale of

18    the property.

19              Since then -- and of course it's my position --

20    since then Rabbi Mayer Zaks has been doing everything he

21    can, foreign shopping, to try to get Judge Drain's decision

22    in the confirmation order reversed.  So he went to Judge

23    Thorsen with this thing.  He's gone to beth dins and now

24    he's before this Court.

25              So the reason Judge Drain put a hold on anything

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 43
22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks      Pg 384 of 416

15

```
 1        was because he didn't want there to be a contrary ruling

 2        that would in any way affect his confirmation order, and if

 3        there is a ruling with respect to the mortgage on YCC or

 4        yeshiva, if there's a ruling on that that somehow says that

 5        the payment of that mortgage was improper -- because that's

 6        what they're alleging -- then whatever Court says that is

 7        conflicted with Judge Drain's order that said that that

 8        mortgage is valid, it's in his confirmation order and that

 9        the property can be sold to satisfy that mortgage.  So it's

10        a little complicated, Judge, but that's basically the issue.

11             THE COURT:  I don't think I quite understand that

12        that way.  So go ahead, Mr. Churgin.  Now tell me why --

13        tell me your view on that.

14             MR. CHURGIN:  So he's satisfied a mortgage, right,

15        that's fine.  If the mortgage was taken out -- if the

16        initial mortgage was taken out fraudulently or improperly

17        and the money was utilized improperly or fraudulently, the

18        satisfaction of it by another mortgage -- it's the same

19        problem.  We have to know where all the money went.

20             THE COURT:  So YCC had a mortgage, yes?

21             MR. CHURGIN:  YCC didn't.  That's the problem.  YCC

22        was free and clear.  They put down a mortgage and then they

23        paid it off and it's where the money went.

24             THE COURT:  So it's your argument -- this is what

25        I'm trying to understand -- is your argument that the fact
```

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 43

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 385 of 416

16

1    that a mortgage was placed on YCC's property was improper in

2    the first instance?

3            MR. CHURGIN:  Yes.

4            THE COURT:  Okay.  So now let me ask you a followup

5    question.  Let's assume you're right and the mortgage was

6    improper, and then let's assume that it gets paid off with

7    this mortgage that they got on this Mosdos property.

8            MR. CHURGIN:  Right.

9            THE COURT:  Okay.  So now YCC --

10            MR. CHURGIN:  I could explain.

11            THE COURT:  -- has no debt, has no debt, has no

12    issue, there's no one going after them, right, and Mosdos at

13    the moment, at least, has an order from a bankruptcy court,

14    right, that says that mortgage on Mosdos is good.  So how

15    does -- how do I get involved in deciding anything about a

16    YCC mortgage or a Mosdos mortgage when YCC's mortgage is

17    gone?  So whether it was wrongfully placed there or not,

18    it's gone, and I don't think you're alleging that any YCC

19    funds were used to pay the YCC mortgage, right?

20            MR. CHURGIN:  So Your Honor, the answer to the

21    question is that a related entity to let's say Mosdos

22    Chofetz Chaim, Inc., another entity which is owned by

23    Henoch, not a religious entity, is claiming that it is

24    holding onto the note -- the mortgage wasn't satisfied.  It

25    was basically assigned.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 43

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 386 of 416

17

1           So he's saying now that his company -- his private

2       company -- is owed -- originally, he said 9.3 million

3       dollars and now he's saying it's 12 million dollars, and

4       it's YCC he's claiming owes the money.

5           THE COURT:  Okay.  So let me go back to Mr. Levine

6       for a minute.  Mr. Levine, you said to me that the YCC

7       mortgage was satisfied.

8           MR. LEVINE:  Yes.

9           THE COURT:  That doesn't sound like a satisfaction.

10      That sounds like an assignment.  So maybe the original

11      mortgage was satisfied, but there's still someone hanging

12      out there with a note for the payment of that mortgage?

13          MR. LEVINE:  Not for that mortgage, the notice for

14      payment of other expenses for YCC, but whether that's the

15      allegation or not, that's not what's in the complaint.

16          The complaint is alleging that the mortgage was

17      satisfied.  That's what the complaint says before Judge

18      Thorsen which is now before you.

19          THE COURT:  There's a very simple answer to that.

20      Is there a satisfaction of mortgage recorded with the

21      Rockland County Clerk's Office?

22          MR. LEVINE:  Yes.

23          THE COURT:  Mr. Churgin?

24          MR. CHURGIN:  Your Honor --

25          THE COURT:  Yes or no?  Yes or no?

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 43
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 387 of 416

18

1    MR. CHURGIN:  I don't know the answer whether a

2    satisfaction is recorded.  I know the Henoch Zaks claimed

3    that YCC owes 12 million dollars, 12 million dollars as a

4    result of this.

5    THE COURT:  But you understand why it's important

6    as to whether it's the mortgage or not, because if Judge

7    Drain is handling the mortgage issue -- and as I just laid

8    it out -- so if YCC had a mortgage, proper or improper, that

9    was paid off and satisfied, and a satisfaction is filed with

10    the clerk's office, right, then there's no mortgage issue

11    for me to decide.

12    Now if Henoch Zaks has a claim for some 12 million

13    dollars for something else and against YCC and YCC's not

14    paying, and I think Henoch Zaks is going to have to file a

15    lawsuit against YCC to collect that money, and YCC can

16    respond by saying we don't owe that money, we don't have

17    that debt, we never incurred those expenses and this is

18    nonsense.

