Israel Dahan
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York 10036
Phone: (212) 556-2100
Fax: (212) 556-2200
idahan@kslaw.com
*Counsel for Yeshiva Chofetz Chaim, Inc.*
*and 82 Highview LLC*

Hearing Date: To Be Determined
Response Deadline: To Be Determined

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SHEM OLAM LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 22-22493 (SHL) |

**YESHIVA CHOFETZ CHAIM, INC.'S AND 82 HIGHVIEW LLC'S**
**RENEWED MOTION TO DISMISS DEBTOR'S CHAPTER 11 PETITION**

Yeshiva Chofetz Chaim, Inc. and 82 Highview LLC (the "Movants") renew their motion for an order dismissing the Chapter 11 Petition filed by Debtor Shem Olam, LLC ("Shem Olam" or "Debtor") as a bad faith filing.

## INTRODUCTION

On August 3, 2022, Movants filed their initial motion to dismiss Shem Olam's Chapter 11 Petition as a bad faith filing. On September 20, 2022, during the initial case conference, the Court denied the initial motion, without prejudice to refile. The Movants hereby renew their motion to dismiss.

Shem Olam's filing for bankruptcy comes on the heels of the denial of a motion to dismiss it filed in a state court action regarding the unlawful transfer or "sale" of the Property (defined below) by Rabbi Aryeh Zaks, as purported sole founder and manager of 82 Highview LLC, to Shem Olam in June 2021. There can be no genuine dispute that the state court action is a two-party

dispute involving purely state law claims that was pending for almost eight months before Shem Olam filed for bankruptcy. Critically, in his first-day declaration submitted with the Debtor's bankruptcy petition, Rabbi Aryeh Zaks conceded that an "adverse ruling in the state court" is the basis for the filing, with no mention of any restructuring or other legitimate bankruptcy goal. There is no mention in the first-day declaration of the need to file for bankruptcy to resolve any outstanding property tax liabilities or any outstanding judgment liens on Shem Olam or the Property. Moreover, at the initial conference for this proceeding, counsel for the Debtor acknowledged that "[t]his case is about the debtor's property rights with respect to the real property. The ownership of the property is in dispute. Unfortunately, it's a fight between brothers, both rabbis, over the control and ownership of this property. . . . The debtor filed for bankruptcy . . . to preserve its sole asset," *i.e.*, the Property. *See* Doc. 31 (Transcript of September 20, 2022 Hearing) at 6-7. As demonstrated below, the law is clear in this Circuit that a litigant may not seek bankruptcy protection simply to avoid the consequences or continued litigation of a pending state court two-party dispute, as Shem Olam improperly seeks to do here. Indeed, Shem Olam's actions scream of bad faith and blatant forum shopping.

The Debtor's abuse of the bankruptcy process, however, has not ended with the filing of its bankruptcy petition. The Debtor continues to act inappropriately by misrepresenting and concealing information concerning its assets, liabilities, and corporate structure in order to make it seem as if it has other reasons for bankruptcy protection. As explained below, the Debtor improperly included in its Schedules [Doc. 14] a $3.5 million secured debt that plainly does not exist, and the Debtor has knowingly concealed the affiliated and familial relationship between the Debtor (and Rabbi Aryeh Zaks) and the entity that purportedly owns the non-existent secured debt. Only after being confronted with the reality of this fiction judgment lien and the familial

relationship between the Debtor and the purported lien holder has the Debtor now acknowledged that no such lien exists.[1] The Debtor has also misrepresented Henoch Zak's role with Shem Olam claiming that he is merely an "authorized representative" when the documentary evidence shows he is a manager. Moreover, the Debtor has failed to include in its Schedules a significant asset (i.e., promissory note) valued at $11.1 million. These misstatements and omissions by the Debtor need to be scrutinized and considered by the Court in its assessment of this Motion, especially to the extent the Debtor is relying on information in its Schedules as additional grounds for its filing.

