Israel Dahan
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York 10036
Phone: (212) 556-2100
Fax: (212) 556-2200
idahan@kslaw.com
*Counsel for Yeshiva Chofetz Chaim, Inc.
and 82 Highview LLC*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>SHEM OLAM LLC,<br><br>Debtor. | Chapter 11<br><br>Case No. 22-22493 (SHL) |

**REPLY IN FURTHER SUPPORT OF
YESHIVA CHOFETZ CHAIM, INC.'S AND 82 HIGHVIEW LLC'S
<u>RENEWED MOTION TO DISMISS DEBTOR'S CHAPTER 11 PETITION</u>**

Yeshiva Chofetz Chaim, Inc. and 82 Highview LLC (the "Movants") submit this reply in further support of their motion for an order dismissing the Chapter 11 Petition filed by Debtor Shem Olam, LLC ("Shem Olam" or "Debtor") as a bad faith filing (Dkt. No. 38) (the "Motion").[1]

## <u>INTRODUCTION</u>

More than four months after its bankruptcy filing, the Debtor has still failed to meet its burden to articulate a legitimate reason for this Bankruptcy Case. As the Debtor readily admits, it generates no income and has no recognized unsecured creditors (other than its lawyers in this Bankruptcy Case who it artificially impaired and it is currently paying). The ownership of its only purported asset—the Property—was the subject of the two-party ownership dispute that was being litigated in State Court and heading into discovery prior to the filing of this Bankruptcy Case. And

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Motion.

1

if the two-party Property ownership dispute is not resolved in its favor, the Debtor then has no assets to administer in this Bankruptcy Case.

Recognizing that it cannot put forth a legitimate reason for its bankruptcy filing, the Debtor spends the majority of its Opposition (Dkt. No. 48) discussing other bankruptcy filings and litigations involving the parties' principals and factual allegations that are wholly irrelevant to the Motion. The Debtor also makes statements concerning the formation, ownership, and management of 82 Highview LLC and YCC that are strongly disputed and devoid of reality. Indeed, the Debtor and Rabbi Aryeh Zaks made these same arguments in the State Court Action in connection with their motion to dismiss the two-party Property ownership dispute, and the Court rejected those arguments. The State Court did not agree with the Debtor and Rabbi Aryeh Zaks' version of events concerning the formation, ownership, and management of 82 Highview LLC and YCC. It is obvious that the Debtor's smoke-and-mirror show is meant to deflect and distract the Court from the fundamental question for resolution of this Motion: why does the Debtor need to be in bankruptcy? It does not.

The Debtor could do everything outside of bankruptcy that it now purportedly seeks to do in this Bankruptcy Case. For example, the Debtor could litigate ownership of the Property outside of bankruptcy—and was doing just that in State Court for many months before it filed for bankruptcy. If the State Court resolved the ownership dispute in the Debtor's favor, the Debtor could then obtain financing or sell the Property outside of bankruptcy and without the attendant costs (*i.e.*, motion practice, U.S. Trustee fees, etc.). Moreover, if it prevails, it could resolve the property tax bill it is presently challenging (something it never mentioned in its first-day declaration or the schedules initially filed with the Petition) through the state law administrative challenge process, which it is currently doing after originally removing the dispute to this Court.

2

And if the Debtor loses the Property ownership dispute, then the Debtor may not have any property tax liability, which would attach to the Property the Debtor does not own. Simply put, there was no legitimate basis for the Debtor to seek bankruptcy protection other than its true desire to forum shop after it was not having initial success in State Court.

Indeed, the Debtor acknowledged its forum-shopping desire in the first-day declaration submitted by Rabbi Aryeh Zaks in which he admits that the Debtor filed the Petition solely to escape further litigation of the two-party Property ownership dispute in State Court and the risk of an adverse ruling in that case. There is no discussion whatsoever of the disputed Town of Ramapo tax liability in the first-day declaration or Petition. *Not one word*. But, as decades of precedent provide, filing for bankruptcy to avoid further litigation of a pending state-court action is not a proper and legitimate basis for filing. Thus, for the reasons set forth in the Motion and below, the Bankruptcy Case must be dismissed "for cause."

