**LEECH TISHMAN ROBINSON BROG, PLLC**   **Hearing Date: March 5, 2026 @ 10:00 am**
One Dag Hammarskjold Plaza
885 Second Avenue, 3rd Floor
New York, New York 10017
Steven B. Eichel, Esq.
Tel No.: (212) 603-6300
Email: seichel@leechtishman.com
*Former Attorneys to Debtor*
*and Administrative Creditor*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

In re:                                                    Chapter 11

**SHEM OLAM LLC,**                                         Case No. 22-22493-SHL

                                    Debtor.
-----------------------------------------------------------X

### REPLY OF LEECH TISHMAN ROBINSON BROG, PLLC TO VERIFIED OBJECTION OF RABBI MAYER ZAKS, YESHIVA CHOFETZ CHAIM, INC. AND 82 HIGHVIEW LLC TO SHEM OLAM'S MOTION PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE AUTHORIZING SALE OF SHEM OLAM'S PROPERTY

Leech Tishman Robinson Brog, PLLC f/k/a Robinson Brog Leinwand Greene Genovese & Gluck PC ("Leech Tishman") former counsel to debtor Shem Olam LLC ("Shem Olam" or "Debtor") and administrative creditor, submits this reply ("Reply") to the verified objection ("Sale Objection") of Rabbi Mayer Zaks ("Rabbi Mayer"), Yeshiva Chofetz Chaim, Inc. ("YCC"), and 82 Highview LLC ("82 Highview"; together with Rabbi Mayer and YCC, the "Objectors") to Shem Olam's motion pursuant to section 363 of the Bankruptcy Code authorizing sale of Shem Olam's real property ("Sale Motion"). In connection therewith, Leech Tishman supports the Sale Motion and states as follows:

1

4922-3627-7395, v. 1

## PRELIMINARY STATEMENT

1.      The Objection is comprised of the following arguments: (i) the Objectors have standing to object to the Sale Motion because their claims arose new due to Shem Olam's purported breach of the Global Settlement Agreement (defined below) which resulted in the arbitration ("Arbitration") (ii) by signing the arbitration agreement ("Arbitration Agreement"), Shem Olam voluntarily agreed that a consequence of the decision of the arbitrator ("Arbitrator") might be reviving the issue of ownership of the property located at 82 Highview Road and 105 Carlton Road, Suffern, New York (collectively the "Property"), (iii) Shem Olam's breach of the Global Settlement Agreement gave rise to new claims in favor of the Objectors which were not disposed of in the Shem Olam Adversary Proceeding (defined below) (iv) the Sale Motion should be denied because none of the defects raised by the Objectors in the Debtor's January 16, 2026 Motion Under Rule 9019 of the Federal Rules of Civil Procedure for Approval of Settlement and Compromise [Dkt 152] ("Settlement Motion") have been cured, (v) Shem Olam's refusal to provide the Objectors with discovery regarding the relief sought in the Sale Motion highlights the lack of good faith of the proposed sale transaction, (vi) the proposed sale transaction should not be approved because (a) the ownership of the Property has not been adjudicated and (b) the Debtors failed to comply with the standards of section 363 of the Bankruptcy Code, and (vii) granting the Sale Motion would deny the Objectors their "day in court".

2.      The Objectors' arguments have no merit. The Objectors have no standing to object to the Sale Motion as they have no claims against the Debtor's estate because those claims were dismissed with prejudice in this bankruptcy case.  For this reason and the reasons set forth herein, the Sale Objection must be overruled.

4922-3627-7395, v. 1

## BACKGROUND

3.      On July 27, 2022 (the "Petition Date"), Shem Olam filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

4.      No committee, trustee or examiner was appointed in the Debtor's bankruptcy case.

5.      At the time of the bankruptcy filing and throughout the bankruptcy case, there was litigation regarding the ownership of the Property. On August 2, 2022, Shem Olam, Rabbi Aryeh Zaks and 82 Highview LLC filed a notice of removal in the United States District Court for the Southern District of New York ("District Court") with respect to the state court action styled *Yeshiva Chofetz Chaim and 82 Highview LLC v. 82 Highview LLC, Shem Olam LLC and Aryeh Zaks*, which case was pending in the Supreme Court of the State of New York, County of Rockland ("State Court Action")[1].