19    But I don't understand -- I'm really keeping this

20    on somewhat of a procedural level.  I'm not making any

21    substantive assessments here, but why would I decide

22    anything related to the Mosdos mortgage if YCC's mortgage

23    has been satisfied?

24    MR. CHURGIN:  Because we need to see where the

25    money that was received for that mortgage was utilized.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 43
RECEIVED NYSCEF: 03/18/2022

22-2493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks     Pg 388 of 416

19

1          THE COURT: Wait.  Say that again.

2          MR. CHURGIN:  Look, you give a mortgage on a

3     property in exchange for money usually.  That's what

4     happened here.  We need to see where that money went.

5          We believe that money was not utilized for YCC for

6     its purposes.  It was just, essentially, I have a property

7     that has equity in it, I'm going to use that equity to get

8     money, and the money is going all over the place, not for

9     the yeshiva, and that's what this case is about.

10          THE COURT:  I get that.  I get that, but let me

11     follow that up with a question.  Mute your phones -- I'm

12     getting an echo -- or your computer, whatever.  I'm getting

13     an echo.

14          So let's say YCC had a building.  The building had

15     equity, and they used that equity to get money to do

16     something unrelated to YCC, right?  Again, I'm adopting your

17     view of this.  So they used that money to go buy other

18     property, to go pay other expenses, whatever.

19          But then, the YCC mortgage gets paid off by someone

20     else, whoever, so they no longer have that mortgage, so now

21     their equity is back intact and they have not suffered any

22     damages because they haven't paid that mortgage out of their

23     pocket, right?  They haven't been prevented from selling

24     because of this lien.  Like what's the damage to them?

25     Let's say you're right.  What's the damage to them?  What

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 43
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 389 of 416
RECEIVED NYSCEF: 03/18/2022

20

```
 1    you're really fighting over is the use of money from -- in

 2    Mosdos.

 3              MR. LEVINE:  Exactly correct.

 4              THE COURT:  That's what you're really fighting

 5    over.  What is the damages to --

 6              MR. CHURGIN:  There's a note.  Your Honor, there's

 7    a note.

 8              THE COURT:  So that's why I was asking about that.

 9    But how does he -- but there's no lawsuit about the note.

10              MR. LEVINE:  No, there's not.

11              THE COURT:  I think the wrong lawsuit has been

12    filed here.  I think -- unless Judge Drain says deal with it

13    all, I'm out, which he might -- but I think it's the wrong

14    lawsuit.

15              I think the lawsuit has to be -- when someone is

16    making a claim -- to enforce that note, right?  If Henoch

17    Zaks is trying to collect on that note, then that's not

18    appropriate under your theory of what happened here.

19              But if there's no collection on the note, there's

20    no payment on the note, there's no mortgage left

21    outstanding, how is that impacting YCC?

22              MR. CHURGIN:  And Your Honor, I think that's the

23    reason why there was an amended complaint in the lawsuit

24    before Judge Thorsen, because this did happen in steps and

25    stages.
```

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 43
INDEX NO. 036879/2021
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 390 of 416

21

1          There is an amended complaint that I think the

2     Court should review.

3          THE COURT:  Okay.  I will take a look.

4          Does that allege the existence of this note in an

5     attempt to collect on it?

6          MR. CHURGIN:  And I say as well, hard money loans

7     that were taken out as well.

8          THE COURT:  Hard money loans taken out by who?

9          MR. CHURGIN:  Well, we are going to say by the

10    other side.

11         THE COURT:  Allegedly by YCC -- by the other side?

12         MR. CHURGIN:  By the other group, by the other

13    group.

14         THE COURT:  Okay.  And those loans still exist, or

15    have they been paid off?

16         MR. CHURGIN:  I think that's the genesis -- it's

17    hard to tell what the genesis of his claim for 12 million

18    dollars is -- but I think that's the genesis of his claim

19    for 12 million dollars.

20         THE COURT:  So let me ask you a question.  Has he

21    made a claim for 12 million dollars?

22         MR. CHURGIN:  Has he brought a lawsuit?  No, but he

23    certainly testified about it in the bankruptcy court and I

24    believe --

25         THE COURT:  Hang on a minute.  Mr. Levine?

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021

NYSCEF DOC. NO. 13
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 391 of 416

22

1           MR. LEVINE:  Yes, Your Honor.

2           THE COURT:  Is your client or your client's son --

3      is he a party?  I don't even know.

4           MR. CHURGIN:  Yes.

5           MR. LEVINE:  He's a party to the action before

6      Judge Thorsen.

7           THE COURT:  Which is now before me.

8           MR. LEVINE:  Yes.

9           THE COURT:  Is he seeking to enforce a 12 million

10     dollar note against YCC, whoever the trustees are?  Is he

11     seeking to do that?

12          MR. LEVINE:  No, there's no counterclaim or action

13     seeking to enforce any note.

14          You could look at the amended complaint, but I

15     believe Mr. Churgin is incorrect in his assessment of it,

16     but you could see the complaint for yourself.  I'm happy to

17     e-mail it to Shira together with the two letters if Your

18     Honor wants.

19          THE COURT:  That's fine, do that, but is it his

20     intention to try to collect 12 million dollars from YCC?

21          MR. LEVINE:  No, it's not.

22          THE COURT:  How did he get this note?  What is this

23     note supposed to be -- Joe, Joe.

24          MR. CHURGIN:  Yes.

25          THE COURT:  I could hear you.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 43

INDEX NO. 036879/2021

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 392 of 416

RECEIVED NYSCEF: 03/18/2022

23

1          MR. CHURGIN:  I'm sorry, Your Honor.  I believe

2     that in Henoch's submission in one of these motions, he

3     mentions the 9.3 million dollar loan --

4          MR. LEVINE:  Not the loan.  He indicates that

5     there's an indebtedness.