## FACTUAL BACKGROUND

### A. Movants Filed Their New York State Court Action Months Before This Bankruptcy Proceeding

On December 23, 2021, *many months before the filing of this bankruptcy proceeding*, Movants filed an action against Shem Olam and Rabbi Aryeh Zaks in the New York Supreme Court for Rockland County seeking to set aside and nullify Rabbi Aryeh Zaks's transfer or "sale" of the Property to Shem Olam (the "State Court Action"). A copy of the Summons and Verified Complaint is attached to the Declaration of Israel Dahan (Dahan Decl.) as Exhibit 1.

As alleged in the Complaint, YCC is a New York religious not-for-profit organization and the sole member of 82 Highview LLC. *Id.* ¶¶ 1, 3. On June 30, 2021, Rabbi Aryeh Zaks, without proper consent or authorization, transferred title of the Property to Shem Olam, another entity formed by Rabbi Aryeh Zaks. *Id.* ¶¶ 10, 13, 15-16. The deed was recorded in the Office of the Rockland County Clerk on June 30, 2021 as Instrument No. 2021-27314. A copy of the recorded

[1] In response to discovery demands the Movants served concerning this fictitious judgment lien, the Debtor advised that it will be filing amended schedules eliminating this $3.5 million judgment lien. But the question still remains as to why the Debtor included such large a judgment lien in its Schedules and is only now removing such lien from its Schedules. Movants will be taking discovery to further explore this lien issue.

deed is annexed as Exhibit "A" to the Verified Complaint. *Id.* Ex. A. The deed was signed by Defendant Rabbi Aryeh Zaks as purported manager of 82 Highview LLC. *Id.* Movants allege that Rabbi Aryeh Zaks' transfer of the Property to his other entity Shem Olam was unlawful and done so that he would retain complete personal control over the Property. *Id.* ¶ 14.[2]

In response to the State Court Action, Defendants filed a motion to dismiss in which they argued that the transfer or sale of the Property was proper because, under the purported operating agreement for 82 Highview LLC, Rabbi Aryeh Zaks was the sole member and manager of the LLC at the time of the transfer or sale to Shem Olam. To this end, Defendants argued that, under the terms of the purported operating agreement for 82 Highview LLC, YCC was sole member of 82 Highview LLC for only the first 30 months of its existence and then all rights, title and membership interest in 82 Highview LLC reverted to Rabbi Aryeh Zaks as sole forming member. Defendants also argued that Plaintiffs YCC and 82 Highview LLC, or those acting on behalf of Plaintiffs, lacked legal capacity or standing to file such action against Defendants. In response to the motion to dismiss, Movants disputed Defendants' contention and the legitimacy of said purported operating agreement for 82 Highview LLC.

On July 13, 2022, *two weeks before the filing of this bankruptcy case*, the State Court denied Defendants' motion to dismiss, stating:

> The Court declines to dismiss Plaintiffs' complaint based upon the documents offered by Defendants [Shem Olam and Rabbi Aryeh], as they collectively fail to establish a defense as a matter of law. This determination is bolstered by Mayer Zaks challenge to 82 Highview's Operating Agreement naming Aryeh its sole member after 30 months, which happens to coincide with his conveyance of the property to Shem Olam LLC on June 29, 2021.

---

[2] The Court need not address the merits of the allegations in the Complaint for purposes of this motion. Movants are describing the allegations in the Complaint only to show that the State Court Acton involved a two-party, state law dispute concerning the Property.

> . . .
>
> The foregoing determinations regarding Defendants' application seeking to dismissal pursuant to CPLR §3211(a)(l) are equally applicable and fatal to their application pursuant to CPLR §321l(a)[(3)]. Plaintiffs' assertion give rise to questions of fact regarding its alleged standing to maintain this action, thereby rendering judgment as a matter of law inappropriate.

Dahan Decl. Ex. 2 at 2-3. The State Court thereafter set a case management conference for 9:30 a.m. on July 28, 2022, to discuss a pre-trial discovery schedule.