## ARGUMENT

As noted in the Motion, "the purpose of Chapter 11 reorganization is to assist financially distressed business enterprises by providing them with breathing space in which to return to a viable state." *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1310 (2d Cir. 1997) (alteration in original) (quoting *In re Winshall Settlor's Tr.*, 758 F.2d 1136, 1137 (6th Cir. 1985)). To constitute a proper, good faith filing, therefore, "the debtor must have some intention of reorganizing." *Id.* (quoting *In re Cohoes Indus. Terminal, Inc.*, 931 F.2d 222, 228 (2d Cir. 1991)). The Debtor ignores this requirement entirely and makes no effort to articulate *any* restructuring purpose for its Chapter 11 filing. Instead, the Debtor's Opposition offers several attempts as misdirection. First, the Debtor raises, *for the first time*, its real estate tax dispute as a reason for the bankruptcy—an issue that is not raised anywhere in its Petition or first-day declaration. Second, hoping to confuse the forest for the trees, the Debtor tries to show, through attorney argument, that the *C-TC* factors

3

do not all point to bad faith.  Finally, hoping to distract from the issues at hand, the Debtor injects many pages of disputed factual assertions (constituting the vast majority of its Opposition), plus a declaration and 12 exhibits, that are irrelevant to the Motion—in addition to being inaccurate.[2] None of these attempts show that this case is proper.

     A.     **The Debtor Has Not Shown a Proper Restructuring Purpose for Its Bankruptcy Filing.**

The Debtor's first-day declaration signed by Rabbi Aryeh Zaks is explicit that the Debtor filed this case to escape "[a]n adverse ruling" in the State Court Action.  Doc. 1-1, ¶ 9.  The declaration identifies no other basis for the petition and makes no effort to describe a "restructuring" purpose for the bankruptcy.  As the Motion shows, the first-day declaration's concession, on its own, dooms this case because a petition filed "to avoid the consequences of adverse state court decisions while [the debtor] continues litigating" is "an impermissible use of

---

[2] Notably, after initially pushing the Court for discovery in connection with the Movants' original Motion, it was the Debtor that asked the Movants if they wished to bypass discovery and have the Motion determined on the papers, to which the Movants agreed.  Thus, the Debtor's insinuation that the Movants abandoned discovery or have not put forth discovery proving their claims of bad faith rings hollows.  Likewise, the Debtor's contention that Plaintiffs did not pursue discovery concerning their allegation of bad faith related to the now-admitted fictitious $3.5 million judgment lien of 645 Springdale Holdings on the Property is false.  Plaintiffs issued a valid document and deposition subpoena on 645 Springdale Holdings, but the entity refused to comply with the subpoena.  Indeed, it did not produce any responsive document or send a corporate representative to appear on the noticed deposition day.  Moreover, in response to Plaintiffs' document requests on the Debtor and Beatrice Waldman, the wife of Rabbi Aryeh Zaks and corporate officer of 645 Springdale Holdings (contrary to the representation of Henoch Zaks at the 341 Meeting), for documents concerning the purported $3.5 million judgment lien on the Property, the Debtor and Ms. Waldman stated they would not produce documents since the Debtor was no longer claiming the existence of such judgment lien on the Property.  Thus, Plaintiffs sought discovery concerning the purported judgment lien of 645 Springdale Holdings on the Property but were prevented from obtaining the discovery.