6.      The plaintiffs in the State Court Action asserted two causes of action. The first cause of action was that plaintiffs were entitled to a declaratory judgment declaring that plaintiff 82 Highview is the owner of the Property. The second cause of action alleged a fraudulent transfer of the Property, including allegations that the deed from 82 Highview to Shem Olam signed by Rabbi Aryeh was for no consideration and that the defendants stole the Property from YCC and its members.

7.      On August 3, 2022, the United States District Court for the Southern District of New York issued a Memorandum and Order removing the State Court Action and referring the matter to the United States Bankruptcy Court for the Southern District of New York, whereupon it was assigned adversary proceeding number 22-07033 (shl) (the "Adversary Proceeding").

---

[1]      82 Highview was both a plaintiff and a defendant in the State Court Action because both Rabbi Mayer and Rabbi Aryeh Zaks ("Rabbi Aryeh") asserted that they controlled 82 Highview.

8.      The parties litigated their disputes in the Adversary Proceeding until they resolved their dispute. As part of that resolution, on July 10, 2024, the parties to the Adversary Proceeding (by and through their counsel) entered into a Stipulation Dismissing Adversary Proceeding With Prejudice and Without Costs, which stipulation was SO ORDERED by the Court on September 9, 2024 [ECF Adv. Proc. Dkt. 62] ("Order Dismissing Adversary Proceeding"). The Order Dismissing Adversary Proceeding provided, among other things, that pursuant to Fed. R. Civ P. 41(a)(1)(a)(ii), made applicable pursuant to Fed. Bankr. P. 7041, the Adversary Proceeding, and all claims and counterclaims asserted therein, are dismissed in their entirety with prejudice and without costs to any party. This resulted in the dismissal of (i) YCC and 82 Highview's declaratory judgment claim that 82 Highview is the owner of the Property, and (ii) the claim that (a) the defendants in the Adversary Proceeding stole the Property from YCC and its members, and (b) the deed transferred from 82 Highview to Shem Olam was a fraudulent transfer of title for no or insufficient consideration.  As a result of the Order Dismissing Adversary Proceeding, YCC and 82 Highview no longer had claims that they owned the Property, as these claims were now dismissed with prejudice.   As a result of having their claims dismissed with prejudice, the Objectors were no longer creditors or purported creditors of Shem Olam and thus have no standing in this bankruptcy case.

9.      On September 4, 2024, Shem Olam filed a motion, pursuant to 11 U.S.C. §1112(b), voluntarily dismissing this Chapter 11 bankruptcy case. There was no objection to motion, and the motion was granted in the Dismissal Order, which contained, among other things, the following provision:

> ORDERED, that the Debtor shall pay (i) any court-awarded legal fees and expenses to its counsel Leech Tishman Robinson Brog, PLLC ("Leech Tishman"), or any other amount mutually agreed upon in writing by the Debtor and Leech Tishman, within sixty

4

(60) days of the entry of this order dismissing the Debtor's
bankruptcy case, and (ii) the legal fees and expenses of Levine &
Associates, P.C. that are mutually-agreed upon by the Debtor and
Levine & Associates, P.C. within sixty (60) days of the entry of
this order dismissing the Debtor's bankruptcy case [.][2]

10.    In the Dismissal Order, the Court also retained exclusive jurisdiction to interpret

and enforce the Dismissal Order, which includes the Debtor's requirement to pay legal fees to its

counsel within 60 days of the entry of the Dismissal Order. Leech Tishman was never paid its

court-ordered legal fees other than the balance of the pre-petition retainer set forth above. Leech

Tishman understands that Levine & Associates, P..C. ("Levine") has not been paid in full by

Shem Olam and that the law firm of Kriss & Feuerstein, which filed a joinder to the Motion to

Re-Open, also was not paid its unsecured claim of approximately $100,000.