6          MR. CHURGIN:  Okay.  You're calling it one thing,

7     tomato/tomato.

8          MR. LEVINE:  But he hasn't started any action, nor

9     is he asserting a counterclaim.

10          THE COURT:  We are not doing this, guys.  We are

11     not.  We are not.  One at a time.

12          Mr. Levine?

13          MR. LEVINE:  Yes, Your Honor.

14          THE COURT:  He has a note.  Who is the note signed

15     by?  Let's start there.

16          MR. LEVINE:  I don't know the answer.  That's a

17     good question.  I'm not sure.

18          THE COURT:  That's one thing.  I would like to see

19     this note, so we could add that to the list, and who

20     authorized it.  I guess that's another question, right?

21          MR. LEVINE:  Right.

22          THE COURT:  And what is it for?  Like was it a note

23     underlying a mortgage that's been satisfied?  Because that

24     if that's the case, right, the note goes away.

25          MR. LEVINE:  It's not for that, Judge.  It's

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 43
RECEIVED NYSCEF: 03/18/2022
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 393 of 416

24

1    complicated.

2            There's a long accounting, actually, for money that

3    was paid by Mosdos on behalf of yeshiva.  It's complicated.

4    There's million and millions of dollars that was paid by

5    Mosdos for yeshiva and yeshiva's expenses but I'm happy

6    to --

7            THE COURT:  And Mosdos is owned by Rabbi Mayer Zaks

8    and Rabbi Aryeh Zaks?

9            MR. LEVINE:  Well, that's in dispute.  It's a

10    charitable organization.

11            MR. CHURGIN:  It's a religious corporation.

12            MR. LEVINE:  It's in dispute who the trustees are.

13            THE COURT:  On that one, too.

14            MR. LEVINE:  That's the primary one, Mosdos, where

15    the dispute is, yes.  That's what's before Judge Drain.

16            THE COURT:  So there's a dispute as to who the

17    members of the board are for Mosdos?

18            MR. LEVINE:  Yes.

19            THE COURT:  And there's also a dispute as to who

20    the members of the board are for yeshiva?

21            MR. LEVINE:  Right, except that I don't think the

22    yeshiva dispute is really relevant at this point, at least

23    not in my perspective in this case.

24            THE COURT:  Well, it is with respect to the PPP

25    application.

22-22493-shl     Doc 7-1     Filed 08/03/22     Entered 08/03/22 10:30:01     Declaration of
Rabbi Mayer Zaks     Pg 394 of 416

25

```
 1              MR. LEVINE:  Right -- well, again, if the PPP

 2      application is okay and it's above board, I'm not making any

 3      ultravirus claim here.  I'm going to withdraw that claim.

 4              THE COURT:  Okay.  Look, this is very convoluted,

 5      to say at least.  So I think it would be very useful for me

 6      to look at these documents that I have just asked for and to

 7      talk to Judge Drain, and then I will be able to assess this

 8      better and determine whether it stays, whether it goes, what

 9      the story is.

10              MR. LEVINE:  I think that's very sound, Judge.

11              THE COURT:  Okay.

12              MR. CHURGIN:  Your Honor, before we go, when you

13      were asking about the list of -- let's call it documents

14      that were corporate-type documents, it's not just the bylaws

15      that would matter.  It's the minutes of the meetings for the

16      bylaws that were adopted.

17              THE COURT:  I asked for those.  I asked for

18      minutes, resolutions.

19              MR. LEVINE:  I'm going to turn over whatever we

20      have.  And the other side has the same application, right?

21              THE COURT:  Yeah.  I want all documents from both

22      sides relating to the election of the board of trustees, the

23      appointment of a member of the board, the appointment of

24      officers, the process, the adoption of the process or

25      anything related to the construct of the board of trustees.
```

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 43

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 395 of 416

26

1          MR. LEVINE:  Judge, we are going to turn over -- I

2     think -- my clients are assembling that stuff now.  I was

3     trying to meet your deadline for tomorrow, but now that the

4     pressure is off, we could take a little more time, but I'm

5     going to turn over to you some materials showing that the

6     bylaws that Mr. Churgin said yesterday were typed on a

7     typewriter -- two days ago --

8          MR. CHURGIN:  I didn't say typewriter.  I said word

9     processor.

10          MR. LEVINE:  I'm going to present to you also

11     materials showing that those bylaws were submitted to banks

12     back in 2005 --

13          THE COURT:  Okay.

14          MR. LEVINE:  -- for the payment of loans.

15          MR. CHURGIN:  That doesn't mean that anybody agreed

16     on them.  It just means --

17          MR. LEVINE:  Yeah, except it was submitted by

18     Mayer.  Okay, no problem.  The Judge will see where it falls

19     out.

20          THE COURT:  You know what documents I'm looking for

21     and you know what documents -- they're going to come out one

22     way or the other.

23          So get me those documents including documents

24     showing the adoption of the bylaws and the use of the

25     bylaws, too.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 43
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 396 of 416

27

1          MR. LEVINE:  Absolutely.

2          THE COURT:  That's fine.

3          MR. LEVINE:  So Judge, I'm sorry, we have until a

4    week from the day after tomorrow, correct?

5          THE COURT:  Yes, a week from Friday.

6          MR. LEVINE:  Okay.  Got it.

7          THE COURT:  In the meantime -- so in the meantime,

8    nothing -- I'm not ordering you to produce anything to Mr.