### B. Debtor Files Its Petition for Bankruptcy the Day Before the Case Management Conference in the State Court Action

On July 27, 2022, mere hours before the case management conference in the State Court Action, the Debtor filed its Chapter 11 Petition in this case. *See* Main Case, Doc. 1. A few hours later, the Debtor filed a suggestion of bankruptcy with the State Court. Dahan Decl. ¶ 10. There is no question that Shem Olam filed this bankruptcy case to halt the continued litigation of the State Court Action in the State Court, which had just rejected its motion to dismiss. This is shown in the Debtor's own statements filed along with the Petition.

In Rabbi Aryeh Zaks' first-day declaration for Shem Olam, submitted under Local Rule 1007-2 to explain "the circumstances leading to the debtor's filing under chapter 11," he explicitly states that Shem Olam filed the petition *solely* to escape the State Court Action:

> 8. There is currently a pending litigation in the Supreme Court of the State of New York, County of Rockland styled *Yeshiva Chofetz Chaim Inc. and 82 Highview LLC v. 82 Highview LLC, Shem Olam LLC, and Aryeh Zaks*, Index Number 036879/2021 (the "State Court Litigation"). In the State Court Litigation, plaintiffs sought declaratory relief regarding the Property and to set aside the deed conveying the Property to Shem Olam. On July 12, 2022, the State Court denied the defendants' motion to dismiss the State Court Litigation. On July 25, 2022, the defendants appealed the State Court's decision.
>
> 9. An adverse ruling in the state court has the potential to impact the ability to refinance or sell the Property. Therefore, in order to preserve the value of the Property and to either refinance the Property or sell it to pay its debts, the Debtor sought the protection afforded under the Bankruptcy Code.

*See* Main Case, Doc 1-1. Rabbi Aryeh Zaks makes no mention of any other circumstances resembling a proper need for bankruptcy protection.

Shortly thereafter, on August 2, 2022, the Debtor and Rabbi Aryeh Zaks filed a notice in the State Court Action that they had filed a notice of removal in the U.S. District Court for the Southern District of New York. Dahan Decl. ¶ 10.

### C. The Debtor Filed Misleading Schedules and Provided False Testimony at the 341 Meeting

On August 24, 2022, the Debtor filed its schedules of assets, liabilities, creditors, and statement of financial affairs. *See* Main Case, Doc. 14. The following day, August 25, 2022, the United States Trustee's Office conducted its meeting of creditors under Section 341 of the Bankruptcy Code (the "341 Meeting") at which Henoch Zaks, Rabbi Aryeh Zaks' son, appeared as the "authorized representative" for the Debtor. As described below, the schedules filed by the Debtor contain significant misstatements and omissions. Additionally, the Debtor's representative provided false testimony at the 341 Meeting.

#### 1. *Shem Olam Has Failed To Disclose An $11.1 Million Asset*

In Official Form 206A/B, the Debtor was required to disclose "all property, real and personal, which the debtor owns or in which the debtor has any other legal, equitable, or future interest." In its Official Form 206A/B, the Debtor identifies as its real and personal property the Property (purportedly valued at $7 million) and a mere $23.23 in cash. *See* Main Case, Doc. 14 at 4-6. But, according to filings the Debtor and its representatives, Rabbi Aryeh Zaks and Henoch Zaks, have made in another bankruptcy case in this Court,[3] the Debtor is also the beneficiary of a promissory note in the amount of $11.1 million. Specifically, on April 6, 2020, Henoch Zaks

[3] *Mosdos Chofetz Chaim Inc. v. Mosdos Chofetz Chaim Inc.* (*In re Mosdos Chofetz Chaim Inc.*), Nos. 12-bk-23616, 20-ap-8949 (Bankr. S.D.N.Y.).