4

Chapter 11." *C-TC*, 113 F.3d at 1310 (quoting *In re Wally Findlay Galleries (N.Y.), Inc.*, 36 B.R. 849, 850-51 (Bankr. S.D.N.Y. 1984)). Courts thus uniformly find such cases to be in bad faith.[3]

The Debtor has no response to these authorities, and so, it just ignores them. In fact, the Debtor's Opposition fails even to mention the first-day declaration, let alone try to explain why its concession is not fatal. Instead, the Debtor now points to a disputed real estate tax bill as a basis for its Petition. It is not. As an initial matter, the tax dispute is an obvious post hoc justification for the Petition because it was not raised in any meaningful way until after the filing of this Motion: it is not mentioned in the first-day declaration (the document in which the Debtor must explain "the circumstances leading to the debtor's filing under chapter 11," Local Rule 1007-2); it is not referenced in the Petition; and it was mentioned only in passing, in response to a direct question, by the Debtor's representative at the Section 341 Meeting.

Moreover, the existence of the tax dispute still does not—and cannot—establish a proper *restructuring* purpose for this Chapter 11 case. The tax liability at issue is currently in dispute through the administrative law process afforded the Debtor *outside of bankruptcy* and concerns the Property that is the subject of the State Court Action. Thus, for the tax dispute to become an actual debt of the Debtor, the Debtor must both lose its tax appeal (currently pending in the State Court)

---

[3] *See, e.g.*, *In re 652 W. 160th LLC*, 330 B.R. 455, 467 (Bankr. S.D.N.Y. 2005) ("A debtor cannot use a bankruptcy filing solely as a tactic designed to gain a litigation advantage over a creditor."); *In re 698 Flushing Realty Corp.*, 335 B.R. 17, 22 (Bankr. E.D.N.Y. 2005) ("In this case, not only was this case filed in an effort to obtain a 'perceived advantage in litigation' with movants and to obtain an 'alternative judicial forum' for that litigation, it was filed in circumstances where the facts revealed by the petition conclusively demonstrate that there is no possibility of reorganization. It is difficult to imagine a clearer case of a bad-faith filing."); *In re HBA E., Inc.*, 87 B.R. 248, 262 (Bankr. E.D.N.Y. 1988) ("These Debtors filed their Chapter 11 petitions as a litigation tactic. The ensuing Chapter 11 cases involve little more than a two party conflagration, *i.e.*, an effort to 'reorganize' the disagreements with Movants. There are hardly any other creditors apart from Movants and there is no evidence that even such other creditors are clamoring for payment.").

5

and prevail in its Property dispute with the Movants. And even then, the liability would attach to the Property and not be dischargeable in the Bankruptcy Case. *See, e.g.*, *In re Dumain*, 492 B.R. 140, 143 (Bankr. S.D.N.Y. 2013) ("It is a well-established principle of bankruptcy law that liens pass through bankruptcy proceedings unaffected." (internal quotations omitted)); *see also Drew v. Chase Manhattan Bank, N.A.*, 185 B.R. 139, 142 (S.D.N.Y. 1995) ("[W]hile the personal obligation is discharged in bankruptcy, a valid mortgage lien survives the bankruptcy."). Thus, whether in bankruptcy or not, the Debtor's position with respect to the potential tax liability is the same, and the Debtor has nothing to gain—and nothing to restructure—with respect to that potential liability.

        **B.**        **The Second Circuit's *C-TC* Factors All Favor Dismissal.**

Attempting to bypass the overarching requirement that it show a restructuring purpose for its Petition, the Debtor's Opposition also claims that the *C-TC* factors, adopted by the Second Circuit to evaluate bad faith, "weigh heavily against dismissal of this case." Opp. at 16. To arrive at that conclusory assertion, however, the Debtor insists that the Court should ignore *half* of the eight factors simply because the Debtor is a "holding company" for a single property. *Id.* 16-17. The Debtor cites no authority for that position. On the contrary, in *C-TC* itself, the debtor was a holding entity that existed to own and manage a single property. 113 F.3d at 1306. The Second Circuit nevertheless adopted, considered, and affirmed dismissal on the basis of all eight factors. *Id.* at 1311-12. Evaluating those factors here similarly shows that dismissal is appropriate.