11.    On May 21, 2025, long after the bankruptcy case was dismissed, Leech Tishman

sent a letter to Shem Olam (Attn: Henoch Zaks) by email and First-Class mail terminating its

representation of Shem Olam.

**Mosdos Bankruptcy Case**

12.    On or about June 6, 2024, Mosdos Chofetz Chaim Inc. ("Mosdos"), the

Congregants of Mosdos Chofetz Chaim Inc. a/k/a Kiryas Radin ("Congregants") and

Congregation Radin Development Inc. ("CRDI") entered into a settlement agreement ("Mosdos

Settlement Agreement") in the Mosdos bankruptcy case resolving the adversary proceeding

commenced in the Mosdos bankruptcy case styled *Congregants of Mosdos Chofetz Chaim Inc.*

*a/k/a Kiryas Radin v. Mosdos Chaim Inc., et al.*, Adv. Proc. No. 21-07023-shl ("Mosdos

---

[2]    It was the understanding between Leech Tishman and the Debtor that Leech Tishman was to be paid its
legal fees from the proceeds from the sale of the Property. It was only on that agreement that Leech Tishman
consented to the dismissal of the Shem Olam bankruptcy case.

5

Adversary Proceeding"). As demonstrated by the signatures to the Mosdos Settlement Agreement, Leech Tishman was not representing any party to this dispute.

13. According to paragraph 13 of the Sale Objection, on June 6, 2024, a different settlement agreement ("Global Settlement Agreement") was entered into by and among Rabbi Yisroel Mayer Zaks, on the one hand, and Rabbi Aryeh Zev Zaks, Henoch Zaks and Congregation Radin Development Inc., on the other hand, and (i) as agreed to in full by Yeshiva Chofetz Chaim, Inc. and as to Paragraphs 2, 5 and 32 by Shem Olam and (ii) with additional signatures by Shimon Zaks, Shimon Ganz and Ben Phillipson (collectively, the "Global Settlement Parties"). Neither Leech Tishman nor Levine are signatories to the Global Settlement Agreement. Although the Global Settlement was not attached, there was no evidence produced by the Objectors that Shem Olam in paragraphs 2, 5 and 32 of the Global Settlement Agreement agreed to anything that would make it subject to losing its Property in an arbitration, after the Objectors dismissed their claims with prejudice with respect to the Property.

14. On March 19, 2025, Israel Dahan, prior counsel to YCC and 82 Highview, submitted a letter in the Mosdos bankruptcy case and in the Mosdos Adversary Proceeding in connection with this Court's approval of the Mosdos Settlement Agreement. At the time that the letter was submitted to the Court, a final decree had been entered in the Mosdos bankruptcy case. There was no consultation with Leech Tishman (and upon information and belief Levine) as to the arbitration or its scope. In that March 19th letter, Mr. Dahan advised the Court that "certain settlement related disputes have occurred between the parties," and "rather than burden the Court with yet additional litigation, the parties have consensually agreed to submit their settlement related disputes to binding Rabbinical Arbitration before Rabbi Ari Marburger" and attached a

6

proposed consent order for this Court's consideration. The letter indicated that the Arbitration was to decide certain settlement-related disputes.[3]

15.     Notably, Mr. Dahan's March 19th letter was not filed in the Shem Olam bankruptcy case. The requested scope of the arbitration was hidden from Leech Tishman, and there was no formal notice and/or opportunity for any party to object to such proposed arbitration. In fact, on March 25, 2025, Michael Levine sent a letter to this Court in the Shem Olam bankruptcy case [Dkt No.112] and Mosdos Chofetz Chaim bankruptcy case [Dkt No. 380] advising the Court that (i) the letter by Mr. Dahan seeking a modification of the Court's August 13, 2024 Settlement Agreement was filed without any notice of motion or notice of presentment, and (ii) Mr. Levine did not participate in Mr. Dahan's letter application and did not consent to it. Similarly, Leech Tishman was not consulted in connection with the arbitration.