9    Levine.  I'm not ordering Mr. Levine to produce anything to

10   you.

11         We are going to maintain the status quo.  We are

12   going to pay all operating expenses with notice, cross

13   notice, and those are usual and customary expenses, nothing

14   extraordinary, no loan repayments, so that we keep whatever

15   is happening happening while we can figure out what has to

16   happen here.

17         MR. LEVINE:  Judge, I just have one question.  In

18   terms of Mr. Haspel, how are we going to handle that

19   logistically?  Do you want -- I know Joe Haspel.  I could

20   contact him and just say --

21         THE COURT:  You could tell him I issued an order.

22   You could provide him the transcript but if he needs a

23   written order --

24         MR. LEVINE:  He won't.  He won't.

25         THE COURT:  -- submit an order or --

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 43
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
RECEIVED NYSCEF: 03/18/2022
Rabbi Mayer Zaks    Pg 397 of 416

28

1          MR. LEVINE:  So it's okay for Joe or I to just tell

2     him that you ordered --

3          THE COURT:  I think Mr. Mr. Churgin sent him a

4     subpoena.  He could just respond to the subpoena, but he

5     should respond to the Court.

6          MR. LEVINE:  So Joe and I will let him know that.

7          THE COURT:  Okay.  Go ahead.

8          MR. LEVINE:  I'm actually co-counsel on that case,

9     so is Joe.

10         MR. CHURGIN:  That was my question.  You answered

11    my question.

12         MR. LEVINE:  Joe and I are both co-counsel with him

13    in two different cases.

14         THE COURT:  Okay.  So again, tell him to respond to

15    the subpoena but send the documents to the Court.

16         MR. CHURGIN:  Just to be clear, I didn't serve the

17    subpoena.  I sent it to the Court to see if it would be okay

18    to be so ordered but -- we'll work it out.

19         THE COURT:  If you need something signed by me --

20         MR. CHURGIN:  That's the easiest thing in this case

21    at this point.

22         THE COURT:  Yeah.  All right.  If you need an

23    order, I will sign it, but get it to me by Friday if you

24    need it.  Otherwise, just tell him I have ordered it.  You

25    could get the transcript and show it to him, whatever.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 43
RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 398 of 416

29

1       Okay?

2                    MR. CHURGIN:  Thank you, Judge.

3                    MR. LEVINE:  Thank you.

4               THE COURT:  Thank you.

5                    MR. LEVINE:  We are signing off?

6               THE COURT:  Yup, bye-bye.

7

8       ******************************************************************

9

10                      C E R T I F I C A T I O N

11

12          The foregoing is hereby certified to be a true and

13      accurate transcript of the VIRTUAL proceedings as transcribed

14      from my stenographic notes to the best of my ability.

15

16                              _Michele Mastropolo_
                                Michele Mastropolo, RPR
17                              Senior Court Reporter

18

19

20

21

22

23

24

25

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 44

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 399 of 416

# EXHIBIT Q

# EXHIBIT Q

Donna G. Silberman, County Clerk
1 South Main St., Ste. 100
New City, NY 10956
(845) 638-5070

# Rockland County Clerk Recording Cover Sheet

Received From:
SHEM OLAM LLC
18 MOUNTAIN AVE
MONSEY, NY 10952

## First GRANTOR
82 HIGHVIEW LLC

## First GRANTEE
SHEM OLAM LLC

Index Type : Land Records
Instr Number : 2021-00027314
Book :                    Page :
Type of Instrument : Deed
Type of Transaction : Deed Other
Recording Fee:                    $321.00

Recording Pages :                    6

The Property affected by this instrument is situated in Ramapo, in the County of Rockland, New York

### Real Estate Transfer Tax

| | |
|---|---|
| RETT # : | 7755 |
| Deed Amount : | $10.00 |
| RETT Amount : | $0.00 |
| Total Fees : | $321.00 |

State of New York

County of Rockland

I hereby certify that the within and foregoing was recorded in the Clerk's office for Rockland County, New York

On (Recorded Date) : 06/30/2021

At (Recorded Time) : 3:43:00 PM

Doc ID - 053865150006

Donna G. Silberman
County Clerk

This sheet constitutes the Clerks endorsement required by Section 319 of Real Property Law of the State of New York

Entered By: NYROCKLANDUSER23 Printed On : 06/30/2021 At : 3:44:21PM

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 49    22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 401 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

FILED: ROCKLAND COUNTY CLERK 02/15/2022 09:43 PM
NYSCEF DOC. NO. 17
INDEX NO. 036879/2021
RECEIVED NYSCEF: 02/15/2022

CONSULT YOUR LAWYER BEFORE SIGNING THIS INSTRUMENT-THIS INSTRUMENT SHOULD BE USED BY LAWYERS ONLY

THIS INDENTURE, made the _29ᵗʰ ___ day of JUNE, 2021

BETWEEN

82 Highview LLC of 82 Highview Rd Suffern NY 10901
party of the first part, and

Shem Olam LLC 18 MOUNTAIN AVE MONSEY N.Y. 10952  *M.Z.*
party of the second part,
WITNESSETH, that the party of the first part, in consideration of TEN  dollars
paid by the party of the second part, does hereby grant and release unto the party of the second part, the heirs
or successors and assigns of the party of the second part forever, as per the collateral agreement between
Yeshiva Chofetz Chaim Inc and Shem Olam LLC dated June 29 2021.

All that certain Lot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying
and being in the County of Rockland in the Town of Ramapo. TWO PARCELS as per the discriptions attached
in schedual A .