submitted a declaration, as a representative of Shem Olam, in which he asserted that Shem Olam provided an $11.1 million loan pursuant to a promissory note to Congregation Radin Development Inc. ("CRD").[4] *See* Dahan Decl. Ex. 3 (Henoch Zaks Decl.) ¶ 6. According to Henoch Zaks, Shem Olam loaned $11.1 million to CRD in connection with CRD's purchase of a different real property owned by the Debtor or its affiliated entities and that "CRD is, thus, presently indebted to Shem Olam in the amount of $11,100,000.00."[5] *Id.* There is no evidence that such loan has been repaid. In fact, in CRD's filing with the NYS Department of Taxation and Finance in 2021—a filing signed by Henoch Zaks—CRD continues to list this loan as one of its liabilities. Dahan Decl. Ex. 4 (CRD Tax Appl.) at 8 (listing "Other liabilities"), 10. But even if that loan has been repaid, what Shem Olam did with those funds is unknown as its Schedules do not identify receipt of any loan repayment or transfer of funds from any repayment within the past two years. Simply put, Shem Olam has not been truthful or omitted material information concerning this significant asset of the Debtor.

### 2. *645 Springdale Holdings LLC Is Not a Secured Creditor of the Debtor*

Although not mentioned in Rabbi Aryeh Zaks' first-day declaration or in the Debtor's Petition, the Debtor's schedules filed on August 24, 2022 identified a single secured creditor, 645 Springdale Holdings LLC, which purportedly holds a judgment lien in the amount of $3.5 million. *See* Main Case, Doc. 14 at 8. The schedules did not specify the property to which this lien applies, but Henoch Zaks claimed that the purported lien is a judgment lien on the Property. Specifically,

---

[4] CRD is yet another entity affiliated with the Debtor and Rabbi Aryeh Zaks. According to filings CRD has made with the NYS Department of Taxation and Finance, Henoch Zaks is identified as "manager" and "contact person" of CRD. In fact, Henoch Zaks signed and submitted the filing on behalf of CRD.

[5] Notably, in the same declaration, Henoch Zaks states (correctly) that the Property "was acquired by 82 Highview LLC, the sole member of which was [YCC]" and that "[YCC] (through 82 Highview LLC) now owns that property." *Id.* ¶¶ 7-8.

at the 341 Meeting, Henoch Zaks characterized the lien as relating to "a judgment against the property" and one that 645 Springdale Holdings "took over" from the "Silverman Foundation," which had obtained an unspecified judgment against the Property's then owner YCC. *See* Dahan Ex. 5 (341 Meeting Transcript) at 65:11-66:6. But this testimony is inconsistent with the available evidence.

There is no record of such property lien in the land records maintained by the Clerk of Rockland County, New York:

- A search of records pertaining to the Property address, 82 Highview Rd., shows no judgment liens whatsoever and no other lien or other record pertaining in any way to 645 Springdale Holdings or the Silverman Foundation. *See* Dahan Decl. Ex. 6 (Property land records index).
- A search of records for the various title owners of the Property—Shem Olam LLC, 82 Highview LLC, and Yeshiva Chofetz Chaim, Inc.—as either a grantor or a grantee, shows no current judgment liens or other indebtedness to 645 Springdale Holdings or to Silverman Holdings. *See* Dahan Decl. Exs. 7 (Shem Olam), 8 (82 Highview LLC), 9 (YCC).

The only judgment lien reflected in the land records that could even conceivably correspond to the purported judgment lien at issue is one originally recorded by the "Marty and Dorothy Silverman Foundation" against Mosdos Chofetz Chaim, Inc. d/b/a YCC on January 7, 2011, and subsequently assigned to 645 Springdale Holdings, in the amount of $938,960.38. Dahan Decl. Ex. 10 (Recorded Judgment). Yet that judgment lien, which is nowhere close to $3.5 million, has long been extinguished as a matter of law. To this end, as the Debtor acknowledges in the first-day declaration of Rabbi Aryeh Zaks, on August 20, 2013—two years after the above judgment lien—TD Bank was awarded a judgment of foreclosure on the Property and acquired title to the Property. That judgment of foreclosure extinguished any and all liens on the Property at that time. *See* N.Y. Real Prop. Acts. Law § 1352. But even if the judgment lien had not been wiped out through TD Bank's foreclosure judgment in 2013, it has certainly been extinguished as of January 7, 2021 by operation of New York statute. *See* N.Y. C.P.L.R. 5203(a) (judgment lien

expires after 10 years absent extension issued by the court). Thus, the Debtor's claim of a $3.5 million judgment lien on itself or the Property is baseless, and the Debtor appears to have manufactured the alleged existence of a judgment lien as a purported basis to avoid dismissal of the Debtor's bankruptcy case.[6]