*Factors 1, 6, 7, and 8.* The Debtor implicitly concedes, as it must, that factors 1, 6, and 8 favor dismissal. The Debtor claims to have only one asset—the Property at issue between the parties—and the Debtor has no cash flow or employees. *See id.* at 1312 (factors 1, 6, and 8 favor dismissal where debtor is holding company for one property and has no employees or income). And factor 7—which considers whether the Debtor is meeting "current expenses including the

6

payment of . . . real estate taxes," *id.* at 1311—plainly applies as the Debtor has not paid the Town of Ramapo and is instead actively litigating its purported tax bill. The Debtor's attempt to downplay that fact—arguing in a footnote that that tax dispute is not "evidence" of a failure to pay (Resp. at 16 n.7)—is nonsensical because, as its representative conceded at the Section 341 Meeting, the Debtor has no ability to pay the tax bill if its appeal is unsuccessful and plans, if and when it can, to simply sell the Property (*i.e.*, liquidate its only purported asset). *See* 341 Mtg. Tr. at 17:18-21.

**Factor 2.** Factor 2 considers whether "the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors." *C-TC*, 113 F.3d at 1311. Ignoring the secured-vs.-unsecured dichotomy that factor 2 requires, the Debtor simply notes that its amended schedules (filed November 23, 2022 as Doc. 44) "show[] creditors with claims totaling over $800,000" (Opp. at 17)—in an apparent attempt to make those total claims seem large. In reality, the Debtor's amended schedules show just *two* unsecured creditors with liquidated claims—both lawyers to whom the Debtor allegedly has outstanding bills (including its special litigation counsel in this case who has, at times, appeared as the main counsel for the Debtor)—amounting to just a third of the amount claimed by the Town of Ramapo (the lien creditor).[4] There is no question that the Debtor's two unsecured creditors are "few" and, if legitimate, have relatively small claims. And, more fundamentally, there is nothing in the record to suggest that those law firms have anything to gain from this bankruptcy case other than continued fees in representing the Debtor in the Bankruptcy Case and the two-party Property ownership dispute. *See Sapphire Dev., LLC v.*

---

[4] There are serious questions about whether the law firms listed as creditors are truly creditors of the Debtor since the Debtor admittedly generates no income with which to pay the attorneys in the first instance. Moreover, those same firms continue to work for the Debtor and cannot hold interests adverse to the estate. How these firms are being paid today and by whom also remains a mystery.

7

*McKay*, 549 B.R. 556, 571 (D. Conn. 2016) ("The reason Factor Two examines the possibility of an imbalance between secured and unsecured claims is that, if the former heavily outweigh the latter, the creditors as a whole are likely no better off in bankruptcy court.").[5]

*Factors 3 and 4.* Factor 3 looks at whether "the debtor's one asset is the subject of a foreclosure action," and factor 4 considers whether "the debtor's financial condition is, in essence, a two party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action." *C-TC*, 113 F.3d at 1311. Although not a foreclosure action, the State Court Action is a quiet-title proceeding that is functionally equivalent. And there is no doubt that the Debtor's "financial condition" turns entirely on the outcome of that dispute. If the Property is found to belong to the Debtor, it can proceed fully without bankruptcy. If, however, the Property is found to belong to the Movants, there is nothing for the Debtor to "restructure," and a Chapter 11 bankruptcy is equally unavailing. The Debtor's Opposition does not and cannot show otherwise.

*Factor 5.* Factor 5 asks whether "the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights." *C-TC*, 113 F.3d at 1311. As shown in the Motion, the Debtor filed its petition just two weeks after it lost its motion to dismiss the State Court Action and just hours before a status conference in that case was scheduled to begin discovery. The Debtor's first-day declaration fully acknowledges that timing and truthfully concedes that the filing was designed to avoid an "adverse ruling." In its Opposition, however, the Debtor ignores those facts entirely and simply declares, in conclusory fashion, that its filing "does not evidence any intent to frustrate Movant's 'legitimate' efforts to

---

[5] The New Jersey case that the Debtor cites, *In re Walden Ridge Dev., LLC*, 292 B.R. 58 (Bankr. D.N.J. 2003), is inapposite, not only because the case does not consider the *C-TC* (or equivalent) factors but also because the debtor had *no* secured creditors.