16.     On March 25, 2025, presumably based on the representations in the March 19th letter, the Court entered a Consent Order in the Mosdos Adversary Proceeding that the parties may arbitrate any disputes between them before Rabbi Ari Marbuger ("Mosdos Consent Order").

17.     At the time of the Mosdos Consent Order, Leech Tishman was never made aware that issues being raised in the Rabbinical Arbitration could collaterally attack the Court's Order dismissing the claims of YCC and 82 Highview in the Shem Olam bankruptcy case.

**Shem Olam Case Reopened**

18.     On June 16, 2025, Leech Tishman filed its Motion to Reopen, which included the Motion to appoint a Trustee ("Trustee Motion").

19.     On July 8, 2025, Leech Tishman filed a motion in this case seeking an order holding Henoch Zaks and Shem Olam in civil contempt for violating the Court's Dismissal Order

---

[3]     A settlement related dispute is different than a decision which collaterally attacks this Court's Order Dismissing Adversary Proceeding in Shem Olam case.

4922-3627-7395, v. 1

("Contempt Motion") [Dkt No.119] because Leech Tishman's court-approved fees were not paid within 60 days of the entry of the Dismissal Order, or at any time thereafter.

20.     On July 10, 2025, the Court granted the Motion to Reopen, and set further hearings on the Contempt Motion and Trustee Motion.

21.     On July 18, 2025, the Court entered the Order reopening the Shem Olam bankruptcy case.

22.     On September 18, 2025, the hearing on the Contempt Motion was heard. The Court requested supplemental briefing on an issue raised at the hearing and the briefing was provided to the Court. No decision has been rendered by the Court on the Contempt Motion.

23.     On January 16, 2026, the Debtor filed the Settlement Motion and a motion to set an expedited hearing. On January 28, 2026, the Objectors filed their Objection to the Settlement Motion. On February 2, 2026, Levine filed its reply to the Objection to the Settlement Motion ("Levine Reply"). Leech Tishman also filed its LT Settlement Reply (defined below).

24.     The Debtor subsequently filed a motion to sell the Property.

25.     On February 24, 2026, the Objectors filed their Sale Objection. The Objectors assert in the Sale Objection that (i) "the Arbitrator" has found that the Global Settlement Agreement was invalid and could not be enforced" and (ii) the consequences of having signed the Arbitrator Agreement is that the ownership of the Property has not been decided. Sale Objection at ¶41. No written evidence supporting the findings by the Arbitrator has even been submitted as evidence.

26.     By this Reply, Leech Tishman supports the Sale Motion and responds to the Sale Objection (incorporating (i) its prior arguments from the Reply of Leech Tishman to the Objectors' Verified Objection to Shem Olam's Motion Under Rule 9019 of the Federal Rules of

Bankruptcy Procedure for approval of Settlement and Compromise [Dkt. 158] ("LT Settlement Reply"), (ii) the Levine Reply, and (iii) Combined Response by Judgment Creditor Levine & Associates, P.C. to Purported Objectors (I) Motion to File Settlement Agreement Under Seal and (II) Objection to Debtor's Motion for Authority to Sell Real Property).

## ARGUMENT

27.     The Objectors' arguments are set forth in paragraph one above, but can be summarized as follows: (i) notwithstanding that the Objectors acknowledge that they dismissed their claims in the Adversary Proceeding, the Objectors contend that have new claims arising from a purported breach of the Global Settlement Agreement that provides them with standing to object to the Sale Motion, (ii) notwithstanding that the Objectors' claims have been dismissed with prejudice in the Adversary Proceeding, the Arbitrator has the power to decide that the Global Settlement Agreement is not valid and determine the ownership of the Property (which has already been determined by this Court), and (iii) the Sale Motion is defective as it does not comply with section 363 of the Bankruptcy Code.