TOGETHER with all right, title and interest, if any, of the party of the first part in and to any streets and roads
abutting the above described premises to the center lines thereof; TOGETHER with the appurtenances and all
the estate and rights of the party of the first part in and to said premises; TO HAVE AND TO HOLD the
premises herein granted unto the party of the second part, the heirs or successors and assigns of the party of
the second part forever.

AND the party of the first part, in compliance with Section 13 of the Lien Law, covenants that the party of the
first part will receive the consideration for this conveyance and will hold the right to receive such consideration
as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same
first to the payment of the cost of the improvement before using any part of the total of the same for any other
purpose.  The word "party" shall be construed as if it read "parties" whenever the sense of this indenture so
requires.

IN WITNESS WHEREOF, the party of the first part has duly executed this deed the day and year first above
written.

IN PRESENCE OF:

Witness                                    82 Highview LLC By Rabbi Krych Zaks   *MANAGER M.Z.*

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 49          22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
                                           Rabbi Mayer Zaks    Pg 402 of 416          RECEIVED NYSCEF: 03/18/2022
FILED: ROCKLAND COUNTY CLERK 02/15/2022 09:43 PM
INDEX NO. 036879/2021
NYSCEF DOC. NO. 17
RECEIVED NYSCEF: 02/15/2022

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of Rockland __ , ss:

On the 29th ___ day of JUNE in the year 2021, before me, the undersigned, personally appeared Rabbi Aryeh Zaks , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

David M Schlachter
NYS Notary Public
No. 02SC6193160 - New York County
Commission Expires 7/23/24

ACKNOWLEDGEMENT BY SUBSCRIBING WITNESS TAKEN IN NEW YORK STATE

State of New York, County of _____ , ss:
On the _____ day of _____ in the year _____ , before me, the undersigned, a Notary Public in and for said State, personally appeared _____ , the subscribing witness to the foregoing instrument, with whom I am personally acquainted, who, being by me duly sworn, did depose and say that he/she/they reside(s) in

_____

(If the place of residence is in a city, include the street and street number if any, thereof);that he/she/they know(s) _____ to be the individual described in and who executed the foregoing instrument; that said subscribing witness was present and saw said _____ execute the same; and that said witness at the same time subscribed his/her/their name(s) as a witness thereto

# BARGAIN & SALE DEED
# WITHOUT COVENANTS

Title No.

82 Highview LLC
TO
Shem-Olam  LLC
18 Mountain Ave
Monsey  NY 10952

ACKNOWLEDGEMENT TAKEN IN NEW YORK STATE

State of New York, County of          , ss:

On the          day of          in the year          , before me, the undersigned, personally appeared          , personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

ACKNOWLEDGEMENT TAKEN OUTSIDE NEW YORK STATE

*State of          , County of          , ss:
*(Or insert District of Columbia, Territory, Possession or Foreign County)

On the          day of          in the year          , before me the undersigned  personally appeared          Personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in  his/her/their capacity(ies),  that by his/her/their signature(s) on the instrument, the individual(s) or the person upon behalf of which the individual(s) acted, executed the instrument, and that such individual make such appearance before the undersigned in the

(add the city or political subdivision and the state or country or other place the acknowledgement was taken).

SECTION: 49-17

BLOCK: 2

LOT: _____42___

COUNTY OR TOWN: Rockland County Town of Ramapo _

RETURN BY MAIL TO:

RETURN TO:
HENDON ZAKS

MADISON TITLE AGENCY LLC

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 49    22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
                                        Rabbi Mayer Zaks    Pg 403 of 416
FILED: ROCKLAND COUNTY CLERK 02/15/2022 09:43 PM
NYSCEF DOC. NO. 17

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022
INDEX NO. 036879/2021
RECEIVED NYSCEF: 02/15/2022

## RIVERSIDE ABSTRACT, LLC

as Agent for

Fidelity National Title Insurance Company

SCHEDULE A - DESCRIPTION

Title No.: RANY-15937

Parcel I:

ALL that certain plot, piece or parcel of land, situate, lying and being in the Village of Suffern, Town of Ramapo, County of Rockland, State of New York, more particularly bounded and described as follows:

BEGINNING at a point locate on the northerly boundary of Highview Road, said point being located 30 feet from the centerline of the original right of way of Highview Road and further described as being located 301.34 feet from the westerly terminus of the westerly return curve formed by the intersection of the northerly right of way of Highview Road and the westerly boundary of Wendover Lane;

thence the following courses and distances:

Parallel to Highview Road North 74 degrees 40 minutes 00 seconds West 171.28 feet;

Along a stone wall North 2 degrees 40 minutes 06 seconds East 369.05 feet;

THENCE South 74 degrees 27 minutes 03 seconds West 300.81 feet;

THENCE South 19 degrees 22 minutes 00 seconds East 336.53 feet;

On a curve to the right on a tangent to the previous course a radius of 25 feet, an arc length of 37.51 feet, subtended by a central angle of 85 degrees 58 minutes 00 seconds to the point of BEGINNING.

Note: Address, Block & Lot shown for informational purposes only.

Designated as Section 49.17, Block 2, Lot 42 Rockland County and also known as 24 Highview Road.