### 3. *The Debtor Has Misrepresented Its Affiliated and Familial Relationship with 645 Springdale Holdings*

Not only has the Debtor been untruthful about the purported, now admitted fake $3.5 million lien of 645 Springdale Holdings, but the Debtor also has misrepresented its affiliated and familial relationship with that entity. At the Section 341 meeting, Henoch Zaks expressly denied that the Debtor or members of his family are affiliated or employed with 645 Springdale Holdings:

> THAD WILSON: Okay. Who owns 645 Springdale Holdings, LLC?
>
> HENOCH ZAKS: I don't know.
>
> THAD WILSON: Okay. Are any of your family members affiliated with 645 Springdale Holdings, LLC?
>
> HENOCH ZAKS: Can you tell me what the word "affiliated" means in this context?
>
> THAD WILSON: Yes. Do any of your family members work for or own an interest in 645 Springdale Holdings, LLC?
>
> HENOCH ZAKS: None of my family members own an interest in Springdale Holdings.
>
> THAD WILSON: Okay. Do you any of your family members work for 645 Springdale Holdings?
>
> HENOCH ZAKS: Meaning employed by them, no.

Dahan Decl., Ex. 5 at 62:20-63:16.

The Rockland County land records, however, show that this testimony is false. Those records show that, in 2011, the Silverman Foundation also obtained a judgment in the amount of

---

[6] As noted above, it appears that the Debtor is now conceding that this purported $3.5 judgment lien on the Debtor and its Property does not exist.

$1,029,504.95 against Rabbi Aryeh Zaks personally and a lien on his property located at 18 Mountain Avenue, Monsey, New York. That judgment lien was purportedly assigned to 645 Springdale Holdings in March 2019. At or around the same time of that assignment of judgment, 645 Springdale Holdings executed a release of said judgment lien against Rabbi Aryeh Zaks for the sum of only $10. That release of judgment was signed by Rabbi Aryeh Zaks' wife and the mother of Henoch Zaks, Beatrice Waldman, as a "proper corporate officer" of 645 Springdale Holdings. *See* Dahan Decl. Ex. 11 (Recorded Zaks Judgment & Release) at 5. In other words, Rabbi Aryeh Zak's wife is an officer of 645 Springdale Holdings, the entity that purportedly has a $3.5 million judgment lien on the Debtor and its Property. It is simply not credible that Henoch Zaks was unaware of the release and that his mother was an officer of 645 Springdale Holdings when he testified under oath at the 341 Meeting.[7]

**4. *The Debtor Has Not Been Honest About Its Corporate Governance***

The Debtor has represented that Rabbi Aryeh Zaks is its sole manager. To this end, at the 341 Meting, Henoch Zaks claimed that he was merely appearing as an "authorized representative" of the Debtor. Henoch Zaks stated that his father Rabbi Aryeh Zaks, whom he described as the "only manager" of Shem Olam, verbally authorized him to represent the Debtor at the 341 Meeting. *See* Dahan Ex. 5 at 31:1-32:4. Henoch Zaks specifically denied having any other formal role with Shem Olam. *Id.* That testimony, however, is contradicted by Henoch Zaks' filings with New York state agencies. As recently as February 2022, for example, Henoch Zaks submitted and

---

[7] Regarding 645 Springdale Holdings' alleged $3.5 million judgment, Movants have attempted to take discovery of 645 Springdale Holdings. But 645 Springdale Holdings has been evading Movants' efforts. To this end, Movants have 645 Springdale Holdings with a subpoena seeking documents and deposition testimony. The deposition was scheduled for September 12, at 9:30 a.m. Counsel for the Movants and the Debtor appeared at that time for the deposition, but no representative or counsel from 645 Springdale Holdings showed up.

signed real estate tax exemption applications for Shem Olam as Shem Olam's "manager." *See* Dahan Ex. 12 (Shem Olam Tax Appls.) at 4, 40.