8

enforce its rights." Resp. at 18. But the Debtor does not explain why it needed to file its Petition when it did—rather than at the outset of the purported tax dispute or even the beginning of the State Court Action (as opposed to just after its motion to dismiss was denied and on the precipice of a case scheduling conference). The only reasonable inference to draw from the timing is the one the Debtor already admitted to: it wanted to avoid further adverse rulings from the State Court.

In sum, although not all *C-TC* factors must be satisfied to require dismissal, here all of the *C-TC* factors confirm what is clear on the face of the Debtor's petition and accompanying first-day declaration: that this case was filed to avoid an "adverse ruling" in a two-party property dispute and is thus an improper and "bad faith" bankruptcy filing.

### C. The Debtor's Factual Recitations Are Irrelevant—and Inaccurate.

Not surprisingly, unable to effectively address the legal issues pertinent to the Motion, the Debtor devotes most of its Opposition to discussing facts related to other litigation matters involving the parties' principals and facts related to the adjudication of the parties' underlying Property dispute—none of which the Court needs to address at this time. Specifically, the Debtor discusses the *Mosdos* and *CRDI* litigations, neither of which bear at all on the question of whether the Court should dismiss this Bankruptcy Case as having been improperly filed.

As for the Debtor's lengthy discussion of its perception of the formation, ownership, and management of 82 Highview LLC, those facts are likewise irrelevant to the Court's dismissal decision. Indeed, they are irrelevant to the determination of whether the Debtor has a legitimate restructuring purpose in filing the Petition. But given Defendants' lengthy factual discussion of these topics in its Opposition, Plaintiffs could not let Defendants' discussion go unanswered, which is why the Movants address them contemporaneously herewith in their reply brief in support of their Amended Motion for Abstention, Remand, and to Lift the Automatic Stay.

9

For purposes of this Motion, however, the relevant issue is whether the Debtor filed its Petition for a proper, restructuring purpose. As shown in the Motion and above—and in the Debtor's own first-day declaration—the Debtor plainly did not. Thus, the Court should dismiss this case pursuant to Section 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017.

## CONCLUSION

For the reasons stated in the Motion and above, the Court should dismiss this Chapter 11 proceeding as a bad faith filing pursuant to Section 1112(b) of the Bankruptcy Code and Bankruptcy Rule 1017.

Dated: December 19, 2022  Respectfully submitted,

/s/ Israel Dahan
Israel Dahan
**KING & SPALDING LLP**
1185 Avenue of the Americas
New York, New York 10036
Phone: (212) 556-2100
Fax: (212) 556-2200
idahan@kslaw.com

Thaddeus D. Wilson (*pro hac vice*)
**KING & SPALDING LLP**
1180 Peachtree Street, N.E., Suite 1600
Atlanta, Georgia 30309
Phone: (404) 572-4600
Fax: (404) 572-5100
thadwilson@kslaw.com

*Counsel for Yeshiva Chofetz Chaim, Inc.
and 82 Highview LLC*

10

## **CERTIFICATE OF SERVICE**

      I certify that on December 19, 2022, I caused a true and correct copy of the foregoing to be served via first-class mail on the parties listed below, in addition to those parties receiving electronic notification through the ECF filing system:

    A. Mitchell Greene
LEECH TISHMAN ROBINSON BROG, PLLC
874 Third Avenue
New York, New York 10022
*Counsel to Debtor*

    Michael Levine
LEVINE & ASSOCIATES, P.C.
15 Barclay Road
Scarsdale, NY 10583
*Counsel to Debtor and Rabbi Aryeh Zaks*

    Paul K. Schwartzberg
OFFICE OF THE UNITED STATES TRUSTEE
201 Varick Street, Suite 1006
New York, NY 10014
*United States Trustee for the*
*Southern District of New York*

                                                    */s/ Israel Dahan*
                                                  Israel Dahan