**A. Objectors Do Not Have Standing to Object to Sale Motion Because They Dismissed Their Claims With Prejudice, the Arbitrator has no Power to Collaterally Attack and Vacate this Court's Order and any New Undisclosed Purported Claims are Not a Basis to Assert an Ownership Right in the Property**

28.     The Objectors assert that they have standing to object to the Sale Motion because they have new claims arising from a purported undisclosed breach of the Global Settlement Agreement and denying them standing will deprive them of their day in Court to demonstrate that they own the Property.

29.     The Objectors are wrong. At the time of the filing of Shem Olam's bankruptcy petition, Shem Olam owned the Property. See Exhibits 1 through 4 attached to Levine Reply [Dkt No. 157]. In the Adversary Proceeding in the Shem Olam bankruptcy case, YCC and 82

4922-3627-7395, v. 1

Highview (i) sought a declaratory judgment declaring that 82 Highview is the owner of the Property, and (ii) asserted a cause of action for fraudulent transfer of title for no or insufficient consideration. Ultimately, the parties to the Adversary Proceeding resolved their dispute and entered into a Stipulation Dismissing Adversary Proceeding with Prejudice and Without Costs, which Stipulation was SO ORDERED by the Court on September 9, 2024. [ECF Adv. Proc. Dkt 62]. **As a result, these claims by YCC and 82 Highview were dismissed with prejudice.** (emphasis added).

30.    "A dismissal with prejudice has the effect of a final adjudication on the merits favorable to defendant and bars future suits brought by plaintiff upon the same cause of action." *Samuel Nemaizer, General Manager of the New York Coat, Suit, Dress, Rainwear and Allied Workers' Union L.L.G.W.U. v. Baker*, 793 F.2d 58 60-6192d Cir. 1986). Thus, as the Objectors dismissed their claims against Shem Olam with prejudice, they are not creditors of Shem Olam, and they have no standing in this case to object to the Sale Motion.

31.    They now assert that that a purported undisclosed breach of the Global Settlement Agreement provides them with standing to object to the Sale Motion. They are wrong. They have not demonstrated that any such claim based on a purported breach by Shem Olam  (i) entitles the Arbitrator to collaterally attack this Court's order and vacate it, and (ii) is a claim against Shem Olam entitling them to ownership of the Property.

32.    The Objectors dispute Shem Olam's ownership of the Property.  They assert that the Arbitrator found that the Global Settlement Agreement was invalid and could not be enforced and that the rightful ownership of the Property has not been decided.  Sale Objection at ¶ 41. Based on this purported finding, the Objectors argue that the Property can't be sold while the ownership issue is outstanding.

10

33.    This argument should be overruled because the Objectors provided no evidence (i.e., transcript or decision) supporting their contention. Moreover, the purported contentions of the Arbitrator's rulings are hearsay and inadmissible.[4] There is no admissible documentary evidence that the allegation is true.[5]

34.    Moreover, on March 19, 2025[6], Rabbi Mayer's counsel[7] submitted a letter in the Mosdos bankruptcy case stating that "rather than burden the Court with yet additional litigation, the parties have consensually agreed to submit their settlement related disputes to binding arbitration before Rabbi Ari Marburger." At the time of the settlement and the dismissal of the Shem Olam bankruptcy case, Shem Olam owned the Property as YCC and 82 Highview dismissed their declaratory judgment and fraudulent transfer claims with prejudice with respect to the Property in the Shem Olam Adversary Proceeding.

35.    The letter to the Court in the Mosdos case was not submitted on Notice of Presentment in the Shem Olam bankruptcy case with an opportunity to object, nor did it state that the Arbitrator would have the power to affect any of this Court's rulings in the Shem Olam bankruptcy case. In fact, the March 19th letter was not filed in the Shem Olam bankruptcy case. There is no basis that the letter in the Mosdos case should be used as a weapon to collaterally

---

[4]    Leech Tishman has not been involved in this Arbitration. In the Sale Objection and Settlement Objection, there is no statement by Rabbi Mayer that he attended the Arbitration, and if he did not attend, he does not have the ability to state under penalty of perjury as to what the Arbitrator ruled. No documentation supporting these allegations has been produced,

[5]    To the extent it is determined that these allegations regarding the purported rulings of the Arbitrator are fabrications and not true, Leech Tishman reserves it's right to file a motion seeking reimbursement of its legal fees for the cost of replying to the Objectors' Sale Objection.