Schedule A Description Page 1 of 2

SCHEDULE A cont

Parcel II:
All that certain plot, piece or parcel of land, situate, lying and being in the Village of Suffern, Town of Ramapo, County of Rockland, State of New York, known and designated as Lot 47 and 47.1 Block No.2, which said lot is more particularly bounded and described as follows:

BEGINNING at a point locate on the northerly boundary of Highview Road, said point being located, 10 feet from the centerline of the original right of way of Highview Road and further described as being located 102.01 feet from the westerly terminus of the westerly return curve formed by the intersection of the northerly right of way of Highview Road and the westerly boundary of Wendover Lane;

thence the following courses and distances:

Parallel to Highview Road North 74 degrees 40 minutes 00 seconds West 159.33 feet;

On a curve to the left on a reverse tangent to the previous course a radius of 25 feet, an arc length of 37.51 feet, subtended by a central angle of 85 degrees 58 minutes 00 seconds;

North 19 degrees 22 minutes 00 seconds East 116.53 feet;

North 74 degrees 27 minutes 03 seconds West 300.81 feet to a point located along a stone wall;

Along a stone wall North 2 degrees 40 minutes 06 seconds East 831.09 feet to a point located 25 feet southerly from the centerline of the original right of way of Carlton Road;

On a curve to the left, concentric with Carlton Road a radius of 94.42 feet, an arc length of 27.61 feet, subtended by a central angle of 16 degrees 45 minutes 11 seconds and having a chord bearing North 34 degrees 12 minutes 12 seconds East;

Along a stone wall South 72 degrees 15 minutes 00 seconds East 707.77 feet to an existing marble monument;

South 19 degrees 22 minutes 00 seconds West 1170.03 feet to the point of BEGINNING.

Note: Address, Block & Lot shown for informational purpose only

Designated as Section 49.17 Block 2, Lot 47 Rockland County and also known as 82 Highview Road.

INSTRUCTIONS(RP-5217-PDF-INS): www.orps.state.ny.us

**FOR COUNTY USE ONLY**

C1. SWIS Code  `3.9.2.6.0.7`

C2. Date Deed Recorded  `6 / 30 / 21`  Month  Day  Year

C3. Book  `1.2021`  C4. Page  `2.7.3.1.4`

New York State Department of
**Taxation and Finance**
Office of Real Property Tax Services
**RP-5217-PDF**
Real Property Transfer Report (8/10)

**PROPERTY INFORMATION**

1. Property
Location    82 & 105    Highview Rd & Carlton Rd
*STREET NUMBER*    *STREET NAME*

Ramapo    10901
*CITY OR TOWN*    VILLAGE    *ZIP CODE*

2. Buyer
Name    Shem Olam LLC
*LAST NAME/COMPANY*    FIRST NAME

3. Tax
Billing
Address    Indicate where future Tax Bills are to be sent
if other than buyer address(at bottom of form)    LAST NAME/COMPANY    FIRST NAME

*STREET NUMBER AND NAME*    CITY OR TOWN    STATE    ZIP CODE

4. Indicate the number of Assessment    2  # of Parcels    OR  ☐ Part of a Parcel    (Only If Part of a Parcel) Check as they apply:
Roll parcels transferred on the deed
4A. Planning Board with Subdivision Authority Exists  ☐
5. Deed
Property    X    OR    14.40    4B. Subdivision Approval was Required for Transfer  ☐
Size    *FRONT FEET*    *DEPTH*    *ACRES*    4C. Parcel Approved for Subdivision with Map Provided  ☐

6. Seller
Name    82 Highview LLC
*LAST NAME/COMPANY*    FIRST NAME

7. Select the description which most accurately describes the
use of the property at the time of sale:    Check the boxes below as they apply:
8. Ownership Type is Condominium  ☐
I. Community Service    9. New Construction on a Vacant Land  ☐
10A. Property Located within an Agricultural District  ☐
10B. Buyer received a disclosure notice indicating that the property is in an  ☐
Agricultural District

**SALE INFORMATION**

11. Sale Contract Date    15. Check one or more of these conditions as applicable to transfer:
A. Sale Between Relatives or Former Relatives  ☐
* 12. Date of Sale/Transfer    06/29/2021    B. Sale between Related Companies or Partners in Business.  ☐
C. One of the Buyers is also a Seller  ☐
* 13. Full Sale Price    10 ,00    D. Buyer or Seller is Government Agency or Lending Institution  ☐
E. Deed Type not Warranty or Bargain and Sale (Specify Below)  ☐
( Full Sale Price is the total amount paid for the property including personal property.    F. Sale of Fractional or Less than Fee Interest (Specify Below)  ☐
This payment may be in the form of cash, other property or goods, or the assumption of    G. Significant Change in Property Between Taxable Status and Sale Dates  ☐
mortgages or other obligation.) Please round to the nearest whole dollar amount.    H. Sale of Business is Included in Sale Price  ☐
I. Other Unusual Factors Affecting Sale Price (Specify Below)  ☒
14. Indicate the value of personal    J. None  ☐
property included in the sale    .00    *Comment(s) on Condition:
Conveyance is being used to secure a debt or other
obligation as per a collateral agreement

**ASSESSMENT INFORMATION - Data should reflect the latest Final Assessment Roll and Tax Bill**

16. Year of Assessment Roll from which information taken(YY)  20    * 17. Total Assessed Value    `$476,000`

* 18. Property Class    612    * 19. School District Name    Ramapo

* 20. Tax Map Identifier(s)/Roll Identifier(s) (If more than four, attach sheet with additional identifier(s))
49.17-2-42    49.17-2-47

**CERTIFICATION**

I Certify that all of the items of information entered on this form are true and correct (to the best of my knowledge and belief) and I understand that the making of any willful false statement of material fact herein subject me to the provisions of the penal law relative to the making and filing of false instruments.