### D. Rabbi Aryeh Zaks Has a History of Filing Bad Faith Bankruptcy Petitions and Has Been Repeatedly Sanctioned for It

Importantly, this is not the first time that Rabbi Aryeh Zaks has abused the bankruptcy process and filed a bad faith bankruptcy petition. As recently as October 2018, Judge Drain granted a creditor's request for *in rem* relief of the automatic stay finding that Rabbi Aryeh Zaks, in collusion with a debtor and others with alleged interest in certain real property, had participated in the filing of a bankruptcy petition as "part of a long-running scheme to delay and hinder creditors," and he barred Rabbi Aryeh Zaks from making any future filings under the Bankruptcy Code for two years. *See* Order, *In re Itzkowitz*, No. 18-23342-RDD (Bankr. S.D.N.Y. Oct. 1. 2018), ECF No. 18. Similarly, in 2001, in a published sanctions order, Judge Hardin determined that Rabbi Aryeh Zaks (acting then through YCC) improperly filed an involuntary petition against a debtor solely in an effort "calculated to frustrate the mortgagee bank, with the hope of extracting a deal or concession." *In re Stern*, 268 B.R. 390, 394 (Bankr. S.D.N.Y. 2001). The Petition in this case, by Shem Olam at the behest of its manager Rabbi Aryeh Zaks, is just more of the same mischief.

## ARGUMENT

"A bankruptcy court may dismiss a bad faith filing on an interested party's motion or *sua sponte*." *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997); *see also* 11 U.S.C. § 1112(b)(1) (requiring dismissal "for cause"). "[T]he purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state." *C-TC*, 113 F.3d at 1310 (alteration in original) (quoting *In re Winshall Settlor's Tr.*, 758 F.2d 1136, 1137 (6th Cir. 1985)). To constitute a proper, good faith filing,

therefore, "the debtor must have some intention of reorganizing." *Id.* (quoting *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 228 (2d Cir. 1991)).

To evaluate whether a petition satisfies this requirement, courts consider various factors, including the following identified by the Second Circuit:

> (1) the debtor has only one asset;
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
> (4) the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
> (5) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
> (6) the debtor has little or no cash flow;
> (7) the debtor can't meet current expenses including the payment of personal property and real estate taxes; and
> (8) the debtor has no employees.

*C-TC*, 113 F.3d at 1311 (quoting *Pleasant Pointe Apts., Ltd. v. Ky. Hous. Corp.*, 139 B.R. 828, 832 (W.D. Ky. 1992)). Thus, petitions that are "solely designed to attack a judgment collaterally" or are filed "to avoid the consequences of adverse state court decisions while it continues litigating" are almost always necessarily bad faith filings. *Id.* (quoting *In re Wally Findlay Galleries (N.Y.), Inc.*, 36 B.R. 849, 850-51 (Bankr. S.D.N.Y. 1984)); *In re HBA E., Inc.*, 87 B.R. 248, 260 (Bankr. E.D.N.Y. 1988) ("Chapter 11 was never intended to be used as a fist in a two party bout. The Chapter is entitled reorganization and not litigation.").