[6]    The letter was inadvertently dated March 19, 2024, and was previously attached as Exhibit 9 to the Levine Reply.

[7]    It is unclear whether Israel Dahan was writing to the Court on behalf of Rabbi Mayer or the Congregants of Mosdos Chofetz Chaim, Inc. a/k/a Kiryas Radin (the "Mosdos Congregants") as the proposed order was also submitted in the adversary proceeding in Mosdos Chofetz Chaim bankruptcy case, where the Mosdos Congregants were the plaintiffs in an adversary proceeding. (Adv Proc. No. 21-07023).

11

attack an order in the Shem Olam bankruptcy case where the Objectors dismissed their claims to the Property with prejudice.

36.    "A dismissal with prejudice arising out of an agreement of the parties is an adjudication of all matters contemplated in the agreement, and a court order which memorializes this agreement bars further proceedings." *Samuel Nemaizer, General Manager of the New York Coat, Suit, Dress, Rainwear and Allied Workers' Union L.L.G.W.U. v. Baker*, 793 F.2d at 61. Thus, the Arbitrator has no power to collaterally attack the bankruptcy court order dismissing the claims asserted in the Adversary Proceeding by making a contrary determination that these claims still exist, and the ownership of the Property has not been determined.

37.    A collateral attack on a bankruptcy court order is an attempt to challenge or nullify the order in a proceeding other than a direct appeal of the original proceeding in which the order was entered. *See Keybank Nat'l Assoc. v. Franklin Advisors, Inc.*, 616 B.R. 14, 30 (Bankr. S.D.N.Y. 2020) ("A 'collateral attack' is an attack on an order that is made in a proceeding (other than a direct appeal) that is different from the proceeding in which the order was entered and that seeks to undo or nullify the order itself."). Any determination by the Arbitrator of the ownership of the Property, which has been decided by this Court in the final Order Dismissing Adversary Proceeding is a collateral attack of this Court's Order Dismissing Adversary Proceeding.

38.    Moreover, collateral attacks on bankruptcy court orders are impermissible when the original judgment satisfies *res judicata* requirements. In *AEC One Stop Group Inc. v. Bain Capital Fund IV L.P.*, 9 Fed Appx. 53, 55 (2d Cir. 2001), the Second Circuit held "[w]hen a party has had the opportunity to litigate the propriety of a court's order, it may not reopen the question in order to make a collateral attack on an adverse judgment." In *AEC*, the law firm did not object

12

4922-3627-7395, v. 1

to the court's determination of their claims, nor did they appeal the order confirming the reorganization plan, at which time an attack of the bankruptcy court's order would have been permitted. The Second Circuit concluded that *res judicata* barred the collateral attack.

39.    In this case, as part of an agreed upon resolution of the disputes between the parties, the Court entered the Order Dismissing Adversary Proceeding. YCC and 82 Highview had an opportunity to litigate the issues of ownership of the Property in Adversary Proceeding, but rather than proceed to trial the Objectors agreed to consensually dismiss their claims by the stipulation, which was SO ORDERED by this Court in the Order Dismissing Adversary Proceeding. No appeal was taken from this final order and thus *res judicata* bars the Objectors from having the Arbitrator rule adversely to Shem Olam with respect to the ownership of the Property and them having claims against Shem Olam. The Objectors had their "day in court" and settled their dispute dismissing their claims with prejudice. No new purported claims based on undisclosed breaches of the Golbal Settlement Agreement can undo the Objectors' dismissal of their claims with prejudice and provide them with new ammunition to assert ownership of the Property.