**SELLER SIGNATURE**

*SELLER SIGNATURE*    *6-29-21*

**BUYER SIGNATURE**

*BUYER SIGNATURE*    *6-29-21*

**BUYER CONTACT INFORMATION**
(Enter information for the buyer. Note: if buyer is LLC,society, association, corporation, joint stock company, estate or entity that is not an individual agent or fiduciary, then a name and contact information of an individual/responsible party who can answer questions regarding the transfer must be entered. Type or print clearly.)

Zaks    Rabbi Aryeh
*LAST NAME*    FIRST NAME

`845`    `538 7709`
*AREA CODE*    *TELEPHONE NUMBER (Ex: 0000000)*

18    Mountain Ave
*STREET NUMBER*    *STREET NAME*

Monsey    NY    10952
*CITY OR TOWN*    STATE    ZIP CODE

**BUYER'S ATTORNEY**

*LAST NAME*    FIRST NAME

*AREA CODE*    *TELEPHONE NUMBER (Ex: 0000000)*

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM

NYSCEF DOC. NO. 15

INDEX NO. 036879/2021

RECEIVED NYSCEF: 03/18/2022

22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 406 of 416

# EXHIBIT R

# EXHIBIT R

## Minutes of Meeting and Resolution
### of
### Yeshiva Chofetz Chaim Inc./82 Highview LLC
#### 82 Highview Rd. Suffern New York 10901

**Whereas,** the undersigned, are long standing congregants and duly qualifying members of the Not-for-profit religious Corporation that conducts services at the Synagogue located at 82 Highview Road Suffern New York, known as the Yeshiva Chofetz Chaim synagogue, and other such assumed names, without limitation, the legal entity "Yeshiva Chofetz Chaim Inc." and "82 Highview LLC".

**Whereas** the undersigned hereby waive <u>all</u> requirements of notice under New York State Religious Corporations Law and Not for Profit Corporation Law, for the holding of this meeting.

**Therefore**, the following shall have full force and effect immediately. we the undersigned hereby vote that board of Trustees and officers shall be the following persons:

Grand Rabbi Mayer Zaks is elected to serve as President until September 1st, 2023.

Mr. Ron Smith is elected to serve as Treasurer until September 1st, 2023.

Mrs. Sima Weintraub is elected to serve as Trustee until September 1st, 2023.

Rabbi Eliezer Pilchik is elected to serve as Vice president as until September 1st, 2023.

Mr. Kalman Green is elected to serve as Trustee until September 1st, 2023.

Rabbi Shimon Zaks is elected to serve as Secretary until September 1st, 2023.

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 19
22-22493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 408 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

**RESOLVED** that all former officers, directors, trustees, or authorized signatories are removed and revoked from the board and as authorized signatories on behalf of the Corporation.

**RESOLVED** that 82 Highview LLC which its sole member being Yeshiva Chofetz Chaim Inc. shall be authorized to act only at the direction of the board of Trustees of Yeshiva Chofetz Chaim Inc.

**RESOLVED** that any previous by-laws shall be voided and revoked, and the newly elected Board of Trustees shall adapt by-laws in the next sixty (60) days.

Dated: June 29, 2021

Print Name: _____    Signature: _____

Print Name: BARUCH LEViN___    Signature: _____

Print Name: _____    Signature: _____

Print Name: Ronald Smith    Signature: _____

INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

# Minutes of Meeting and Resolution
## of
## Yeshiva Chofetz Chaim Inc./82 Highview LLC
### 82 Highview Rd. Suffern New York 10901

Print Name: _Ariel Dahan 6/29/21_    Signature: _____

Print Name: _SHLOIME STEIN_    Signature: _____

Print Name: _Kalman Green_    Signature: _____

Print Name: _Jack S Granick_    Signature: _____

Print Name: _Saul STERN_    Signature: _____

FILED: ROCKLAND COUNTY CLERK 03/18/2022 05:33 PM
NYSCEF DOC. NO. 45
22-2493-shl    Doc 7-1    Filed 08/03/22    Entered 08/03/22 10:30:01    Declaration of
Rabbi Mayer Zaks    Pg 410 of 416
INDEX NO. 036879/2021
RECEIVED NYSCEF: 03/18/2022

# Minutes of Meeting and Resolution
## of
## Yeshiva Chofetz Chaim Inc./82 Highview LLC
### 82 Highview Rd. Suffern New York 10901

Print Name: _Rabbi Mayer Zaks_    Signature: _[signature]_

Print Name: _Shimon Zaks_    Signature: _[signature]_

Print Name: _Bonnie Pilchick_    Signature: _[signature]_

Print Name: _MIRIAM STEIN_    Signature: _[signature]_

Print Name: _Judy Congress-Smith_    Signature: _[signature]_

Print Name: _Rochelle Inger_    Signature: _[signature]_

4

# Minutes of Meeting and Resolution
## of
## Yeshiva Chofetz Chaim Inc./82 Highview LLC
### 82 Highview Rd. Suffern New York 10901

Print Name: _RONALD HENIG_    Signature: _____

Print Name: _Oswald Wilner_    Signature: _____

Print Name: _____    Signature: _____

Print Name: _____    Signature: _____

Print Name: _____    Signature: _____

Print Name: _____    Signature: _____

5

9-1-21                                        Yeshiva chofetz Chaim Inc.
                                              82 Highview LLC

Via Phone

Granik
sima zaks
Kalman Green
Brache stein
shelly Inger
Ariel Pahan
Ozwald Willner
Judy Smith
Mina Pilchik
Ron Henig

In ~~Person~~

In Person
Rabbi Y.M. Zaks    Rabbi y men zaks
shimon zaks    B3ak
shael stein    Soly A.
Boruch Leninger  B. Sterns
Shlomo Stein
Aron zaks
Ron Smith
the Above is true 9-1-21

Rabbi Eliezer Pilchik

call to Rabbi moshe Embes
3 stated that he doesn't want
to attend

discussion

chofetz chaim yartziet

Board staying the
                      same
Reconfirming the vote
of June 29 2021

Last letter of the ic

כמבוהל אשה אל ס׳ לוהיו

We will (the members) not
allow any person to do any
ill transfer of the property located
at 82 Highview Suffern N.Y.