There is no question that Shem Olam's sudden Chapter 11 Petition is the epitome of bad faith. The bad faith factors nearly all suggest so. Shem Olam's claimed single asset (the Property) was the subject of a two-party dispute that until the filing of the Petition was pending and actively litigated in the state court for almost eight months. Moreover, Shem Olam has no substantial creditors (real creditors) other than YCC. And, most egregiously, the timing of Shem Olam's

Petition—filed just a few weeks after the State Court denied its motion to dismiss and just hours before that state court was going to set a discovery schedule for the case—shows an obvious attempt to frustrate YCC's continued enforcement of its rights and to forum shop. Indeed, Rabbi Aryeh Zaks admits as much in his first-day declaration in which he points to the possibility of an "adverse ruling in the state court" as the sole genesis of the petition—with no mention of any restructuring purpose at all. *See, e.g.*, *In re 652 W. 160th LLC*, 330 B.R. 455, 467 (Bankr. S.D.N.Y. 2005) ("A debtor cannot use a bankruptcy filing solely as a tactic designed to gain a litigation advantage over a creditor."); *In re 698 Flushing Realty Corp.*, 335 B.R. 17, 22 (Bankr. E.D.N.Y. 2005) ("In this case, not only was this case filed in an effort to obtain a 'perceived advantage in litigation' with movants and to obtain an 'alternative judicial forum' for that litigation, it was filed in circumstances where the facts revealed by the petition conclusively demonstrate that there is no possibility of reorganization. It is difficult to imagine a clearer case of a bad-faith filing."); *HBA*, 87 B.R. at 262 ("These Debtors filed their Chapter 11 petitions as a litigation tactic. The ensuing Chapter 11 cases involve little more than a two party conflagration, i.e., an effort to 'reorganize' the disagreements with Movants. There are hardly any other creditors apart from Movants and there is no evidence that even such other creditors are clamoring for payment.").

To the extent the Debtor claims that it filed its Petition to address a disputed $600,000 tax liability to the Town of Ramapo, such claim rings hollow. To begin, the Debtor makes no mention of a tax liability as a reason for the Petition in the first-day declaration of Rabbi Aryeh Zaks. Moreover, that tax liability was imposed on or about May 1, 2022, several months *prior to* the Debtor's filing of the Petition. Yet, the Debtor did not file for bankruptcy until it lost the motion to dismiss in the State Court Action and mere hours before the case management conference in the State Court Action. Notably, *the Debtor* filed an action in state court appealing the tax liability

*prior to* its filing for bankruptcy and waited almost *two months* to remove that tax appeal action to this Court. Thus, it is clear the Debtor itself does not truly believe that resolution of the tax issue is critical to its reorganization or that this Court is even the proper forum.[8]

## CONCLUSION

For the reasons stated above, the Court should dismiss this Chapter 11 proceeding as a bad faith filing.

Dated: October 10, 2022

Respectfully submitted,

*/s/ Israel Dahan*

Israel Dahan
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York 10036
Phone: (212) 556-2100
Fax: (212) 556-2200
idahan@kslaw.com

Thaddeus D. Wilson (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309
Phone: (404) 572-4600
Fax: (404) 572-5100
thadwilson@kslaw.com

*Counsel for Yeshiva Chofetz Chaim, Inc. and 82 Highview LLC*

[8] Of note, the Town of Ramapo recently filed a motion to abstain and remand the tax appeal action, or alternatively to dismiss it on the merits. *See* Main Case, Doc. 35.

**CERTIFICATE OF SERVICE**

I certify that on October 10, 2022, I caused a true and correct copy of the foregoing to be served via first-class mail on the parties listed below, in addition to those parties receiving electronic notification through the ECF filing system:

A. Mitchell Greene
LEECH TISHMAN ROBINSON BROG, PLLC
874 Third Avenue
New York, New York 10022
*Counsel to Debtor*

Michael Levine
LEVINE & ASSOCIATES, P.C.
15 Barclay Road
Scarsdale, NY 10583
*Counsel to Debtor and Rabbi Aryeh Zaks*

Paul K. Schwartzberg
OFFICE OF THE UNITED STATES TRUSTEE
201 Varick Street, Suite 1006
New York, NY 10014
*United States Trustee for the*
*Southern District of New York*

*/s/ Israel Dahan*
Israel Dahan