40.    The Order Dismissing Adversary Proceeding in the Shem Olam bankruptcy case is a final and non-appealable order over one year old and cannot be reversed or modified by the Arbitrator. In fact, based on the record, neither Mr. Dahan nor the Objectors advised the Court that the Arbitrator unilaterally expanded his own powers to determine issues that were previously resolved in the Shem Olam bankruptcy case. Mr. Dahan, an astute bankruptcy counsel, could have brought the applicable motion before the Court if the Objectors sought to modify or vacate the order – but that was not done. Moreover, Leech Tishman did not know that the Arbitrator would seek to collaterally attack and essentially vacate this Court's prior Order Dismissing

13

4922-3627-7395, v. 1

Adversary Proceeding violating its due process as it was not part of the arbitration and had no notice that the Arbitrator was seeking to impact its rights in the Shem Olam bankruptcy case in this Arbitration. The Objectors have cited no cases for the proposition that the Arbitrator can expand his power beyond what was authorized by this Court, which was settlement-related disputes (as opposed to disputes as to the ownership of the Property that have already been resolved).

41.    The Objectors have also failed to advise of the purported breach of the Global Settlement Agreement by Shem Olam that would give rise to a new claim against Shem Olam, and any such purported claim would be for damages not the right to ownership of the Property because the Objectors' claims as to the Property have been dismissed with prejudice.

**B.  Objectors Are Not Entitled to Discovery.**

42.    As the Objectors are neither creditors nor parties in interest, they do not have standing to object to the Sale Motion or seek discovery from the Debtor with respect to the Sale Motion. Shem Olam has also filed a motion for protective order with respect to the requested discovery.

**C.  Proposed Sale Should Be Approved.**

43.    The Objectors contend that the Sale Motion should not be approved because (a) the ownership of the Property has not been adjudicated; and (b) the 363 requests have not been satisfied.  The Objectors are wrong. As set forth above, there is no ownership dispute as that issue has been resolved by the Objectors dismissal of their claims with prejudice.

14

44.     The Debtors have the required valid business justification to sell the Property. *See In re Lionel Corp.*, 772 F.2d 1063, 1070 (2d Cir 1983) (requiring articulated business justification for leasing or selling property out of the ordinary course of business).  Here, the Sale Motion would allow for payment to creditors as a means to implement the settlement and comply with the Dismissal Order.  It would also allow the case to close.  These are valid business justifications to sell the Property.  Moreover,  courts allow a private sale of property. *See In re Multi- Strategy Advisors LLC*, 6665 B.R. 578, 592-93 (Bankr. S.D.N.Y. 2024). Furthermore, Leech Tishman understands that the Objectors had an opportunity to purchase the Property for $10 million. If that amount was sufficient to pay the creditors in full and that was a fair price, then a $13 million purchase price is fair as well.

## CONCLUSION

45.     In short, the claims of Objectors YCC and 82 Highview LLC were dismissed with prejudice in this case and the Objectors have no standing to object to the Sale Motion. The Arbitrator cannot collaterally attack this Court's orders by deciding that the Global  Settlement Agreement was invalid and it cannot decide who owns the Property as that issue  was decided in the Shem Olam bankruptcy case. The Sale Motion and Settlement Motions are a way to close this case by selling the Property and having the Debtor pay its true creditors, including Leech Tishman and Levine.

4922-3627-7395, v. 1

46.     Based on all the above, the Court should grant the Sale Motion, overrule the Sale

Objection and grant such other and further relief as the Court deems just and appropriate.

Dated: March 2, 2026
        New York, New York

                        **LEECH TISHMAN ROBINSON BROG, PLLC**

                        By: /s/Steven B. Eichel
                            Steven B. Eichel, Esq.
                            One Dag Hammarskjold Plaza
                            885 Second Avenue, 3rd Floor
                            New York, New York 10017
                            Tel. No.: (212) 603-6300

                            *Former Attorneys for the Debtor Shem Olam*
                            *LLC and Administrative Creditor*

4922-3627-7395, v. 1