22-22493-shl   Doc 7-1   Filed 08/03/22   Entered 08/03/22 10:30:01   Declaration of
Rabbi Mayer Zaks   Pg 413 of 416

## Minutes of Meeting and Resolution
## of
## Yeshiva Chofetz Chaim Inc./82 Highview LLC
### 82 Highview Rd. Suffern New York 10901

September 1, 2021

**In person:**

- Rabbi Y.M. Zaks –(Signature)
- Shimon Zaks – (Signature)
- Shaul Stern – (Signature)
- Baruch Levinger – (Signature)
- Shlomo Stein – (Signature)
- Ron Smith – (Signature)
- Aron Zaks – (Signature)

**Via Phone:**

- Avrom Granik
- Kalman Green
- Brochie Stein
- Shelly Inger
- Ariel Dahan
- Sima Zaks
- Ozwald Willner
- Judy Smith
- Mina Pilchik
- Ron Henig

### DISCUSSION
- Chofetz Chaim Yurtziet.
- Board staying the same.
- Reconfirming the vote of June 29, 2021
- Reading the last letter of the Chofetz Chaim 1933.
- Psalms for the mother of Kalman Green who was in the hospital.
- We (the members) will not allow any person to do any ill transfer of the property located at 82 Highview Suffern New York.

The above is true 9-1-21

Shimon Zaks (Signature)

Rabbi Eliezer Pilchik (Signature)

# EXHIBIT 2



IRS DEPARTMENT OF THE TREASURY
INTERNAL REVENUE SERVICE
CINCINNATI OH  45999-0031

Date of this notice:  02-20-2019

Employer Identification Number:
83-3639126

Form:  SS-4

Number of this notice:  CP 575 G

82 HIGHVIEW LLC
% YESHIVA CHOFETZ CHAIM INC SOLE MB
82 HIGHVIEW ROAD
SUFFERN, NY  10901

For assistance you may call us at:
1-800-829-4933

IF YOU WRITE, ATTACH THE
STUB AT THE END OF THIS NOTICE.

WE ASSIGNED YOU AN EMPLOYER IDENTIFICATION NUMBER

       Thank you for applying for an Employer Identification Number (EIN).  We assigned you
EIN 83-3639126.  This EIN will identify you, your business accounts, tax returns, and
documents, even if you have no employees.  Please keep this notice in your permanent
records.

       When filing tax documents, payments, and related correspondence, it is very important
that you use your EIN and complete name and address exactly as shown above.  Any variation
may cause a delay in processing, result in incorrect information in your account, or even
cause you to be assigned more than one EIN.  If the information is not correct as shown
above, please make the correction using the attached tear off stub and return it to us.

       A limited liability company (LLC) may file Form 8832, *Entity Classification Election*,
and elect to be classified as an association taxable as a corporation.  If the LLC is
eligible to be treated as a corporation that meets certain tests and it will be electing S
corporation status, it must timely file Form 2553, *Election by a Small Business
Corporation*.  The LLC will be treated as a corporation as of the effective date of the S
corporation election and does not need to file Form 8832.

       To obtain tax forms and publications, including those referenced in this notice,
visit our Web site at www.irs.gov.  If you do not have access to the Internet, call
1-800-829-3676 (TTY/TDD 1-800-829-4059) or visit your local IRS office.

IMPORTANT REMINDERS:

    *  Keep a copy of this notice in your permanent records.  **This notice is issued only
       one time and the IRS will not be able to generate a duplicate copy for you.**  You
       may give a copy of this document to anyone asking for proof of your EIN.

    *  Use this EIN and your name exactly as they appear at the top of this notice on all
       your federal tax forms.

    *  Refer to this EIN on your tax-related correspondence and documents.

       If you have questions about your EIN, you can call us at the phone number or write to
us at the address shown at the top of this notice.  If you write, please tear off the stub
at the bottom of this notice and send it along with your letter.  If you do not need to
write us, do not complete and return the stub.

       Your name control associated with this EIN is 82HI.  You will need to provide this
information, along with your EIN, if you file your returns electronically.

       Thank you for your cooperation.

(IRS USE ONLY)      575G                    02-20-2019  82HL  O  9999999999  SS-4

Keep this part for your records.    CP 575 G (Rev. 7-2007)

--------------------------------------------------------------------------------

Return this part with any correspondence
so we may identify your account.  Please                     CP 575 G
correct any errors in your name or address.
                                                            9999999999

Your Telephone Number  Best Time to Call   DATE OF THIS NOTICE:  02-20-2019
(    )    -                                 EMPLOYER IDENTIFICATION NUMBER:  83-3639126
_____   _____      FORM:  SS-4              NOBOD

INTERNAL REVENUE SERVICE                   82 HIGHVIEW LLC
CINCINNATI  OH   45999-0023                % YESHIVA CHOFETZ CHAIM INC SOLE MB
lldlddlddlddllddlldlllmlldldld            82 HGHVIEW ROAD
                                           SUFFERN, NY  10901